UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:17-CV-419-GNS-CHL

JEFFREY DEWAYNE CLARK, et al.,                                           Plaintiffs,

v.

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                               Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion to Quash filed by Defendants Louisville Jefferson County Metro Government, City of Louisville, James Clark, Kelly Jones, Robert Ennis, Charles Edelen, Jim Woosley, and James Griffiths (collectively the "Louisville Defendants"). (DN 152.) Plaintiffs Jeffrey Dewayne Clark ("Clark") and Garr Keith Hardin ("Hardin") (collectively "Plaintiffs") filed a response, and the Louisville Defendants filed a reply. (DNs 157, 164.) Therefore, the motion is ripe for review.

For the following reasons, the Louisville Defendants' Motion to Quash (DN 152) is **DENIED**.

I.       **BACKGROUND**

         A.       **Factual and Procedural Background**

This case involves Plaintiffs' alleged wrongful convictions for the murder of Rhonda Sue Warford in 1995. (DN 152-1, at PageID # 1076.) Specifically, Plaintiffs allege that Defendant Mark Handy ("Handy"), a Louisville Police Department detective who investigated Warford's murder, engaged in investigative misconduct by fabricating false evidence and suppressing exculpatory evidence. (DN 157, at PageID # 1096-97; DN 38.) Plaintiffs also allege that Handy's conduct was "not an isolated incident, but rather part of a long-standing and well-known pattern

in the L[ouisville Police Department] at the time of fabricating inculpatory evidence and destroying or concealing exculpatory evidence." (DN 157, at PageID # 1097.)

After this action was filed, Handy was indicted for perjury and tampering with physical evidence related to his role in the investigations of Edwin Chandler ("Chandler") and Keith West. (DN 107, at PageID # 858.)  On June 2, 2020, Handy pled guilty to one count of perjury for his work on Chandler's case.  (DN 157, at PageID # 1097.)  Prior to Handy's sentencing hearing, Jefferson County Attorney Mike O'Connell ("O'Connell") wrote a letter dated July 21, 2020, to the presiding judge in the state court matter, Judge Olu Stevens, urging him "to reject, vacate, and set aside" Handy's guilty plea and his plea agreement (the "Letter").  (*Id.* at 1097-98; DN 143-1.) The Letter was written on the letterhead of the Jefferson County Attorney's Office.  (DN 143-1.) In the Letter, O'Connell made various statements regarding Handy and his case, including:

- "[T]he indictment [of Handy] was the first step toward justice."  (*Id.* at PageID # 1047.)

- The plea "does not begin to tell the story of what Handy did to Edwin Chandler." (*Id.*)

- "The offer picks out only one lie that Handy told."  (*Id.*)

- "If ever a grant of probation would unduly depreciate the seriousness of the offense it is the case of *Commonwealth v. Mark Handy*."  (*Id.* at 1050.)

- "The plea bargain is manifestly against public interest."  (*Id.*)

- "[T]he plea bargain does not adequately inform the public or the Court [of] the harm Handy has done."  (*Id.*)

- "Such conduct and lies by Handy were a grave human rights violation."  (*Id.*)

The Letter also included a summary of the facts underlying Chandler's case and Handy's misconduct related to the same.  (*Id.* at 1047-48.)  O'Connell urged Judge Stevens to sentence Handy to the maximum available sentence.  (*Id.* at 1051.)  Judge Stevens ultimately rejected the

plea bargain's recommended sentence, and Handy withdrew his plea.  (DN 157, at PageID # 1098; DN 149, at PageID # 1064.)

Given what they viewed as "exceptional admissions in O'Connell's letter," Plaintiffs served a subpoena for O'Connell's deposition.  (DN 157, at PageID # 1098.)  The Louisville Defendants objected to the deposition and filed a Motion to Quash.  (DNs 152, 157-3.)  After discussing the dispute with the Parties during a telephonic status conference, the Court directed the Parties to proceed with briefing.  (DN 154.)

**B.    The Instant Motion**

The Louisville Defendants argued that O'Connell, by virtue of his elected position as Jefferson County Attorney, is their lead counsel and that "[i]t is highly unusual to depose the attorneys for [a] party to the action for which a deposition is sought."  (DN 152-1, at PageID # 1077.)  Specifically, the Louisville Defendants relied on the three-part test set out in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).  (*Id.* at 1078.)  Under that test, a party seeking to depose the opposing party's counsel must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.  Applying those factors to this case, the Louisville Defendants argued that Plaintiffs have failed to satisfy the *Shelton* test because they did not identify what information they intended to seek from O'Connell.  (DN 152-1, at PageID # 1081.)

Plaintiffs argued that O'Connell is not counsel for Louisville Metro and, therefore, the heightened *Shelton* standard does not apply.  (DN 157, at PageID # 1099-1102.)  Plaintiffs asserted that the statements made in the Letter were not made in O'Connell's capacity as counsel in this case but "in his capacity as Jefferson County Attorney in the wholly separate matter of Defendant

Handy's state court criminal proceeding—taking an affirmatively different position there than counsel for the City has taken in this case." (*Id.* at 1099-1100.)  Plaintiffs also pointed out that O'Connell has not entered an appearance, participated in discovery, or attended depositions in the instant case. (*Id.* at 1100.)  Moreover, if this case were to go to trial, O'Connell would not be trial counsel. (*Id.*)  Therefore, since O'Connell is not opposing counsel, they argued that the standard for determining whether he can be deposed is not the heightened *Shelton* standard, but the usual "good cause" standard under Rule 26. (*Id.* at 1101.)  Plaintiffs maintained that under that standard, "[t]he City has not and cannot make out good cause to quash the deposition here, given the gravity of O'Connell's admissions and their clear relevance to Plaintiffs' claims." (*Id.*)  However, Plaintiffs also argued in the alternative that even if the heightened *Shelton* standard applies, they are still entitled to depose O'Connell. (*Id.* at 1102-05.)  Plaintiffs emphasized that "their intention [is] to depose O'Connell as a fact witness solely with respect to the admissions he made on Handy's wide-ranging misconduct and the factual basis for those admissions." (*Id.* at 1103.)

In their reply, the Louisville Defendants reiterated that O'Connell is in fact their lead counsel such that the heightened *Shelton* standard applies. (DN 164, at PageID # 1145.)  The Louisville Defendants cited KRS § 69.210, which states that the County Attorney "shall institute, defend, and conduct all civil actions in which the county or consolidated local government is interested before any of the courts of the Commonwealth." KRS § 69.210(1).  The Louisville Defendants argued that assistant county attorneys "may *only* perform their duties only at the 'direction and control' of O'Connell" such that he should be treated as lead counsel in this case. (DN 164, at PageID # 1145 (quoting KRS § 69.300 ("[A]ssistant county attorneys . . . shall be under the direction and control of the county attorney.")).)  They also argued that even though

Plaintiffs have now identified what information they intend to seek by deposing O'Connell, the prongs of the *Shelton* test are still not met.  (*Id.* at 1146-48.)

## II.    DISCUSSION

### A.    Legal Standard

Fed. R. Civ. P. 26(b) governs the scope of discovery.  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry."  *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).  However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Fed. R. Civ. P. 45 allows parties, inter alia, to command a nonparty to appear at a certain time and place to testify or produce documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26."  *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).  The Court must

quash any subpoena that imposes an undue burden or expense on the person subject to the subpoena, fails to allow reasonable time to comply, requires compliance beyond the geographic limits of Rule 45, or requires disclosure of "privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(1), (d)(3)(A). The "party seeking to quash a subpoena bears the ultimate burden of proof." *Hendricks*, 275 F.R.D. at 253.

Where a party seeks to depose opposing counsel, the Sixth Circuit has adopted the heightened standard articulated by the Eighth Circuit in *Shelton*. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002). A party seeking to depose the opposing party's counsel must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327; *Nationwide*, 278 F.3d at 628.m

### B.     Analysis

The Parties disagree as to whether O'Connell is "opposing counsel" in this case such that the *Shelton* standard applies. In *Shelton*, the plaintiff sought to take the deposition of supervising in-house counsel for the defendant in the case. *Shelton*, 805 F.2d at 1325. The Eighth Circuit held that taking the deposition of opposing counsel should be done in only "limited circumstances" and cited numerous reasons for concern about the practice. *Id.* at 1327. Specifically, the court explained,

> Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged and recognized as disrupting the adversarial nature of our judicial system. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as

6

well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

*Id.*

When the Sixth Circuit adopted *Shelton* in *Nationwide*, it did so without comment on the scope of its application. It merely reiterated that "[d]iscovery sought from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Nationwide*, 278 F.3d at 628 (quoting *Shelton*, 805 F.2d 1327). Factually, *Nationwide* was a suit between two insurance companies for breach of contract that went to arbitration. *Id.* at 623-24. When one insurance company sought confirmation of certain decisions by the arbitration panel, the other company alleged the arbitrators were biased and sought to take the deposition of the opposing party's counsel "on the question of arbitral bias." *Id.* at 624, 628-29. In upholding the district court's denial of the motion for the attorney's deposition, the Sixth Circuit noted that the defendant had argued that the attorneys it sought to depose were not opposing counsel but found that the plaintiff had failed to present any evidence in support of its claim. *Id.* at 628-29. Accordingly, *Nationwide* did not specify the scope of when *Shelton* should apply beyond the phrase "opposing counsel."

Subsequent to *Shelton*, the Eighth Circuit clarified that *Shelton* "was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy," not to "provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded

7

case was crucial." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002).  In *Pamida*, the defendants sought to take the deposition of five attorneys who represented Pamida in a patent infringement action in the indemnification action for costs incurred in defense and settlement of the infringement action.  *Id.* at 728-29.  Defendants sought testimony regarding what notice defendants were given by Pamida regarding the infringement action as well as regarding whether the "attorneys' fees sought by Pamida were reasonably incurred in defending the patent infringement action."  *Id.* at 729.  The five attorneys served as counsel for Pamida in both the indemnification and infringement actions.  *Id.*  The Eighth Circuit held that defendants did not need to meet the standard of *Shelton* to obtain the testimony they sought because *Shelton*'s protection only applied to the ongoing indemnification action, not to the concluded infringement action.

The Sixth Circuit has yet to address whether *Pamida*'s clarification of when *Shelton* applies governs in the Sixth Circuit, and district courts in the Sixth Circuit are split as to the definition of "opposing counsel" that warrants *Shelton*'s application.[1]  As one district court explained,

---

[1] *See Ellipsis, Inc. v. Color Works, Inc.*, 227 F.R.D. 496, 496-97 (W.D. Tenn. 2005) (refusing to apply *Shelton* to request to depose different attorney at same firm as trial counsel of record where prospective deponent was the secretary of plaintiff corporation, prepared corporation's tax returns, and negotiated agreement at issue in case); *Spine Sols., Inc. v. Medtronic Sofamor Danek, Inc.*, No. 07-2175 JPM-DKV, 2008 WL 199709, at *3 (W.D. Tenn. Jan. 23, 2008) (refusing to apply *Shelton* to request to depose patent prosecution attorney in subsequent infringement action because prosecution attorney was not litigation counsel and not clear that "allowing his deposition to be taken would divulge any litigation strategy"); *Massillon Mgmt., LLC v. Americold Realty Tr.*, No. 5:08CV0799, 2009 WL 614831, at *5-6 (N.D. Ohio Jan. 21, 2009) (applying *Shelton* to request to depose in-house counsel); *Myers v. Asset Acceptance, LLC*, No. 2:09-CV-696, 2010 WL 11492862, at *3 (S.D. Ohio Apr. 20, 2010) (refusing to apply *Shelton* to prevent depositions of counsel who represented defendant in separate state court action because counsel was not trial/litigation counsel in the instant case); *Doe v. Univ. of the S.*, No. 4:09-CV-62, 2010 WL 11520216, at *2 (E.D. Tenn. May 11, 2010), *aff'd*, No. 4:09-CV-62, 2010 WL 11520217 (E.D. Tenn. July 15, 2010) (applying *Shelton* to request to take deposition of defendant's general counsel); *Williams v. Wellston City Sch. Dist.*, No. 2:09-CV-566, 2010 WL 4513818, at *4-5 (S.D. Ohio Nov. 2, 2010) (refusing to apply *Shelton* to request to depose attorney who was not "actively litigating th[e] case on the defendants' behalf"); *Point/ARC of N. Ky., Inc. v. Philadelphia Indem. Ins. Co.*, No. CV 09-81-DLB-CJS, 2011 WL 13227981, at *4 (E.D. Ky. Jan. 11, 2011) (refusing to apply *Shelton* to request to depose counsel for plaintiffs in concluded underlying action regarding negligent failure to supervise in subsequent breach of contract and bad faith claim against plaintiff's insurance company); *Beaudry v. TeleCheck Servs., Inc.*, No. 3-07-0842, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013) (refusing to use *Pamida* to limit application of *Shelton* and applying *Shelton* to request to take deposition of defendant's senior in-house legal counsel); *Alomari v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-00613, 2013 WL 5180811, at *5 (S.D. Ohio Sept. 13, 2013), *objections overruled*, 2014

> When the attorney whose deposition is requested is not litigation counsel, is not in-house counsel who is involved to some extent in directing litigation, or is not an attorney who has advised the client concerning the same or similar litigation or has helped develop its defense strategy, the reasons for applying *Shelton* are much less compelling because there is little or no risk that the attorney's testimony might reveal any litigation strategy, or that the purpose of the deposition is to drive a wedge between the opposing party and its current counsel.

*Williams*, 2010 WL 4513818, at *5.  *See also Ellipsis*, 227 F.R.D. at 497 ("[T]he *Shelton* test should be limited to those instances where the attorney to be deposed is either trial/litigation counsel or the subject matter of the deposition may elicit litigation strategy.").  However, many district courts have applied the *Shelton* test to requests to depose in-house or general counsel for a party because even though in-house counsel may not have appeared in the action, he or she often has knowledge of or has helped develop a party's litigation strategy.  *See, e.g.*, *Alomari*, 2013 WL 5180811, at *5.

Here, O'Connell is not counsel of record in this case and, as the Louisville Defendants concede, "has not personally entered his appearance."  (DN 152-1, at PageID # 1080.)  He has not appeared at any court proceedings and has not attended any depositions.  (DN 157, at PageID # 1100.)  The Louisville Defendants argued in their reply that they have included "O'Connell's name on the pleadings, motions, discovery, etc. submitted in this case" and direct the Court to their Motion to Quash as an example.  (DN 164, at PageID # 1145.)  The signature block on the Louisville Defendants' Motion to Quash, like many of their other filings in this matter, reads,

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

---

WL 12651191 (S.D. Ohio June 19, 2014) (applying *Shelton* to request to depose in-house counsel)*; Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, No. 717CV00004ARTEBA, 2017 WL 6048860, at *4 (E.D. Ky. Apr. 28, 2017) (refusing to apply *Shelton* to request to depose coverage counsel in subsequent action for breach of contract for failure to defend, failure to procure liability insurance, and failure to indemnify because counsel represented client in a concluded action and "the deposition sought cannot possibly be construed as seeking information related to litigation strategy").

/s/ Roy C. Denny
Roy C. Denny
Assistant Jefferson County Attorney

(DN 152.)  Below Denny's title, the signature block includes his address, phone number, and e-mail address, as well as the phrase "Counsel for Defendants City of Louisville, Louisville Jefferson County Metro Government, Sergeant Charles Edelen, Detective James Clark, Major James Griffiths, Sergeant Jim Woosley, Detective Kelly Jones, and Detective Robert Ennis." (*Id.*)  While this clearly evidences that Denny works for O'Connell, this does not constitute a signature by O'Connell sufficient to trigger Rule 11 given that Denny denotes his signature with "/s/".  Fed. R. Civ. P. 11(a).  Accordingly, the Court concludes that O'Connell is not the Louisville Defendants' trial or litigation counsel as that phrase has been used by other courts in this Circuit.  Nonetheless, that fact alone is not determinative in the instant case.  As is evident from the Louisville Defendants' briefing and the statutory authority they cite, O'Connell's position as the duly-elected Jefferson County Attorney imbues him with important responsibilities including to "conduct all business touching the rights or interests of the county or consolidated local government"; "institute, defend, and conduct all civil actions in which the county or consolidated local government is interested"; and "give legal advice to the fiscal court or consolidated local government . . . in all matters concerning any county or consolidated local government business within their jurisdiction," among others.  KRS § 69.210.  Thus, though he has not entered an appearance herein, O'Connell's relationship to counsel of record in this case and duties make it likely that he would be privy to litigation strategy and privileged communications with the Louisville Defendants about the instant litigation.  Thus, his deposition is exactly the type of deposition to which the *Shelton* test is meant to apply.

10

While neither the Louisville Defendants nor Plaintiffs cited any cases specifically regarding depositions of county attorneys, the Court finds O'Connell's role similar to that of in-house counsel, which as noted above many courts have found should be subject to the heightened *Shelton* standard. The closest analogous authority of which the Court is aware is *Chesher v. Allen*, 122 F. App'x 184, 188 (6th Cir. 2005), in which the Sixth Circuit reversed a district court decision regarding the depositions of the Hamilton County Prosecutor, the First Assistants to the Prosecutor in both the Civil and Criminal Divisions, and an Assistant Prosecutor. The case involved claims that several employees at the Hamilton County Morgue allowed a private photographer to photograph their deceased relatives without their knowledge or consent and that there was an attempt to cover up the matter. *Chesher v. Neyer*, 477 F.3d 784, 787 (6th Cir. 2007). Plaintiffs sought the depositions of the attorneys based "on evidence obtained in prior discovery that [p]laintiffs claimed demonstrated the possibility of a coverup to protect the County from liability," and they wanted to explore the coverup in the requested attorneys' depositions. *Chesher*, 122 F. App'x at 185. The attorneys were not parties to the case and were not counsel of record to the defendants in the action; however, the magistrate judge still found that "[t]he fact that these particular attorney ha[d] not entered an appearance as trial counsel d[id] not obviate the fact that they [we]re counsel to the county defendants." DN 128, *Chesher v. Neyer*, No. 1:01-cv-566-TSB-TSH, at PageID # 435 (S.D. Ohio Oct. 28, 2003). The magistrate judge applied *Shelton* and concluded that except for two limited areas of inquiry as to one of the attorneys, the plaintiffs had failed to satisfy its heightened standard. *Id.* The magistrate judge also rejected the plaintiffs coverup theory. *Id.* at PageID # 437-38. In considering objections to the magistrate judge's order, the district court reversed his "finding that the evidence does not support a cover-up theory." *Chesher v. Neyer*, 220 F.R.D. 523, 530 (S.D. Ohio 2004), *rev'd and remanded sub nom. Chesher*,

122 F. App'x 184.  The district judge permitted the depositions of all four attorneys to go forward based on his analysis of the crime/fraud exception to attorney client privilege.  *Id.* at 531-33.  The Sixth Circuit found that the district judge had erred in not applying the *Shelton* test to the requested depositions and in just assessing the application of the crime/fraud exception but not providing any analysis as to why *Shelton* applied to these particular depositions.  *Id.* at 188.  The Court finds that this factual similarity favors the application of *Shelton* to the request to depose O'Connell herein.

Sinclair v. Lauderdale Cty., No. 2:14-CV-02908-SHM, 2015 WL 1393423, at *1 (W.D. Tenn. Mar. 24, 2015), relied upon by Plaintiffs as part of their argument that *Shelton* does not apply, is distinguishable from the instant case.  *Sinclair* involved a request to take the deposition of the Assistant District Attorney who prosecuted Sinclair in his subsequent § 1983 action based on his prosecution.  *Id.* at *1-2.  The *Sinclair* court found that *Shelton* did not apply because the Assistant District Attorney was "is not acting as opposing counsel to either Plaintiff or Defendant" and was instead "a prosecutor on behalf of the State of Tennessee, who [wa]s not a party to th[e] action, in a prior completed case."  *Id.* at *4.  Here, Handy's criminal case is ongoing, not completed, and given Plaintiffs' municipal liability claims, there is a greater likelihood of overlap in terms of O'Connell's knowledge about litigation strategy than there was in *Sinclair*.  Accordingly, this Court will require Plaintiffs to meet the heightened standard set forth in *Shelton* and adopted by the Sixth Circuit in *Nationwide* before they may depose O'Connell.

Plaintiffs argued that even pursuant to *Shelton*, the Louisville Defendants' Motion to Quash should be denied.  (DN 157, at PageID # 1102-05.)  Plaintiffs contended that they intend to depose O'Connell solely as a fact witness about what they construe as admissions in the Letter regarding Handy's sentencing and the basis for those admissions.  (DN 157, at PageID # 1100, 1103.)  They

represented that they "have no need to and no interest in questioning O'Connell about anything related to the City's litigation strategy in this case." (*Id.* at 1100.) In fact, they go so far as to state that "had O'Connell not sent the July 21st letter, Plaintiffs would never have noticed his deposition." (*Id.* at 1101.) Given Plaintiffs' description of the scope of the deposition, the Court concludes that Plaintiffs have made a sufficient showing pursuant to *Shelton* to be permitted to depose O'Connell for the limited purposes they identified in their response.

As to the first *Shelton* prong, that "no other means exist to obtain the information than to depose opposing counsel," because O'Connell signed and presumably drafted the Letter, it is not clear there is any other person who could speak to the basis for some of the admissions therein. *Shelton*, 805 F.2d at 1327. Regardless of whether the factual assertions in the Letter are matters of public record as contended by the Louisville Defendants, only O'Connell could specify which of those factual assertions caused him to make the recommendation and other statements he did. Thus, the first prong is satisfied. The second *Shelton* prong, that "the information sought is relevant and nonprivileged," is also satisfied. *Id.* The Louisville Defendants have conceded the information sought is relevant (DN 164, at PageID # 1147), and given that the Letter was filed in the public record, it is unclear how the information contained therein could be privileged. The Louisville Defendants have also asserted that "the letter was written by O'Connell not in his representative capacity of these defendants," and given this statement, the Court finds it unlikely that questioning regarding the Letter would trigger the application of attorney-client privilege or work product doctrine. (DN 164, at PageID # 1144.) Finally, as to the third *Shelton* prong, that "the information is crucial to the preparation of the case," Plaintiffs' municipal liability claims center on Handy's misconduct and the Louisville Defendants' knowledge of that misconduct. *Shelton*, 805 F.2d at 1326. The Letter discusses Handy's misconduct in the Chandler case, which

as Plaintiffs point out was contemporaneous with Handy's investigation of the Warford homicide at issue in the instant case.  (DN 157, at PageID # 1104.)  Under those circumstances, the type of testimony Plaintiffs seek to  elicit from O'Connell is crucial to their case.[2]

Therefore, the Court concludes that Plaintiffs have demonstrated a sufficient basis to depose O'Connell solely regarding the July 21, 2020, Letter.  The Court cautions the Plaintiffs that this should not be taken as a *carte blanche* to broadly question O'Connell about the Chandler case. Consistent with their representations to the Court, Plaintiffs should carefully tailor their questions to avoid any topics that might trigger the application of attorney-client privilege or the work product doctrine.  Further, while allowing the deposition to go forward does not prohibit O'Connell from asserting privilege where applicable, the Court will be highly skeptical of any position that he can answer no questions without violating privilege.

## III.   ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the Louisville Defendants' Motion to Quash (DN 152) is **DENIED**.  Plaintiff may depose Mike O'Connell in his capacity as Jefferson County Attorney regarding his July 21, 2020, Letter regarding Defendant Handy's sentencing.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

May 3, 2021

---

[2] Though it is evident from the briefs that the Parties disagree as to whether the Letter constitutes a binding party admission, the Court need not and thus will not address that issue in the instant decision.

14