# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

*Electronically Filed*

**JEFFREY DEWAYNE CLARK**
**GARR KEITH HARDIN**

       **PLAINTIFFS,**

     **VS.**               **CIVIL NO. 3:17-CV-00419-DJH-CHL**

**LOUISVILLE JEFFERSON COUNTY**
**METRO GOVERNMENT, *ET AL*.**

       **DEFENDANTS.**

---

## DEFENDANTS' COMBINED MOTION
## TO STRIKE PLAINTIFFS' UNTIMELY DISCLOSURES

---

Plaintiff Jeffrey Clark filed the present lawsuit against Meade County, the Louisville Metro Police Department ("LMPD"), Handy and others on July 12, 2017. Plaintiff Garr Keith Hardin filed a nearly identical complaint. The cases were subsequently consolidated, and proceedings were stayed at Plaintiffs' request. (R. 34.) Both parties filed Amended Complaints on May 1, 2018. (R. 38, 39.) Answers were soon filed, and discovery ensued. The Parties' Rule 26(f) Report anticipated that fact discovery would be completed by September 3, 2019, and the Court imposed this deadline. (R. 58, p. 2; R. 69, p. 2.) Plaintiff Hardin served Initial Disclosures on August 17, 2018, while Clark served them a week later, on August 24.[1] Plaintiff Hardin supplemented disclosures on April 23, 2020.[2]

Obviously, discovery has been continued many times because both the volume of

---

[1] **Exhibit 1** (Plaintiff Hardin's Initial Disclosures dated August 17, 2018); **Exhibit 2** (Plaintiff Clark's Initial Disclosures dated August 24, 2018).
[2] **Exhibit 3** (Plaintiff Hardin's First Supplemental Disclosures dated April 23, 2020).

documents and number of witnesses mandated additional time.  By Defendants' estimation there were 47 depositions taken and approximately 166,688 pages of discovery produced in total throughout discovery.  Discovery finally closed on February 3, 2022.  (R. 229, p. 2.)

Shockingly, both Plaintiffs supplemented their disclosures again, for the first time in over two years, during the last 24-hours of fact discovery.  The supplements were anything but inconsequential.  Defendants received Plaintiffs' most recent supplemental disclosures from Hardin the day before discovery closed, on February 2, 2022, at 6:18 PM.[3] Plaintiff Clark waited until the last day of discovery and delivered his most recently supplemented disclosures on February 3, 2022, at 9:43 AM.[4]  The sun rose and set 1,667 times from the date that Plaintiffs filed their underlying Complaints to when they collectively supplemented their disclosures with the names of 40 new witnesses.   Now, Hardin has now identified 116 individuals, while Clark has identified 128 individuals.

On February 7, Defendants reached out to Plaintiffs regarding their late disclosures, explaining Defendants' collective concern over including over forty (40) new individuals.[5] The parties scheduled a "meet and confer" phone call, which took place on February 14.  Plaintiffs sent an email on February 18, which memorialized their position on the call.  They refused to remove names from their late disclosures, and instead suggested that most of the people added to their list were included "only out [of] an abundance of caution."[6]  Plaintiffs proposed that, if they should decide they were going to later call these witnesses, they would allow Defendants to

---

[3] **Exhibit 4** (Plaintiff Hardin's Second Supplemental Disclosures dated Feb. 2, 2022); **Exhibit 5** (Email from Plaintiff Hardin with Second Supplemental Disclosures at 6:18 PM on Feb. 2, 2022).
[4] **Exhibit 6** (Plaintiff Clark's Second Supplemental Disclosures dated Feb. 3, 2022 (while titled "Second" supplemental disclosures, these appear to be Clark's First Supplemental Disclosures)); **Exhibit 7** (Email from Plaintiff Clark with Second Supplemental Disclosures at 9:43 AM on Feb. 3, 2022).
[5] **Exhibit 8** (Defendants' February 7, 2022 email to Plaintiffs).
[6] **Exhibit 9** (Email Communication between Parties regarding discovery dispute, including specifically Plaintiffs' February 18, 2022 email to Defendants).

depose them; this proposal renders pretrial deadlines meaningless.[7]   Plaintiffs prepared the following chart which outlines all of the newly identified witnesses, whether they were deposed, are expert witnesses, or are those that Plaintiffs suggest they are "unlikely to call."

| Witness | Witnesses Deposed | Experts | Witnesses Disclosed During Discovery; Unlikely to Call |
|---|---|---|---|
| **Disclosed by Plaintiff Hardin** | | | |
| Mike O'Connell | X | | |
| Gloria Dimick | | X | |
| Skip Palenik | | X | |
| Julius Clark | X | | |
| Jay Pierce | X | | |
| Jim Petit | | | X |
| Joseph Carroll | | | X |
| Robert White | | | X |
| Barry Wilkerson | | | X |
| Joe Richardson | | | X |
| Vince Robison | | | X |
| Donald Burbrink, | | | X |
| Kenton Smith | X | | |
| Dawn Katz | | | X |
| Brett Johnson | | | X |
| Keith Carpenter | | | X |
| Keith Yarka | | | X |
| Jeffrey Eden | | | X |
| Vicki Budd | X | | |
| Michael Mattingly | X | | |
| Jimmer Dudley | | | X |
| Percy Phillips | | | X |
| John Gray | | | X |

---

[7] *Id.*

| | | | |
|---|---|---|---|
| Nicole Madison | | | X |
| Pam Gibson | | | X |
| Troy Brock | | | X |
| Jay Lambert | | | X |
| William Lee | | | X |
| Charles Broaddus | | | X |
| Christopher Geter | | | X |
| Larry Smalls | | | X |
| Brede Timberlake | | | X |
| Jonathan | | | X |
| **Disclosed by Plaintiff Clark (that were not also disclosed by Plaintiff Hardin)** | | | |
| Donald Burbrink, | X | | |
| Perry Ryan | X (motion pending) | | |
| David Williams | | | X |
| Stuart McCoy | | | X |
| Ashley Edwards | | | X |
| Jim Lesousky | | | X |
| Robert Ross | | | |
| Ruth Bowie | | | |
| Edward Monarch | | | X |
| Alma Jodie | X (pending) | | |
| Heather Livers | | | |
| Linda Smith | | | X |

In the spirit of working amicably to resolve this dispute, the Defendants agreed not to object to the late addition of any individual who was deposed, or any expert (the expert deadline had not yet passed).[8]  Defendants have maintained their objection, however, as to the addition of 31 individuals who have never been deposed or been previously identified as witnesses in this case by any party, including:

---

[8] **Exhibit 9** (Email Communication between Parties regarding discovery dispute, including specifically Defendants' February 25, 2022 email to Plaintiffs).

- Jim Petit
- Joseph Carroll
- Robert White
- Barry Wilkerson
- Joe Richardson
- Vince Robison
- Donald Burbrink, Sr.
- Dawn Katz
- Brett Johnson
- Keith Carpenter
- Keith Yarka

- Jeffrey Eden
- Jimmer Dudley
- Percy Phillips
- John Gray
- Troy Brock
- Jay Lambert
- William Lee Broyles
- Charles Broaddus
- Christopher Geter
- Larry Smalls
- Brede Timberlake

- Jonathan Whitesides
- David Williams
- Stuart McCoy
- Ashley Edwards
- Jim Lesousky
- Robert Ross
- Ruth Bowie
- Edward Monarch
- Linda Smith

Defendants requested a call with the Court to resolve this discovery dispute.  The parties participated in a discovery conference with the Court, whereafter the Court granted Defendants leave to file this Motion.  *See* R. 237.

As explained herein, the Court should strike each of these individuals from the Plaintiffs' disclosures.  Alternatively, if the Court does not strike these witnesses from the Plaintiffs' late disclosures, then the Court must vacate all deadlines, re-open discovery, and require the Plaintiffs to bear the Defendants' costs on this avoidable briefing.

<u>Argument</u>

"Modern instruments of discovery serve a useful purpose . . . . They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter*, 356 U.S. 677, 682 (1958).  Rule 26(a)(1) serves just such a purpose, requiring parties to disclose information about each person likely to have discoverable information that the disclosing party may use to support its claims or defenses unless the witness will be used solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A).  FRCP 26(a)(2)(E), read in conjunction with 26(e), requires that parties supplement their initial disclosures:  (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.  As explained below, Plaintiffs failed to properly disclose information that they have possessed for years.

I.   PLAINTIFFS' DISCLOSURE OF 31 PREVIOUSLY UNDISCLOSED FACT WITNESSES IN THE LAST 24 HOURS OF DISCOVERY VIOLATES RULE 26 AND UNDERMINES THE VERY PURPOSES OF <u>INITIAL DISCLOSURES</u>.

The Plaintiffs supplemented their disclosures in the last 24-hours of fact discovery.  This is exactly the type of behavior that the rules are designed to prevent.  *See* e.g. *Cruz v. Bristol Myers Squibb Co. PR*, 777 F. Supp. 2d 321, 329 (D.P.R. 2011) (striking plaintiff's supplemental witness disclosures to include four additional witnesses at 10:51 P.M. the night before the discovery deadline); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 U.S. Dist. LEXIS 192208, at *15 (W.D. Ky. June 29, 2016) (striking "disclosures [that] are clearly untimely and come years after the first initial disclosures…"); *Matilla v. S. Ky. Rural Elec. Coop. Corp.*, No. 6:04-380-DCR, 2006 U.S. Dist. LEXIS 2170, at *9 (E.D. Ky. Jan. 20, 2006) ("Rule 26(e) does not exist to allow the proponent of the new information to disclose the information after the close of the applicable discovery period.")

Moreover, making a supplemental disclosure at the close of discovery frustrates the purposes of Rule 26(a), as it effectively denies the opposing party the opportunity to conduct necessary factual discovery. *Jones v. Prudential Sec., Inc.*, No. 18-11960, 2021 U.S. Dist. LEXIS 54370, at *10-1 (E.D. Mich. Mar. 23, 2021); *Sherwin-Williams Co. v. Wooster Brush*

*Co.*, No. 5:12-CV-3052, 2014 U.S. Dist. LEXIS 20006 (N.D. Ohio Feb. 10, 2014). *See also Lower Town Project, LLC v. Lawyers Title Ins. Corp.*, No. 10-11612, 2012 U.S. Dist. LEXIS 27270, at \*26 (E.D. Mich. 2012) ("Rule 26(a) and (e) require a party to inform its opponent of potential witnesses so that the opponent can be spared a wild goose chase after any and every individual that may have information relevant to the party's case.").

Rule 26 does not require a party "to disclose the identity of a potential witness whom they do not intend to use, but once they are aware that they intend to use a witness, a disclosure responsibility is triggered." *Executone of Columbus v. Inter-Tel, Inc.*, No. 2:06-CV-126, 2008 U.S. Dist. LEXIS 137521, at \*6 (S.D. Ohio Sept. 17, 2008) (citing 2000 Advisory Committee Comments to Fed. R. Civ. Pro. 26(a)(1)). Here, Plaintiffs have known for years that the individuals listed in their supplemental disclosures were potential witnesses but failed to disclose the identities of such individuals until the last day of discovery. Consequently, Plaintiffs have violated Rule 26.

In addition, Plaintiffs are not excused from the requirement to supplement their disclosures because each of the recently disclosed witnesses were merely mentioned in passing during discovery. To be relieved of the obligation to supplement disclosures, the information must have "been otherwise made known to the parties in writing or during the discovery process . . . ." *Executone*, 2008 U.S. Dist. LEXIS 137521, at \*5 (S.D. Ohio Sept. 17, 2008) (citing 1993 Advisory Committee Comments to Fed. R. Civ. Pro. 26(e)). Merely mentioning an individual is not sufficient to alert the opposing party of that person's potential as a witness. *See Chapman v. Tristar Products, Inc.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 100203 at \*2 (N.D. Ohio June 28, 2017) (citing *Sjostrand v. Ohio State Univ.*, No. 2:11-CV-00462, 2014 U.S. Dist. LEXIS 125163, at \*2 (S.D. Ohio Sept. 8, 2014). Rather, the Plaintiffs must "demonstrate that the

opposing party knew the party who failed to disclose the witness might call that person to testify at trial." *Sjostrand*, 2014 U.S. Dist. LEXIS 125163, at *2.

Many courts find that the exception applies when "deposition testimony or response to written discovery is the functional equivalent of a 26(a)(1) disclosure." *Sjostrand*, 2014 U.S. Dist. LEXIS 125163, at *5.  Thus, a party is not required to supplement their initial disclosures when discovery reveals both the identity of, and the subject of the information known to, a person "likely to have discoverable information . . . that the party may use to support its claims and defense." *Id.* (citing Fed. R. Civ. P. 26(a)(1)).  For example, in *Lower Town Project*, when Third-Party Plaintiffs failed to include multiple witnesses in their initial and supplemental disclosures, the court allowed one witness to testify at trial, holding that her relevance to the case was "sufficiently apparent" during discovery because she was the project manager of a project at issue in the litigation, she regularly communicated with the Third-Party Defendants in that role, and she was deposed as a corporate representative. 2012 U.S. Dist. LEXIS 27270, at *26.  On the other hand, the court precluded a witness from trial, finding that he "did not seem to be an apparent potential witness" because he was a former employee and his name "never surfaced in discovery as an individual *with information pertinent to the case*, let alone a potential witness." *Id.* (italics added for emphasis).

Ultimately, a party must supplement its disclosures to include potential witnesses unless discovery reveals both the identity of a person who has information likely to support the party's claims and the subject of such information.  Failure to do so until the close of discovery is a violation of Rule 26.

II.    IT WAS NEVER MADE KNOWN THAT THE 31 NEWLY DISCLOSED
       WITNESSES POSSESSED INFORMATION THAT "MIGHT BE USED TO
       SUPPORT A CLAIM OR DEFENSE," MUCH LESS THAT THEY WERE
       <u>POTENTIAL TRIAL WITNESSES</u>.

Plaintiffs would like the Court to believe that they were not required to supplement their

disclosures with information about any witness whose name was either mentioned during a

deposition or appeared in the text of a document produced in this case.  Rather, they seem to

believe that these witnesses were "known" to the Defendants, thereby excusing them from timely

disclosure under Rule 26.  As noted earlier, there have been no less than 47 depositions taken

and well over 160,000 pages produced.  Suffice it to say there have been countless names

mentioned throughout discovery.  This gamesmanship is not how discovery is supposed to work,

especially because Plaintiffs have known of many of these witnesses for years but elected to

disclose them in the last 24 hours of discovery.

After hours of reviewing Plaintiffs' late disclosures and re-reviewing discovery based on

those disclosures (undergoing the "wild goose chase" that Rule 26 (a) disclosures are designed to

avoid), it is apparent that these witnesses should have been disclosed years earlier.  For purposes

of discussion, Defendants have divided these witnesses into categories of similarly situated

witnesses, each discussed below.

A. Former Officers Who Were Not Involved in the Investigation or
   Prosecution of Clark or Hardin, but whom Plaintiffs Allege "may have
   knowledge of misconduct of Defendant Handy in other unrelated police
   <u>investigations and facts underlying Plaintiff's municipal liability claims</u>."

The following individuals were identified in Clark and Hardin's Second Supplemental

Rule 26(a)(1) Disclosures.  Plaintiffs give a generic description for the entire group of newly

disclosed witnesses as follows, "***All Louisville Police, Meade County Police and Louisville***

***Metro Police personnel who have knowledge of or worked in any way on investigations***

*relevant to Plaintiff's municipal liability claims, including but not limited to."*[9]   Thereafter they list individual witnesses.  As a threshold issue, their blanket listing of "All Louisville Police, Meade County Police, and Louisville Metro Police personnel" is so broad as to be meaningless in the context of a Rule 26 disclosure.  Such a blanket category of unnamed witnesses is exactly the type of disclosure that Rule 26 is meant to prevent.  Defendants cannot read the minds of Plaintiffs and should not be put in a position to speculate as to which of the thousands of officers and personnel who worked with these respective agencies since 1992 the Plaintiffs believe may have information which they deem relevant to their municipal liability claims.

Plaintiffs specifically listed the following potential witness under this broad umbrella, and provided the following identical generic statement regarding the discoverable information each is purported to possess:

"a. Jim Petit

Jim Petit was a detective with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims.

b. Joseph Carroll

Joe Carroll was a detective with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims.

c. Robert White

Robert White was a chief with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims.

---

[9]  **Exhibit 4** (Plaintiff Hardin's Second Supplemental Disclosures dated Feb. 2, 2022); **Exhibit 6** (Plaintiff Clark's Second Supplemental Disclosures dated Feb. 3, 2022.)

d. Barry Wilkerson

Barry Wilkerson was a lieutenant with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims.

e. Joe Richardson

Joe Richardson was a major with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims.

f. Vince Robison

Vince Robison was a lieutenant colonel with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims.

g. Donald Burbrink, Sr.

Donald Burbrink, Sr. was a sergeant with the Louisville Metropolitan Police Department during the relevant period and may have knowledge of misconduct of Defendant Handy in other unrelated police investigations and facts underlying Plaintiff's municipal liability claims."[10]

Jim Petit was employed with Louisville Police Department ("LPD") from 1972 to 2004. Defendants review of discovery did not indicate exactly where his name was mentioned in the over 166,000 pages of discovery and some 47 depositions, and Plaintiffs disclosure was of little help. Absent an identification of where Petit's name is identified in discovery, it is difficult to say exactly how Defendants would be on notice that he would be a potential witness at trial. The speculation that he "may" have information is insufficient, particularly because his name appears to be absent from discovery.  Even if his name was mentioned, it was so inconsequential that it could not be considered the functional equivalent of a disclosure.  Plaintiffs have failed to

---

[10] *Id.*

identify, in any way, the kind of information that he may have or his connection to Handy's alleged actions, which is required under Rule 26.   As such, Jim Petit must be stricken from Plaintiffs' supplemental disclosures.

Joseph Carroll was a detective with LPD during the 1980's and 1990's.   From Defendants' review, it seems that Carroll was mentioned twice during fact discovery in the present case, in the deposition of Jay Pierce and the deposition of Gene Sherrard.[11]   In the testimony of former LPD detective Jay Pierce, Mr. Pierce acknowledged that he believed Carroll may have has an alcohol abuse disorder that resulted in internal discipline at LPD.   There is nothing in the deposition testimony of Pierce which connects any purported misconduct of Carroll to the complaints by Plaintiffs.   Furthermore, Gene Sherrard was also asked about Carroll in his deposition and had no recollection of anything related to misconduct by Carroll.   In sum, Joseph Carroll is not connected with the Plaintiffs in this case at all, and Defendants' review of the discovery indicates that Carroll has no knowledge relevant to Plaintiffs claims.   Plaintiffs' inclusion of Carroll in their supplemental disclosure is nothing more than a speculative hypothetical unsupported by the extensive record in this case and should not be allowed.

Robert White was Chief of LMPD, the successor to LPD and Jefferson County Police Department, beginning approximately 2003.   He retired in 2012.   The sole mention of Robert White comes from the deposition of Jay Pierce when he says that he worked under White at the beginning of White's tenure as Chief.   Defendants' review of discovery indicates White was not otherwise mentioned.   The mere mention of his name in response to an innocuous question about Jay Pierce's work history would in no way give Defendants any reason to believe Robert White

---

[11] **Exhibit 10** (Depo. J. Pierce April 13, 2021 at 51, 202-229); **Exhibit 11** (Depo. G. Sherrard Sept. 15, 2021 at 108-109.)

would be called as a witness or have relevant or admissible evidence at trial.  The inclusion of Robert White as a witness in Plaintiffs' supplemental disclosures should not be allowed.

Defendants' review of discovery indicates Barry Wilkerson was not mentioned in discovery at all.  He is a witness who was deposed in the *Edwin Chandler v. Louisville Jefferson County Metro Government, et al.*, No. 3: 10-CV-00470-JGH, (W.D. Ky. December 12, 2012). What is most alarming about this eleventh hour disclosure is that Barry Wilkerson has been known to Plaintiffs' counsel for at least 10 years, but their intent to call him as a witness was disclosed in the 24 hours preceding the close of fact discovery.[12]  Aside from the fact Wilkerson's name was not disclosed in discovery, it is impossible for Defendants to have expected him to be called as a witness in this case or have knowledge the Plaintiffs thought would be relevant to any of their claims given, he was known to Plaintiffs at the inception of this case and not disclosed until the final hours of fact discovery.  Wilkerson must therefore be stricken from Plaintiffs' disclosures.

Joe Richardson was a Major with LMPD in 2009.  Major Richardson was the author of a memorandum sent to Lt. Col. Vince Robinson related to his review of the reinvestigation of the Brenda Whitfield murder by then LMPD Detective Denny Butler.[13]  Richardson was never deposed in this case and never questioned about this memorandum.  Speculation that Joe Richardson "may" have information related to municipal liability claims is insufficient to serve as the equivalent of a supplemental discovery, especially when his name was known to Plaintiffs at least as of the date this memorandum was introduced at the deposition of Julius Clark on

---

[12] Barry Wilkerson was deposed in *Edwin Chandler v. Louisville Jefferson County Metro Government, et al.*, No. 3: 10-CV-00470-JGH, (W.D. Ky. December 12, 2012) on August 9, 2012. *See* **Exhibit 12**, Cover Sheet of Depo. of Barry Wilkerson August 9, 2012 at 1.

[13] **Exhibit 13** (Memorandum introduced on February 15, 2021 as Plaintiffs' Ex. 98 to the Deposition of Julius Clark.)

February 15, 2021.  Furthermore, this memorandum is wholly unrelated to the murder of Rhonda Sue Warford.

Vince Robinson was Lieutenant Colonel with LMPD in December 2009 and the recipient of the aforementioned memorandum authored by Joe Richardson.  As the recipient of the memorandum, he would not have firsthand knowledge of its contents.  Instead, his knowledge is, one would suppose, derived from the memorandum itself.  It is impossible to say that Defendants are reasonably on notice that the recipient of a memorandum unrelated to the underlying facts of this case would be called as a witness in any fashion in this case when such limited questions related to the memorandum were asked and the recipient would have no first-hand knowledge of the underlying facts of the memorandum itself.

Donald Burbrink, Sr.[14] has no relevant information and Defendants are not entirely sure why his name is listed in the disclosures. Aside from him being deceased, he was never a police officer. Defendants assume the disclosure relates to Donald Burbrink, II, who was mentioned once in the deposition of Jay Pierce as having worked in the homicide unit of LPD in the late 1980s and early 1990s.[15]  To the extent Plaintiffs intended to list Donald Burbrink, II, in their disclosure, this single passing reference to him as one of innumerable officers who worked in homicide during that time can hardly be described as sufficient to be the functional equivalent to a discovery disclosure.  If such a low standard is applied, it could be said that any name merely mentioned in the over 160,000 pages of discovery and over 47 depositions is a potential witness. Such a standard would undermine the purpose and spirit of Rule 26.

---

[14] Donald Burbrink, III, who is the grandson of Donald Burbrink, Sr., was deposed pursuant to Rule 30(b)(6) as a representative of Louisville/Jefferson County Metro Government.
[15] **Exhibit 10** (Depo. J. Pierce, April 13, 2021 at 57.)

B. Commonwealth Attorney prosecutors or personnel who were involved in <u>Mr. Clark and Mr. Hardin's Postconviction Proceedings</u>.

The following individuals were identified in Plaintiff Jeffrey Dewayne Clark's Second Supplemental Rule 26(a)(1) Disclosures but were not listed by Plaintiff Hardin: David Williams; Stuart McCloy; and Ashley Edwards.   For each, Plaintiff Clark provided the following generic statement regarding the discoverable information each purported to possess:

> 66.    All Commonwealth Attorney's Office personnel and prosecutors who worked in any way on the Rhonda Sue Warford murder investigation and/or the prosecution of Jeffrey Dewayne Clark and/or Garr Keith Hardin from April 5, 1992 to the present, including but not limited to:
>
> * * *
>
> c. David Williams
>
>> David Williams was an attorney for the Commonwealth who prosecuted Jeffrey Dewayne Clark and Garr Keith Hardin throughout Mr. Clark and Mr. Hardin's post-conviction proceedings and 2017 indictments.
>
> d. Stuart McCloy
>
>> Stuart was an attorney or employee for the Commonwealth who prosecuted Jeffrey Dewayne Clark and Garr Keith Hardin throughout Mr. Clark and Mr. Hardin's post-conviction proceedings and 2017 indictments
>
> e. Ashley Edwards
>
>> Ashley Edwards was an attorney or employee for the Commonwealth who prosecuted Jeffrey Dewayne Clark and Garr Keith Hardin throughout Mr. Clark and Mr. Hardin's post-conviction proceedings and 2017 indictments

David Williams became the Commonwealth Attorney for the 46th Judicial Circuit on January 1, 2013.   This was over twenty years after Warford was found murdered and nearly eighteen years after Hardin and Clark were convicted for Warford's murder.   Prior to this appointment, Williams did not participate in the original prosecution of Clark and Hardin which

resulted in their conviction. Williams did not interact or have any involvement with the various officers who are named defendants during their investigation of the Warford homicide which formulates the basis for Plaintiffs' claims in this lawsuit.

As readily admitted by Plaintiff Clark in his disclosure, Williams only represented the Commonwealth during Clark and Hardin's ***post-convictio*n** proceedings and in relation to indictments that were returned in 2017 for kidnapping and perjury.  These indictments did not include any additional factual investigation involving the original investigating officers, and instead, they were based upon: (1) statements Clark and Hardin made to the parole board in either 2006 or 2014 whereby they admit to being involved in the disappearance and/or murder of Warford; and (2) testimony given by Clark and Hardin during a 2015 evidentiary hearing that was inconsistent with the parole board statements.

Given Williams' nonexistent role in the Warford homicide investigation and original prosecution, Defendants had no reason to believe he would be identified as an individual who possesses discoverable information in the present action.  Presumably, this belief was shared by Plaintiff Hardin, as Williams was not listed in Hardin's Second Supplemental Rule 26(a)(1) Disclosures, which were filed the day before Plaintiff Clark's supplemental disclosures.

The Defendants cannot readily identify Stuart McCloy's or Ashley Edwards' involvement in this matter without reviewing thousands of pages of pleadings that were filed of record to determine whether McCloy and/or Edwards were listed.  However, as admitted in Plaintiff Clark's disclosure and to the best of the Defendants' knowledge, neither Edwards nor McCloy participated in either the Warford homicide investigation or the original prosecution which resulted in a conviction in 1995.  Accordingly, the same arguments presented above for Williams would be relevant and applicable for the exclusion of McCloy and Edwards.

C.  <u>Previously Undisclosed KSP Forensic Serologist Dawn Katz</u>.

Dawn Katz was a forensic serologist with the Kentucky State Police Crime Laboratory. Given Katz's involvement as a named defendant in *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), it is plausible Plaintiffs (or at least their counsel) were aware of Katz's existence as early as 2006, when that decision was published.  Yet even assuming they were not, they were aware of Dawn Katz' existence as of December 3, 2018, because Plaintiff Hardin produced documents in discovery in this case that contained Dawn Katz's name, almost four (4) years *prior* to listing her on their Second Supplemental Rule 26 Disclosures.[16]

More to the point, while she was employed to perform the same type of work as Defendant Thurman at approximately the same time, Dawn Katz was not involved in the underlying criminal case against Clark or Hardin.  Even though Ms. Katz was briefly mentioned in two depositions conducted in this case – one of those being Defendant Thurman's – at no point have any facts, information, or evidence of any kind been introduced to demonstrate that Dawn Katz possesses any relevant knowledge with respect to the investigation or conviction of Clark or Hardin.[17]  For this reason alone, she should be stricken from Plaintiffs' Second Supplemental Rule 26 Disclosures.

D.  <u>FBI Agents Who Investigated the *Chandler* and *West* Cases</u>.

Plaintiffs have identified Brett Johnson, Keith Carpenter, Keith Yorka, and Jeffrey Eden in their most recent disclosures.  According to the Plaintiffs, who provided identical disclosures,

---

[16] **Exhibit 14** (Email referencing Dawn Katz, Bates Stamped Hardin000472.)
[17] **Exhibit 33** (Excerpts from Depo. of L. Thomas); **Exhibit 34** (Excerpts from Depo. of Robert Thurman).

each of these individuals "was a special agent with the Federal Bureau of Investigation who has knowledge of the misconduct of Defendant Handy in various police investigations."[18]

Defendants are unaware of any deposition where these individuals were referenced. Rather, it appears only as if their names were attached to FBI-302's that were produced in response to a subpoena issued by Plaintiff Hardin in the Summer of 2020.  On August 27, 2020, the Parties received a response to Hardin's *Touhy* request.  The documents produced contained the names of these four individuals.

To be clear, none of the witnesses identified in this category have any first-hand knowledge of the murder of Rhonda Warford or the prosecution of Clark or Hardin in 1992-1995.  Rather, these individuals appear only to have been involved in an FBI Investigation that focused on the *Edwin Chandler* and *Keith West* cases.  Dates on the FBI-302's that were produced in August 2020 suggest that their investigation took place between 2013-2015, decades after Clark and Hardin's 1995 trial.  Defendants have never received any indication from Plaintiffs that these FBI Agents might be witnesses in this case.

E. <u>Members of Plaintiff Clark's Legal Defense Team</u>.

Jimmer Dudley was identified on both Plaintiffs' Second Supplemental Rule 26(a) Disclosures.  The following statement was provided in Plaintiffs' Disclosures regarding discoverable information possessed by Dudley:

> 82.   Jimmer Dudley is an investigator for Plaintiff Jeffrey Clark who interacted with many of the fact witnesses in this case.

Linda Smith was only identified in Plaintiff Jeffrey Clark's Second Supplemental Rule 26(a) Disclosures, but not by Plaintiff Hardin.  Plaintiff Clark provided the following statement in his

---

[18] **Exhibit 4** at p. 11 (Plaintiff Hardin's Second Supplemental Disclosures dated Feb. 2, 2022); **Exhibit 6** at p. 12 (Plaintiff Clark's Second Supplemental Disclosures dated Feb. 3, 2022.)

Second Supplemental Rule 26(a)(1) Disclosures regarding discoverable information possessed by Smith:

> 106.    Linda Smith is one of Plaintiff Clark's former Kentucky Innocence Project attorneys who may have information about damages.

If Plaintiffs believed that these individuals possessed relevant information and could potentially be witnesses, then both should have been disclosed much earlier.

Defendants have been aware that Dudley was an investigator for the Kentucky Innocence Project since the deposition of Plaintiff Clark that was taken on March 26, 2019.   After being released from prison in August of 2016, Clark testified he lived with Dudley for a period of time.[19]  During the deposition, counsel for Clark advised that Dudley was a member of Clark's post-conviction defense team and was/is a member of his "civil" team.[20]   Clark's counsel asserted the attorney-client privilege refusing to allow his client to testify about communications between Clark and Dudley.[21]

Dudley has attended two witness depositions taken in this civil case and based upon statements made during discovery, it is readily apparent that Dudley previously interviewed and/or interacted with, at least seven different witnesses who have been deposed and a number of witnesses who have not been deposed.

While Defendants knew of Dudley in 2019, it was not until he was listed on Plaintiff Hardin's Second Supplemental Rule 26(a)(1) Disclosures on February 2, 2022, did Defendants become aware that Plaintiffs were waiving claims of attorney-client privilege and/or work-product doctrine.

Smith was identified as one of Clark's previous attorneys in his responses to Defendant

---

[19] **Exhibit 15** at pp. 7-8 & 12 (Excerpts from Depo. of Jeffrey Dewayne Clark, March 26, 2019.)
[20] *Id*. (p. 17).
[21] *Id*. (pp. 17-18).

Thurman's First Set of Interrogatories that were served on January 10, 2019.[22] In addition to Smith, Clark identified six other attorneys who had represented him in relation to the murder of Warford, those being: Bart Adams, Thomas Ransdell, Joseph Myers, Theodore Shouse, Amy Robinson Staples and Elliot Slosar.[23] Upon review of the voluminous record, it appears Linda Smith first made an appearance on behalf of Clark on December 14, 2011, which is approximately 16 years after Clark's conviction.[24]

Defendants previously deposed Bart Adams and Wallace Rogers who served as trial counsel for Clark and Hardin respectively during the 1995 criminal trial. Both attorneys were identified in Plaintiffs' Initial Rule 26(a) Disclosures. Pursuant to RCr 11.42, both Clark and Hardin filed ineffective assistance of counsel claims against each of their trial attorneys which waived their attorney-client privilege. Furthermore, both Plaintiffs expressly waived their attorney-client privilege during an evidentiary hearing conducted in the Meade Circuit Court on July 10, 2015, where each attorney testified. Thus, there was no question, that Adams and Rogers were subject to discovery,

However, prior to Plaintiff Clark's February 3, 2022, Second Supplemental Rule 26(a)(1) Disclosures, none of the Plaintiffs' post-conviction attorneys were identified as witnesses who possessed discoverable information in this matter. Instead, it was Defendants' understanding that Plaintiffs maintained the attorney-client privilege regarding any information or documents possessed by their post-conviction attorneys. Therefore, Defendants were not aware, until the day fact discovery closed, that Clark was waiving his attorney-client privilege with respect to Smith.

---

[22] **Exhibit 16** (Plaintiff Jeffrey Clark's Responses to Defendant Thurman's First Set of Interrogatories, January 10, 2019, Response to Interrogatory No. 21 (relevant excerpts only)).
[23] *Id*.
[24] **Exhibit 17** (Notice of Substitution of Counsel, December 14, 2011, *Hardin and Clark v. Commonwealth of Kentucky*, Case No. 2011-SC-000722).

F.  Witnesses who "may have knowledge of an investigation relevant to Plaintiff's municipal liability claims."

Plaintiffs Clark and Hardin both identify Percy Phillips and John Gray for the first time in their Second Supplemental Disclosures.  As to both Percy Phillips and John Gray, both Plaintiffs provided they are "a witness that may have knowledge of an investigation relevant to Plaintiff's municipal liability claims."[25]  This generic information is all that is provided as to each.  No additional contact information or context was provided.  In a similar vein, while not included by Hardin, Plaintiff Clark also identified Jim Lesousky as "a special prosecutor assigned to the prosecution of Percy Phillips, and previously Mark Handy, and may have knowledge of investigations relevant to Plaintiff's municipal liability claims."[26]

John Gray is a witness from the Edwin Chandler case, not the Clark/Hardin case. He was incarcerated in the Louisville jail in the early 1990s and is believed to have advised Julius Clark that another individual, Percy Phillips, had murdered Brenda Whitfield.[27]  Percy Phillips is believed by Plaintiffs to be the true murderer of Brenda Whitfield, the woman for whose murder Edwin Chandler was incarcerated.  Phillips' name has come up throughout discovery, but it has never been suggested that he might possess information which would be admissible or relevant to the instant lawsuit.  Percy Phillips, who is also a witness from the Edwin Chandler case, was mentioned in the depositions of Julius Clark, Jay Pierce, and Gene Sherrard.[28]  In each of those three depositions Plaintiffs generally discussed the fact that Percy Phillips had murdered Brenda Whitfield and have suggested that police had information at the time of their original investigation that supported this theory.  Plaintiffs have focused on this point because Edwin

---

[25]  **Exhibit 4** at Disclosure # 83, 84 (Hardin's Second Supplemental Disclosures); **Exhibit 6** at Disclosure # 83, 85 (Clark's Second Supplemental Disclosures.)

[26]  **Exhibit 6** at Disclosure # 84 (Clark's Second Supplemental Disclosures.)

[27]  **Exhibit 18** at p. 80 (Depo. of Julius Clark); **Exhibit 10** at p. 193 (Pierce Depo).

[28]  *See* e.g. **Exhibit 18** at pp. 54-64 (Depo. of Julius Clark); **Exhibit 10** at p. 177 (Pierce Depo.); **Exhibit 11** at pp. 153-166 (Depo. of Sherrard.)

Chandler was incarcerated, serving a sentence for the murder of Brenda Whitfield.  To this point, Plaintiffs' counsel has been aware of the identities of both Percy Phillips and John Gray for many years, dating back to when they were suing the City of Louisville on behalf of Edwin Chandler.

Jim Lesousky was appointed as a special prosecutor investigating Percy Phillips and was previously assigned as a special prosecutor to prosecute Mr. Handy (in conjunction with Shane Young, who is *not* included on either Clark's or Hardin's disclosures).  Jim Lesousky was mentioned in the depositions of Gene Sherrard and Mike O'Connell, but it was never suggested he would be a witness.  O'Connell explained that he talked with Mr. Lesousky to make sure he was properly recalling the facts of the Edwin Chandler case before he wrote a letter to the State Court Judge sentencing Mark Handy.[29] Gene Sherrard mentioned Mr. Lesousky only once, suggesting he had asked him a question following his testimony in the grand jury.[30]  Other witnesses might have mentioned Mr. Lesousky, but never was it suggested he might be a witness.

None of these witnesses possess any first-hand information about Clark, Hardin, or the investigation into the death of Rhonda Warford.  Given these individuals nonexistent role in the Warford homicide investigation and original prosecution, Defendants had no reason to believe they would be identified as individuals who possess discoverable information in the present action.  As to Lesousky, not even Plaintiff Hardin believed he had relevant information, as he was not listed in Hardin's Second Supplemental Rule 26(a)(1) Disclosures which were filed the day before Plaintiff Clark's supplemental disclosures.

---

[29] **Exhibit 19** at pp. 20-21, 49 (O'Connell Deposition.)
[30] **Exhibit 11** at pp. 154 (Sherrard Depo.)

G. <u>James Whitley's Alleged Associates</u>.

The following individuals were identified for the first time in Plaintiffs' Second Supplemental Rule 26(a) Disclosures:   Troy Brock and William Broyles. The following statements were provided in Plaintiffs' Disclosures pertaining to "discoverable information" purportedly possessed by both individuals:

> 87.   Troy Brock is a witness who may have information about the facts relevant to the police investigation of the murder of Rhonda Sue Warford.[31]

> 95.   William "Bobby" Broyles is an associate of James Whitely who may have information about the facts relevant to the police investigation of the murder of Rhonda Sue Warford.[32]

Plaintiffs have continuously attempted to promote James Whitley as an alternative suspect to the murder of Warford, alleging in their Amended Complaint that the officers did not properly investigate Whitley's involvement in the crime.[33]   These allegations stem from Whitley allegedly admitting to having killed Warford.[34]

Warford's body was discovered on the morning of April 5, 1992. [35]  Clark and Hardin were arrested on May 5, 1992, and two days later the Meade County Grand Jury returned indictments for both Clark and Hardin.[36]   They were convicted of Warford's murder in March of 1995.[37]

On September 14, 1993, a Special Grand Jury was convened to address Whitley's potential involvement in Warford's murder based upon information gathered by Clark's trial

---

[31] Identified as witness 87 in Plaintiff Hardin's Second Supplemental Rule 26(a)(1) Disclosures but identified as witness 88 in Plaintiff Clark's Second Supplemental Rule 26(a)(1) Disclosures.

[32] Identified as witness 95 in Plaintiff Hardin's Second Supplemental Rule 26(a)(1) Disclosures but identified as witness 97 in Plaintiff Clark's Second Supplemental Rule 26(a)(1) Disclosures.

[33]  *See* R. 38, Hardin Amended Complaint, ¶¶ 110-112.

[34] *Id*.

[35] *Id*. at ¶ 40.

[36] *Id*. at ¶ 116.

[37] **Exhibit 20** (Verdict Forms, March 7, 1995).

counsel, Bart Adams.[38]  Eletha Nicole Madison and Pamela Gibson testified before the Grand Jury and transcripts of their testimonies were provided to Bart Adams on November 10, 1993.[39] During her testimony, Madison claimed she was told by Gibson that Gibson was told that Whitley admitted to killing Warford.[40]  During Gibson's testimony, she testified she was with Michelle Goodman, Troy Brock, and two unknown men in the Iroquois Projects, when one of these unknown individuals claimed Whitley was involved in Warford's murder.[41] Needless to say, Whitley was not present during these conversations.[42]  Moreover, Gibson did not have any direct conversations with Whitley regarding Warford's murder.[43]  Despite being aware of this testimony for more than a year before trial, neither counsel for Clark nor Hardin presented Whitley as an alternative suspect during the 1995 criminal trial.

In July of 2009, Clark and Hardin filed Motions for Release of Physical Evidence for DNA Testing in Meade Circuit Court.[44]  Theses Motions noted that given the status of forensic testing in the early 1990s, it was not possible to perform mitochondrial testing of certain hairs found on Warford's body whose source at the time of the 1995 trial were unknown.  In this Motion, Clark made repeated references to an alternative suspect identified as "John Doe," who is James Whitley. The Motion represented to the Court that Clark's legal team secured a sample of physical evidence from Whitley that could be tested for a DNA profile and compared with the hairs found on Warford's body.  This Motion was denied by the Meade Circuit Court but the Kentucky Supreme Court in the opinion of *Hardin v. Commonwealth*, 396 S.W.3d 909, 915 (Ky.

---

[38]  **Exhibit 21**, at p. 31 (Excerpts from Deposition of Kenton Smith, February 12, 2020).

[39]   **Exhibit 22** (Grand Jury Testimonies of Madison and Gibson, Bates Stamped CLARK000161 – CLARK000199.)

[40] *Id*. at CLARK000177 – CLARK000178.

[41] *Id*. at CLARK000162.

[42] *Id*.

[43] *Id*.

[44]  **Exhibit 23** (Motions for Release of Physical Evidence for DNA Testing, July 15, 2009, Bates Stamped CLARK004555 – CLARK004598).

2013) later permitted the DNA testing requested by Hardin and Clark.  The sample the Innocence Project obtained from Whitley was contaminated and the lab who performed the DNA testing (Mitotyping) was unable to include, or exclude, Whitley as a contributor of some of the tested hairs due to a mixture in his sample.[45]

In May of 2018, during a cold case investigation conducted by the Attorney General's Office, a search warrant was obtained to secure a DNA sample from Whitley.[46]  Pursuant to this search warrant, a DNA sample was obtained and provided to Mitotyping for comparison. Mitotyping compared the samples and issued a report dated May 6, 2019 that **excluded Whitley** as the source of all hairs tested.[47]

On March 12, 2021, Whitley's deposition was taken in this matter. Whitley testified that he did not know Warford and denied any involvement in her disappearance and murder.[48]   He further denied knowing Pamela Gibson, Nicole Madison, or Troy Brock.[49]   During the course of his deposition, Whitley was asked to identify any associates he had during the time period of 1992-1993 who went by the name of "Billy", and Whitley responded that he knew "a lot of Billy's", providing the name of "Billy Brules."[50]   He identified several different people who lived in the Iroquois Projects and called themselves the "Dirty White Boys." [51]    These individuals included Bruce Brules, Glen Maupin, Keith Brules, and Billy Brules.[52]

As noted above, Brock was first identified during Gibson's Grand Jury testimony in

---

[45]   **Exhibit 24** (Letter from Mitotyping regarding DNA Testing, October 7, 2014, Bates Stamped HARDIN001523 – HARDIN001529).
[46]   **Exhibit 25** (Search Warrant, May 23, 2018, Bates Stamped KYOAG00007 – KYOAG00008).
[47]    **Exhibit 26** (Letter from Mitotyping regarding Whitley's DNA Testing Results, Bates Stamped KYOAG00092 – KYOAG00095.)
[48]   **Exhibit 27** at pp. 24-25 (Excerpts from Deposition of James Whitley, March 12, 2021).
[49]   *Id*. (pp. 23-24 & 62).
[50]   *Id*. (pp. 112-113).
[51]   *Id*. (pp. 60-61).
[52]   *Id*. (pp. 62 & 113).

September of 1993.  Brock did not testify during the criminal trial for Clark and Hardin or in any of their post-conviction proceedings.  He has not been deposed in this lawsuit, and none of the named Defendants ever spoke with, or interviewed, Brock during the Warford homicide investigation.

Presuming William "Bobby" Broyles is the same person as "Billy Brules," then he was first identified during Whitley's deposition that was taken on March 12, 2021.  After Plaintiff Hardin identified Broyles on February 2, 2022, efforts were made to contact him but were unsuccessful.

After several years of discovery, no admissible evidence has been produced connecting Whitley to Warford's murder.  The same company (Mitotyping) who performed DNA testing that excluded Hardin and Clark as the source of hairs found on Warford's body have similarly excluded Whitley.  Furthermore, the information provided by Madison contains multiple levels of hearsay that have not been confirmed by any source.  In addition to their belated disclosures, given the complete lack of admissible evidence, Defendants do not believe Plaintiffs have a good faith factual basis to continue promoting Whitley as an alternative suspect for the murder of Warford, nor do they have a good faith basis for criticizing the police for their investigation of Mr. Whitely.

H.  Witnesses Who Purportedly *May* Possess Information About Plaintiff's Municipal Liability Claims or Detective Sherrard.

Plaintiffs Clark and Hardin both disclosed Charles Broaddus, Christopher Geter, and Larry Smalls.  According to Plaintiffs, each "may have knowledge of the misconduct relevant to Plaintiff's municipal liability claims, including on the part of Eugene Sherrard."[53] Defendants are

---

[53]  **Exhibit 4** at Disclosure # 96, 97, 98 (Hardin's Second Supplemental Disclosures); **Exhibit 6** at Disclosure # 98, 99, 100 (Clark's Second Supplemental Disclosures.)

without information as to who these individuals are, but know that they are not in any way involved in the Clark-Hardin case.   Plaintiffs' disclosures are deficient in that they do not provide information to support their assertion that they *may* have discoverable information.

I.   Witnesses Who Purportedly *May* Possess Information About Detective Handy or Were Witnesses to Other *Unrelated* Cases Handy Investigated.

Plaintiffs Clark and Hardin both disclosed Jay Lambert, Brede Timberlake and Jonathan Whitesides.  According to Plaintiffs, each "may have knowledge of the misconduct of Defendant Handy in another unrelated police investigation."[54]  Robert Ross and Ruth Bowie were disclosed by Clark, but not Hardin.  According to Clark, "Robert Ross is a witness who is expected to testify consistent with his evidentiary hearing testimony at CLARK 015133-015182." [55] Similarly, Hardin disclosed that "Ruthie Bowie is a witness who is expected to testify consistent with her evidentiary hearing testimony at CLARK 015183-015215."[56]

It is unclear what Brede Timberlake or Jonathan Whitesides might testify about and Plaintiffs disclosure does little to inform Defendants of their expected testimony as it does not even reveal which "unrelated police investigation" they are referencing.  The only thing made clear by Plaintiffs' disclosure is that they are not expected to testify about the Clark/Hardin matter as Plaintiffs concede their testimony would be about an "unrelated police investigation." To Defendants knowledge, neither witness has been discussed or mentioned in any deposition in this case.

Robert Ross and Ruth Bowie are witnesses from the *Keith West* case.  Putting aside the

---

[54] **Exhibit 4** at Disclosure # 90, 99, 100 (Hardin's Second Supplemental Disclosures); **Exhibit 6** at Disclosure # 92, 101, 102 (Clark's Second Supplemental Disclosures.)

[55] **Exhibit 6** at Disclosure # 90 (Clark's Second Supplemental Disclosures.); **Exhibit 28** (Ross Evidentiary Hearing Testimony, Bates Stamped CLARK 015133-015182)

[56] **Exhibit 6** at Disclosure # 91 (Clark's Second Supplemental Disclosures.); **Exhibit 29** (Bowie Evidentiary Hearing Testimony, Bates Stamped CLARK 015183-015215)

question of whether the testimony of Lambert, Ross, or Bowie could ever be admissible in this lawsuit, Plaintiff Clark's Counsel has had knowledge of who these individuals were since at least 2019 because the records cited to in the disclosure are testimony from an evidentiary hearing related to Keith West's plea of guilty, held in July 2019. Attorneys Slosar and Staples questioned Ross and Bowie extensively at that hearing. Attorney Slosar also questioned Handy about those witnesses, all in the context of the *Keith West* case. Amongst the hundreds of thousands of pages produced, Counsel for Clark also produced copies of statements or investigative reports involving these witnesses much earlier in this litigation, in December 2018.[57] Nevertheless, they were not disclosed as witnesses until over three years later.

Counsel for Clark did question some witnesses in this case about Ross and Bowie, but the questioning was all focused-on Keith West.[58] For example, Defendant Handy was questioned about his interview of Robert Ross, Gene Sherrard was questioned about Ross and Bowie, and Woosley was questioned about Handy's actions related to the statement of Ross and reference was made to Bowie.[59] Even in these circumstances, however, where some Defendants were aware of the identities of these individuals and their relevance to the *Keith West* case, it was never made clear that they might be witnesses in the cases of Clark and Hardin case. Quite to the contrary, it was believed that they would *not* be witnesses because Plaintiff Hardin had included Keith West in their April 2020 disclosures, yet they omitted these other peripheral witnesses

---

[57] *See* e.g. **Exhibit 30** (Ross Statement Bates Stamped CLARK 007467-77 produced on December 3, 2018).

[58] This cross-litigation strategy has been routine in this case. Plaintiffs' counsel has routinely used depositions from other cases to advance this case and have taken deposition testimony in this case that is clearly focused on advancing other unrelated cases that they have brought against the same defendants. Notably, during the time that Clark/Hardin has been pending, Counsel for Clark also sued the city in *Keith West* v. *Louisville Jefferson County Metro Government, et. al.,* 3:20-CV-00820-GNS. That case was dismissed by the District Court on February 15, 2022 and is on appeal. *See Keith West* v. *Louisville Jefferson County Metro Government, et. al.,* Case No. 22-5117 (6th Cir. 2022).

[59] *See* e.g. **Exhibit 31** at pp. 33-77 (Handy Deposition); **Exhibit 11** at pp. 199-225 (Sherrard Deposition); **Exhibit 32** at pp. 99-109 (Woosley Deposition).

involved in the same case.[60]

Jay Lambert was an attorney who represented Keith West.  He has been anything but a central figure in discovery.  Defendant Handy made three passing references to Lambert in his deposition testimony when he was questioned about a hearing in the early 1990s' related to the Keith West prosecution.[61]  Lambert is not involved with, nor does have information about, Clark/Hardin.  Plaintiffs have never indicated that he would be a witness.  As with Ross and Bowie, Plaintiffs have known about Lambert's identity for years, and yet they elected not to disclose him until their late disclosures during the last 24 hours of discovery.

     J.   <u>Ed Monarch</u>.

Plaintiff Clark also disclosed the undersigned, Ed Monarch, in their most recent supplemental disclosure.  Plaintiff Hardin did not disclose Monarch as a witness.  This addition is problematic on several levels, beyond the fact that it was late.  Considering the unique nature of this disclosure, a separate Motion was filed to address the issue.  *See* R. 238.

    III.   THE ADDITION OF THESE WITNESSES IS NEITHER "SUBSTANTIALLY JUSTIFIED OR HARMLESS," THEREFORE, THEY <u>MUST BE STRUCK AND THE PLAINTIFFS ORDERED TO PAY FEES</u>.

The Rules call for the exclusion of such surprise witnesses as a sanction if the violation was not "substantially justified or . . . harmless."  FRCP 37(c)(1).  In this Circuit, exclusion is mandatory unless the sanctioned party proves that the late addition is harmless.  *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (exclusion is "automatic and mandatory")).

---

[60]  **<u>Exhibit 3</u>** (Hardin 1st Supplemental Disclosures dated 4-23-2020).
[61]  **<u>Exhibit 31</u>** at pp. 61, 78-79 (Handy Deposition).

The Court may also sanction Plaintiffs or order payment of expenses, inform the jury of the party's failure, or impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1)(A)-(C).

As demonstrated above, the identities of these witnesses were known to the Plaintiffs for years, often before the instant suit was even filed.   Plaintiffs did not overlook a couple witnesses—they added 31 new witnesses in the last 24 hours of discovery.  This is exactly the type of conduct that the rules prohibit.  Considering this, the Court should strike the witnesses and Order the Plaintiffs to pay costs for the Defendants' briefing associated with this unnecessary dispute that Plaintiffs brought upon themselves.[62]

## Conclusion

Plaintiffs' collective addition of over 31 fact witnesses during the last 24 hours of fact discovery is neither justified, nor harmless.  As such, these disclosures must be struck for all those reasons previously articulated to the Court and stated herein.

---

[62]  For the Court's convenience, a **<u>Summary Table of Exhibits</u>** is attached hereto as **<u>Exhibit 35</u>**.

Respectfully submitted,

/s/ William H. Brammell, Jr.
Kent Wicker
Andrew Pellino
William Brammell Jr.
Dressman Benzinger LaVelle psc
2100 Waterfront Plaza
321 West Main Street
Louisville, KY 40202

*Counsel for Defendant Mark Handy*

/s/ Keith Bond (with permission)
Robert K. Bond
Andrew Garvarich
COLEMAN LOCHMILLER & BOND
2907 Ring Road
P.O. Box 1177
Elizabethtown, KY 42702-1177

*Counsel for Deefendants, Meade County;*
*Meade County Sheriff Joseph Greer;*
*Sheriff's Deputy Ernie Embry;*
*Sheriff's Deputy Cliff Wise; and*
*Meade County Coroner William Adams*

/s/ Roy C. Denny (with permission)
Peter Ervin
Roy C. Denny
Assistant Jefferson County Attorney
531 Court Place, Suite 900
Fiscal Court Building
Louisville, KY 40202

*Counsel for Defendants City of Louisville,*
*Louisville Jefferson County Metro*
*Government, Sergeant Charles Edelen,*
*Detective James Clark, Major James*
*Griffiths, Detective Kelly Jones, and*
*Detective Robert Ennis*

/s/ Ed Monarch (with permission)
ED MONARCH (Ky. Bar # 84898)
McBRAYER PLLC
500 West Jefferson Street, Suite 2400
Louisville, Kentucky 40202

*Counsel for Defendant Robert Thurman*

/s/ Joseph C. Klausing (with permission)
Joseph C. Klausing
O'BRYAN, BROWN & TONER, PLLC
401 South Fourth Street, Suite 2200
Louisville, Kentucky 40202

*Counsel for Defendant James Woosley*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was served by electronic filing this 11th day of April, 2022.

> _/s/ William H. Brammell, Jr._
> William H. Brammell, Jr.
>
> *Counsel for Defendant Mark Handy*