## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

*ELECTRONICALLY FILED*

**JEFFREY DEWAYNE CLARK**
**GARR KEITH HARDIN**

### PLAINTIFFS

**VS.**                                    **CIVIL NO. 3:17-CV-00419-DJH-CHL**

**LOUISVILLE JEFFERSON COUNTY**
**METRO GOVERNMENT,** *ET AL.* **,**

### DEFENDANTS.

---

### PLAINTIFFS' RESPONSE TO DEFENDANT THURMAN'S MOTION TO STRIKE

---

NOW COME Plaintiffs Jeffrey Dewayne Clark and Garr Keith Hardin, by their counsel, and respectfully file Plaintiffs' Response to Defendant Thurman's Motion to Strike his Counsel from Plaintiffs' Witness List.  In response, Plaintiffs state as follows:

1.      On April 8, 2022, Defendant Thurman filed a motion to strike his counsel, Ed Monarch, from Plaintiffs' second supplemental disclosures.  Dckt. No. 238.

2.      Like most other aspects of this litigation, the issue before this Court is unorthodox in nature.  It's unusual for Plaintiffs' counsel to list any defense attorney on Rule 26 disclosures.  It's highly unusual for any defense counsel to have been the son of the judge who presided over Plaintiffs' criminal proceedings giving rise to a cause of action.  And it's unbelievable that the trial judge engaged in years' worth of correspondence with prosecutors after trial during a period of time where Plaintiffs

were adjudicated to be vindictively prosecuted for asserting their innocence and unraveling the constitutional violations that resulted in their wrongful convictions. Indeed, the deposition of that prosecutor, Perry Ryan, and his undisclosed correspondence with Judge Monarch (among others) remains pending before this Honorable Court.[1]  Dckt. No. 207 (Ryan Motion to Quash), 223 (Ryan Supp.), 231 (PL Response) , 232 (Ryan Reply), 234 (PL sur reply).

3.      Prior to Defendant Thurman filing his motion, Plaintiffs' counsel advised that "they are not likely to call Mr. Monarch as a witness at trial."  Dckt. No. 238 at 3.

4.      Defendant Thurman, nonetheless, requests that he be stricken from Plaintiffs' supplemental disclosures, because: "there has not been a shred of evidence, documentation, or information of any kind provided to support any such belief," that Mr. Monarch "may have first-hand knowledge about the investigation or trial, or that outside of his role as an attorney investigating this matter, Mr. Monarch may have heard statements of witnesses as to facts at issue in this case."  Dckt. No. 238 at 3.

---

[1] To their credit, Defendants have not taken a position on Plaintiffs' pursuit of Mr. Ryan's deposition and the document production at issue.  Nor could they.  The discovery is clearly relevant to Plaintiffs' claims and Mr. Ryan's assertions of privilege over communication with third-party witnesses has no legal standing.  Dckt. Nos. 231 and 234. It is well settled that communication between Mr. Ryan and a third-party constitutes a waiver of any purported privilege.  "Both the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties." *New Phoenix Sunrise Corp. v. Comm'r of IRS*, 408 F. App'x 908, 918 (6th Cir. 2010) (first citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.1999); then citing *In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 306 (6th Cir.2002)).  Specifically, the work product privilege "can be waived by a disclosure that substantially increases the opportunity for potential adversaries to obtain the information." *Schnattner v. 247 Grp., LLC*, No. 3:20-CV-00003-BJB-CHL, 2021 WL 5018741, at *3 (W.D. Ky. Oct. 28, 2021) (internal quotation marks and citations omitted).

5.      But Mr. Monarch submits an affidavit attesting to the exact "shred of evidence, documentation, or information of any kind," that supports Plaintiffs' good-faith belief that he is a witness in this matter.  Dckt. 238-2.

6.      In that affidavit, Mr. Monarch makes startling admissions and omissions.[2]

7.      First, Mr. Monarch admits that through his own "acquaintance or through [his] family," he has met the following witnesses and Defendants involved in this litigation:

> a.  Bart Adams, Esq. (Plaintiff Clark's defense counsel)
> b.  Hon. Bruce Butler (Post-Conviction Court)
> c.  Defendant Greer (Defendant)
> d.  Jim Lesousky, Esq. (Prosecutor of Defendant Handy)
> e.  Hon. Samuel H. Monarch, Jr. (Trial Court)
> f.  George Nichols, MD (Medical Examiner)
> g.  Mike O'Connell, Esq. (Defendants' counsel)
> h.  Perry Ryan[3], Esq. (Post-Conviction Prosecutor)
> i.  Kenton Smith, Esq. (Trial Prosecutor)
> j.  David Williams, Esq. (Post-Conviction Prosecutor)
> k.  Defendant Wise  (Defendant)

Dckt. No. 238-2 at 2.

8.      Mr. Monarch admits he met these individuals prior to April 12, 2021, which is key as that is when he began representing Defendant Thurman in this matter.

---

[2] To set the stage, Mr. Monarch was a licensed attorney prior to Plaintiffs' 1995 trial.  Dckt. No. 239-2 at ¶5-6.  His father, the deceased Judge Monarch, presided over the manifestly unfair judicial proceeding resulting in the violation of their constitutional rights, forming the basis for this suit.  Dckt. No. 1.

[3] Out of all the lawyers and law firms in Kentucky, Mr. Ryan just so happens to be represented in this litigation by Cary Howard Jr., a colleague of Mr. Monarch's at McBrayer PLLC.  Given the backdrop, Plaintiffs presume Mr. Howard's representation of Mr. Ryan is not by coincidence, and instead, is related to Mr. Monarch's longstanding relationship with Ryan.

Dckt. No. 189.  Thus, whatever knowledge and interactions Mr. Monarch had with these witnesses cannot be subject to any privilege assertion.

9.      More critically, Mr. Monarch declines to divulge which of these individuals his father, Judge Monarch, introduced to him.  Or when he met them.  Or when they discussed Plaintiffs' case.  Or how many times they discussed Plaintiffs' case.  Or what he learned from them.

10.     Second, Mr. Monarch attests that, "to the best of my recollection, *prior to their conviction* for the stabbing murder of Rhonda Sue Warford, I had no conversation with the Late Honorable Samuel H. Monarch, Jr. regarding the facts supporting the conviction of Keith Hardin and Jeff Clark for the stabbing murder of Rhonda Sue Warford…"  Dckt. No. 238-2 at P. 12.  (emphasis added)

11.     Mr. Monarch's statement can reasonably be interpreted to mean that he did, at the very least, communicate about Plaintiffs' case with his father after their conviction.

12.     As reflected in the issues involving Mr. Ryan, critical portions of Plaintiffs' claims stem from events that occurred *after* trial.  Dckt. No. 1.  Further, Judge Monarch was apparently involved in perpetuating Plaintiffs' wrongful conviction long after he was no longer overseeing their criminal case.  Dckt. No. 234-1 (Privilege Log).  According to the privilege log submitted by Mr. Ryan, Judge Monarch was a participant in dozens of written conversations with the same individuals that his son, Ed Monarch, admits to knowing, including Assistant Attorney General Perry Ryan.

13.     Third, Mr. Monarch attests that "[t]o the best of my recollection, *prior to their conviction* for the stabbing murder of Rhonda Sue Warford, I had no conversation with any witness listed in this case regarding the facts supporting the conviction of Keith Hardin and Jeff Clark for the murder of Rhonda Sue Warford…" Dckt. No. 238-2 at 3.

14.     Again, Mr. Monarch's statement can reasonably be interpreted to mean that he did, at the very least, communicate about Plaintiffs' case with witnesses after their conviction for murder and prior to his serving as counsel.  As before, Mr. Monarch declines to divulge which of these he spoke to about the case.  Or when he met them.  Or when they discussed Plaintiffs' case.  Or how many times they discussed Plaintiffs' case. Or what he learned from them.

15.     Further, whatever information was provided by Defendants Greer and Wise during these conversations constitute admissible statements by a party opponent. Fed. R. Evid. 801(d)(2).

16.     In short, Mr. Monarch's affidavit contains more than "a shred of evidence, documentation, or information" that he could be a witness in this matter.  And it surely satisfies the low bar of Federal Rule of Civil Procedure 26, which sets forth the general provisions governing discovery and specifically sets forth the scope of discovery in civil matters: "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…Relevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).[4]

17.     In spite of the above, Plaintiffs' counsel respectfully asks this Court to hold this issue in abeyance.

18.     After the resolution of Mr. Ryan's motion, hopefully resulting in the production of correspondence and attendant deposition, Plaintiffs will be a much better position to provide this Court and Mr. Monarch with a final decision as to whether they will withdraw him as a witness from Plaintiffs' Supplemental Disclosures.

19.     Plaintiffs' objective has always been the ascertainment of relevant information that will assist in litigating this case and are of the belief that the production of documents and testimony from Mr. Ryan will likely satisfy that objective.

20.     Given the above, Plaintiffs respectfully request that this Court hold Mr. Monarch's motion in abeyance until after the resolution of Mr. Ryan's motion and any discovery which flows from it (the production of documents and deposition).

---

[4] Relevancy at the discovery stage, however, is broadly defined and the parties have a right to conduct discovery to determine the facts of their case. *See* Fed. R. Civ. P.26(b)(1). Relevant information is not limited to the specific facts at issue but may involve background or contextual information that aid a party in its understanding of the facts to enable the parties to have "the fullest possible knowledge of the issues and facts before trial." *See Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."). Thus, "Rule 26 has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *United States ex rel. Robinson-Hill v. Nurses' Registry & Home Health*, No. 5:08-cv-124-KKC, 2013 WL 2476568, at *1 (E.D. Ky. Jun. 7, 2013) (citing *Marsico v. Sears Holding Corp.*, 370 Fed.Appx. 658, 664 (6th Cir. 2010) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *Osborn v. Griffin*, No. CV 11-89-WOB-CJS, 2013 WL 12176851, at *2–3 (E.D. Ky. July 17, 2013).

21.     At that point, Plaintiffs would seek an opportunity to inform the Court and Mr. Monarch of their position as to whether he should remain as a witness in this case.


Respectfully submitted,


/s/ Elliot Slosar


Arthur Loevy
Jon Loevy
Michael Kanovitz
Elliot Slosar
Amy Robinson Staples
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607

**Attorneys for Plaintiff Jeffrey Clark**

## **CERTIFICATE OF SERVICE**

I, Elliot Slosar, an attorney, hereby certify that on April 29, 2022, I filed the foregoing motion via the Court's CM/ECF System and thereby served a copy on all counsel of record.

/s/ Elliot Slosar