UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:17-CV-419-GNS-CHL

JEFFREY DEWAYNE CLARK, et al.,                                              Plaintiffs,

v.

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                              Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Quash filed by nonparty Perry T. Ryan ("Ryan") regarding subpoenas served by counsel for Plaintiff Jeffrey Dewayne Clark ("Clark").  (DN 207.)  The Court held a telephonic status conference with the Parties regarding the dispute underlying the motion on October 27, 2021.  (DN 221.)  After the conference, the Court directed Plaintiff Clark and Plaintiff Garr Keith Hardin ("Hardin") (collectively "Plaintiffs") to confer with Ryan in an attempt to resolve the dispute underlying the motion.  (*Id.*)  In a subsequent joint status report, Plaintiffs and Ryan reported that while they narrowed their dispute as it related to documents to be produced they still remained at an impasse on several documents requests and on Ryan's deposition testimony.  (DN 222.)  In accordance with the Court's prior order, Ryan then supplemented his Motion to Quash to reflect the current state of the Parties' dispute.  (DN 223.)  Plaintiffs filed a response, and Ryan filed a reply.  (DNs 231, 232.)  During the Court's January 11, 2022, video conference, Ryan's counsel indicated that because he had tendered a privilege log with his reply, Plaintiffs' counsel may want the opportunity to file a surreply.  The Court orally granted Plaintiffs leave to file a surreply, and they filed the same along with a copy of Ryan's privilege log.  (DNs 234, 234-1.)  Therefore, this matter is ripe for review.

For the reasons set forth below, Ryan's Motion to Quash (DN 207) is **GRANTED IN PART and DENIED IN PART**.

## I.        BACKGROUND

This case involves Plaintiffs' alleged wrongful convictions for the 1992 murder of Rhonda Sue Warford.  (DN 38, at ¶¶ 1-20, 40; DN 39, at ¶¶ 1-20, 40.)  In their Amended Complaints, Plaintiffs brought 42 U.S.C. § 1983 claims for due process violations; fabrication of false evidence in violation of the Fourth, Fifth, and Fourteenth Amendments; malicious prosecution; supervisory liability; failure to intervene; conspiracy to deprive them of constitutional rights; and *Monell* claims, as well as state law claims for negligent supervision, respondeat superior, malicious prosecution, intentional/reckless infliction of emotional distress, and negligent infliction of emotional distress.  (DN 38, at ¶¶ 176-267; DN 39, at ¶¶ 176-267.)  Plaintiffs alleged not only errors in the underlying murder investigation and their criminal trials, but—as is particularly relevant to the instant motion before the Court—also that during the proceedings related to their eight post-conviction petitions and appeals, "Defendants were in possession of exculpatory evidence which they had a legal and constitutional obligation to provide to Plaintiffs and the Courts in connection with each of th[o]se proceedings."  (DN 38, at ¶ 15; DN 39, at ¶ 15.)  Plaintiffs alleged that Defendants concealed or otherwise withheld this exculpatory evidence and that "[b]y failing to come forward with exculpatory evidence in connection with these proceedings, Defendants knowingly, recklessly, and/or negligently breached their legal and constitutional duties, resulting in the continued imprisonment of Clark and Hardin and the violation of their civil rights in connection with these proceedings."  (DN 38, at ¶ 15; DN 39, at ¶ 15.)

On August 26, 2021, counsel for Plaintiff served two subpoenas on nonparty Ryan, who is a Kentucky Assistant Attorney General and who participated in Plaintiffs' post-conviction

proceedings.  (DN 207-1, at PageID # 1286; DN 207-2; DN 207-3; DN 231, at PageID # 1597.)
The first subpoena commanded Ryan to appear and testify at a deposition.  (DN 207-2.)  The
second subpoena commanded Ryan to produce documents (DN 207-3), including in relevant part:

> 1.  Any and all Documents, including electronic Communications, not
> yet produced in this litigation, relating to the Meade County Sheriff's Office, the
> Louisville Police/Louisville Metro Police Department, the Kentucky State Police
> and the Attorney General's Office in regard to: Jeffrey Clark and Garr Keith
> Hardin, any arrest of Jeffrey Clark and Garr Keith Hardin, any conviction of Jeffrey
> Clark and Garr Keith Hardin, any trial of Jeffrey Clark and Garr Keith Hardin, any
> postconviction petition and/or hearing for Jeffrey Clark and Garr Keith Hardin, any
> parole hearing for Jeffrey Clark and Garr Keith Hardin and the *Clark & Hardin v.
> Louisville, et al.* lawsuit.
>
> 2.  All Communications, including electronic Communications, with
> any current or former officers, agents or employees of Meade County, the Meade
> County Sheriff's Office, the City of Louisville, Louisville Jefferson County Metro,
> the Louisville/Louisville Metro Police, or the Kentucky State Police, including their
> attorneys, relating to: Jeffrey Clark and/or Garr Keith Hardin, any arrest of Jeffrey
> Clark and Garr Keith Hardin, any trial of Jeffrey Clark and Garr Keith Hardin, any
> conviction of Jeffrey Clark and Garr Keith Hardin, any post-conviction petition
> and/or hearing for Jeffrey Clark and Garr Keith Hardin, any parole hearings for
> Jeffrey Clark and Garr Keith Hardin, and the *Clark & Hardin v. Louisville, et al.*
> lawsuit.
>
> 3.  All Communications, including electronic Communications, with
> now Kentucky Attorney General Daniel Cameron, former Attorney General Andy
> Beshear, former Assistant Attorney General Jon Heck, and former Meade County
> Prosecutors Kenton Smith and David Williams, and any other former or current
> Attorney Generals, Assistant Attorney Generals, and Meade County
> Commonwealth's Attorneys or Meade County Assistant Commonwealth's
> Attorneys, relating to: Jeffrey Clark and/or Garr Keith Hardin, any arrest of Jeffrey
> Clark and Garr Keith Hardin, any trial of Jeffrey Clark and Garr Keith Hardin, any
> conviction of Jeffrey Clark and Garr Keith Hardin, any post-conviction petition
> and/or hearing for Jeffrey Clark and Garr Keith Hardin, any parole hearings for
> Jeffrey Clark and Garr Keith Hardin, and the *Clark & Hardin v. Louisville, et al.*
> lawsuit.
>
> 4.  All Communications, including electronic Communications, with
> any current or former employees of: the Meade County Commonwealth Attorney's
> Office, the law offices of Coleman, Lochmiller, and Bond, the law offices of
> Benson, Risch, and Lange, the law offices of McBrayer, McGinnis, Leslie, and
> Kirkland, the law offices of Dremman [*sic*], Benzinger, LaVelle, PSC, the Jefferson
> County Attorney's Office, and the Kentucky State Police Legal Department City

[*sic*], relating to: Jeffrey Clark and/or Garr Keith Hardin, any arrest of Jeffrey Clark and Garr Keith Hardin, any conviction of Jeffrey Clark and Garr Keith Hardin, any post-conviction petition and/or hearing for Jeffrey Clark and Garr Keith Hardin, any parole hearings for Jeffrey Clark and Garr Keith Hardin, and the *Clark & Hardin v. Louisville, et al.* lawsuit.

     5.    All Communications, including electronic Communications, with any current or former officers, agents or employees of Kentucky's Parole Board, including their attorneys, relating to: Jeffrey Clark and/or Garr Keith Hardin, any arrest of Jeffrey Clark and Garr Keith Hardin, any conviction of Jeffrey Clark and Garr Keith Hardin, any post-conviction petition and/or hearing for Jeffrey Clark and Garr Keith Hardin, any parole hearings for Jeffrey Clark and Garr Keith Hardin, and the *Clark & Hardin v. Louisville, et al.* lawsuit.

. . .

     12.    Any and all Documents, including electronic Communications, relating to any disciplinary actions and/or complaints filed against you as an Assistant Attorney General or Special Prosecutor, and any responses and pleadings filed on your behalf.

(DN 207-4.)[1]  Ryan objected and, on September 8, 2021, filed the instant motion to quash both subpoenas.  (DN 207.)  Consistent with its usual policy, the Court held a telephonic status conference regarding the dispute, and because Ryan and Plaintiffs' counsel had not yet met and conferred in an attempt to resolve the dispute underlying the motion, the Court directed them to do so before proceeding with further motion practice.  (DN 221.)  On November 12, 2021, Ryan and Plaintiffs filed a joint status report in which they indicated that while they had conferred, they remained at an impasse regarding Ryan's deposition testimony and several document requests. (DN 222.)  Based on Ryan's representation that no materials existed as to certain items requested by the subpoena, Plaintiffs and Ryan indicated that only requests nos. 1-5, and 12 in the subpoena duces tecum remained in dispute.  (*Id.*; DN 231, at PageID # 1609.)  The Court ordered Ryan to supplement his motion to reflect the Parties' agreement, and he filed his supplement as directed.

---

[1] The Court will refer to each of the requests in the subpoena duces tecum as either a "request for documents" or a "request" and by reference to the number of each listed above/on the rider attached to the subpoena duces tecum.

(DNs 223, 224.)  Plaintiffs filed a response.  (DN 231.)  While Ryan filed a reply, he also contemporaneously served on Plaintiffs "a privilege log of those documents which he believe[d] comprise[d] all of those requested by the Plaintiffs subsequent to their agreement to limit the scope of the original subpoena duces tecum."  (DN 232, at PageID # 1680.)  With leave of Court, Plaintiffs filed a surreply and tendered Ryan's privilege log for the Court's review.  (DNs 234, 234-1.)  The privilege log listed documents labeled "RYAN000001-RYAN000213," all of which are described as emails.  (DN 234-1.)  The privilege log identified the date, time, sender, and recipient of each email but included no description of the content or subject matter of the withheld emails.  (*Id.*)  The log asserted either the attorney-client privilege or work product protection as to each of the listed emails.  (*Id.*)  Based on the Parties' filings, it does not appear that Ryan produced any documents in response to the subpoena.

## II.     DISCUSSION

### A.     Legal Standard

Fed. R. Civ. P. 26(b) governs the scope of discovery.  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry."  *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.

1981)).   However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

Fed. R. Civ. P. 45 allows parties, inter alia, to command a nonparty to appear at a certain time and place to testify or produce documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).  The Court must quash any subpoena that imposes an undue burden or expense on the person subject to the subpoena, fails to allow reasonable time to comply, requires compliance beyond the geographic limits of Rule 45, or requires disclosure of "privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(1), (d)(3)(A).  The "party seeking to quash a subpoena bears the ultimate burden of proof." *Hendricks*, 275 F.R.D. at 253.

**B.     Analysis**

Ryan raised numerous arguments in support of his motion to quash.  (DNs 207, 207-1, 223, 232.)  He argued that his proposed testimony and the requested documents were irrelevant; that the subpoena posed an undue burden and was served for purposes of harassment; that some materials covered by the subpoena were not within his possession, custody, or control; and that at least one of the requests was improper under Kentucky law.  He also argued that the subpoena called for testimony and/or documents protected by both the attorney-client privilege and the work product doctrine.  The Court will consider his various arguments and objections below.

### 1.    Discovery from Prosecutors Generally

While in his reply, Ryan conceded that he was "not arguing that prosecutors can never be deposed," (DN 232, at PageID # 1679), at various points in his filings he made arguments that either implied that conclusion or suggested that public policy disfavors depositions or discovery from prosecutors generally.  He argued that "[a]n attempt to depose a prosecutor requires special scrutiny due to the potential for misuse and harassment of the attorney" and that as such, courts should only permit depositions of prosecutors as a last resort.  (DN 207-1, at PageID # 1287.)  He cited in support to *O'Connell v. Cowan*, 332 S.W.3d 34 (Ky. 2010), which he claimed should be more persuasive to this Court than the Sixth and Fifth Circuit opinions relied upon by Plaintiffs in their response because it was more recent.  (DN 232, at PageID # 1679.)

In *O'Connell*, the plaintiff brought claims pursuant to state law and 42 U.S.C. § 1983 for abuse of process, malicious prosecution, and intentional infliction of emotional distress related to a prior criminal prosecution of the plaintiff.  *O'Connell*, 332 S.W.3d at 37.  In discovery, the plaintiff subpoenaed both testimony and documents from a nonparty Assistant Jefferson County Attorney.  *Id.*  The Assistant County Attorney and the Jefferson County Attorney's Office filed a motion to quash the subpoenas based on the work product doctrine, but the trial court ruled that the work product doctrine did not apply because the Assistant County Attorney was not a party to the underlying civil suit.  *Id.* at 37-38.  The trial court also found that even if the work product doctrine did apply, the plaintiff had made the required showing of substantial need and that the plaintiff was unable to obtain the information or its equivalent by other means.  *Id.* at 38.  The Assistant County Attorney and the County Attorney's Office sought a writ of prohibition from the Kentucky Court of Appeals preventing the discovery, but the Court of Appeals agreed with the trial court's conclusions regarding the applicability of the work product doctrine and the plaintiff's

showing to overcome the same. *Id.* The Assistant County Attorney and the County Attorney's Office appealed the denial of the writ to the Kentucky Supreme Court, which held that even though by its language Kentucky's work product doctrine as stated in CR 26.02(3)(a) did not apply, the broader work product doctrine recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), did. *O'Connell*, 332 S.W.3d at 39-40. The Kentucky Supreme Court also found that when a party seeks the work product of a prosecutor, particularly in a case "where the prosecutor has successfully prosecuted the party," "the potential for abuse, vindictiveness, retaliation and harassment is great." *Id.* at 43. Thus, the court held that in order for a party to discover a prosecutor's opinion work product, the party must meet a heightened standard and show "compelling need" as opposed to the lesser showing of "substantial need" required to obtain discovery of fact work product. *Id.* The court also found that in assessing whether a party has demonstrated a compelling need, a "court should consider, among other things, the sensitivity of the documents; the safety and security of the victims, witnesses, and jurors; and the motives of the person seeking the discovery." *Id.* The court specifically stated that the work product doctrine would apply to information sought in a deposition and that "[a]n attempt to depose a prosecutor calls for special scrutiny because 'such depositions inherently constitute an invitation to harass the attorney.' " *Id.* at 44 (quoting *State v Anderson*, 79 S.W.3d 420, 438 (Mo. 2002)). Therefore, the court explained that prosecutor depositions regarding work product should only be permitted "as a last resort." *Id.* at 45.

This Court does not find *O'Connell* dispositive of any complete bar to discovery from Ryan related to this action. First, while the Kentucky Supreme Court's opinion does suggest reasons that courts should more strictly scrutinize requests for discovery of a prosecutor's work product, it does not bar all discovery from prosecutors, whether by subpoena duces tecum or by deposition.

Second, the Kentucky Supreme Court's opinion is not binding on this Court. As will be set forth more fully below, given that Plaintiffs here have brought claims based on federal law pursuant to 42 U.S.C. § 1983 with only pendent state law claims, federal law governs Ryan's assertion of both attorney-client privilege—which was not at issue in *O'Connell*—and work product—which was at issue in *O'Connell*. While the Court will consider *O'Connell* further in its ruling on Ryan's claims regarding the application of the work product doctrine below, neither *O'Connell* nor any other authority cited by Ryan in his filings supports the proposition that Ryan's role as a prosecutor bars Plaintiffs from taking any discovery from him. Indeed, other courts have found no support for such a proposition. *See Brummett v. Camble*, 946 F.2d 1178, 1185 (5th Cir. 1991) ("We are aware of no rule that generally exempts prosecutors from the normal obligations of responding as witnesses if they have information material to a civil proceeding"); *Williams v. Sandel*, No. CV 08-04-DLB, 2010 WL 11538240, at *4 (E.D. Ky. Feb. 12, 2010) (quoting *Brummett*, 946 F.2d at 1185); *Crowley v. Anderson Cnty.*, No. 3:17-CV-169-TRM-DCP, 2018 WL 8922822, at *2 (E.D. Tenn. May 7, 2018); DN 174, *Virgil v. City of Newport*, No. 2:16-cv-224-DLB, at PageID # 1004 (E.D. Ky. June 9, 2020).

While not cited by the Parties, given certain similarities between the instant situation and a prior motion to quash filed by nonparty Jefferson County Attorney Mike O'Connell in this matter, the Court is compelled to clarify that the *Shelton* test, which the Court applied to Plaintiffs' request to depose O'Connell, does not apply to Plaintiffs' subpoenas to Ryan. As set forth in the Court's May 4, 2021, Memorandum Opinion and Order, where a party seeks to depose opposing counsel, the Sixth Circuit has adopted the heightened standard articulated by the Eighth Circuit in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002). A party seeking to depose the opposing party's counsel

must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (citations omitted); *Nationwide*, 278 F.3d at 628.  Subsequent to *Shelton*, the Eighth Circuit clarified that *Shelton* "was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy," not to "provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002).  The Sixth Circuit has yet to address whether *Pamida*'s clarification of when *Shelton* applies governs in the Sixth Circuit, and district courts in the Sixth Circuit are split as to the definition of "opposing counsel" that warrants *Shelton*'s application.[2]  This Court found, in part

---

[2] *See Ellipsis, Inc. v. Color Works, Inc.*, 227 F.R.D. 496, 496-97 (W.D. Tenn. 2005) (refusing to apply *Shelton* to request to depose different attorney at same firm as trial counsel of record where prospective deponent was the secretary of plaintiff corporation, prepared corporation's tax returns, and negotiated agreement at issue in case); *Spine Sols., Inc. v. Medtronic Sofamor Danek, Inc.*, No. 07-2175 JPM-DKV, 2008 WL 199709, at *3 (W.D. Tenn. Jan. 23, 2008) (refusing to apply *Shelton* to request to depose patent prosecution attorney in subsequent infringement action because prosecution attorney was not litigation counsel and not clear that "allowing his deposition to be taken would divulge any litigation strategy"); *Massillon Mgmt., LLC v. Americold Realty Tr.*, No. 5:08CV0799, 2009 WL 614831, at *5-6 (N.D. Ohio Jan. 21, 2009) (applying *Shelton* to request to depose in-house counsel); *Myers v. Asset Acceptance, LLC*, No. 2:09-CV-696, 2010 WL 11492862, at *3 (S.D. Ohio Apr. 20, 2010) (refusing to apply *Shelton* to prevent depositions of counsel who represented defendant in separate state court action because counsel was not trial/litigation counsel in the instant case); *Doe v. Univ. of the S.*, No. 4:09-CV-62, 2010 WL 11520216, at *2 (E.D. Tenn. May 11, 2010), *aff'd*, 2010 WL 11520217 (E.D. Tenn. July 15, 2010) (applying *Shelton* to request to take deposition of defendant's general counsel); *Williams v. Wellston City Sch. Dist.*, No. 2:09-CV-566, 2010 WL 4513818, at *4-5 (S.D. Ohio Nov. 2, 2010) (refusing to apply *Shelton* to request to depose attorney who was not "actively litigating th[e] case on the defendants' behalf"); *Point/ARC of N. Ky., Inc. v. Philadelphia Indem. Ins. Co.*, No. CV 09-81-DLB-CJS, 2011 WL 13227981, at *4 (E.D. Ky. Jan. 11, 2011) (refusing to apply *Shelton* to request to depose counsel for plaintiffs in concluded underlying action regarding negligent failure to supervise in subsequent breach of contract and bad faith claim against plaintiff's insurance company); *Beaudry v. TeleCheck Servs., Inc.*, No. 3-07-0842, 2013 WL 12355782, at *2 (M.D. Tenn. Mar. 31, 2013) (refusing to use *Pamida* to limit application of *Shelton* and applying *Shelton* to request to take deposition of defendant's senior in-house legal counsel); *Alomari v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-00613, 2013 WL 5180811, at *5 (S.D. Ohio Sept. 13, 2013), *objections overruled*, 2014 WL 12651191 (S.D. Ohio June 19, 2014) (applying *Shelton* to request to depose in-house counsel); *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, No. 717CV00004ARTEBA, 2017 WL 6048860, at *4 (E.D. Ky. Apr. 28, 2017) (refusing to apply *Shelton* to request to depose coverage counsel in subsequent action for breach of contract for failure to defend, failure to procure liability insurance, and failure to indemnify because counsel represented client in a concluded action and "the deposition sought cannot possibly be construed as seeking information related to litigation strategy").

based on the Sixth Circuit's decision in *Chesher v. Allen*, 122 F. App'x 184, 188 (6th Cir. 2005), that though O'Connell was not counsel of record, he was exactly the type of "opposing counsel" to which *Shelton* was intended to apply given his supervisory position over counsel of record in this action.  Ryan is not similarly situated.  He has not demonstrated the existence of any attorney-client relationship with any of the Defendants in this action; instead, his involvement in this case was on behalf of the Commonwealth of Kentucky, which is not a party herein.  Thus, *Shelton* does not apply to Plaintiffs' request for his deposition.  *See Sinclair v. Lauderdale Cnty.*, No. 2:14-CV-02908-SHM, 2015 WL 1393423, at *4 (W.D. Tenn. Mar. 24, 2015) ("The *Shelton* test is not applicable in the instant case because Pillow is not acting as opposing counsel to either Plaintiff or Defendant. Instead, Pillow served as a prosecutor on behalf of the State of Tennessee, who is not a party to this action, in a prior completed case. This role does not invoke the protections of *Shelton*.").

Accordingly, the Court finds that Ryan has not demonstrated that any general threshold showing or bar applies to Plaintiffs' attempts to seek discovery from him based merely on his role as a prosecutor, and his motion to quash is denied as to that objection.  The Court will proceed to assess Ryan's other objections to Plaintiffs' subpoenas below.

## 2.   Relevance

Ryan argued that the subpoenas for both his testimony and for documents did not seek relevant information because all of his involvement with Plaintiffs' case was post-conviction.  (DN 207-1, at PageID # 1284-86.)  He emphasized that he had no involvement with the investigation, prosecution, or underlying convictions of the Plaintiffs, and, as such, he has no information related to whether those events were based on probable cause.  (*Id.* at 1286.)  Thus, he claimed he had no first-hand knowledge of the underlying facts of this case.  (*Id.*)  His arguments rely on a narrow

construction of Plaintiffs claims that is inconsistent with the allegations in their complaint.  As set forth above, Plaintiffs allege that misconduct occurred both in their underlying prosecutions and in their post-conviction proceedings.  (DN 38, at ¶¶ 1-20; DN 39, at ¶¶ 1-20.)  Plaintiffs argued in their response that Ryan was "responsible for opposing [their] decades-long post-conviction efforts."  (DN 231, at PageID # 1597.)  Plaintiffs emphasized that Ryan was involved in multiple post-conviction proceedings and had "extensive" contacts with several of the Defendants and witnesses in this case.  (*Id.* at 1597-98, 1601.)  He was also involved in grand jury proceedings regarding additional indictments sought against Plaintiffs after the Court granted their motions for a new trial, though Plaintiffs and Ryan disagree as to whether he was a witness in those proceedings.  (*Id.* at 1602-06; DN 231-1; DN 231-6; DN 232, at PageID # 1677-78.)  The Court need not resolve this disagreement to determine whether Ryan possesses relevant information related to this case.  Under the broad definition of relevance outlined above and given the claims set forth in Plaintiffs' Amended Complaints, the Court finds that Ryan is in possession of information that "bears on, or that reasonably could lead to other matter[s] that could bear on" issues in this case.  *Oppenheimer*, 437 U.S. at 351.  As a prosecutor who worked on Plaintiffs' case post-conviction, regardless of whether the discovery Plaintiffs seek is barred by other provisions of the Federal Rules or other applicable law, Ryan possesses knowledge that easily surpasses the relatively-low threshold for relevance in so far as his potential deposition testimony is concerned.  As to Plaintiffs' requests for documents nos. 1-5, the requested documents and communications between and related to the entities listed and regarding the proceedings outlined in the subpoena are also patently within the broad standard for relevance.  Plaintiffs' requests nos. 1-5 sought documents and communications, including electronic communications, relating to a number of entities that were involved with Plaintiffs' criminal case and many of the entities and

individuals listed are either Defendants in this action or current or former employees of Defendants in this action or their counsel.  (DN 207-4, at PageID # 1298-99.)  Plaintiffs also limited their requests to documents and communications relating to Plaintiffs and their arrests, trials, convictions, post-conviction petitions and hearings, or parole hearings, as well as the instant lawsuit.  (*Id.*)  These requests are tailored to finding information regarding matters that either bear on or would lead to other matters that bear on issues in this case as required to establish relevance.  Thus, Ryan's motion to quash is denied with regard to his relevance objections to requests nos. 1-5.

Plaintiffs' request for documents no. 12, however, is less straightforward.  In request no. 12, Plaintiffs requested all documents and communications regarding disciplinary actions and complaints filed against Ryan as an Assistant Attorney General or Special Prosecutor as well as any responses or pleadings filed on Ryan's behalf in such proceedings.  (DN 207-4, at PageID # 1300.)  The request is not specifically tied to disciplinary actions related to Plaintiffs' case, though based on Plaintiffs' arguments related to this request in their response, those are precisely the types of documents they are attempting to obtain.  Plaintiffs argued that Ryan's actions in their case are relevant to both liability and damages and that he "caused Plaintiffs to endure significant pain and suffering."  (DN 231, at PageID # 1613.)  This argument is not persuasive as to the relevance of any disciplinary proceedings because Ryan is not a defendant in this case.  In their surreply, Plaintiffs argued that even though Ryan is not a defendant, his actions are within the scope of the proximate cause analysis on their 42 U.S.C. § 1983 claims.  (DN 234, at PageID # 1686 n.1.)  But again, their request is not limited to disciplinary actions against Ryan related to this case, and their argument offers no justification as to why disciplinary actions taken against Ryan related to other cases would be relevant to their damages or to causation in this case.  Plaintiffs also argued that

"any discipline handed down to Mr. Ryan—and the materials relied upon in support—is directly relevant to Mr. Ryan's credibility as a witness in this case."  (DN 231, at PageID # 1613.)  But this justification is circular as Ryan's credibility is only at issue because Plaintiffs are attempting to call him as a witness.

When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action.  *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008).  Otherwise, a party resisting discovery bears "the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure."  *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). *See also Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014).  Here, the Court finds that the relevance of all disciplinary actions against Ryan is not apparent, and Plaintiffs have failed to demonstrate how the request is relevant to the claims and defenses in this action.  Plaintiffs have also failed to sufficiently demonstrate how even disciplinary actions against Ryan related to this case are relevant given his nonparty status.  Thus, Ryan's motion to quash will be granted as to request no. 12.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court must limited the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").  Because the Court concludes Plaintiffs' request no. 12 is not relevant, it does not reach the Parties' arguments regarding the potential confidentiality of the requested documents under Kentucky law.

Having concluded that Ryan's deposition testimony and document requests nos. 1-5 are relevant, the Court will proceed to address Ryan's other arguments below as to these requests.

### 3.    Custody and Control

Ryan also argued that to the extent the subpoena sought "parts of the prosecution file from Kentucky's Office of the Attorney General not previously produced by that office, [and] any documents or material relating to his representation of the Commonwealth of Kentucky [ ] as prosecutor," the Attorney General's prosecution files were not within his custody or control.  (DN 207-1, at PageID # 1285-86.)  Fed. R. Civ. P. 45(a)(1)(A)(iii) allows a subpoena to command a person to "produce designated documents . . . in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).  Documents will be within the possession, custody or control of a responding party "if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand."  *In re Bankers Tr. Co.,* 61 F.3d 465, 469 (6th Cir. 1995) (citing *Resol. Tr. Corp. v. Deloitte & Touche,* 145 F.R.D. 108, 110 (D. Colo.1992)).  Legal ownership of the document is not determinative under the rule.  *Id.* (citing *In re Sunrise Sec. Litig.,* 109 B.R. 658, 661 (E.D.Pa.1990)).  Ryan stated in his motion that he does not have "custody or control" over the Office of the Attorney General's prosecution files and that "he is not authorized by the Office of the Attorney General to produce any material from any prosecutorial file."  (DN 207-1, at PageID # 1286.)  Notably, he did not state that he does not have possession of the requested documents or provide any specific details regarding his purported lack of custody or control.  He simply stated that  he is not authorized by his employer "to provide any information relating to any third-party regarding any matter in which he is involved as an attorney for the Commonwealth outside of the scope of that necessary to perform his duties in that function."  (*Id.*)  While this may constitute sound office policy, Ryan fails to identify any binding authority on this Court that

converts office policy into a valid basis to withhold documents in the face of a subpoena. Ryan's argument also seemingly relies on ownership of the files at issue, which as noted above is not determinative. While the Parties have not supplied and the Court is not aware of any case specifically examining whether an employee can be said to have control over his employer's files, it does appear that courts in this Circuit have ordered the production of a prosecution file on the basis of a subpoena to the prosecutor and not to the prosecutor's office. *See Cherry v. Howie*, 5:14-CV-179-TBR, 2016 WL 9525234, at *1 (W.D. Ky. Sept. 27, 2016); *Lawrence for Estate of Hoffman v. Madison Cnty.*, 5:13-CV-383-GFVT-REW, 2015 WL 13636281 (E.D. Ky. Feb. 24, 2015). Notably, Plaintiffs indicated in the subpoena duces tecum to Ryan that the Kentucky Attorney General's Office has already produced at least some documents in response to a subpoena to that office specifically. (DN 207-4, at PageID # 1298 n.1.) Thus, this Court cannot conclude that Ryan has demonstrated that the documents requested by Plaintiffs are not within his possession, custody, or control, and Ryan's motion to quash will be denied as to that objection. Because it is not apparent from his filings that he has already done so, Ryan shall identify and produce any documents responsive to requests nos. 1-5 that are within his possession, custody, or control as defined herein or assert a valid privilege or protection via a privilege log.

### 4.   Undue Burden/Harassment

Ryan argued that Plaintiffs' subpoenas imposed an "undue and completely unnecessary burden on him" because Plaintiffs have no need for his testimony. (DN 207-1, at PageID # 1284-85, 1288.) Ryan argued that Plaintiffs issued the subpoenas only for purposes of harassment because Plaintiffs are "dismayed that they are precluded by law from bringing claims against Mr. Ryan, whom they do not like, and intend to exact as many pounds of flesh as possible from him in a deposition designed to berate and humiliate him." (DN 232, at PageID # 1679.)

16

As explained above, a court must quash a subpoena that imposes an undue burden on the person subject to it pursuant to Fed. R. Civ. P. 45.  Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv).  The Sixth Circuit has held that a court should assess whether a subpoena constitutes an undue burden "in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' "  *In re Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). In making that assessment, "[c]ourts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id.*  Where an objection is raised based on undue burden, "the objecting party must make 'a specific showing, usually . . . by affidavit, of why the demand is unreasonably burdensome.' "  *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 364 F. Supp. 3d 758, 766 (E.D. Mich. 2018) (quoting *Jones-McNamara v. Holzer Health Sys.*, No. 2:13-cv-616, 2014 WL 3563406, at *1 (S.D. Ohio July 18, 2014)).  The Court may also issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause.  Fed. R. Civ. P. 26(c)(1).  However, the potential for annoyance, embarrassment, oppression, or undue burden or expense "must be illustrated with 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.' "  *Nemir v. Mitsubishi Motors Corp.,* 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981)); *see Nix v. Sword,* 11 F. App'x 498, 500 (6th Cir. 2001) ("To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.").

Ryan's arguments regarding harassment and undue burden largely blend standards from his other objections into reasons that Plaintiffs' request is unduly burdensome without citation to pertinent facts or authority in support. Here, given the relevance of Ryan's testimony and the documents within his possession as to requests nos. 1-5, the Court finds his bare assertions of "undue burden" and "harassment" to be without merit or basis in fact. In particular, as to harassment, while it is clear from the filings that there are strong feelings on both sides of this case, Ryan has wholly failed to demonstrate that the subpoenas served upon him were motivated by animus or other improper motive. Ryan has not demonstrated that there are an unusually high number of documents, that production will be particularly costly for him, or that the documents in his possession are all or in large part documents that have already been or could be produced by others. Given the relevance of Ryan's testimony, the nature of the requested documents, and the Plaintiffs' explanations of Ryan's extensive involvement with their post-conviction proceedings, Ryan's conclusory allegations of "undue burden" and "harassment" are not persuasive and fall far short of the specific showing required. The Court acknowledges that Ryan is a nonparty and that compliance with the subpoena will impose some burden on him, but Fed. R. Civ. P. 45 does not require a subpoena to impose no burden on the responding party. It merely requires that the serving party "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Ryan has not demonstrated the subpoenas issued to him violate this provision. Plaintiffs have complied with this obligation here by tailoring their requests to capture as few privileged documents as possible and by offering Ryan copies of documents already produced by others to avoid duplicative production. Thus, his motion to quash is denied as to his objections based on undue burden or harassment.

### 5.    Ryan's Privilege Log

Prior to assessing Ryan's objections based on either the attorney-client privilege or the work product doctrine, the Court will first assess the sufficiency of Ryan's privilege log. Because Ryan's privilege log was only tendered to the Court by Plaintiffs along with their surreply, Ryan's arguments in his motion, supplement, and reply were not framed in terms of the specific items or categories listed on his privilege log or the format of the same. Ryan's privilege log is an eight-page document that begins with the following introductory paragraph:

> Third Party Witness Perry T. Ryan's discovery log is reproduced below. For each item withheld on the basis of work product protection, Mr. Ryan asserts such protection under both Rule 26(b)(3) and the common law. *See, e.g.*, *In re Perrigo Co.*, 128 F.3d 430, 445 (6th Cir. 1997). To the extent that any privileged communication or document was made or disclosed to his counsel Cary B. Howard, or Dale Henley, Mr. Ryan asserts protection under the attorney-client privilege. All other documents are protected as opinion work product and as confidential under Kentucky Supreme Court Rule 3.130-1.6.

(DN 234-1, at PageID # 1694.) The remaining pages consist of a six-column table with the following headings:

| Bates Range | Type of Document | Privilege | Date | Time | To/From |
|---|---|---|---|---|---|

(*Id.* at 1695-1701.) The only document type listed on the log is "email." (*Id.*) As to the "To/From" column, Ryan included parenthetical identifiers next to some e-mail addresses for "KYOAG" or "46th JC" but otherwise did not include titles or employers for all the listed addresses/individuals on the log. (*Id.*) Ryan asserted the attorney-client privilege as to ten emails identified on the log and asserted that all remaining emails constitute opinion work product. (*Id.*)

Fed. R. Civ. P. 26(b)(5) requires a party withholding discoverable information on the basis of privilege or work product protection to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and [to] do so in a

manner that, without revealing information itself privileged or protected, will enable other parties

to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Courts interpreting this provision have held that

it requires the person withholding discovery to produce a privilege log that meets certain minimum

requirements.  As one district court explained, "[E]ach document in a privilege log should contain

details including: date, author and all recipients of the document, subject matter, and an

explanation as to why the document should be privileged and not produced in discovery."

*Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 120 (E.D. Mich. 2019) (quoting *Clark*

*Const. Grp., Inc. v. City of Memphis*, No. 01-2780, 2005 WL 6187896, at *1 (W.D. Tenn. Feb. 9,

2005)).  As another described:

> Courts require the following to be included in privilege logs:
>
>> "1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
>> 2. The date upon which the document was prepared;
>> 3. The date of the document (if different from # 2);
>> 4. The identity of the person(s) who prepared the document;
>> 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, 'including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;'
>> 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;'
>> 7. The number of pages of the document;
>> 8. The party's basis 'for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
>> 9. Any other pertinent information necessary to establish the elements of each asserted privilege.' "

*Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (quoting in part *In re Universal Servs. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005)).  Courts have found insufficient privilege logs that "utilize[ ] general categories of persons and entities without identifying anyone by name and position," *Clark*, 2005 WL 6187896, at *3; contain only "[b]oiler plate descriptions and allegations of protection or privilege," *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys. LLC*, No. CIV. A. 07-CV-15280, 2009 WL 3614997, at *4 (E.D. Mich. Oct. 27, 2009); "identify only the dates of the documents, a brief description providing no substantive information (e.g. 'Email correspondence with Mark W. Dobbins and Matt Jean'), and the asserted privilege," *Mafcote, Inc. v. Fed. Ins. Co.*, No. 3:08-CV-11-S, 2010 WL 1929900, at *5 (W.D. Ky. May 12, 2010); or that attempt to use the subject line of emails as the sole description or summary of the contents of the listed correspondence, *id.* at 84.  *Cf. Carhartt*, 333 F.R.D. at 121 (finding sufficient a privilege log where "[t]he entries clearly state[d] who authored the document, the date it was created, the recipients, including carbon copies, whether the sender or recipient [wa]s an attorney, the type of document (e.g., an email chain), the privilege claimed (e.g., attorney-client and/or work product), and a description of why privilege [wa]s claimed (e.g., it discusses or contains reflections on confidential legal advice or work product)").

Ryan's privilege log is patently deficient under this standard as it does not include sufficient information as to the subject matter of the emails withheld or the senders/recipients of the emails to permit either the Court or the Plaintiffs to assess his claims of privilege and work product protection.  These deficiencies are in no way supplemented by his briefs before this Court, which do little more than make blanket claims of privilege or protection as to both his anticipated testimony and the documents within his possession.  Therefore, the Court concludes that Ryan's insufficient assertions of privilege or protection prevent it from reaching the ultimate merits of his

claims regarding the documents requested by Plaintiffs.  The Court will require Ryan, as set forth in more detail below, to tender a supplemental privilege log to Plaintiffs remedying the herein identified deficiencies.  The Court will proceed below to address some of Ryan's arguments regarding his claims of privilege and protection to in part clarify the specific deficiencies to be corrected and the necessary next steps herein.

### 6.     Attorney-Client Privilege

Ryan argued that the subpoena improperly requested materials governed by the attorney-client privilege such as communications between Ryan and the law firm who filed his motion to quash.  (DN 207-1, at PageID # 1289.)  He asserted, "Without any need for lengthy discussion, all such communications are covered by the attorney-client privilege."  (*Id.*)

In a case before the Court on federal question jurisdiction, a claim of privilege is governed by federal law.  *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992); *Babcock Power, Inc. v. Kapsalis*, No. 3:13-cv-717-DJH-CHL, 2016 WL 1717225, at *2 (W.D. Ky. Apr. 28, 2016), *objections overruled*, No. 3:13-cv-717-CRS, 2016 WL 5478006, at *4 (W.D. Ky. Sept. 27, 2016). This is true even when the case likewise contains pendent state law claims.  *Hancock*, 958 F.2d at 1373 ("Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege.").  The elements of a claim of attorney-client privilege under federal law are:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).  "The privilege's primary purpose is to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice,' " and courts should determine the scope of the privilege in light of this purpose.  *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).  The burden is on the person asserting the privilege to prove it applies.  *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)).

It is well established that "the attorney-client privilege may attach only if the communications regard legal advice."  *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006).  In *Alomari v. Ohio Dep't of Public Safety*, 626 F. App'x 558, 570 (6th Cir. 2015), the Sixth Circuit cited with approval to a Second Circuit decision regarding the definition of legal advice.  The Second Circuit explained, "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct."  *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).  Applying this principle, the Sixth Circuit indicated that

> [w]hen a communication involves both legal and non-legal matters, we "consider whether the predominant purpose of the communication is to render or solicit legal advice."  This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."

*Alomari*, 626 F. App'x at 570 (citations omitted) (quoting in part *In re Cnty. Of Erie*, 473 F.3d at 420-21)).

As to the ten emails on Ryan's privilege log that he claimed were protected from disclosure by the attorney-client privilege, the lack of subject matter description and the lack of titles, roles,

or employer identifiers prevent the Court from determining whether all elements of the privilege are satisfied.  For example, without descriptions, the Court cannot assess whether the communications at issue actually sought legal advice as required.  Plaintiffs noted in their surreply that one of the individuals listed in some of those emails—Dale Henley—is currently a University of Kentucky law professor.  (DN 234, at PageID # 1688-89 n.4.)  While this alone does not mean that Ryan did not have an attorney-client relationship with that individual at the time of the listed communications, his privilege log fails to supply all the necessary elements of the privilege.

Additionally, neither Ryan's privilege log nor his briefs address the issues regarding waiver raised by Plaintiffs.  Nine of the ten emails as to which Ryan claimed the protection of the attorney-client privilege were solely between Ryan and Dale Henley, but the tenth email is listed as being between Ryan, "dwilliamslschool@gmail.com," Cary Howard (Ryan's counsel in this action), and Donna Fritz, who, like Howard, is listed as having a "mcbrayerfirm.com" email address.  (DN 234-1,  at  PageID  #  1701.)    Plaintiffs  indicated  in  their  surreply  that  the dwilliamslschool@gmail.com address belongs to former Meade County Commonwealth Attorney David Williams, a third-party whose participation seemingly waives Ryan's attorney-client privilege as to that communication.  (DN 234, at PageID # 1688-89 n.4.)  "As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.' "  *In re Columbia*, 293 F.3d at 294 (quoting in part *Dakota*, 197 F.3d at 825).  Without more information regarding the email at issue, it appears that the addition of Williams to the thread waives any protection that may have applied, though as noted above, to reach the waiver issue, the Court must assume the communication related to legal advice in the first place.  Accordingly, as to the documents requested in Plaintiffs' subpoena nos. 1-5, the Court find that Ryan's briefs and privilege log have failed to demonstrate the applicability

of the attorney-client privilege.  The Court will require Ryan to serve a supplemental privilege log remedying these deficiencies as set forth below.

As to Ryan's deposition testimony, other than his arguments related to the *O'Connell* case, which as the Court explained above relates to the work product doctrine, he emphasized that his "client [was] at all times [ ] the Commonwealth of Kentucky." (DN 223, at PageID # 1486.)  Citing Ky. Sup. Ct. R. 3.130(1.6), he argued that the Commonwealth had not permitted him to disclose any information related to his representation such that he was unable to testify absent a court order directing him to do so.  (*Id.* at 1487-88.)  The Court is unconvinced that Ryan's position completely prohibits him from sitting for a deposition, and he cited no binding authority to support this proposition.  Under his interpretation, absent waiver, no lawyer would ever be able to give deposition testimony, a position that is both untenable and inconsistent with the nature of the attorney-client privilege.  "The privilege does not envelope everything arising from the existence of an attorney-client relationship."  *United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir. 1964). "The attorney-client privilege only precludes disclosure of *communications* between attorney and client and does not protect against disclosure of the facts underlying the communication." *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).  Thus, the Court finds Ryan has failed to demonstrate that attorney-client privilege bars him from giving *any* deposition testimony, and his motion to quash is denied as to his attorney-client privilege objections.  At a deposition, Ryan remains free to assert, where appropriate, attorney-client privilege.  *See Diamond Resorts Int'l, Inc. v. Phillips*, 3:17-CV-01124, 2018 WL 3326814, at *2 (M.D. Tenn. Apr. 17, 2018) (finding that attorney-client privilege did not bar depositions from taking place and that privilege objections could still be raised during depositions).  Though not required by the Federal Rules, Plaintiffs are

encouraged to consult with Ryan in advance of the deposition regarding the anticipated subject matter of their questions in an attempt to avoid any privilege issues where possible.

### 7.      Work Product Doctrine

Ryan's last and predominant argument is that his deposition testimony and the production of documents requested by the Plaintiffs were barred by the work product "privilege." (DN 207-1, at PageID # 1284-87.) He argued that Plaintiffs had not made a sufficient showing to overcome this protection because the information Plaintiffs sought from him was all available from other sources, namely the witnesses with whom he would have communicated and the Defendants in this action themselves. (*Id.* at 1287; DN 232, at PageID # 1679.)

The work product doctrine is governed by Fed. R. Civ. P. 26. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006); *Pinnacle Sur. Servs. v. Manion Stigger, LLP*, 370 F. Supp.3d 745, 755 (W.D. Ky. 2019). The doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A). To determine whether a document was prepared in anticipation of litigation, the Court asks "(1) whether a document was created because of a party's subjective anticipation of litigation . . . and (2) whether that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). "[A]n ordinary business purpose" does not suffice. *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). "[T]he burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.' " *Id.* (quoting *Roxworthy*, 457 F.3d at 595); *see also Roxworthy*, 457 F.3d at 593 ("It is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege.").

"So-called 'fact' work-product, the 'written or oral information transmitted to the attorney and recorded as conveyed by the client,' . . . may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship." *In re Columbia*, 293 F.3d at 294 (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) and citing *Toledo Edison Co. v. G.A. Techs., Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988)). "However, absent waiver, a party may not obtain the 'opinion' work of his adversary; i.e., 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.' " *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d at 163-64).

Rule 26(b)(3) by its plain language applies only to parties and their representatives.  Fed. R. Civ. P. 26(b)(3) (emphasis added) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative*.").  Nonetheless, Fed. R. Civ. P. 45 acknowledges that subpoenaed nonparties may properly assert the work product doctrine in responding to a subpoena.  *See* Fed. R. Civ. P. 45(e)(2) (describing the procedure for "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material").  When a nonparty asserts that subpoenaed documents are protected by the work product doctrine, courts have extended that protection to nonparties where doing so is consistent with and furthers the purposes for the doctrine set forth in *Hickman v. Taylor*, 329 U.S. 495 (1947), which courts agree offers broader protections that those set forth in Rule 26.  *See Lawrence*, 2015 WL 13636281, at *5-6; *Schomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 142-43 (S.D.N.Y. 2014); *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 143-44 (D. Mass. 2014); *Myers v. Cunningham*, No. 4:18-CV-39-TWP-SKL, 2019 WL 3892865, *3-4 (E.D. Tenn. Aug. 19, 2019); *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010).  Those purposes are: "protecting an attorney's ability to formulate legal theories

and prepare cases, preventing opponents from 'free-loading' off their adversaries' work, and preventing interference with ongoing litigation." *Crosby*, 269 F.R.D. at 277 (footnotes omitted). Applying those purposes here, the Court finds that the only factor weighing in favor of applying the work product doctrine to Ryan is that of protecting an attorney's ability to formulate legal theories and prepare cases. As the United States Supreme Court recognized, the work product doctrine plays a vital role in "the proper functioning of the criminal justice system"; it explained, "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Thus, ensuring prosecutors can formulate their legal theories and prepare cases without fear their work product will be disclosed in later civil proceedings weighs in favor of extending work product protection to Ryan in this case.

The other *Hickman* purposes are not at issue here. Given the large amount of discovery already conducted by the Plaintiffs and the differences between the issues in their underlying criminal cases and their instant action, the Court has no concern that Plaintiffs are trying to take advantage of work performed by Ryan and his office. *See Stamps*, 2014 WL 1598019, at *8 (quoting *Schultz v. Talley*, 152 F.R.D. 181, 185 (W.D. Mo. 1993)) ("Disclosure of the notes from a prosecutor's file in a subsequent civil suit likewise does not implicate 'the potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney,' which may arise in parallel civil proceedings."). Likewise, the Court is unconvinced that requiring disclosure of the requested documents or testimony by Ryan would imperil an ongoing criminal investigation or prospective criminal matter. Ryan argued in his supplement that "Plaintiffs remain subject to future investigation and potential prosecution for the murder charges[,] which were dismissed

28

without prejudice to refile." (DN 223, at PageID # 1489.)  While this may be legally accurate, the Court finds this position disingenuous given the representations the Commonwealth made in support of its motion to dismiss the underlying murder charges against the Plaintiffs.  In that motion, two of Ryan's colleagues from the Kentucky Attorney General's Office summarized what they titled the "current state of the evidence" and engaged in a point-by-point analysis of the key evidence utilized in the initial prosecution of the Plaintiffs.  (DN 231-5.)  As to each piece of evidence, the motion summarized why that evidence either no longer supported that Plaintiffs were guilty of the crimes with which they were charged or could no longer be used effectively by the Commonwealth.  (*Id.*)  Citing the Office of the Attorney General's constitutional obligation to do justice, the motion's conclusion summarized,

> When the defendants were tried almost twenty-three years ago, the Commonwealth presented a case whereby it appeared to a reasonable jury that the defendants were guilty beyond a reasonable doubt.  At the time, the Commonwealth could prove a motive, and believed it had reliable physical evidence and reliable witnesses that heard extremely incriminating statements from the defendants.

> Subsequent discoveries about the reliability of these witnesses, along with the development of more reliable scientific testing, leave the Commonwealth to conclude that there is no longer sufficient evidence by which a reasonable jury could conclude the defendants are, in fact, guilty beyond a reasonable doubt.

(*Id.* at 1666.)  In view of this representation, Ryan's arguments that work product protection is necessary because of the potential reopening of the investigation are meritless.

Given these competing considerations, the Court finds persuasive the approach taken in *Lawrence for Estate of Hoffman v. Madison Cnty.*, 2015 WL 13636281, at *1.  In *Lawrence*, the United States District Court for the Eastern District of Kentucky considered a motion to quash a subpoena to a nonparty special prosecutor that requested the prosecutor's entire file. *Id.*  Lawrence had brought a 42 U.S.C. § 1983 complaint related to the jail death of an inmate and sought discovery from the special prosecutor appointed to prosecute any crimes related to the inmate's

death.  *Id.*  In considering whether the work product doctrine applied, the court found that the work product doctrine did not shield the entire file but did shield the prosecutor's mental impressions and opinion work product.  *Id.* at *3-4.  The court noted that there was "no ongoing criminal investigation or prospective criminal matter" and no "concern [p]laintiff [was] simply taking advantage of work performed by the prosecutor."  *Id.* at *5.  Thus, the court concluded that the "central values of *Hickman*" were honored by "cloaking from discovery the core mental work product" of the prosecutor's "mental impression, strategies, and analyses."  *Id.*  This approach is largely consistent with that of the Kentucky Supreme Court in *O'Connell*, whose approach Ryan fervently entreats the Court to adopt.  As set forth above, the *O'Connell* court found that *Hickman* protected the fact and opinion work product of nonparty prosecutors.  *O'Connell*, 332 S.W.3d at 42.  But the *O'Connell* court was most concerned about discovery of a prosecutor's opinion work product and went on to establish a higher showing of "compelling need" that a party must meet before obtaining a prosecutor's opinion work product.  *Id.* at 43.  Here, in reliance on *Lawrence*, *O'Connell*, and the other cases cited above, the Court holds that the work product doctrine does apply to Ryan despite his nonparty status.  But like the *Lawrence* court, this Court is skeptical of the need to protect Ryan's fact work product given the application of the purposes behind *Hickman* in the instant case.  To some extent this distinction is inapplicable because Ryan appears to have asserted all the documents on his privilege log constitute only opinion work product.  However, given the Court's conclusion above about his possession, custody, and control of the prosecution file, that file is likely to contain both kinds of work product so the Court must also address the discoverability of the potential fact work product in Ryan's file.

Ryan argued that Plaintiffs had not made a sufficient showing of either substantial need, as required to obtain fact work product, or the higher showing the *O'Connell* court required to obtain

his opinion work product.  (DN 207-1, at PageID # 1287; DN 232, at PageID # 1679.)  As to any need to obtain fact work product, the Court disagrees.  Plaintiffs' claims relate to alleged misconduct by the Defendants in their investigation, the underlying criminal trial, and the post-conviction process.  Given his role in the post-conviction process, Ryan's contact with witnesses is qualitatively and, likely, quantitatively different than that of any witnesses Plaintiffs might have already had the opportunity to question.  While Plaintiffs have conducted discovery from numerous witnesses, the Court is unconvinced in the instant case that that opportunity is the equivalent of or a sufficient substitute for Ryan's testimony.  For example, how can Plaintiffs know that they have spoken to all witnesses interviewed or identified by Defendants to Ryan without his testimony?  For this reason and because of the limited justification for protection of Ryan's fact work product generally, the Court finds Plaintiffs have demonstrated sufficient substantial need to obtain Ryan's fact work product.  As to Ryan's opinion work product, the Court sees no need to address whether it should impose a higher burden for obtaining that type of work product because Plaintiffs have failed to show any need for Ryan's opinion work product.  Ryan is not a defendant in this case, and Plaintiffs claim that Defendants' misconduct—e.g. fabrication of evidence, misrepresentations and omissions of facts—caused violations of Plaintiffs' constitutional rights.  Thus, Plaintiffs have failed to show that inquiries into the impressions, opinions, mental processes, or legal theories of Ryan do not bear upon the issues in this case.  The relevant issues relate instead to what factual evidence Ryan had in his possession during his work on the case and by whom it was supplied.  For these reasons, the Court concludes Plaintiffs may obtain Ryan's factual work product but not his opinion work product, and Ryan's motion to quash is granted in part and denied in part in that respect.

Despite this conclusion, as with his assertions of attorney-client privilege discussed above, Ryan's assertions of protection for his opinion work product are not specific enough to convince the Court the documents listed on his privilege log are in fact entitled to that protection.  Ryan's privilege log offers an insufficient description of each document so as to permit the Court to conclude that the same was prepared in anticipation of litigation and contains opinion work product.  In particular, the Court notes some hesitation as to the relationship between some of the dated communications and a reasonable anticipation of litigation.  The privilege log contains communications dated between January 20, 2016, and July 14, 2021.  (DN 234-1.)  Plaintiffs were originally indicted on May 7, 1993.  (DN 38, at ¶ 116; DN 39, at ¶ 116.)  Their murder cases went to trial in February 1995, and their first post-conviction petitions were filed in 1998.  (DN 38, at ¶¶ 121, 125-26; DN 39, at ¶¶ 121, 125-26.)  Their motion for a new trial was ultimately granted on July 14, 2016.  (DN 38, at ¶ 133; DN 39, at ¶ 133.)  The Commonwealth then sought new indictments against Plaintiffs for kidnapping and perjury beginning on September 12, 2016.  (DN 231-1, at ¶ 3.)  Ultimately, on January 19, 2018, the Meade Circuit Court dismissed the kidnapping and perjury indictments with prejudice as a result of vindictive prosecution.  (*Id.* at PageID # 1629.)  The Commonwealth's motion to dismiss the murder indictments was filed and granted in February 2018.  (DN 38, at ¶ 141; DN 39, at ¶ 141.)  Ryan ceased to be counsel of record in these proceedings on October 3, 2017, when two other Assistant Attorneys General substituted in as counsel for both Ryan and the Meade County Commonwealth Attorney.  (DN 231-5, at PageID # 1660 n.2.)  As a result, it is unclear to the Court how Ryan could demonstrate a subjective anticipation of litigation after at the latest February 26, 2018.  While this action was filed in July 2017 (DN 1), Ryan was not then and has never been a party to this litigation.  The subpoenas at issue in the instant motion were not issued until August 26, 2021, a little over a month after the last email listed on Ryan's

privilege log.  Thus, Ryan's privilege log fails to clearly tie the listed emails to a subjective anticipation of any litigation.  As with his assertions of attorney-client privilege, Ryan's privilege log also fails to establish a lack of waiver regarding his opinion work product because it lacks sufficient identifiers and descriptions for the various individuals listed thereon.  The work product doctrine may be waived by a disclosure that "substantially increases the opportunity for potential adversaries to obtain the information," *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.*, No. CV 01-339-KKC, 2008 WL 11344709, at *4 (E.D. Ky. Feb 19, 2008) (citing *JA Apparel Corp. v. Abboud*, No. 07 Civ. 7787(THK), 2008 WL 111006, at *3 (S.D.N.Y. Jan. 10, 2008)), or by actual disclosure to a third-party or adversary.  *In re Columbia*, 293 F.3d at 307.  Accordingly, as to Plaintiffs' document requests nos. 1-5, the Court find that Ryan's briefs and privilege log have failed to demonstrate the applicability of the work product doctrine.  The Court will require Ryan to serve a supplemental privilege log remedying these deficiencies as set forth below.

As to the subpoena for Ryan's deposition, the Court has already ruled above that there is no authority preventing the deposition of a prosecutor in its entirety.  Ryan urged the Court to adopt the position of the Kentucky Supreme Court in *O'Connell* that prosecutor depositions should only permitted as a last resort due to "the potential for abuse, vindictiveness, retaliation[,] and harassment." *O'Connell*, 332 S.W.3d at 43.  But as already noted herein, *O'Connell* is not binding on this Court, and Ryan has failed to offer any binding authority supporting that this Court should evaluate a request for a prosecutor's deposition with any stricter scrutiny than it should the request for a deposition of any other nonparty lawyer who does not represent a party to the litigation with respect to which someone seeks to depose the lawyer.  In so holding, the Court is again particularly persuaded that there does not appear to be any risk of jeopardizing an ongoing criminal investigation, and the Court has also already found that the Plaintiffs subpoenas were not served

for purposes of harassment.  Accordingly, the Court sees no legal bar to Ryan's deposition based on the work product doctrine.  However, given the strong reasons for protecting Ryan's opinion work product and the lack of any need for Plaintiffs to obtain the same, the Court will not permit any questioning of Ryan regarding his attorney mental impressions, strategies, and analysis during the deposition.  Thus, Ryan's motion to quash will be granted in part and denied in part as to the subpoena for his deposition and his objections based on the work product doctrine.

## III.   ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Ryan's Motion to Quash (DN 207) is **GRANTED IN PART and DENIED IN PART** as set forth herein.  IT IS FURTHER ORDERED as follows:

(1)    On or before **October 7, 2022**, Ryan shall:

(A)    produce any additional documents within the scope of Plaintiffs' requests nos. 1-5 as to which he cannot or has not previously claimed the application of the attorney-client privilege or the work product doctrine; and

(B)    serve a supplemental privilege log that, in addition to the information he already provided, contains: (i) a sufficiently detailed description of each document and its contents from which it may be determined whether either the attorney-client privilege or the work product doctrine applies to the document at issue; and (ii) the identity of all parties to the communication, including their title/role and employer.  It shall also include any privilege or protection asserted as to new documents required to be produced by this Court's order that Ryan had originally deemed not within his possession, custody, or control.

34

(2)     Within **fourteen days** of receipt of Ryan's supplemental privilege log, Ryan and Plaintiffs shall meet and confer in an attempt to resolve any outstanding disputes regarding the applicability of the privilege or protection claimed by Ryan without further intervention by this Court.  Both Parties are encouraged to carefully review the instant opinion and the legal authorities cited herein in forming their positions during these discussions.

(3)     To the extent any disputes requiring Court intervention remain, on or before **October 31, 2022**:

    (A)     Ryan shall tender any disputed documents to the undersigned's Chambers via e-mail to chambers_lindsay@kywd.uscourts.gov for an *in camera* review; and

    (B)     Ryan and Plaintiffs may each file a supplemental brief regarding the applicability of the claimed privilege or protection based on the information contained in Ryan's supplemental privilege log and any required showing to overcome the same.

(4)     If no disputes remain requiring the Court's intervention, on or before **October 31, 2022**, Ryan and the Parties shall file a joint status report advising the Court of the same and proposing a deadline by which the Parties shall complete Ryan's deposition should Plaintiffs still intend to pursue it.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record
September 21, 2022