```
 1              UNITED STATES DISTRICT COURT
 2              WESTERN DISTRICT OF KENTUCKY
 3           CIVIL ACTION NO. 3:17-CV-00419-DJH
 4
 5                  JEFFREY DWAYNE CLARK,
 6                        PLAINTIFF
 7
 8                           V.
 9
10   LOUISVILLE JEFFERSON COUNTY METRO GOVERNMENT, ET AL.,
11                        DEFENDANTS
12
13                          AND
14
15                    GARR KEITH HARDIN,
16                        PLAINTIFF
17
18                           V.
19
20   LOUISVILLE JEFFERSON COUNTY METRO GOVERNMENT, ET AL.,
21                        DEFENDANTS
22
23   DEPONENT: BART ADAMS
24   DATE:     JANUARY 27, 2020
25   REPORTER: LINDSEY N. JOHNSON
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   Smith the night before trial.  Is that the reference?
2       A.   I think that I should have, yes.  And there
3   may have been -- Adams may have been present.  Handy may
4   have been present.  I just don't know how that statement
5   could have come out of the blue after three years.
6       Q.   Okay.  Anything else that you remember you-all
7   discussing last night?  So Handy, Remsburg...
8       A.   Uh-huh.  Joe Greer.  Over, and over, and over,
9   Joe Greer.
10      Q.   Okay.
11      A.   That was the -- that was most of the
12  conversation.
13      Q.   Tell me about that.
14      A.   Part of it had to do with the letter that was
15  subsequently found from Capps to Justis, asking Justis
16  to say this and say that.  What happened -- and I'll
17  just tell you what happened with that was.  I received a
18  call two or three days after the trial -- it was not
19  very long -- and it was either from Jeff or from Jeff's
20  mother -- excuse me, it was either from Jeff or Justis'
21  mother about this letter that existed and, of course,
22  the letter was what I'm talking about.  I sent -- my
23  investigator, Jerry Hall, who was an ex-Jefferson County
24  homicide detective, I sent him out to the talk to -- it
25  had to be Mrs. Justis and Jeff, because Jeff was in

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA COURT REPORTERS

1   jail.  At any rate, we came up with a copy of the
2   letter.  And in Jerry Hall talking with Justis, it
3   became apparent that there was a situation that had
4   taken place in Colorado in which the defendant had been
5   incarcerated in the Meade County Jail pending
6   extradition, and that it was Justis' position that Capps
7   tried to get him to lie about that also so that Capps
8   could get a better deal, or help on shock probation, or
9   pro -- whatever it might have been.  I did two things as
10  a result of getting that letter: One, I called the
11  lawyer who was involved out in Colorado, got
12  confirmation that he had talked to Joe Greer about it
13  and that Greer was very aware of the fact that this
14  letter existed.  I then got him, talked to him to make
15  sure, and he verified by calling two lawyers that had
16  that case with him.  He wanted to make sure that he had
17  told them that he talked to Joe Greer at that time.
18  Then -- so I did that, and I also called Joe Greer.  I
19  think I shouldn't have at this point, but I did because
20  I was so angry. I mean, I was just -- I was beside
21  myself that they had done this, that Joe Greer had done
22  this, in my mind.  Joe hemmed and hawed, didn't say much
23  except, "I don't know anything about this, and I've got
24  to talk to Kenton," and that was it.  That was the end
25  of it.  I filed my motion, did what I had to do, filed



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  the affidavits and, of course, we know the result: The
2  judge overruled it summarily.  I also talked to him
3  about the hairs that were found in Amy's -- rigor mortis
4  had set in and, as you know, as everybody knows here,
5  that Joe tried to claim that the gray hair in her hand
6  was from his head, that it had fallen out and somehow
7  gotten in her rigor mortised hand.
8       Q.   Is that referenced in the trial transcript of
9  Joe Greer's testimony?
10      A.   Yes.
11      Q.   Can you tell me here?
12      A.   I don't have it.
13      Q.   Because I've read it, and I don't see that in
14 there.
15      A.   Well, then it's been changed.  It's been --
16 something's happened.  It absolutely happened.  I lost
17 my mind when he said that, the most ridiculous thing I
18 ever heard in the courtroom.  If that's not --
19      Q.   Were you aware --
20      A.   -- if that's not in that trial transcript,
21 there's a much deeper problem here than just the cops.
22      Q.   Were you aware that in Wallace Rogers' closing
23 that he references Kenton Smith in his closing -- or
24 Kenton had made that comment that it was his buddy Joe's
25 hair, and Joe never said, "It was my hair"?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  the sequence whether I called Joe first or the lawyer in
2  Colorado first.
3       Q.   Okay.
4       A.   And that shows me that I called Joe first.
5       Q.   Okay.  How did you get the name of the lawyer
6  in Colorado?
7       A.   That had to have come -- it came from Jerry
8  Hall interviewing I don't know who.  Oh, you know what?
9  I think it was from -- I think it was from Justis'
10 mother because, you know, the lawyer went and to talked
11 to Justis' mother eventually to get a copy.
12      Q.   Okay.
13      A.   So that's how the jury interviewed Ms. Justis,
14 and that's how he got the lawyer's name in Colorado.
15      Q.   Okay.  And does "Harvey Palefsky" sound
16 correct?
17      A.   It does now, yes.  Uh-huh.
18      Q.   Okay.  And then you file a supplemental motion
19 after being told about a letter, correct?
20      A.   That's what this is, yes.
21           MR. SLOSAR:  This will be 39?
22           MR. BOND:  Yes, sir.
23              (EXHIBIT 39 MARKED FOR IDENTIFICATION)
24           THE WITNESS:  Yeah.
25           MR. BOND:  Well, no.  I don't want to mislead

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-50   Filed 01/26/23   Page 6 of 11 PageID #: 28201
The Deposition of BART ADAMS, taken on January 27, 2020
189

1  importance placed on the hair, who it belonged to,
2  et cetera, and that Keith's hair was similar.
3  "Believes he could not find James Whitely though he
4  looked for him for a long time before trial," that is
5  not right.  My -- Jerry Hall found James Whitely, and
6  I had him followed for about two or three days in
7  an effort to get fingerprints or a hair sample from
8  him.
9      Q.   A hair sample.
10     A.   We even came to the point of discussing -- and
11 Jerry was willing to do it, and it took me a little
12 while not to do it -- Jerry was going to get in a fight
13 with him in a bar and yank his hair out, but that would
14 get me disbarred, I figured, and get Jerry arrested, but
15 that's -- no, I -- we had Whitely looked at, and I
16 believe it was before trial.  It had to have been, okay?
17 "Turn file over to DPA, thinks he may have pieces here,"
18 that is correct.  I turned the file over, but I don't
19 believe that I -- after I turned it over, I don't
20 believe that I had anything.  "That hired Jerry Hall
21 private investigator," that's correct.  One thing that
22 sticks out is neither Wallace nor he really believed a
23 conviction was possible.  He doesn't think that what
24 happened in Jefferson County is possible. That's
25 maybe -- you know, I had a real problem believing that

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL   Document 317-50   Filed 01/26/23   Page 7 of 11 PageID #: 28202
The Deposition of BART ADAMS, taken on January 27, 2020

190

```
 1  they were going to get a conviction based upon that
 2  evidence, but we all know when you go into a jury trial
 3  anything can happen.
 4       Q.   That brings up an interesting point.  12 folks
 5  of Meade County Kentucky decided guilt or innocence,
 6  didn't they?
 7            MR. SLOSAR:  Objection to form.
 8       A.   Do you want me to answer that?
 9       Q.   Yeah.
10       A.   Yeah, but I don't think they got all the
11  evidence.  They didn't have a clue what was really going
12  on in that case, and at the point -- and as a matter of
13  fact, at the time, scientifically, we couldn't get to
14  it.  But the Commonwealth insisted on making it seem as
15  if it was the fact, this incriminating evidence about
16  the hairs, et cetera.
17       Q.   Okay.
18       A.   So that's my answer.
19       Q.   Okay.
20       A.   I don't think -- I don't think a jury, sitting
21  in Meade County at that time, got a fair view of what
22  the real evidence was in the case.
23       Q.   Okay.  Thank you.
24       A.   Okay.  Once -- okay.  "Jerry Hall," that's --
25  that next Hall -- "Jerry Hall lives off Bardstown Road
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-50   Filed 01/26/23   Page 8 of 11 PageID #: 28203
The Deposition of BART ADAMS, taken on January 27, 2020
225

1    Q.   Okay.
2    A.   I'd say the trial testimony would speak for
3  itself.
4         MR. BRAMMELL:  What exhibit what number are we
5     at?
6         MR. GARVERICH:  64.
7  BY MR. BRAMMELL:
8    Q.   Oh, actually, these have been already
9  presented in this case as exhibits, so what I'm going to
10 hand you is Exhibit number 9, defense Exhibit number 9.
11 If you could just take a look at this, this is the copy
12 of the April 1992 police report that Handy prepared.
13   A.   Okay.  Yes, I've seen this, yes.
14   Q.   Okay.  And now that you've had a chance to
15 review this, do you remember if there were ever any
16 allegations that Handy manufactured any statement
17 or fabricated any statement in this report
18 which...
19   A.   Yes, Jeff and I discussed the allegation that
20 he said he didn't have any knives.  Is that in here?
21 That he does not have a knife.  He said, "Look,
22 everybody on Earth knew that I had knives.  I started
23 getting them from my father and my grandfather.  I went
24 to sales and other different things, and had a large
25 collection of knives," so...

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-50   Filed 01/26/23   Page 9 of 11 PageID #: 28204
The Deposition of BART ADAMS, taken on January 27, 2020
244

1   were.  If I open up the box with Amy Remsburg -- he had
2   told me her nature, what she was like.  She was capable
3   of lying about anything.  I mean, he saw her abusing
4   this young child.  I figured that she was probably as
5   vindictive and as big a liar that you could possibly run
6   into, and I didn't want to go down that road with
7   everything else I had to face.
8       Q.   So I would like to dig into those allegations
9   a little bit more.  You said that Clark told you that he
10  witnessed Remsburg abusing a small child; is that fair?
11      A.   I don't know how small.  A child.  Let's say a
12  child.  Under 18, under 12.  I don't know.
13      Q.   So when would he have revealed this
14  information to you?
15      A.   He revealed that to me fairly early --
16      Q.   So in 1990 --
17      A.   -- once we knew -- once we knew that Remsburg
18  was a witness, so whenever I got the -- the typed out
19  statement of Amy Remsburg, I would have talked to him
20  about that.
21      Q.   Could you place a year on it?
22      A.   I assumed it was '92, but I don't know that.
23  I don't know.  Probably.  If there is a transmittal
24  letter with -- with Amy's statement, then that would be
25  probably the date that I -- or within a week or two, or

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-50   Filed 01/26/23   Page 10 of 11 PageID #: 28205
The Deposition of BART ADAMS, taken on January 27, 2020
259

```
 1          MR. SIMON:  Your exhibit is 30; do you
 2     remember?
 3          MR. GARVERICH:  No, I don't.
 4          MR. BOND:  I thought it was 56, Larry, but I
 5     could be wrong.
 6          MR. GARVERICH:  I think -- he's right.  It's
 7     56.
 8     A.   Okay.  I've completed -- oh, 145, sorry.
 9  Okay.
10  BY MR. SLOSAR:
11     Q.   I'm going to show you the pages 146 and 147.
12  Can you read it okay on here?
13     A.   Yeah.
14     Q.   I can make it bigger.
15     A.   Okay.
16     Q.   Okay.  Sir, have you had a chance to read
17  pages 139 through 147?
18     A.   I have now, yes.
19     Q.   Okay.  Now, earlier you were asked a lot of
20  questions today about Mr. Capps, and Colorado, and Mr.
21  Justis, and I want to try to make sure the record is
22  clear.  During the questioning that you had of Mr. Capps
23  at trial, did you ask Mr. Capps a single question about
24  him writing a letter to Mr. Justis in order to solicit
25  Mr. Justis to lie against someone?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-50   Filed 01/26/23   Page 11 of 11 PageID #: 28206
The Deposition of BART ADAMS, taken on January 27, 2020
260

```
 1        A.   No.
 2        Q.   No.  And is it fair to say that if you had
 3   knowledge prior to trial as to what Mr. Justis
 4   ultimately informed you after trial -- but if you had
 5   that knowledge at trial -- is that something that you
 6   would have used in your cross-examination of
 7   Clifford Capps?
 8        A.   It would be critical --
 9        Q.   Yeah.
10        A.   -- critical information.
11        Q.   Would you have also called Mr. Justis to
12   testify about this allegation that Capps was trying to
13   solicit perjury in exchange for a deal?
14        A.   Absolutely.
15        Q.   And the fact that you tried to cross-examine
16   Mr. Capps on his cooperation in a different case but
17   didn't actually cross him on all of the stuff that you
18   now know, and some of which was included in the post-
19   trial motion, does that confirm your belief that you
20   were not disclosed this information prior to trial?
21             MR. BRAMMELL:  Objection to form.
22        A.   Sure, I was.
23        Q.   Okay.  If you had known that Capps was not
24   allowed to testify in Colorado because the prosecutors
25   determined that he tried to solicit perjury --
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com