1            Okay.  The Remsburg girl.  Okay.  That's fine.  We'd

2    already admonished her with respect to her testimony.

3            MR. ADAMS:  Yes, sir.

4            THE COURT:  Very good.  Call your next witness.

5            MR. SMITH:  Clifford Capps, Your Honor.

6            THE COURT:  Bring him around to be sworn.

7            Clifford, if you would, come around to the other side

8    of the chalkboard, face me, and raise your right hand.

9            Do you solemnly swear or affirm the testimony you are

10   about to give will be the truth, the whole truth, and nothing

11   but the truth so help you God?

12           MR. CAPPS:  Yes, sir.

13           THE COURT:  Please be seated.

14           Okay.  Go forwards, Mr. Smith.

15           MR. SMITH:  State your full name for the record,

16   please.

17           MR. CAPPS:  Clifford Edward Capps.

18           MR. SMITH:  Clifford, tell the jury what your current

19   address is.

20           MR. CAPPS:  Marion Adjustment Center, 95 Raywick Road,

21   St. Mary, Kentucky.

22           MR. SMITH:  Marion Adjustment Center.

23           MR. CAPPS:  Yes, sir.

24           MR. SMITH:  What kind of place is that?

25           MR. CAPPS:  It is a minimum security prison.



1        MR. SMITH:  You're currently doing time?

2        MR. CAPPS:  Yes, sir.

3        MR. SMITH:  And you and I know each other --

4        MR. CAPPS:  Yes, sir.

5        MR. SMITH:  -- because I have prosecuted you.

6        MR. CAPPS:  Yes, sir.

7        MR. SMITH:  Now, let's talk a little bit to the jury

8  about your record, okay?

9        MR. CAPPS:  (No audible response.)

10        THE COURT:  Clifford, you need to speak up.  We're not

11  picking you --

12        MR. SMITH:  See if you can get --

13        THE COURT:  -- on the record.

14        MR. CAPPS:  Okay.

15        MR. SMITH:  -- the microphone, okay?

16        MR. CAPPS:  Is that better?

17        MR. SMITH:  Yeah.

18        MR. CAPPS:  All right.

19        MR. SMITH:  What was the first thing I prosecuted you

20  for?

21        MR. CAPPS:  First thing was first degree burglary and

22  receiving stolen property back in 1991.

23        MR. SMITH:  All right.  1991, first degree burglary

24  and receiving stolen property.

25        MR. CAPPS:  Yes, sir.



1          MR. SMITH:  Were those two charges related?

2          MR. CAPPS:  Yes, sir.

3          MR. SMITH:  You were charged with going in the house,

4   and then you pawned some stuff --

5          MR. CAPPS:  Yes, sir.

6          MR. SMITH:  -- out of the house.

7          MR. CAPPS:  Correct.

8          MR. SMITH:  All right.  And I think you were -- were

9   you housesitting for Mr. Johnson over here at Eastwood Hills

10  when that happened?

11         MR. CAPPS:  No, sir.  I was living across the street.

12         MR. SMITH:  You were living across the street from

13  him.  All right.  And Mr. Johnson went on vacation and you went

14  in his house?

15         MR. CAPPS:  Right.

16         MR. SMITH:  Now, after that happened, did you admit

17  it?

18         MR. CAPPS:  Yes, sir.

19         MR. SMITH:  And did you plead guilty to it?

20         MR. CAPPS:  Yes, sir.

21         MR. SMITH:  And how many years did you get?

22         MR. CAPPS:  Seven years.

23         MR. SMITH:  All right.  Now, was there a time when you

24  were in the Meade County Jail when the defendant Jeff Clark was

25  in the Meade County Jail?



1          MR. CAPPS:  Yes, sir.

2          MR. SMITH:  All right.  Was it during this first

3  sentence that you got?

4          MR. CAPPS:  No, sir.

5          MR. SMITH:  All right.  Now, you went up on your seven

6  years, right?

7          MR. CAPPS:  (No audible response.)

8          MR. SMITH:  Did the judge -- that was your first

9  felony offense.

10          MR. CAPPS:  Yes, sir.

11          MR. SMITH:  Did the judge shock probate you after you

12  served some time?

13          MR. CAPPS:  He gave me regular probation after serving

14  five months.

15          MR. SMITH:  All right.  You went to jail, you served

16  five months, then you got regular probation.

17          MR. CAPPS:  Yes, sir.

18          MR. SMITH:  All right.  That was something the judge

19  did, wasn't it?  I mean, I didn't recommend that, did I?

20          MR. CAPPS:  I believe it was agreeable on all parties,

21  with Mr. Johnson, and the Commonwealth didn't object to it.

22          MR. SMITH:  All right.  Mr. Johnson, the victim, went

23  along with it, and I -- I did go along with it or I didn't

24  object to it?

25          MR. CAPPS:  You didn't object to it.

1        MR. SMITH:  All right.  And you got out.

2        MR. CAPPS:  Yes, sir.

3        MR. SMITH:  And tell the jury whether you got in

4   trouble any more.

5        MR. CAPPS:  Three months later caught two more felony

6   charges.

7        MR. SMITH:  All right.  Three months after that, you

8   got two more felony charges.  What were these charges, Clifford?

9        MR. CAPPS:  Third degree burglary and receiving stolen

10  property again.

11       MR. SMITH:  Didn't learn much the first time, did you?

12       MR. CAPPS:  No, sir.

13       MR. SMITH:  All right.  Now, third degree burglary,

14  and what was the other charge?

15       MR. CAPPS:  Receiving stolen property.

16       MR. SMITH:  Receiving stolen property.  And were those

17  two charges related?

18       MR. CAPPS:  No.

19       MR. SMITH:  All right.  Now, on the burglary, what'd

20  you do?

21       MR. CAPPS:  Allegedly me and another individual broke

22  into a wash house here in downtown Brandenburg.

23       MR. SMITH:  All right.  And what about the stolen

24  property?

25       MR. CAPPS:  That was from a burglary that happened up



1   in Mt. Washington that I ended up with some of the possessions

2   in it.

3               MR. SMITH:  All right.  And I prosecuted you again.

4               MR. CAPPS:  (No audible response.)

5               MR. SMITH:  All right.  How many years did you get on

6   those charges?

7               MR. CAPPS:  I got seven years.

8               MR. SMITH:  All right.  And was your probation revoked

9   from the first time I prosecuted you?

10              MR. CAPPS:  I believe it was.

11              MR. SMITH:  All right.  And you had -- and that seven

12  years was consecutive or to run after the first seven-year term

13  you got --

14              MR. CAPPS:  For --

15              MR. SMITH:  -- is that right?

16              MR. CAPPS:  You mean together?  Is that one, total

17  seven-year sentence?  Is that what you're saying?

18              MR. SMITH:  Did you get seven from the first time and

19  then seven from the second time for 14?

20              MR. CAPPS:  Yes, sir.

21              MR. SMITH:  All right.  So, at this point in time, you

22  got 14 years, or that's what you'd serve.

23              MR. CAPPS:  Right.

24              MR. SMITH:  And the second time, the second time you

25  admitted to doing this too, didn't you?



1          MR. CAPPS:  Yes, sir.

2          MR. SMITH:  All right.  And was it this point in time,

3   on this charge, that you were incarcerated in the Meade County

4   Jail with the defendant Jeff Clark?

5          MR. CAPPS:  Yes, sir.

6          MR. SMITH:  Now, and as the defendant Jeff Clark a

7   cellmate of yours?

8          MR. CAPPS:  Yes, sir.

9          MR. SMITH:  Tell the jury whether or not the defendant

10  Jeff Clark ever admitted to you to killing Rhonda Sue Warford.

11         MR. CAPPS:  On two occasions.  The first time he said

12  it jokingly, you know, kind of laughed.  And the second time,

13  the way he said it in his voice and the look on his face, it was

14  nothing but seriousness.  There was no joke and no smile,

15  nothing.

16         MR. SMITH:  All right.  Now, you're in the Meade

17  County Jail and you've got this 14 years.  Did you ever get in

18  any more trouble?

19         MR. CAPPS:  While I was in the Meade County Jail, I

20  caught another misdemeanor charge, but no more felonies since

21  then.

22         MR. SMITH:  All right.  I was thinking you had a

23  custodial interference charge.  Does that factor in here

24  somewhere?

25         MR. CAPPS:  Yeah.  That was from the first time.

1             MR. SMITH:  Oh, that's from the first --

2             MR. CAPPS:  My first --

3             MR. SMITH:  -- time?

4             MR. CAPPS:  Right.  But the -- the judge let me out on

5    an OR bond when he probated me, on custodial interference.

6             MR. SMITH:  Uh-huh.

7             MR. CAPPS:  And, when I came back on the two other

8    felonies --

9             MR. SMITH:  Uh-huh.

10            MR. CAPPS:  -- that's when all that matter was taken

11   care of.  That's how I got fives years on one charge, one year

12   on another, and one year on another.

13            MR. SMITH:  One year on a custodial interference

14   charge?

15            MR. CAPPS:  Right.

16            MR. SMITH:  And the custodial interference charge, you

17   went with somebody less than 18?

18            MR. CAPPS:  Correct.

19            MR. SMITH:  How old was the girl?

20            MR. CAPPS:  Seventeen.  And it was the boy that me and

21   him did the burglary on, Bill Johnson's house, in '91.

22            MR. SMITH:  So, you were out with a 17-year-old, and

23   that's where that charge came from?

24            MR. CAPPS:  Right.

25            MR. SMITH:  So, you're in jail now working on your 14



PROCEEDINGS   3.03.95                                        March 03, 1995
CLARK & HARDIN vs LOUISVILLE JEFFERSON CO.                              77

```
 1  years?
 2           MR. CAPPS:  (No audible response.)
 3           MR. SMITH:  And have I or anybody else ever made an
 4  promises to you for coming in here and telling the jury what you
 5  told?
 6           MR. CAPPS:  No, sir.
 7           MR. SMITH:  That's all I have, please --
 8           THE COURT:  Mr. Adams?
 9           MR. ADAMS:  Thank you, sir.
10           MR. ADAMS:  Mr. Capps, just so that the jury can get
11  an accurate idea of -- of all this, I'm going to -- what I'd
12  like to do is just put this on the board (inaudible) we'll all
13  know what's going on here.  And I'll put it on here first, and
14  then we'll turn it around so the jury can see it, okay?
15           MR. CAPPS:  Okay.
16           MR. ADAMS:  This is your first indictment here in
17  Meade County, 91CR040, charging you with receiving stolen
18  property and burglary in the first degree --
19           MR. CAPPS:  Right.
20           MR. ADAMS: -- right?  Okay.  Let's put that on the
21  board.  Okay.  91CR040, burglary in the first and receiving
22  stolen property.  Just receiving stolen property.
23           Now, what does burglary in the first degree carry?
24           MR. CAPPS:  Ten to 20 years.
25           MR. ADAMS:  And, so, this case got amended?
```



1          MR. CAPPS:  To second degree burglary.

2          MR. ADAMS:  Okay.  So, you get a burglary second, five

3  years.

4          MR. CAPPS:  Six years.

5          MR. ADAMS:  Six years.  Okay.  RSP, one year.  That's

6  to run consecutive --

7          MR. CAPPS:  Right.

8          MR. ADAMS:  -- for a total of seven.

9          MR. CAPPS:  Right.

10         MR. ADAMS:  Okay.  Now, you had a custodial

11  interference that you told the Ladies and Gentlemen of the Jury

12  came in.  That's 91CR056 --

13         MR. CAPPS:  Correct.

14         MR. ADAMS:  -- is that correct?

15         And you got one year on that to run consecutive?

16         MR. CAPPS:  That had nothing to do with that sentence;

17  that had to do with my other 2 felony.

18         MR. ADAMS:  So what did you end up getting on that?

19         MR. CAPPS:  On that, I believe on custodial

20  interference, I got one years.  I'm not -- I don't remember how

21  to take -- where the years fell on the sentences.

22         MR. ADAMS:  Okay.  Let's see.  It's in this -- it

23  would be right here, I would assume.  Okay.  Custodial

24  interference, is sentenced to the Department of Corrections for

25  a period of one year, and said sentence to run consecutive with



1   any other sentence --

2           MR. CAPPS:  Correct.

3           MR. ADAMS:  -- is that right?  So that's consec (sic).

4   Custodial interference, you get one year on that.  We'll get rid

5   of these two, Mr. Capps, so that we can come back to them.

6           The next time that you're in the court system, you got

7   92CR -- you over 18 years of age at the time these -- you

8   committed these offenses?

9           MR. CAPPS:  Yes, sir.

10          MR. ADAMS:  So, you were eligible for enhancement

11  under Persistent Felony Offender statutes?

12          MR. CAPPS:  I wasn't 21.  I believe you had to be 21

13  for that, for PFO.

14          MR. ADAMS:  Let's see.  Okay.  The next one is a

15  burglary in the third degree, on 92CR014, and --

16          MR. CAPPS:  I believe I got five years on that.

17          MR. ADAMS:  Let's see.  You get one year on that, Mr.

18  Capps.

19          MR. CAPPS:  One year, okay.  Five on my custodial.

20          MR. ADAMS:  To run --

21          MR. CAPPS:  Consecutive.

22          MR. ADAMS:  -- consecutive.  So, this is burglary in

23  the third degree.  You get another one that runs consecutive.

24  Both of these are consecutive.  So, at this point in time,

25  you've got nine years --



 1          MR. CAPPS:  Right.

 2          MR. ADAMS:  -- right?

 3          The next time you get in trouble again, or maybe it

 4  was on the same time, is -- or it must have been about the same

 5  time, 92CR013 --

 6          MR. CAPPS:  Right.

 7          MR. ADAMS:  -- receiving stolen property.  And, on

 8  this one, you get a sentence of five years to run consecutive

 9  again.

10          MR. CAPPS:  Right.

11          MR. ADAMS:  Okay.  And that's because you were out on

12  bond or whatever, on probation.  So, they've got to run

13  consecutive by operation of the law.  Now --

14          MR. SMITH:  Objection.

15          MR. ADAMS:  If he knows.

16          THE COURT:  You -- let the witness testify as much as

17  possible, okay?

18          MR. ADAMS:  All right.  Okay.  So, you've got 14 years

19  for four separate felony offenses --

20          MR. CAPPS:  Five.

21          MR. ADAMS:  One, two, three, four, five.  Five felony

22  separate offenses under four (inaudible), correct?

23          MR. CAPPS:  (No audible response.)

24          MR. ADAMS:  Okay.  Two of which involve burglary,

25  going into somebody's house.



1          MR. CAPPS:  One was a house, one was a business.

2          MR. ADAMS:  Okay.  One was a house, one was a

3   business.

4          All right. Now, Mr. Capps, tell the Ladies and

5   Gentlemen of the Jury, have you been to the Parole Board yet?

6          MR. CAPPS:  Yes, sir.

7          MR. ADAMS:  And what did the Parole Board do?

8          MR. CAPPS:  In December --

9          MR. SMITH:  Never mind.  You can tell him.

10          MR. CAPPS:  December '92, the Parole Board paroled me.

11          MR. ADAMS:  Okay.  December of '92, you got paroled.

12          MR. CAPPS:  Yes.

13          MR. ADAMS:  Let's put this up.  12/92 parole.  And

14   then did your parole get revoked because of being involved in

15   criminal activity again?

16          MR. CAPPS:  No.  My parole got revoked for absconding

17   in May of '94.

18          MR. ADAMS:  In May of '94, you left the jurisdiction?

19          MR. CAPPS:  Right.

20          MR. ADAMS:  Okay.  And you came back in, and now

21   what's your parole status?  When do you meet the Parole Board

22   again?

23          MR. CAPPS:  May of this year.

24          MR. ADAMS:  Sir?

25          MR. CAPPS:  May of this year.



1          MR. ADAMS:  May of this year.  Sorry, Mr. Capps, I've

2    got a little bit of a cold.  And you go to '95.  That's when you

3    meet the Parole Board, and you have five felony convictions.

4    And you went back because you absconded, left the jurisdiction.

5          MR. CAPPS:  Right.

6          MR. ADAMS:  Okay.  Now, before I get back to that,

7    let's -- let's talk about this.  You gave a statement to

8    Detective -- to Sheriff Joe Greer on December the 2nd, 1992; is

9    that correct?

10          MR. CAPPS:  That's correct.

11          MR. ADAMS:  Has -- has this statement been made

12    available to you by anyone so that you could review it before

13    your testimony?

14          MR. CAPPS:  Yes, sir.

15          MR. ADAMS:  Okay.  Good.  You came into the Meade

16    County Jail, if I'm correct, on January the 29th of 1992.

17          MR. CAPPS:  Correct.

18          MR. ADAMS:  Okay.  And the first time you were in the

19    cell, you were in the cell with Roy Melonson (ph) and Jerry

20    Maybury (ph).

21          MR. CAPPS:  That's correct.

22          MR. ADAMS:  Then you got moved to another cell with

23    Donald Jones, Daniel Crouch, and Kenny Stewart.

24          MR. CAPPS:  Right.

25          MR. ADAMS:  Okay.  Then, because you messed in the



```
 1  jail --

 2            MR. CAPPS:  No, messed up.

 3            MR. ADAMS:  Messed up in the jail --

 4            MR. CAPPS:  Yeah.

 5            MR. ADAMS:  -- they moved you to another cell, and

 6  then you were in with Kevin Justice, Jerry Maybury, and Charles

 7  Peters.

 8            MR. CAPPS:  Right.

 9            MR. ADAMS:  Okay.  Then, they moved Kevin out and

10  moved Jeff Clark in until you left.

11            MR. CAPPS:  Correct.

12            MR. ADAMS:  Okay.  Now, is it correct that Jeff Clark

13  came into the jail on May the 5th of 1992?

14            MR. CAPPS:  I know it was beginning of May, but I

15  can't be sure on the date.

16            MR. ADAMS:  Okay.  Do you know if he came in

17  immediately after his arrest?

18            MR. CAPPS:  I couldn't tell you that either.

19            MR. ADAMS:  Okay.  Let's, just for the sake of

20  argument, 05/05 of '92, he's arrested.  Now, if I understand

21  your testimony correctly or your statement correctly, you

22  actually left the jail and were moved to Frankfort on the 19th

23  day of May 1992.

24            MR. CAPPS:  Correct.

25            MR. ADAMS:  Okay.  So, 05/19/92.  That means you were
```



1  in with him for 14 days.

2         MR. CAPPS:  Right.

3         MR. ADAMS:  Now, during that period of time when Mr.

4  Clark came in, he began to tell you some things about what he

5  was charged with; is that correct?

6         MR. CAPPS:  That's correct.

7         MR. ADAMS:  And, during that period of time, who was

8  the other individual that was in the cell with you?

9         MR. CAPPS:  In the cell with us, there was Jerry

10 Maybury and a Charles Peters, but Charles Peters left before I

11 did to go to another jail.

12        MR. ADAMS:  So, there was only Maybury in the cell

13 with you the whole time Jeff was there?

14        MR. CAPPS:  There -- after Charles Peters left, there

15 was some other guy in there for a DUI, but I don't know his

16 name.  He pretty much kept to hisself.

17        MR. ADAMS:  Okay.  So, you're in a four-man cell; is

18 that it?

19        MR. CAPPS:  Right.

20        MR. ADAMS:  Okay.  During this -- this two-week

21 period, this 14 days, you're in a four-man cell?

22        MR. CAPPS:  Right.

23        MR. ADAMS:  So, there's two other individuals in there

24 besides you and Jeff?

25        MR. CAPPS:  Right.



1      MR. ADAMS:  Okay.  He had been -- he told you that he

2  had been interrogated by the police; did he not?

3      MR. CAPPS:  (No audible response.)

4      MR. ADAMS:  And he told you some of the things that

5  the police had told him that they thought about this murder; is

6  that correct?

7      MR. CAPPS:  That's what he said.  He said that's what

8  the police thought.

9      MR. ADAMS:  Okay.  And he told you --

10      MR. SMITH:  Objection.

11      THE COURT:  Overruled.

12      MR. ADAMS:  He told you that the police told him that

13  they thought that the had put the body in trash bags and put it

14  in the trunk of Jeff's Nova?

15      MR. CAPPS:  Right.

16      MR. ADAMS:  Okay.  And he told you that the police

17  thought that's how they stopped any blood from being in the car.

18      MR. CAPPS:  Correct.

19      MR. ADAMS:  Okay.  He also told you that the police

20  told him that they thought he used the black and primered Nova.

21      MR. CAPPS:  Right.

22      MR. ADAMS:  Okay.  He also told you that the car had

23  been impounded?

24      MR. CAPPS:  Correct.

25      MR. ADAMS:  And that it had been searched; is that



1   correct?

2          MR. CAPPS:  Right.  Said it was at the crime lab, I

3   believe.  The crime lab was in Jefferson County.

4          MR. ADAMS:  Okay.  And he told you at that point that

5   they found some -- some of the deceased hair in the car but that

6   was natural because she had been in there?

7          MR. CAPPS:  Correct.

8          MR. ADAMS:  And also told you that they had found a

9   fingerprint, but that was natural because she had been in there.

10         MR. CAPPS:  Correct.

11         MR. ADAMS:  Okay.  Now, during this period of time

12  when he's telling you about this, up until this point, he's not

13  admitted to doing anything whatsoever, has he?

14         MR. CAPPS:  No.

15         MR. ADAMS:  In fact, he's maintained his innocence?

16         MR. CAPPS:  Correct.

17         MR. ADAMS:  Okay.  All the way through, he's

18  maintaining his innocence.

19         MR. CAPPS:  Except for those two times.

20         MR. ADAMS:  Right.  And we're going to come to that.

21         MR. CAPPS:  Right.

22         MR. ADAMS:  And he told you about his relationship

23  with Amy Remsburg and the --

24         MR. CAPPS:  Amy Livers.

25         MR. ADAMS:  Amy Livers.



1          MR. CAPPS:  Um-hum.

2          MR. ADAMS:  And that she was very possessive, called

3   his house all the time, and caused problems with his other

4   girlfriends?

5          MR. CAPPS:  Correct.

6          MR. ADAMS:  Told you all that.  He told you the police

7   said that they found the body in a -- in a woods not too far --

8   a few miles from the house.

9          MR. CAPPS:  Right, down off a back road.

10         MR. ADAMS:  Off a back road, referring to Amy

11  Remsburg's house?

12         MR. CAPPS:  Correct.

13         MR. ADAMS:  Okay.  And your feeling was that he was

14  nervous all the time, he was jittery, and he acted like he was a

15  few bricks shy of a full load?

16         MR. CAPPS:  Correct.

17         MR. ADAMS:  All right.  Now, over this two-week

18  period, there came a time when you and Jeff were talking, and he

19  -- and he's (inaudible), or, according to your statement,

20  smiling, laughing, saying that he did it?

21         MR. CAPPS:  Yeah.

22         MR. ADAMS:  Okay.  And you didn't -- you took it as a

23  joke, absolutely took it as a joke, didn't think anything about

24  it?

25         MR. CAPPS:  Yeah.  Kind of wondered about it, but,



1  basically, his actions and everything said he was joking.

2          MR. ADAMS:  Okay.  Now, you say that you were sitting

3  -- when -- this second time that he says that he did it, you

4  were sitting in the lockdown and you were writing a letter or

5  something?

6          MR. CAPPS:  (Inaudible response.)

7          MR. ADAMS:  Sitting at a desk.  And there was --

8          THE COURT:  Excuse me.  Speak up.  We're not picking

9  you up, okay?

10         MR. CAPPS:  Yeah, writing a letter.

11         MR. ADAMS:  And there was no conversation going on

12 between you at all at that particular time, you were just

13 writing a letter?

14         MR. CAPPS:  There might have been some conversation

15 going on, but I remember what he said while I was writing it.

16         MR. ADAMS:  He said it while you were writing?

17         MR. CAPPS:  Right.

18         MR. ADAMS:  And he just -- he said to you, I did it?

19         MR. CAPPS:  No.  He had -- when it came up, I believe

20 he asked me if I thought they did it, and I said I didn't have

21 any idea.  And said that he had done it, and I turned around and

22 looked at him, and everything in his face, his motions, there

23 was no smile, no humor in it, just a dead look on his face, a

24 dead serious look.

25         MR. ADAMS:  Okay.  Now, you -- in relation to May the



1  19th, 1992, when you left the Meade County Jail, can you tell

2  the Ladies and Gentlemen of the Jury when this serious statement

3  was given to you?

4          MR. CAPPS:  I can't approximate a date.  I mean --

5          MR. ADAMS:  Well, I mean, you were only in there with

6  him for 14 days.

7          MR. CAPPS:  Right.

8          MR. ADAMS:  Okay.  Did -- well, let me ask you --

9          MR. CAPPS:  I'd say it was sometime --

10          MR. ADAMS:  -- this, did it come in the last week that

11  you were in the cell together?

12          MR. CAPPS:  I was getting ready to say --

13          MR. ADAMS:  Okay.  In that last week?

14          MR. CAPPS:  Yeah.

15          MR. ADAMS:  All right.  Now, on May the 19th, you were

16  moved to Frankfort; is that correct?

17          MR. CAPPS:  Correct.

18          MR. ADAMS:  And you stayed in Frankfort for what

19  period of time, sir, before you were moved again?

20          MR. CAPPS:  About 45 days.

21          MR. ADAMS:  And where were you moved to?

22          MR. CAPPS:  After Frankfort?

23          MR. ADAMS:  Yes, sir.

24          MR. CAPPS:  To Roederer Correctional Farm.

25          MR. ADAMS:  How long did you stay there?



1          MR. CAPPS:  Approximately a week.

2          MR. ADAMS:  And from there?

3          MR. CAPPS:  To Marion Adjustment Center.

4          MR. ADAMS:  Where you are now?

5          MR. CAPPS:  Correct.

6          MR. ADAMS:  Now, you were paroled -- it's just

7   amazing.  You gave this statement on December the 2nd, 1992,

8   right?

9          MR. CAPPS:  Right.

10          MR. ADAMS:  And you got paroled in December of '92.

11          MR. CAPPS:  Right.  (Inaudible) for parole, 17 months.

12          MR. ADAMS:  But you were serving a 14-year sentence at

13   that time.  You give a statement on December the 2nd of '92, and

14   you get paroled in December of '92, correct?

15          MR. CAPPS:  (No audible response.)

16          MR. ADAMS:  And, from May the 19th, 1992 until

17   December the 2nd, 1992, you didn't give a statement about boo,

18   did you, about this case?

19          MR. CAPPS:  I believe I talked to Mr. Greer on --

20   sometime in early June.  I had to come back down here for some

21   misdemeanor checks.  I believe that's when I talked to Sheriff

22   Greer the first time about it.

23          MR. ADAMS:  Judge, if there is any investigative

24   material that I have not been made privy to, I'd like to move

25   that it be turned over to me now.



1            MR. SMITH:  I don't know what he's talking about.

2            THE COURT:  Is there any?

3            MR. SMITH:  Either June or --

4            MR. ADAMS:  Okay.

5            THE COURT:  I assume there's not.  (Inaudible) there

6   isn't.  That's fine.

7            MR. ADAMS:  All right.  So, he talks to you in June,

8   but you give the statement right before your parole date in '92;

9   is that correct?

10           MR. CAPPS:  I believe it was June, you know.

11           MR. ADAMS:  So, what's the -- what's the balance of

12  your sentence now, Mr. Capps?  How much time have you got to do?

13           MR. CAPPS:  How much time do I have left?

14           MR. ADAMS:  Um-hum.

15           MR. CAPPS:  After May, I have about 25 months left to

16  serve out.

17           MR. ADAMS:  Left to serve out of a 14-year sentence?

18           MR. CAPPS:  I believe that's correct.

19           MR. ADAMS:  When --

20           MR. CAPPS:  It's either -- it's either '97 or '99.

21           MR. ADAMS:  '97 or '99.  Well, let -- let me just look

22  here just a minute.  Your first commitment was on the 9th day of

23  April 1992; is that correct?

24           MR. CAPPS:  I believe so.

25           MR. ADAMS:  All right.



1          MR. CAPPS:  I pled guilty.

2          MR. ADAMS:  And you're saying you got 14 years

3  consecutive, so your time aggregates from that first sentence;

4  is that correct?

5          MR. CAPPS:  I believe so.  I went up for parole after

6  17 months.

7          MR. ADAMS:  Right.  I understand that.  But, if you

8  had 14 years to 1992, that comes out to 2006?

9          MR. CAPPS:  I'm talking about a minimum serve-out

10  date.

11          MR. ADAMS:  A minimum serve-out date if you get every

12  break on earth.

13          MR. CAPPS:  Right.  Every --

14          MR. ADAMS:  Okay.

15          MR. CAPPS:  -- good time allowance and --

16          MR. ADAMS:  All right.

17          MR. CAPPS:  -- everything.

18          MR. ADAMS:  Now, let me ask you this, Mr. Capps.

19  Would it be beneficial to you, when you come in front of the

20  Parole Board in May of 1995, when you're serving 14 years,

21  looking at maybe going to 2005 or 2006, to get a letter from

22  Kent & Smith to the Parole Board saying, Mr. Capps came in here

23  and did a great job for us and gave us this statement, he aided

24  us in this investigation, and we'd like to see him paroled?

25  Would that be of help to you?



1          MR. CAPPS:  It's been my experience that the Parole
2    Board's going to do what they want to do.
3          MR. ADAMS:  Wouldn't mean a thing, then, to get a
4    letter from -- wouldn't mean a thing getting a letter from --
5    from Mr. Smith?  You want the Ladies and Gentlemen of the Jury
6    to believe that?
7          MR. CAPPS:  Like I'm saying, you know, sometimes
8    letters help you, sometimes they don't.  They Parole Board's
9    going to do what they want to do.
10         MR. ADAMS:  And you talked to Joe Greer in June of '92
11   about this statement, but you don't give him a written statement
12   until December, and then you get paroled, and you're doing 14
13   years; is that right?
14         MR. CAPPS:  I believe it was June.  I'm not going to
15   swear to that.
16         MR. ADAMS:  Let me ask you something.  How did you --
17   did you do anything to endear yourself to Mr. Clark that he
18   would tell you these stories?
19         MR. CAPPS:  No.  We were just talking.
20         MR. ADAMS:  What about the other people in the cell?
21   How big is the cell that -- that you all were housed in?
22         MR. CAPPS:  Maybe 10 by 12.
23         MR. ADAMS:  Ten by 12.  So, you've got four people in
24   a 10 by 12 cell.  And you say this took place in the evening
25   when you were -- this second statement took place in the evening



 1  when you were writing a letter?

 2          MR. CAPPS:  Right.

 3          MR. ADAMS:  And the other gentlemen were in the cell?

 4          MR. CAPPS:  No.  The other gentlemen -- there's a two-

 5  man cell, and then there's another two-man cell.  Each one has a

 6  door on it that's locked at 10:45 at night.

 7          MR. ADAMS:  So, this was after 10:45 now --

 8          MR. CAPPS:  Right.

 9          MR. ADAMS:  -- is what you're telling me?

10          Okay.  Did you discuss the fact that Mr. Clark

11  confessed this crime to you with your cellmates?

12          MR. CAPPS:  No, sir.

13          MR. ADAMS:  Did you call anybody from the jail to tell

14  them at the time this happened?

15          MR. CAPPS:  Not that I can recall.

16          MR. ADAMS:  Have you seen Mr. Maybury or your other

17  cellmate since this -- since this alleged confession occurred?

18          MR. CAPPS:  I saw Mr. Maybury back in '93, and Charles

19  Peters just got out of Marion Adjustment Center about five

20  months ago.

21          MR. ADAMS:  As far as you know, both of them are in

22  this area?

23          MR. CAPPS:  I believe Mr. Peters is up in Jefferson

24  County.

25          MR. ADAMS:  Okay, sir.  One last thing.  Very, very



1  interesting to me.  Mr. Clark told you, did he not, and you told

2  the Sheriff, that Mr. Clark told you that on the evening that he

3  is accused of having committed this murder, that he stopped in a

4  gas station, on the night the murder supposedly took place, and

5  that they would remember him there, and that they had a

6  videotape, and that the police didn't even bother checking out

7  his alibi?  Didn't he tell you that?

8           MR. CAPPS:  He said they didn't check it out till

9  later.

10           MR. ADAMS:  Said they checked it out later?

11           MR. CAPPS:  If you read my statement on further, it

12  says that.  And, by that time, it had been erased.

13           MR. ADAMS:  What you said was, I guess, basically, he

14  meant that he had an alibi, and you all just brushed it off; is

15  that the statement that you made?

16           MR. CAPPS:  That's the statement.

17           MR. ADAMS:  And you told Joe Greer that in December of

18  '92?

19           MR. CAPPS:  Correct.

20           MR. ADAMS:  Did he -- did he tell you this after he

21  confessed?  Was this towards the end of your internment with

22  him?

23           MR. CAPPS:  I believe it's when he first came in

24  there.

25           MR. ADAMS:  It was when he first came in.  So, he --



1  he tells you all along he didn't do it, tells you what his alibi

2  is, and then sometime in the last week that you're -- you're

3  with him, he makes a laughing confession, and then he makes a

4  serious confession; that's your testimony?

5          MR. CAPPS:  Yes, sir.

6          MR. ADAMS:  Okay.  Judge, that's -- that's all I have

7  of this witness at this time.

8          THE COURT:  Mr. Rogers?

9          MR. ROGERS:  No questions.

10          THE COURT:  Any redirect, Mr. Smith?

11          MR. SMITH:  Clifford, have you ever asked me to write

12  a letter to the Parole Board for you?

13          MR. CAPPS:  When I first got in trouble again in '92,

14  before I ever Mr. Clark, I asked you to.

15          MR. SMITH:  All right.  And?

16          MR. CAPPS:  You said you would.

17          MR. SMITH:  Did I?

18          MR. CAPPS:  I believe you did.  I never saw it --

19          MR. SMITH:  All right.

20          MR. CAPPS:  -- but I believe -- you said you did, so I

21  believe you did.

22          MR. SMITH:  All right.  Now, and when was that?

23          MR. CAPPS:  Probably about March or April of '92 I

24  asked you.

25          MR. SMITH:  March or April of '92.  You asked me to,



1   and are you sure I did?  Because I don't remember it, but I

2   might have.

3           MR. CAPPS:  I -- I don't -- if you sent it directly to

4   the Parole Board, I never saw it.  I don't get to look in my

5   folder there.

6           MR. SMITH:  You don't get to look at your folder

7   there.

8           Now, have you ever asked me to write a letter to the

9   Parole Board on this May of '95 situation?

10          MR. CAPPS:  No, I haven't.

11          MR. SMITH:  All right.  And have I agreed to do that?

12          MR. CAPPS:  No, sir.

13          MR. SMITH:  Now, it looks like on this one here, RSP,

14  this last charge here, you got five years on, right?

15          MR. CAPPS:  Correct.

16          MR. SMITH:  That was the maximum on that charge.

17          MR. CAPPS:  Correct.

18          MR. SMITH: I was apparently losing my patience with

19  you.

20          MR. CAPPS:  Right.

21          MR. SMITH:  All right.  Now -- now, you mentioned

22  something about messing up in the jail.  What are you talking

23  about there?

24          MR. CAPPS:  Me and another boy goofing around one

25  night.  Decided to see what all the toilets would flush, so we



Case 3:17-cv-00419-GNS-CHL  Document 317-56  Filed 01/26/23  Page 30 of 32 PageID #: 28269

1  started flushing like socks, shirts, and ended up eventually

2  going for a bed sheet and it got clogged up.

3          MR. SMITH:  And it overflowed?

4          MR. CAPPS:  Yes, sir.

5          MR. SMITH:  All right.  Now, you talked about

6  absconding.

7          MR. CAPPS:  Correct.

8          MR. SMITH:  You were out on parole and then you

9  absconded.

10         MR. CAPPS:  Right.

11         MR. SMITH:  Where did you abscond to?

12         MR. CAPPS:  Jefferson County.

13         MR. SMITH:  You were supposed to stay in Meade County

14  and you went to Jefferson County?

15         MR. CAPPS:  Correct.

16         MR. SMITH:  That's all I have, Judge.

17         THE COURT:  Mr. Adams?

18         MR. ADAMS:  Mr. Capps, is it not true that the Parole

19  Board can release you at any time that it sees fit?

20         MR. CAPPS:  Very seldomly do they call you up there.

21         MR. ADAMS:  My question to you, Mr. Capps, is is it

22  not true that the Parole Board can release you at any time they

23  see fit?

24         MR. CAPPS:  You mean come up for parole?  I've never

25  seen them release anybody early the time that I've been



1  incarcerated.  I can't honestly answer that, Mr. Adams.  I've

2  never seen them --

3          MR. ADAMS:  Mr. Capps --

4          MR. CAPPS:  -- do it.

5          MR. ADAMS:  -- you probably know more about parole law

6  than I do, okay?  Is it not true -- I'll ask you one more time.

7  Is it not true that the Parole Board can release you any time

8  they see fit?

9          MR. CAPPS:  Circumstances.  Like if you're ill,

10 deathly ill, something like that, then they can't --

11         MR. ADAMS:  What about circumstances where you

12 cooperate and maybe make up a statement, a confession in a -- in

13 a murder case?  Haven't you seen people released for their

14 cooperation in the time that you've been in?

15         MR. CAPPS:  I've seen letters sent in recommendation

16 for parole.

17         MR. ADAMS:  You sure have.  Thank you, sir.

18         That's all I have.

19         THE COURT:  All right.  I still -- assume you still

20 don't have any questions, Mr. Rogers?

21         MR. ROGERS:  No, sir.

22         THE COURT:  Mr. Smith, do you have any questions?

23         MR. SMITH:  Just a second, Judge.

24         Is everything you've told us here today the truth?

25         MR. CAPPS:  Yes, sir.



```
1              MR. SMITH:  That's all.

2              MR. ADAMS:  No further questions.

3              THE COURT:  Finally excuse?  Finally excuse, Mr.

4    Smith?

5              MR. SMITH:  (No audible response).

6              THE COURT:  Mr. Adams?

7              MR. ADAMS:  Yes, sir.

8              THE COURT:  Okay.  You can make arrangements to

9    transport him back.

10             Take care, Clifford.

11             Call your next witness.

12             MR. SMITH:  Let me approach, Judge.

13                       (Conference in chambers.)

14             THE COURT:  Okay, Mr. Smith, call your next witness.

15             MR. SMITH:  Commonwealth announces closed, Your Honor.

16             THE COURT:  All right.  Ladies and Gentlemen, that's

17   the case for the Commonwealth.  There are, of course, motions

18   that have to be made on the record at this time and out of your

19   presence.  So, what I'm going to do is let you go home for the

20   weekend, and Monday morning, bright and early, we will start the

21   defense side of the case, as I indicated to you yesterday.

22             Now, several of you asked me about working tomorrow or

23   working Sunday.  I have no objections to that.  But, Ladies and

24   Gentlemen, bear in mind that the people that you have contact

25   with are going to want to discuss it with you, they're going to
```

