RENDERED: August 29, 1996
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

95-SC-461-MR

GARR KEITH HARDIN             APPELLANT

V.      APPEAL FROM MEADE CIRCUIT COURT
HONORABLE SAM MONARCH, JUDGE
92-CR-42

COMMONWEALTH OF KENTUCKY          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

This appeal arises from the judgment of conviction of Appellant, Garr Keith Hardin, for murder, for which he received a term of life imprisonment. He appeals to this Court as a matter of right.

Appellant, along with co-defendant Jeffrey Clark, was charged with the stabbing death of Rhonda Warford, whose body was found in a rural area of Meade County on April 5, 1992. It was determined that Appellant had been romantically involved with the victim, and that Clark was a close acquaintance of the two. Warford had been stabbed numerous times, including one wound to the back of the neck which lacerated the brain stem, but a precise time of death could not be established due to weather and climate conditions.

DEFENDANT'S EXHIBIT
48
1-27-20 Adams

Appellant raises five issues on appeal.

First, Appellant contends that the trial court improperly allowed the submission of materials seized pursuant to a search warrant of Appellant's residence. In a motion to suppress, which was subsequently denied by the trial court, defense counsel argued that the affidavit for the search warrant lacked probable cause. In this appeal, Appellant raises many of the same objections contained in that prior motion, and argues, in particular, that the affidavit lacks any information to indicate either that the victim had ever been at the address listed on the search warrant, or that any criminal activity had taken place at that residence. Moreover, Appellant asserts that there is no information in the affidavit which would indicate that any fruits, instruments or evidence of criminal activity concerning the victim in this case would be located at the address on the search warrant. Appellant concludes, based partly upon the testimony of the affiant and investigating officers at the suppression hearing, that the affidavit did no more than recite the facts of the case known at that time to police.

As a sub-issue to this argument, Appellant asserts that certain of the evidence procured from a search of Appellant's home were allowed to be admitted at trial despite defense counsel's objection that such items were irrelevant and immaterial to the case. It was the prosecution's theory that this killing was part of a satanic ritual; therefore, at trial, the Commonwealth introduced into evidence a satanic bible and other occult-related objects found at Appellant's residence, as

-2-

well as other items, such as writings and drawings done by Appellant. Appellant makes much of the fact that the prosecution was allowed to introduce this evidence even though two expert witnesses called by the Commonwealth indicated that the victim was not killed in a ritualistic murder or satanic sacrifice. Appellant adds that he had admitted to police to having previously been involved in satanic practices. Appellant also objects to the introduction, by the Commonwealth, of a number of photographs of pocket and hunting knives which were taken from Appellant's residence pursuant to the execution of the search warrant, as none of the knives were ever alleged to have been associated with the murder. Appellant argues that the probative value of all of this evidence was outweighed by the potential for prejudice. <u>Chumbler v. Commonwealth</u>, Ky., 905 S.W.2d 488 (1995).

Disposing of this latter issue first, we conclude that the items at issue amounted to more than, as Appellant would describe, "character type evidence of [Appellant] which lacks a legitimate connection to the crime charged . . . . " Appellant's Brief, at 8. While Appellant is accurate to note that in <u>Chumbler</u> we determined that the admission of certain evidence unrelated to the crime charged was improper, such a holding does not apply to the case at bar. As it was the Commonwealth's theory that the victim's stabbing death occurred pursuant to a satanic ceremony, certainly proof as related to Appellant's involvement in this "religious" practice was relevant to the crime for which he stood accused. Relevancy determinations rest heavily in the discretion of the trial judge and will not be

-3-

overturned absent a showing of abuse of such discretion. <u>Glens Falls Ins. Co. v. Ogden</u>, Ky., 310 S.W.2d 547 (1958); <u>Green River Electric Corp. v. Nantz</u>, Ky.App., 894 S.W.2d 643 (1995). We find that no such abuse of discretion occurred here in the introduction of either the satanic items or, although in a closer situation, in that of the photographs of the knives.

We now turn to Appellant's second objection herein — that the search warrant through which this evidence was obtained was facially invalid as not establishing probable cause to allow the police to conduct a search. <u>United States v. Correll-Corall</u>, 702 F.Supp. 1539 (D. Wyo. 1988); <u>United States v. Barrington</u>, 806 F.2d 529 (5th Cir. 1986); <u>United States v. Taylor</u>, 716 F.2d 701 (9th. Cir. 1983). Appellant likens the search warrant at issue to a blanket warrant which, in contravention of the recent Court of Appeals decision in <u>Commonwealth v. Smith</u>, Ky.App., 898 S.W.2d 496 (1995), cloaked the police with selective discretion in determining what may be searched. Appellant is correct to direct us to <u>Smith</u>, however, not for the reasons he would intend, as that case, which dealt primarily with the sufficiency of the premises to be searched, does not directly apply to Appellant's situation, nor does it support Appellant's argument herein. In <u>Smith</u>, the Court of Appeals correctly recognized that the issuing magistrate need not determine that the evidence sought is in fact on the premises to be searched or that the evidence is more likely than not to be found where the search takes place." <u>Id.</u> at 503, n.2 (citing <u>United States v. Fannin</u>, 817 F.2d 1379, 1382 (9th Cir. 1987)). The <u>Smith</u> court further stated that the

-4-

magistrate "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." Id. We believe that, from a review of the record in this case, it would, in fact, be reasonable to seek the items listed on the affidavit at Appellant's residence. In so holding, we refer to the trial court's summation of the facts at issue, as stated in its order denying suppression of the evidence, which indicated such reasonableness. For instance, the trial court pointed out, from the language of the affidavit, that such factors as the victim's romantic involvement with Appellant, the similarity of a hair found on the victim to a sample taken from Appellant, and various discrepancies in Appellant's statement to police, all supported a finding of probable cause as based upon the totality of the circumstances. See also Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Beemer v. Commonwealth, Ky., 665 S.W.2d 912 (1984).

In addition, we tend to agree with the Commonwealth that Appellant seeks to advance an incorrect legal standard herein. It is not necessary for the prosecution to establish that the victim was at the residence to be searched, or that the crime occurred there, when "given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Beemer, supra, at 914 (quoting Gates, supra, 462 U.S. at 238, 103 S.Ct. at 2330-2332, 76 L.Ed.2d at 548.)). Moreover, the affidavit and search warrant at

-5-

issue may also be upheld under the good faith exception established in Crayton v. Commonwealth, Ky., 846 S.W.2d 684 (1993). See also United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In Crayton, we noted that "[i]n some circumstances, the officer's affidavit may disclose all the information then possessed . . . ." Id. at 688. That seems to be what occurred in this matter, for while Appellant contends that the affidavit merely rehashed the police report, such a situation — as we concluded in Crayton — does not render the search warrant per se invalid, for "the judicial officer to whom the affidavit is presented must determine whether the instrument is sufficient on its face to establish probable cause." Id. at 688. We feel that the trial court, as above stated, correctly determined that the judicial officer in this matter did not betray the mandate of Section 10 of the Kentucky Constitution in issuing the search warrant. See also Wilson v. Commonwealth, Ky., 621 S.W.2d 894, 895 (1981) ("Items to be seized under a legally executed search warrant must be described 'particularly' or 'as nearly as may be' under the respective provisions of the Fourth Amendment to the U.S. Constitution and § 10 of the Kentucky Constitution."). As such, we likewise do not find this objection by Appellant to be persuasive.

In another relevancy matter, Appellant contends that the trial court erred in not allowing the defense to submit testimonial evidence which, Appellant maintains, was of an exculpatory nature. At issue is the testimony of a former boyfriend of the victim, James Tyrell, who was subpoenaed by the

-6-

defense pursuant to the defense's theory that someone other than Appellant had committed the crime. To this end, the defense sought to introduce Tyrell's statement that the victim had told him that she once robbed a man she had just met and with whom she had gone home. Appellant maintains that this evidence illustrated the possibility that the victim was killed for reasons other than satanic sacrifice — for instance, as a result of her robbery or theft activity. The defense argued that this testimony fell as an exception to the hearsay rule as made against the victim's penal interest. KRE 804. The trial court, however, after conducting an in camera hearing on this issue, during which Tyrell testified, determined that this evidence was inadmissible as not relevant to the case at bar. Appellant notes that this testimony was preserved by avowal. Appellant concludes that the court's refusal to allow in this testimony warrants the granting of a new trial pursuant to Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

As stated above, relevancy issues are clearly matters left to the discretion of the trial judge. Not only do we agree with the trial court herein that such testimony was not relevant to the issue of whether or not Appellant committed this crime, but, additionally, find that the admission of such evidence would have been more prejudicial than probative. We return, as Appellant first directed us, to Chumbler, supra, wherein we determined that detailed evidence relating to a defendant's homosexual relations "which lacks legitimate connection to the crime charged is irrelevant and amounts to a smear upon the defendant's character,

-7-

resulting in prejudicial error." Id. at 492. Likewise, in the case at bar, the fact that the victim had admitted to, on one occasion, committing a robbery, without more, does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. We agree with the Commonwealth that this evidence "was insufficient to support such a speculative theory." Appellee's Brief at 22. Thus, this argument must fail.

Appellant next alleges that the Commonwealth, through the actions of police, withheld exculpatory evidence from the defense. At issue is the testimony of a government informant, Clifford Capps, who claimed that Appellant's co-defendant, Clark, had made certain incriminating statements to Capps while the two were incarcerated together. Appellant maintains that he was indirectly implicated in this confession by his co-defendant. Appellant first asserts that it was defense counsel's understanding that Capps' testimony would only be presented after the jury had reached a verdict as to Appellant, in order to avoid any Bruton-type cross-examination problems. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, Appellant alleges that, on the morning of trial, the Commonwealth altered its strategy and advised defense counsel that it intended to call Capps in its case-in-chief to testify against Clark, and that later, if Clark took the stand, the prosecution would recall Capps after Appellant's defense counsel had an opportunity to cross-examine Clark as to the making of any

-8-

statements to Capps. Appellant points out that defense counsel objected to the Commonwealth's departure from the original agreement in this case, and maintains that, in reliance on such agreement, defense counsel had not attempted to investigate Capps as it did not appear that he would present testimony against Appellant.

That defense counsel had not adequately prepared for Capps' testimony, while unfortunate for Appellant in the defense of his case, does not merit reversal in this matter. A review of the record indicates that, nearly five months before trial, the defense was put on notice that Capps' testimony could very well be heard during the guilt phase of Appellant's trial. An order entered by the trial judge on October 6, 1994, stated, in part, "[t]hat the Plaintiff's Motion to Bifurcate is remanded per request of the Commonwealth." Moreover, as the Commonwealth points out, upon being told by the prosecution, on the first day of trial, that the Commonwealth no longer intended to bifurcate the proceeding, defense counsel still had three full days to investigate the credibility of Capps before the informant took the stand.

As to the specifics of this issue, Appellant asserts that the exculpatory evidence was discovered by defense counsel after the jury verdict in the trial but before sentencing, when it was learned that Capps had sent a letter to another former inmate, Kevin Justis, wherein Capps solicited Justis to commit perjury in order to substantiate his statements. It appears that Capps' motive was to gain favor with the Commonwealth in order to

receive shock probation. Appellant points to a statement taken by an investigator on March 27, 1995, during which Justis substantiates this allegation against Capps, and adds that Appellant never made any incriminating statements to him. In addition, during this interview, Justis stated that he alerted Meade County Sheriff Joe Greer to Capps' letter as early as three years before trial, at which time Greer stated, according to Justis, "This changes everything." Appellant also attaches to his brief, the transcript of another interview of Justis, this time conducted by a Colorado public defender seeking information that would impeach Capps' credibility as a witness to a murder trial in that jurisdiction. Again, in that interview, Justis noted that he told Greer of Capps' letter. Appellant also refers to the affidavit of that Colorado public defender indicating that he discussed the matter of the Capps letter with Greer after interviewing Justis. However, Appellant maintains that at no time did Greer or any member of the Meade County Sheriff's office ever make mention of the fact that they had been contacted by Justis or had interviewed him in connection with the letter written by Capps. Appellant reiterates that no such letter or information was ever presented to defense counsel for either Appellant or Clark prior to trial.

Appellant asserts that the foregoing information clearly indicates that Greer was aware that Capps had solicited Justis to commit perjury to bolster the informant's story at a time well before the date of trial. Appellant cites to Kyles v. Whitley, 514 U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), during

which the U.S. Supreme Court made it clear that the government's withholding of exculpatory evidence should not be condoned or tolerated in our system of justice. Appellant points out that even prior to Kyles, this Court indicated that information in the hands of the police must be produced to the defendant and that failure to so do would amount to prejudicial error. Anderson v. Commonwealth, Ky., 864 S.W.2d 909 (1993). See also Funk v. Commonwealth, Ky., 842 S.W.2d 476 (1993). Appellant adds that any information affecting the credibility of a prosecution witness clearly falls within the category of exculpatory evidence. Rolli v. Commonwealth, Ky.App., 678 S.W.2d 800 (1984). Appellant concludes that the right to cross-examine witnesses to impeach their credibility is fundamental to the fair trial of a defendant and impeachment evidence as well as exculpatory evidence can constitute evidence favorable to the accused and must be disclosed. Mounce v. Commonwealth, Ky., 795 S.W.2d 375 (1990).

Appellant's citation to case law related to this issue is accurate, but such decisions rely upon a finding as to whether or not the exculpatory evidence was actually in the possession of the Commonwealth, or its agents. See, e.g., Anderson, supra, at 912 (involving a Kentucky State Police detective who had a prior taped statement of the complaining witness); Funk, supra, at 481 ("When a Commonwealth's detective testified, he had in his possession a report which, among other things, contradicted the Commonwealth's pathologist's in-court testimony . . . .") (Emphasis added). Moreover, RCr 7.26 states, in pertinent part,

-11-

that "the attorney for the commonwealth shall produce any statement of the witness in the form of a document or recording in its possession . . . ." (Emphasis added). We refer to the findings of the trial court contained in its response to defense counsel's motion for a new trial based upon what the defense claimed was this newly discovered exculpatory evidence. In that part of the order relating to the defense's allegation that the Commonwealth had not provided the defense with this evidence, the trial court explained that "[t]he underlying issue is whether or not the Commonwealth, through Sheriff Greer, had knowledge or possession of the letter in question." Upon reviewing all of the evidence before it, including affidavits filed by both the defense and the Commonwealth, the trial court "conclude[d] that the Defendants have not shown or proven that Sheriff Greer had knowledge or possession of the letter in question during or prior to the trial." We have held that absent an abuse of discretion, the trial court's ruling on such a matter will stand. <u>Tinsley v. Jackson</u>, Ky., 771 S.W.2d 331, 332 (1989). We have also examined the record in these types of cases to determine if any bad faith on the part of the prosecution was involved in preventing this evidence from reaching the defendant. <u>Sanborn v. Commonwealth</u>, Ky., 892 S.W.2d 542, 556 (1995); <u>Tinsley</u>, <u>supra</u>, at 332. As we determine herein that there was neither bad faith by the Commonwealth, nor an abuse of discretion by the trial court, we are unpersuaded by Appellant's argument herein.

Relying upon the Capps letter, Appellant next argues that the trial court erred in denying a new trial based upon this

newly discovered evidence. Appellant asserts that in so ruling, the trial court did not properly take into account the law of Kentucky in assessing the nature of exculpatory evidence and its relationship to a motion for a new trial. Appellant again relies upon Rolli, supra, and Mounce, supra, in arguing that impeachment evidence should be furnished by the Government in order to give a defendant a fair trial. In addition, Appellant maintains that as, from the text of the letter, it could well be concluded that Capps was soliciting someone else to commit perjury to bolster his testimony, he may very well have committed perjury himself in so testifying. Appellant asserts that numerous cases in Kentucky have resulted in reversal of a jury verdict where a conviction was obtained through the use of perjured testimony. To this end, Appellant relies upon Mullins v. Commonwealth, Ky., 375 S.W.2d 832 (1964), wherein this Court held that new evidence consisting of sworn statements by prosecution witnesses indicating that perjury had occurred at the trial warranted reversal. Likewise, Appellant notes that in Jennings v. Commonwealth, Ky., 380 S.W.2d 284 (1964), a case similar to this matter, this Court held that if evidence not known by the defendant to be incompetent at the time of trial was used against that defendant in a criminal prosecution, it would be grounds to attack the judgment of conviction if there were at least a substantial possibility that, in the absence of such evidence, the verdict would have been different. Appellant argues that it must be assumed that the jury afforded Capps' testimony such consideration, especially in light of the trial court's acknowledgment, in its order denying a

directed verdict, that some weight was to be given this evidence. In addition, Appellant asserts that Kentucky courts have afforded a different standard for granting a new trial when there are allegations of newly discovered evidence. Such a standard, according to Appellant, involves whether the perjured testimony could have, "in some reasonable likelihood," affected the judgment of the jury. Williams v. Commonwealth, Ky., 569 S.W.2d 139 (1978). See also Duncil v. Green, Ky., 424 S.W.2d 587 (1968).

Appellant is correct to note that in order to justify the granting of a new trial, "it must still be determined whether there exists any reasonable likelihood that the false testimony could have affected the judgment of the jury under the evidence as a whole." Williams, supra, at 144. However, a resolution of this issue depends upon the extent to which the witness, alleged to have offered perjured testimony, was otherwise impeached at trial, and the weight afforded such testimony at trial. Id. In his appeal to this Court, Appellant takes great liberties in his description of Capps' testimony. A review of the trial proceedings indicates that while Capps did acknowledge that Clark, on two occasions, confessed to the murder, he did not so directly state that Appellant also participated in the crime. Appellant makes much of the fact that Clark's admission, as related by Capps, "by innuendo referred to [Appellant]." Appellant's Brief, at 21. However, such intimation does not convince us "that the perjury, if such it be, 'could in any reasonable likelihood have affected the judgment of the jury.'"

-14-

Cope v. Commonwealth, Ky., 645 S.W.2d 703, 705 (1983). Moreover, while the trial court, in denying the defense's motion for a directed verdict, specifically relied upon the testimony of Capps, it characterized this evidence with respect to Appellant as "more marginal in nature." In addition, defense counsel, on cross-examination of Capps, was able to bring out that the informant, who had first been jailed in April of 1992 to serve an eventual fourteen year sentence, gave his statement of Clark's confession to police on December 2, 1992 and was then paroled later that month. As Capps' parole was later revoked, defense counsel also questioned the informant's motives in testifying at trial, as he was again up for parole in a couple of months. As such, we cannot conclude that any such newly discovered evidence relied upon here by Appellant "would with reasonable certainty have changed the verdict if a new trial was granted." Gibbs v. Commonwealth, Ky.App., 723 S.W.2d 871, 876 (1987).

Finally, Appellant argues that the evidence against him was so weak as to warrant the granting of a directed verdict. Appellant asserts, to summarize, that based upon certain testimony presented at trial — such as, that of the victim's mother, Appellant's mother, and, even that of Appellant — it would have been physically impossible for Appellant to have killed the victim within the time frame established at trial. Moreover, Appellant notes that, per the testimony of Appellant's mother and sister, his whereabouts were accounted for from the time of the killing until the time when the victim's body was discovered and that, thus, it was not possible that he could have

-15-

murdered the victim and, several days later, disposed of her body. Appellant contends that the jury, by ignoring such alibi information, returned a verdict which fell contrary to the weight of the evidence, and which rather, amounted to a conviction based merely upon the highly inflammatory and prejudicial evidence of satanic practices.

While Appellant advances a worthy argument herein, he fails to make mention of the evidence admitted against him which we feel, upon review, amounts to "more than a mere scintilla," Commonwealth v. Benham, Ky., 816 S.W.2d 186, 188 (1991), and, thus, defeats any motion for a directed verdict. For instance, in addition to the testimony to which Appellant refers, there was also presented, at trial, testimony from other witnesses indicating that Appellant had been involved in satanic rituals and animal sacrifice, and that he had, on more than one occasion, threatened to kill the victim. There was other evidence introduced at trial by which the jury could infer guilt, including a hair found on the victim's clothing which was similar in characteristics to hair samples taken from Appellant, and the items, such as the occult material and knives, found pursuant to a search of Appellant's residence. In addition, as pointed out in the Commonwealth's Counterstatement of the Case, it became evident, during trial, that Appellant and his co-defendant had told numerous lies to police during the course of the investigation.

In Commonwealth v. Sawhill, Ky., 660 S.W.2d 3, 5 (1983), this Court articulated the standard for a directed verdict as

-16-

"if under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." Likewise, in Benham, supra, we reiterated the criterion set forth in Sawhill and held that "[o]n motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." Id. at 187. We believe that by drawing such inferences from the evidence presented in this case, it was not clearly unreasonable for the jury to find guilt. Appellant's assertion that he had an air-tight alibi notwithstanding, such argument does not warrant taking this case away from the jury, as "[t]he credibility and the weight to be given the testimony are questions for the jury exclusively." Sawhill, supra, at 5. That the jury did not believe Appellant's alibi in this highly circumstantial case does not necessarily indicate that a verdict was returned counter to the state of the evidence, and, as such, does not warrant the granting of a directed verdict in this matter. We find the evidence offered in this case to be "sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty . . . ." Benham, supra, at 187. Thus, Appellant's argument herein must fail.

For the foregoing reasons, the judgment of conviction is affirmed.

Stephens, C.J., Baker, Graves, Lambert, Stumbo, and Wintersheimer, JJ., concur. King, J., not sitting.

**COUNSEL FOR APPELLANT:**

Wallace N. Rogers
Mulhall, Turner, Hoffman & Coombs
440 South Seventh Street
Suite 300
Louisville, KY  40203


**COUNSEL FOR APPELLEE:**

A. B. Chandler, III
Attorney General

Perry T. Ryan
Assistant Attorney General
P. O. Box 2000
Frankfort, KY  40602-2000