Filed                    92-CR-00042                    Ellen F. Lindsey, Meade Circuit Clerk
NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

COMMONWEALTH OF KENTUCKY
MEADE CIRCUIT COURT
DIVISION 1
NO. 92-CR-00042, 92-CR-00043

COMMONWEALTH OF KENTUCKY                                       PLAINTIFF

vs.                          **MOTION TO DISMISS**

*(Filed Electronically)*

GARR KEITH HARDIN
JEFFREY DEWAYNE CLARK                                          DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Office of the Attorney General's Constitutional obligation is to adhere to

its mandate to do justice. After an extensive review of the evidence in this case

beginning on October 3, 2017,[1] the Commonwealth of Kentucky, by and through the

undersigned Assistant Attorneys General, Jon Heck and Jeffrey R. Prather, hereby

moves this Court to dismiss Indictments 92CR00042 and 92CR00043. In support of

the present motion, the Commonwealth states as follows:

On April 1, 1992, nineteen-year-old Rhonda Sue Warford left her home in

Louisville sometime around midnight and was never seen by her family again.

Three days later her body was found in a field in Meade County.  An autopsy

determined she had been stabbed to death.  Suspicion immediately fell upon her

then boyfriend, defendant Garr Keith Hardin, and his friend, defendant Jeffrey

Dewayne Clark, due in large part to the fact that both defendants were admitted



DEFENDANT'S EXHIBIT
103

---

[1] On October 3, 2017, the Office of Attorney General accepted jurisdiction of the case as special prosecutor.

Filed
92-CR-00042
Ellen F. Lindsey, Meade Circuit Clerk
NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

Satan worshippers. Both defendants cooperated with law enforcement giving a number of statements.

In their recorded statements, they denied involvement in Ms. Warford's disappearance and her subsequent death. Nevertheless, it is alleged that during his transport to Louisville Police Headquarters for questioning, Mr. Hardin told homicide Detective Mark Handy that he had participated in animal sacrifice and had wanted to sacrifice a human.   This alleged confession was used to great effect during the trial wherein the Commonwealth's theorized that Ms. Warford had been murdered as part of a satanic ritual.

In addition to Mr. Hardin's alleged statement that he was interested in sacrificing a human, a number of items recovered from Mr. Hardin's residence suggested he practiced Satanism. This included a broken chalice with a bloody rag next to it, which supported the Commonwealth's theory that Mr. Hardin had sacrificed animals. Regardless, Mr. Hardin testified at trial that the blood on the rag was his. With the limited DNA testing of the early nineties, the Commonwealth could reasonably suggest that the blood belonged to a sacrificed animal.

It is worth noting that Mr. Hardin testified to being a Satanist. He went as far as engaging in rituals and sketching what could only be deemed highly offensive drawings of Jesus Christ and mocking Christianity.  Indeed, other witnesses offered supporting testimony that the defendants were involved in Satanism. Witnesses included Mr. Clark's co-worker and a woman who was the mother of Mr. Clark's child. This all supported the Commonwealth's theory: that Ms. Warford was the victim of a satanic ritual homicide.

Filed          92-CR-00042     02/08/2018          Ellen F. Lindsey, Meade Circuit Clerk

Filed
92-CR-00042
Ellen F. Lindsey, Meade Circuit Clerk
NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

Admittedly, there was little physical evidence to link either defendant to Ms. Warford's body or the scene of the crime. However, the Commonwealth's forensic examiners determined that a hair found on Ms. Warford's sweatpants was similar in nature to Mr. Hardin's hair. This proved crucial in the Commonwealth's case, because the sweatpants had been washed, and Ms. Warford and Mr. Hardin had not been together the day of her disappearance. In effect, the hair linked Mr. Hardin to Ms. Warford, and the scene of the crime.

In addition to the hair, Ms. Warford's fingerprint was found in the back of Mr. Clark's car. But without the ability to date the fingerprint, the Commonwealth could not say when it was left. As such, the weight given to the fingerprint by the jury is dubious – it was undisputed that Ms. Warford had been in Mr. Clark's car because she was in a relationship with his friend, Mr. Hardin. Therefore, the only compelling piece of physical evidence was the hair found on Ms. Warford's sweatpants. The hair directly contradicted Mr. Hardin's denial that he had had no contact with Ms. Warford the day of her disappearance, and tied the defendants to the crime scene.

Once the defendants were charged, additional evidence emerged that supported the defendants had, in fact, committed Ms. Warford's murder. Inmate Clifford Capps who shared a cell with Mr. Clark in the Meade County Jail advised authorities that he admitted to the murder on two occasions. Mr. Capps also testified against the defendants at trial.

Taking the evidence as a whole, it was reasonable for the jury to convict both men. Mr. Hardin did not dispute that he had practiced Satanism, and no fewer than

3

Filed         92-CR-00042                Ellen F. Lindsey, Meade Circuit Clerk

NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

two witnesses testified that they believed Mr. Clark also practiced Satanism. In addition, Det. Handy told the jury that Mr. Hardin stated that he had participated in animal sacrifice and was interested in sacrificing a human.

The jury was presented with the broken chalice and bloody rag found nearby that the prosecution opined was used in animal sacrifice. It heard damaging testimony regarding the behaviors of both men that would offend most normal notions of decency: offensive sketches of Jesus Christ, a Satanic Bible, etc. The jury learned that just weeks before Ms. Warford's death, that Mr. Hardin used a needle and ink to tattoo an inverted cross on her torso. It learned from Mr. Capps that Mr. Clark confessed to committing Ms. Warford's murder. Finally, the jury learned that a hair found on Ms. Warford's sweatpants had the same microscopic properties as that of Mr. Hardin. After all this evidence, both men were convicted of murder and both received life sentences. Given the nature of the evidence, the verdicts by the jury were reasonable, as was Judge Monarch's ruling upholding them.

In addition, after they were convicted, both defendants gave incriminating statements to the Parole Board during their hearings in 2006, and again in 2014. While Mr. Clark never admitted to killing Ms. Warford during his 2014 hearing, he admitted helping Mr. Hardin to move her body. Mr. Hardin inculpated both himself and Mr. Clark during his 2014 parole hearing, advising the Board that an "explosion of violence" erupted after driving Ms. Warford to Meade County.

This case has since been litigated to the Kentucky Supreme Court (twice), the Sixth Circuit Court of Appeals, and most recently, before this honorable Court by way of a CR 60.02 Motion. This Court took the extraordinary step of ruling that the

4

Filed          92-CR-00042                                          Ellen F. Lindsey, Meade Circuit Clerk

NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

evidence admitted at the 1995 trial was so fundamentally compromised that justice required that the convictions be set aside and the defendants be given a new trial.

This case has been prosecuted at the trial level by the various Commonwealth Attorneys in the 46th Circuit. On September 22, 2017, the current Commonwealth Attorney requested that the Office of Attorney General accept the case – and thus trial-level jurisdiction – as a Special Prosecutor.  On October 3, 2017, the Office of the Attorney General, Special Prosecutions Unit, accepted the Special Prosecutor request, but with instructions from the Attorney General to conduct a full and fresh review of the state of the evidence in the case. [2]

## CURRENT STATE OF THE EVIDENCE

### The Hair from Sweatpants

Several years after their convictions, counsel for the defendants sought to have the hair that was recovered from Ms. Warford's sweatpants tested to obtain a DNA profile. Counsel opined correctly that although DNA testing was not available prior to the trial in 1995, advancements in testing were such that a DNA profile could be determined from a hair. After a substantial amount of litigation, the Kentucky Supreme Court ordered the hair tested.  It has been determined with a high degree of scientific certainty that the hair collected does not match either defendant. As such, the one piece of physical evidence to the crime scene does not

---

[2] Perry Ryan of the Office of the Attorney General, who was appellate counsel in the case, had been assisting the Commonwealth Attorney, David Williams, in the post-conviction litigation. On October 3, 2017, undersigned counsel substituted for Mr. Ryan and Mr. Williams as counsel for the Commonwealth.

5

Filed
92-CR-00042

NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

link to the defendants, and potentially points to an alternate perpetrator. What was once a crucial piece to the Commonwealth's case now supports defenses's positions that neither defendant had anything to do with the murder of Ms. Warford.[3]

### Hardin's Admission to Det. Handy

Mr. Hardin's admission that he participated in animal sacrifices and was interested in performing a human sacrifice was also a vital piece of evidence that provided the Commonwealth with a motive for Ms. Warford's murder; it was a satanic ritualistic murder, which Mr. Hardin admitted to Det. Handy he was interested in committing. What this Honorable Court and the parties now know is that Det. Handy has been investigated for falsifying at least one other confession. This matter was thoroughly vetted by the defense at the CR 60.02 hearing.

Suffice it to say that shortly after Ms. Warford's murder another murder was committed in Louisville involving the shooting death of a convenient store clerk. In that case, Det. Handy generated a recorded statement of this suspect, Edwin Chandler, and an investigative summary. The investigative summary contained details of the murder that were not contained in Mr. Chandler's recorded statement.

It is now known that Mr. Chandler did not commit the murder for which he was charged and convicted, and that he was nowhere in the vicinity of the crime scene when the murder occurred. Despite this fact, Det. Handy, in his investigative

---

[3] It should be mentioned that the hair from the sweatpants was not the only hair recovered from the victim. Gray hairs were found in the victim's hand that have never been associated with either defendant or, at the present time, any other suspect in the case.

6

Filed   92-CR-00042   Ellen F. Lindsey, Meade Circuit Clerk
NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

summary, ascribed to Mr. Chandler facts that he could not possibly have known. Specifically, Det. Handy alleged that Mr. Chandler told him what another customer in the store, just moments before the shooting death of the clerk, was wearing.

We now know Mr. Chandler was not in the store.

Mr. Chandler either guessed what an unseen person was wearing and whom he was otherwise not advised (an improbable proposition), or Det. Handy fabricated this portion of his report to give more credence to his theory that Mr. Chandler was the true suspect. These events occurred around the same time that the defendants were being investigated – and prosecuted – for the murder of Ms. Warford. Put bluntly, the Commonwealth cannot put credibility into an unrecorded statement taken by a detective who has a documented history of fabricating details of a murder case in his investigative summaries.

It is worth noting that if this case were retried and Det. Handy (now Sgt. Handy) were called as a witness, the jury would learn about his handling of the Chandler case. The jury would further hear that Mr. Chandler was falsely imprisoned for almost ten years based in large part on the testimony of Det. Handy.

In both defendants' recorded statements they made no such admissions, and disavowed any involvement in Ms. Warford's death. The Commonwealth cannot call Det. Handy as a witness to testify regarding the only unrecorded pretrial admission.

### The Broken Chalice and Bloody Rag

At trial, both defendants were accused of performing animal sacrifices. The Commonwealth argued that the chalice and bloody rag collected from Mr. Hardin's

7

Filed    92-CR-00042    Ellen F. Lindsey, Meade Circuit Clerk
NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

residence was direct physical evidence of animal sacrifice.  During their testimony,

both defendants denied ever sacrificing animals.  Mr. Hardin testified that the blood

on the rag was his own.  Because DNA testing was not available at that time, each

party drew their preferred inference: for the Commonwealth, the blood was

probably that of an animal; for the defense, the blood was Mr. Hardin's.

We now know through DNA testing that the blood came from Mr. Hardin. As

such, the Commonwealth can no longer argue in good faith that the chalice was

used for animal sacrifice. In addition, as with the hair, the results of the blood test

now bolster the defendants' credibility because Mr. Hardin has always maintained

the blood on the rag was his.  DNA testing confirms that he has been telling the

truth.


## Clifford Capps Testimony

Mr. Capps alleged at trial that Mr. Clark admitted twice to the killing of Ms.

Warford.  We now know that in the weeks after his testimony a letter was provided

to law enforcement by a fellow inmate, Kevin Justice. The letter can be interpreted

as Mr. Capps asking for Mr. Justice to recall a conversation Mr. Justice had with

Mr. Hardin, wherein Mr. Hardin made an incriminating statement to Mr. Justice.[4]

Or the letter could also be interpreted as Mr. Capps encouraging Mr. Justice to

testify that Mr. Hardin confessed to him.

---

[4] Mr. Capps testified at the CR 60.02 hearing that Mr. Justice told him that Mr. Hardin had
confessed to him. That is how he allegedly knew Mr. Justice had this information.

8

Filed 92-CR-00042    Ellen F. Lindsey, Meade Circuit Clerk
NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

The Court's concern for the appearance of requesting perjured testimony against the defendants was evidenced by its questioning of Mr. Capps during the CR 60.02 hearing. Moreover, when Mr. Justice's testimony was elicited by the defense at the CR 60.02 hearing, Mr. Justice was clear: Mr. Hardin never confessed to him; the letter from Mr. Capps was a request for Mr. Justice to falsely testify against the defendants. In addition, Mr. Justice was aware of at least one other instance in which Mr. Capps offered up perjured testimony against another inmate.

If this case were to be retried, the jury would hear more about Mr. Capps than the original jury in 1995. Neither Mr. Justice, nor the letter in question was known to the defense either before or during the first trial. The defense is now well acquainted with both. As a result, Mr. Capps' testimony, if elicited, would almost certainly be given less weight by a more informed jury.

Statements Made to Parole Board

As stated above, both defendants gave incriminating statements to the Parole Board. The Commonwealth's primary concern is whether these statements would be admissible at a new trial. Although undersigned counsel could not find a case directly on point, it is worth stating that when the Kentucky Supreme Court reviewed the admissibility of the statements to a Parole Board, it rejected the authority previously argued by the Commonwealth, *District Attorneys v. Osborne*, 557 U.S. 52 (2009). The Supreme Court stated:

> *Osborne* is a civil case that has little to nothing to do with resolving the present issue. It does not stand for the broad proposition that post-trial confessions are automatically

9

Filed   92-CR-00042   Ellen F. Lindsey, Meade Circuit Clerk

NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

admissible upon retrial. Moreover, Appellees' confessions were elicited more than a decade after their convictions.

Appellees also claim that questioning by the Parole Board members was coercive, basically telling them that they would not be paroled unless they confessed. While we are fully aware that confession, acceptance and remorse are valuable steps to rehabilitation, we see little merit in insincere and contrived admissions, which are induced solely by the yearning to be free. One example is the previously discussed case of Edwin Chandler. While imprisoned, Chandler confessed during a Parole Board hearing. He was subsequently exonerated by newly discovered DNA evidence. An abundance of scholarly literature captures the problematic nature of such confessions. *E.g., Daniel S. Medwed, The Innocent Prisoner's Dilemma: Consequences of Failing to Admit Guilt at Parole Hearings*, 93 Iowa L. Rev. 491 (2008). *Commonwealth v. Clark*, 528 S.W. 3d 342 (Ky. 2017) at 348-349.

The Court goes on to state:

We cannot say that the trial judge abused his discretion in discounting the statements of Hardin to the parole board. We think a jury would also be skeptical of such a "confession." The thorny evidentiary issues of both the admission of the statement to the parole board, as well as the means to undermine its credibility by the Appellees, await another day. *Id.* at 349.

The Commonwealth is aware that this Court used similar language in its

July 14, 2016 Order which was repeated most recently in its recent Order

dismissing charges of Perjury and Kidnapping against the defendants.  To wit:

[T]he Court finds that there is reason for candidates for parole to believe that failing to admit culpability or otherwise take responsibility for the crime(s) for which they are imprisoned, will adversely affect the likelihood of obtaining parole. Thus, the Court finds that the admissions made by both Movants during their parole hearings has no legal relevance in the Court's determination herein and the Court attaches little weight to this evidence.

(January 19, 2018 Order p. 3)

10

Filed        92-CR-00042        Ellen F. Lindsey, Meade Circuit Clerk

NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

The trial Court is the gatekeeper of evidence and decisions concerning the admissibility of evidence will not be disturbed unless the Court abuses its discretion. *Clark v. Commonwealth*, 223 S.W.3d 90 (Ky. 2007). Given the opinions of this Honorable Court, as well as that of the opinion of the Kentucky Supreme Court, the Commonwealth believes that the statements before the Parole Board would be ruled inadmissible. Furthermore, even if the statements were admitted, it is unlikely the jury would find the statements persuasive for the very reasons articulated above.

## CONCLUSION

When the defendants were tried almost twenty-three years ago, the Commonwealth presented a case whereby it appeared to a reasonable jury that the defendants were guilty beyond a reasonable doubt. At that time, the Commonwealth could prove a motive, and believed it had reliable physical evidence and reliable witnesses that heard extremely incriminating statements from the defendants.

Subsequent discoveries about the reliability of these witnesses, along with the development of more reliable scientific testing, leave the Commonwealth to conclude that there is no longer sufficient evidence by which a reasonable jury could conclude the defendants are, in fact, guilty beyond a reasonable doubt. The Office of the Attorney General's constitutional obligation is to adhere to its mandate to do justice. Therefore the Commonwealth does hereby motion this Court to dismiss Meade County Indictments 92-CR-00042 and 92-CR-00043.

11

Filed          92-CR-00042          Ellen F. Lindsey, Meade Circuit Clerk

NOT ORIGINAL DOCUMENT
06/28/2021 03:52:16 PM
85696

Respectfully Submitted,


ANDY BESHEAR
KENTUCKY ATTORNEY GENERAL


BY: /s/ Jon Heck
JON HECK
ASSISTANT ATTORNEY GENERAL
Office of Special Prosecutions
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
(502) 696-5337
jon.heck@ky.gov




BY: /s/ Jeffrey R. Prather
JEFFREY R. PRATHER
ASSISTANT ATTORNEY GENERAL
Office of Special Prosecutions
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
(502) 696-5337
jeffrey.prather@ky.gov

Filed          92-CR-00042          02/08/2018          Ellen F. Lindsey, Meade Circuit Clerk