Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 1 of 82 PageID #: 28775
HEARING - MOTION FOR A NEW TRIAL #17 taken on July 13, 2015
219

```
 1        nothing but the truth?
 2            THE WITNESS:  I do.
 3            JUDGE BUTLER:  Have a seat in the witness chair
 4        and please speak up so we can hear your testimony.
 5        And let's start off by you stating your name and
 6        spelling your last name, please.
 7            THE WITNESS:  Mark Handy, H-A-N-D-Y.
 8                    DIRECT EXAMINATION
 9    BY MR. SCHECK:
10        Q    Now, Mr. Handy, were are you currently
11    employed?
12        A    I am a Sergeant with the Jefferson County
13    Kentucky Sheriff's office.
14        Q    All right.  So what would you prefer to be
15    called during the course of this examination?
16        A    Mark's fine.
17        Q    What?
18        A    Mark is fine.
19        Q    Or Mr. Handy, would that be fair enough?
20        A    Mr. Handy's fine.
21        Q    And you were a detective at the time of the
22    Hardin and Clark trial, correct?
23        A    Correct.
24        Q    At the Louisville Police Department?
25        A    Correct.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1       Q    Now, sir, prior to coming to testify here at
2  this proceeding, you're here by way of subpoena; is that
3  right?
4       A    Correct.
5       Q    Did you review any documents prior to coming
6  here in preparation for your testimony?
7       A    No.
8       Q    Did you review any case reports that you wrote
9  in this case?
10      A    No.  I did not.
11      Q    Did you review any testimony that you gave at
12 this trial?
13      A    No.  Did you review any testimony that you
14 gave either in the civil or the criminal case of Edwin
15 Chandler?
16      A    No.
17      Q    You were here this morning, you saw that Mr.
18 Butler, Denny Butler, and Mr. Chandler were here?
19      A    I saw them as they were leaving.
20      Q    And you're aware of the fact that they
21 testified?
22      A    I guess.
23      Q    Okay.  Now, you also -- withdrawn.  Now, in
24 fairness to you as an officer of the Court, right, I'd
25 like to ask you: Do you have a lawyer or have you
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    consulted with a lawyer with respect to any possible

2    criminal action being taken against you with respect to

3    the Chandler case, specifically your testimony at trial

4    or at any of the civil proceedings, the depositions --

5         A    No.

6         Q    -- in this case?  Right.  So you have no --

7    you've consulted no lawyer about that?

8         A    Correct.

9         Q    All right.  And in fairness to you, I'm going

10   to ask you a series of questions with respect to the

11   Chandler case and your customs and practices as a

12   detective.  And do you feel comfortable --

13            MR. RYAN:  Your Honor, I just want to make a

14        continuing objection to the relevance of this and

15        under KRE 404 just for the record.

16            JUDGE BUTLER:  So noted.  You can continue.

17   BY MR. SCHECK:

18        Q    And in fairness, you're aware that Denny

19   Butler has called for a criminal investigation if not

20   proceeding against you with respect to false testimony

21   in the Chandler criminal trial and in the civil

22   proceeding?

23        A    You know, I don't know who asked for what.

24            MR. WILLIAMS:  Judge, I'm not sure.  I thought

25        he testified that he handed it over to the police

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL    Document 317-75    Filed 01/26/23    Page 4 of 82 PageID #:
28878
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
222

1        chief, that he didn't feel like that he --

2             MR. SCHECK:  I'm just saying that he requested

3        it.  I think -- fair enough.

4        A    I'm not aware of that.

5   BY MR. SCHECK:

6        Q    Okay.  So you're not aware of that at all?

7        A    No.

8        Q    Has anybody since the Chandler civil case was

9   settled as you know for $8.5 million, right?

10       A    I think so.

11       Q    And you were a defendant --

12            JUDGE BUTLER:  You don't know that?

13       Q    -- you don't know that?

14       A    I'm not sure.  Yeah, I believe it was eight-

15   and- a-half million, I'm not sure.

16       Q    Right.  But you knew you were being sued

17   personally in that case, right?

18       A    Correct.

19       Q    And you knew the allegations in that civil

20   case is that you had fabricated details of the

21   confession, fed facts to Mr. Chandler, and also lied

22   about having threatened him at the time that a

23   confession was taken. You know that?

24       A    I know those allegations were made.

25       Q    All right.  Now, and the only reason I'm

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 5 of 82 PageID #:
28779
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
223

1   asking you, I'm going to get into just some detail about

2   that but I want to make sure that you're comfortable

3   answering questions with respect to that subject matter

4   and not exercising any rights to refuse to answer on the

5   grounds of the Fifth Amendment.  Do you understand what

6   I'm saying?

7          A    I understand.

8          Q    All right.  And you're comfortable?

9          A    I am.

10         Q    Okay.  No problem then.  Now, after -- you

11  were in the Louisville Police Department for about over

12  21 years?

13         A    I was with the Louisville Police Department 16

14  years.

15         Q    Okay.  Starting when and ending when?

16         A    Started in '86 and left in 2003.

17         Q    All right.  And then you went to the coroner's

18  office?

19         A    I went to the coroner's office.

20         Q    All right.  And how long were you there?

21         A    About five years.

22         Q    And were you fired from the coroner's office?

23         A    I was.

24         Q    Now, in the course of your career in the

25  Louisville Police Department, you investigated hundreds

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 6 of 82 PageID #: 28780
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
224

1    of homicides; fair enough?

2         A    Quite a few.

3         Q    All right.  I mean, I'm going to show you --

4    you remember the Keith West, the trial of Keith West?

5         A    Sure.

6         Q    All right.  And that also you were -- took

7    place in 1995, same period as this case?

8         A    I remember the case.  I don't remember the

9    year.

10        Q    All right.  Would it be fair to say that you

11   were the lead detective in homicide cases, I don't know

12   what do you estimate, over 50, 60 times?

13        A    I want to say it was 35, 36 times I was the

14   lead.

15        Q    Well, you testified 35, 36 times in 1995,

16   right?

17        A    Right.

18        Q    Were there any other times that you were a

19   lead homicide detective subsequent to that?

20        A    Maybe four or five more times toward the end

21   of my career.

22        Q    Okay.  And now, in the early '90s there were

23   three cases that you were involved in as a homicide

24   investigator.  One was the Keith West case, correct?

25        A    Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1      Q      Another was the investigation and prosecution
2   of Edwin Chandler, correct?
3      A      Correct.
4      Q      And another one was the investigation and
5   prosecution of Mr. Hardin and Mr. Clark in this matter,
6   correct?
7      A      Correct.
8      Q      And if it refreshes your recollection, they
9   were all around the same time that you wound up
10  testifying at the trials?
11     A      You know, that seems correct.
12     Q      Okay.  So if I told you that you testified in
13  the Chandler trial on February 7, 1995, does that seem
14  right?
15     A      I don't have any memory of that.
16     Q      Okay.  But --
17     A      I don't doubt that but I just don't have any
18  memory of it.
19     Q      Okay.  And do you doubt that there was a
20  suppression hearing, and I'm going to show you that
21  transcript in a second, on February 14, 1995 in the
22  Keith West case?
23     A      Sure.
24     Q      You remember that one, right?
25     A      I do.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 8 of 82 PageID #:
28782
HEARING - MOTION FOR A NEW TRIAL 2013 taken on July 13, 2015
226

1      Q     And you remember being called and examined by

2   a lawyer named Jay Lambert?

3      A     Correct.

4      Q     You remember that hearing, don't you?

5      A     Sure I do.

6      Q     And that one made the newspapers, didn't it?

7      A     I think they all do.

8      Q     Okay.  And also, and then right after those

9   two proceedings in March -- I think March 7, 1995 is

10  when this trial began, the Hardin Clark trial, right?

11     A     I --

12     Q     Well, I think it began February 27.  You

13  testified on March 7th; does that seem right?

14     A     I don't -- I have no independent memory of

15  those dates.

16

17

18

19     Q     Okay.  Well, we'll get those straight but I

20  just wanted to orient you a little bit.  Now, and just

21  to be clear, you have never been notified that there is

22  any kind of proceeding or investigation going on right

23  now against you with respect to the Chandler matter?

24     A     What I had was, and I can't tell you how many

25  years ago, I had a police -- or metro police major call

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  me and interviewed me.  And then about last November, I

2  had a detective from the professional standards unit

3  call and want to do a second interview and I declined to

4  do the second interview.  So that's what I know.

5       Q    Okay.  Now, would it be fair to say that

6  during this period of time around 1995, the pendency of

7  these case, Chandler, West, Hardin, Clark, that you were

8  sometimes brought into a case to talk to a witness and

9  talk to a suspect?

10      A    I mean, I don't recall being like specifically

11  being brought from home to do that.  I mean, I may have

12  come in from home if it was my case, but I don't think I

13  had any necessarily what I'd call special skills to be

14  shared up in the homicide office.

15      Q    Well, would it be fair to say that you

16  considered yourself good at interviewing witnesses and

17  suspects?

18      A    I think I'm better than most.

19      Q    And that you took pride in that ability?

20      A    Sure.

21      Q    And that you were known -- that based on

22  communications and your supervised -- with your

23  supervisors, it was your understanding that you were

24  known by other detectives and your supervisors as being

25  somebody who was an effective interviewer of suspects

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   and witnesses?

2        A    I would agree with that.

3        Q    And that sometimes you were called in to a

4   case, brought into a case because you were good at

5   interviewing suspects and witnesses

6        A    I don't ever -- you know, that could've

7   happened.  I don't recall.

8        Q    All right.  Now, just to be fair about this,

9   you can see I'm reading from something, and you do

10  recall being deposed by my partner, Nick Brustin in the

11  Chandler civil case; do you not?

12       A    I do.

13       Q    All right.  And just by ease of reference in

14  case we need it -- well, I'm going to bring up -- we can

15  mark this next in order as Movant's 29.

16            MR. SIMON:  30, actually.

17            MR. SCHECK:  What?

18            MR. SIMON:  30.

19            MR. SCHECK:  Movant's 30.

20            JUDGE BUTLER:  Okay.

21  BY MR. SCHECK:

22       Q    I'm going to provide one copy to you, one copy

23  to the Court, and one copy to counsel.  Does that seem

24  like -- and to save some time, I'll move ahead to

25  Defendant's 31, and that would be the transcript of the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 11 of 82 PageID #: 28785
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
229

1   hearing in the Keith West case where you were examined

2   by Mr. Lambert; fair enough?

3        A    Sure.

4             JUDGE BUTLER:  Thank you.

5             MR. RYAN:  Your Honor, for the record, this is

6        the first time the Commonwealth has seen any of

7        this.

8             JUDGE BUTLER:  Okay.  Are you objecting for it

9        to be used?

10            MR. RYAN:  Well, I think the Court so far has

11       been --

12            MS. STAPLES:  I'm not sure why this --

13            MR. SCHECK:  I think we cited these in our

14       moving papers.

15            MS. STAPLES:  It was attached as Exhibit 63 to

16       our motion for new trial, so --

17            MR. RYAN:  This entire transcript?

18            MS. STAPLES:  Deposition of Mark Handy dated

19       March 7, 2012.  If that's what you have in your

20       hand.  I'm not sure the exhibits is right.

21            MR. RYAN:  Well, I'll check, Your Honor.  I

22       don't remember this.

23            JUDGE BUTLER:  Go ahead and check it before we

24       get going.  Exhibit number 31 or proposed Exhibit 31

25       is that also a deposition or is that from the trial

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 12 of 82 PageID #: 28786
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
230

```
 1     testimony?

 2          MR. SCHECK:  You're talking about 30?

 3          JUDGE BUTLER:  31.

 4          MR. SCHECK:  The Chandler case?

 5          MS. STAPLES:  No.  The Keith West case.

 6          MR. SCHECK:  Oh, the Keith West case.  That is

 7     from I think a pretrial proceeding.

 8          JUDGE BUTLER:  Okay.

 9 BY MR. SCHECK:

10     Q    Okay.  So let me call your attention to --

11          JUDGE BUTLER:  Hold on just a second.  Let him

12     check and see if he's received this.

13          MR. SIMON:  Exhibit 63, Judge, I have a table

14     of contents of exhibits filed with the Movant's

15     motion for a new trial.  Item 63 is deposition of

16     Mark Handy, that would be an exhibit of

17     approximately 67 pages.  I accept that.

18          MR. RYAN:  I have received this, Your Honor, it

19     was part of their exhibits and I apologize that --

20          JUDGE BUTLER:  Okay.

21          MR. RYAN:  -- I was mistaken.

22          JUDGE BUTLER:  All right.  Very good.  Thank

23     you.  You may proceed.

24          MR. SCHECK:  Thank you very much.

25 BY MR. SCHECK:
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1    Q    So I'll -- let me -- take a look at the

2    deposition of -- no the other one -- the deposition in

3    the Chandler case.  Turn to page 32, starting at line

4    19.

5            Were you asked these questions and did you

6    give these answers?  "Question: Based on your

7    communications with your supervisors, was it your

8    understanding that you were known by other detectives

9    and your supervisors as being someone who is an

10   effective interviewer of suspects and witnesses?

11   Answer: I would say yes.  Question: Okay, in fact, would

12   it be fair to say that sometimes you were brought into a

13   case to talk to a witness or talk to a suspect?  Answer:

14   That would be fair."  You were asked those questions and

15   you gave those answers, right?

16   A    That sounds familiar.

17   Q    Okay.  Now, you were -- and as I think you've

18   indicated and testified that you took pride in your

19   ability in this respect, correct?

20   A    Sure.

21   Q    And one reason that you were known as an

22   effective interviewer of suspects is that you had a

23   knack for getting the damaging admission, didn't you?

24   A    No.  I wouldn't say that.

25   Q    You wouldn't, huh?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 14 of 82 PageID #: 28788
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
232

1      A      No.

2      Q      **Okay.**

3      A      I'm not sure what you mean by knack.

4      Q      **Well, you were called in to interrogate**

5      **suspects and witnesses in the --**

6      A      But -- but it was some -- it was a situation

7      to put it in perspective, where I was already there.  I

8      wasn't called in to come and do this.  I would've

9      already been working and somebody might say, "Well,

10     listen, why don't you try and talk to him."

11     Q      **Well --**

12     A      That's what I'm trying to say.  I wasn't

13     called in like on a special assignment.

14     Q      **Mr. Handy, I didn't ask you a question yet,**

15     **all right?**

16     A      That's what you were asking me, I believe.

17     Q      **No.  I asked you before about whether that had**

18     **happened that you were called in on occasion and I think**

19     **you agreed that the answer was yes.  That you were known**

20     **as somebody that could be brought in as an effective**

21     **interviewer of suspects or witnesses and you took pride**

22     **in that ability?  You said yes to that, didn't you?**

23     A      I did but I didn't get called in from home.  I

24     may have been called in from another office.  I think

25     there's a difference.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q    I think the question -- I was only asking you

 2   about this as a general proposition.  I hadn't moved to

 3   this case, yet.  Do you have that in mind?

 4        A    No.

 5        Q    Okay.

 6        A    I don't have anything in mind.

 7        Q    All right.  I'm asking you to keep that in

 8   mind. And just listen to the questions I'm asking and

 9   answer the questions and not anticipate what I'm going

10   to ask you next, fair enough?

11        A    Fair enough.

12        Q    Okay.  Now, you were called in or you were

13   part of the investigation in this case to interview

14   suspects and witnesses in the Hardin Clark prosecution,

15   correct?

16        A    Correct.

17        Q    And you -- think testified at the trial, see

18   if this refreshes your recollection in the Hardin Clark

19   case that Mr. Greer brought you up to date on the case

20   before you met with Hardin and Clark and talked to them;

21   do you recall that?

22        A    No.

23        Q    You don't remember that.

24        A    But I mean, it sounds familiar but I don't

25   specifically remember it.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1       Q     Okay.  So --

 2             JUDGE BUTLER:  Let me ask something.

 3             MR. SCHECK:  Sure.

 4             JUDGE BUTLER:  There's two Greers in this case,

 5       there's a Sheriff Joe Greer, and I think a police

 6       officer in Louisville named Greer.

 7             MR. SCHECK:  Absolutely.  Hope Greer.

 8             THE WITNESS:   And Joe Greer is the one --

 9             MR. SCHECK:  We're talking about Joe Greer.

10             JUDGE BUTLER:  The sheriff.

11             MR. SCHECK:  The sheriff.

12             JUDGE BUTLER:  Okay.  Thank you.

13             MR. SCHECK:  My apology, thank you, Your Honor.

14       BY MR. SCHECK:

15       Q     So you recall that your involvement in this

16       case began when Sheriff Joe Greer asked you to get

17       involved; is that right?

18       A     Correct.

19       Q     And he brought you up to date on the

20       investigation prior to the time that you began to

21       interview Mr. Hardin and Mr. Clark?

22       A     Correct.  I just don't remember what he

23       would've said.

24       Q     Okay.  Well, let me see if this refreshes your

25       recollection and you tell me if you knew any of this.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL Document 317-75 Filed 01/26/23 Page 17 of 82 PageID #: 28791
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
235

1   That when he was bringing you up to date that he had

2   told you that the victim's body had been found and he

3   went to talk to the victim's family, fair enough?  Sound

4   right?

5        A    I guess.

6        Q    And he told you that the police had found

7   satanic material in the victim's room that disturbed

8   them, remember that?

9        A    I don't remember that.

10       Q    Okay.  He said that -- did he tell you that

11  the victim's family hated Mr. Hardin and Mr. Clark so

12  much that it was pathetic or words to that effect?

13       A    I don't remember that.

14       Q    All right.  Did he tell you that the families

15  -- victim's family had told him that these two men were

16  into Satanism?

17       A    I do not remember that.  I'm not saying he

18  didn't.  I just don't remember that.

19       Q    I understand.  I'm only asking prior to the

20  time that you began to interview Mr. Clark and Mr.

21  Hardin, is it in your mind that generally you had some

22  understanding that it was the operative theory of

23  Sheriff Greer that these two men were into Satanism and

24  Satanism had something to do with this case?

25       A    I don't recall.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 18 of 82 PageID #:
28792
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
236

1      Q     But that certainly was in the realm of

2      possibility.

3          A     It's possible.  It's possible.  I just don't

4      remember.

5          Q     Sounds right to you?

6          A     Well, I just think I would be more looking at

7      it to Hardin because he was her boyfriend as it was

8      described to me.  So that would be an obvious start.

9          Q     All right.  And --

10             MR. RYAN:  Your Honor, if I may point out, I

11         don't mean to interrupt, this investigation is 22

12         years old and to -- I mean, I think we all can be

13         empathetic with the fact that witnesses have a hard

14         time remembering every case, every detail, every --

15         I mean, if he says he doesn't remember and then you

16         badger him to the point that he says I guess, then

17         that's not probative.

18             MR. SCHECK:  I'm not trying to badger the

19         witness.  And this was 22 years ago --

20             MR. RYAN:  He says he doesn't know the answer.

21             JUDGE BUTLER:  I hear his answers.  He says he

22         doesn't -- he hasn't remembered anything yet that

23         you've asked him, has he?

24             MR. SCHECK:  Well --

25             JUDGE BUTLER:  I mean, isn't that what the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        answers have been, he doesn't remember?
 2             MR. SCHECK:  I think he's --
 3             JUDGE BUTLER:  I'll let you continue on.
 4             MR. SCHECK:  Sure.
 5             JUDGE BUTLER:  But when he says he doesn't
 6        remember, move on.
 7             MR. SCHECK:  Right.  Well, but I'm asking him
 8        not about specifics.
 9   BY MR. SCHECK:
10        Q    I'm asking about general chain of events; is
11   that fair enough?  Do you have that in mind?
12        A    I don't recall what Sheriff Greer told to me
13   about this investigation.
14        Q    Okay.  I understand you don't know the
15   specifics but you do remember that Sheriff Greer told
16   you -- briefed you before you went out and interviewed
17   Clark and Hardin, right?
18        A    Correct.
19        Q    Okay.  That much you remember?
20        A    Yes, sir.
21        Q    All right.  And would it be fair to say that
22   even though you don't remember the specifics, right, you
23   had some idea before you interviewed Mr. Hardin and Mr.
24   Clark that it was a potential theory of Sheriff Greer
25   and the investigators in this case that Satanism might
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  have been involved in this count.

2      A    You know, those things came up at some point.

3  I have absolutely no memory at what point they came up.

4      Q    So it could've been something that was told

5  you right away.  It's something that could've happened

6  later, right?

7      A    It certainly came up at some point.

8      Q    Right.  At some point early in the

9  investigation; would that be fair?

10     A    It would be fair.

11          MR. SCHECK:  Okay.  Now, let's mark the 4-7 and

12  4-8.

13          MR. SIMON:  32 --

14          MR. SCHECK:  32.

15          MR. SIMON:  -- is the 4-7 report, and 4-8 is

16     33.

17          MR. SCHECK:  And 4-8 is 33.  My apologies, Your

18     Honor.

19  BY MR. SCHECK:

20     Q    So your interview with Mr. Hardin of April 7th

21  has been marked as Exhibit 32.

22     A    Thank you.

23     Q    And your interview of April 9th with Mr.

24  Hardin has been marked as Exhibit 33.  So let me call

25  your attention to Exhibit 32, your April 7th interview

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 21 of 82 PageID #:
28795
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
239

1  with Mr. Hardin.  Do you have that in front of you?

2      A    I believe so.  This is James McMadden, but I

3  guess Hardin gets --

4      Q    Yeah.

5      A    Okay.

6      Q    Just -- it starts off with an interview of

7  McMadden and then you get to Hardin, correct?

8      A    Correct.

9      Q    Okay.  And when you get to Mr. Hardin on page

10 3 of the interview, right.

11     A    Okay.

12     Q    You describe how you picked him up, right, at

13 10774 Tarrytown Road and you were met by an older white

14 female who advised you that Keith was home and she then

15 stated, "Is he going to be arrested, does he need an

16 attorney."  Do you see that?

17     A    Yes, sir.

18     Q    Have you subsequently learned that that was

19 his mother?

20     A    I think I knew it at the time.

21     Q    You knew it at the time.

22     A    I believe that was his mother.

23     Q    Okay.  And so be fair to say that Mr. Hardin

24 at least his mother seemed to be aware that he might be

25 in some trouble with the police when you came and got

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 22 of 82 PageID #: 28796
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
240

1    him to bring him to the precinct?

2          A    Correct.

3          Q    And but Mr. Hardin agreed to come down and to

4    be interviewed, right?

5          A    Right.  Correct.

6          Q    So he was cooperative?

7          A    He was.

8          Q    And you write here, "While en route to the PIS

9    office, I asked Keith Hardin if he was, in fact, into

10   Satanism as I had been previously told."  Do you see

11   that?

12         A    Yes, sir.

13         Q    So would it be fair to say that you had been

14   briefed and had information from Sheriff Greer, from

15   other sources prior to picking up Mr. Hardin that it was

16   part of the police theory that Mr. Hardin was into

17   Satanism and that was connected to this homicide?

18         A    Yeah.  I had the information, part of a

19   theory, I'm not sure I could answer that.

20         Q    Well, you asked him if he was into Satanism --

21         A    Uh-huh.

22         Q    -- as you had previously been told and then

23   you write here "And Keith admitted to me that he was not

24   engaging in satanic worship anymore but he had

25   previously for approximately six years and he had

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 23 of 82 PageID #:
28797
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
241

1    stopped approximately one month ago."  Do you see that?

2        A    Right.

3        Q    All right.  By the way, these -- this is a

4    conversation that's going on in the car, right?

5        A    Correct.

6        Q    And do you have any recollection of whether

7    who was driving and where Mr. Hardin was sitting and

8    where you were sitting?

9        A    I have no recollection.

10       Q    Zero, right?  But this is part of what's known

11   as a investigative letter, exhibit -- this exhibit?

12   What do you call these where you --

13       A    It's an investigative letter.

14       Q    -- it's April 7 -- what?

15       A    It's an investigative letter.

16       Q    This is called an investigative letter?

17       A    That's what it's called.

18       Q    I'm sorry?

19       A    That's what it is called.

20       Q    Yes.  Okay.  I had that right.

21       A    Okay.

22       Q    An investigative letter, and it was your

23   custom and practice, and I'm not just talking about you

24   in particular, but Louisville Police Department during

25   this period of time that an investigative -- the content

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 24 of 82 PageID #:
28798
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
242

1    of an investigative letter that you might take some

2    notes about what was said to you and to a witness and

3    then at some date subsequent to that you would dictate

4    those notes into a tape and then it would be typed up;

5    is that right?

6         A    Correct.

7         Q    So even though this letter -- investigative

8    letter is dated April 7, 1992, that has to do with the

9    date that it all occurred, right?

10        A    Yes, sir.

11        Q    It doesn't necessarily -- and the

12   investigative notes I should say, it was a routine

13   practice to destroy those?

14        A    Correct.

15        Q    Right.  So we could not have a copy of the

16   rough notes that you might have taken of your car ride

17   with Mr. Hardin and what you said to him and he said to

18   you.  Those were destroyed at or around the time that

19   somebody -- that you dictated this investigative letter,

20   right?

21        A    Correct.

22        Q    But you might have been dictated this

23   investigative letter as far as you know not on April 7th

24   but some days later, correct?

25        A    Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 25 of 82 PageID #:
28799
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
243

1      Q     Some days later when you had knowledge of

2  events that occurred even arguably on April 8th or April

3  9th, fair enough?

4      A     Fair enough.

5      Q     Now, you then say in this April 7th

6  investigative letter that you asked Keith Hardin if in

7  the course of his satanic research, if he had killed any

8  cats or small animals, and he acknowledged to me that he

9  had killed small animals; do you see that?

10     A     Right.

11     Q     Now, you can't tell us one way or the other

12  whether prior to meeting Mr. Hardin on April 7th and

13  being briefed by Sheriff Greer that one of the things

14  that you had been told about -- one possible theory is

15  that Mr. Hardin and/or Mr. Clark might have been into

16  sacrificing animals, right?  You can't tell us.

17     A     I couldn't tell you.

18     Q     Right.  That's possibly something that you

19  could've been told prior to picking up Mr. Hardin or

20  not, you just can't remember, this is 22 years ago?

21     A     Well, I would say based on the letter it was

22  likely that I had been told prior to this.

23     Q     Okay.  So based on the letter --

24     A     I would go -- I would go with likely.

25     Q     Right.  So based on the letter, you think it's



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    likely that one of the things you've been told before

2    meeting Mr. Hardin, it was part of the police theory

3    that Mr. Hardin and/or Mr. Clark might have been into

4    satanic research that involved the sacrifice of animals,

5    correct?

6        A    Correct.

7        Q    And so you asked him the question, "Well, did

8    you sacrifice animals," and he said, "Yes," correct?

9        A    Correct.

10       Q    And do you remember that later in this trial

11   there was an issue that involved a chalice?

12       A    I wasn't present for that.

13       Q    So nobody ever shared with you any of the

14   investigators at any point in this investigation that

15   the police had secured a chalice that was broken and had

16   blood on it, and it became the theory of investigators

17   and prosecutors that that blood came from an animal?

18       A    I don't know anything about it.

19       Q    Okay.  But your investigative report says that

20   not only did Mr. Hardin acknowledge killing small

21   animals but then you say, "I then asked Mr. Hardin why

22   he had stopped the devil worshiping and he advised me

23   that he got tired of looking at animals and began to

24   want to do human sacrifices, right?

25       A    Right.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q      And boy wouldn't you agree with me that that
2  is a damaging admission?
3      A      It's damaging.
4      Q      Yeah.  That's the kind of damaging admission
5  that you had a knack for getting out of witnesses and
6  suspects; isn't that right?
7      A      I don't know how to answer that.
8      Q      Well, here's a guy that got into your car --
9      A      Right.
10     Q      -- and his mother is saying, "Don't handcuff
11  him," right?  Right?
12     A      Correct.
13     Q      And his mother --
14     A      I think it was "Please don't take him out of
15  here in handcuffs."
16     Q      Right.  "Don't take him out of here in
17  handcuffs."  And his mother is saying, "Does he need a
18  lawyer," right?  Right?
19     A      That sounds familiar.
20     Q      And he's agreeing to go with you, correct?
21     A      Uh-huh.
22     Q      Right?
23     A      Correct.
24     Q      And he's not, you know, refusing -- demanding
25  to remain silent or anything like that, right?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A     No.

2      Q     And you're telling us that he just volunteers

3  right away that I got tired of sacrificing animals and I

4  moved on to killing humans, he said that to you right

5  away?

6      A     He didn't say he went on to killing humans.

7      Q     He said he was moving on, let's just do it, he

8  began to want to do human sacrifice?

9      A     Right.   There's a difference between wanting

10 to and doing, I believe.

11     Q     Right.   Okay.   But in terms of an admission

12 when you're under suspicion of killing your girlfriend,

13 right?

14     A     Right.

15     Q     Saying that you got tired of sacrificing

16 animals and moved on to humans, that --

17     A     He never said he moved on to humans.

18     Q     He got tired of sacrificing animals and wanted

19 to do human sacrifices?

20     A     He never said he did.

21     Q     I understand he never said he did it.

22     A     Okay.

23     Q     But the statement of he got tired of looking

24 at animals and wanted to go on to human sacrifices, that

25 you would expect somebody to know is a pretty damaging

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    admission to --

2         A    I think it's damaging.

3         Q    All right.

4         A    Doesn't make him guilty, but I think it's

5    damaging.

6         Q    Right.  And as soon as you heard it, you knew

7    that was damaging, right?

8         A    Sure.

9         Q    You knew that you had something there that

10   potentially could be extremely damaging in any future

11   criminal prosecution, didn't you?

12              JUDGE BUTLER:  Is there an answer to that.

13              THE WITNESS:  I wasn't sure it was a question.

14              JUDGE BUTLER:  Was that -- did you want him to

15        answer your last question?

16              MR. SCHECK:  I gave it.  I thought so.

17              JUDGE BUTLER:  I don't think he --

18              MR. SCHECK:  I didn't hear him answer.

19              JUDGE BUTLER:  I didn't hear an answer either.

20        You've got to say yes or no on the video.

21              MR. SCHECK:  You've got to say yes --

22              THE WITNESS:  I'm sorry, Your Honor.  What was

23        the question?

24              MR. SCHECK:  Well, do we have -- I know this is

25        a different system.  Ordinarily I would ask for

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   somebody to read it back.

2        JUDGE BUTLER:  You have to play the tape back.

3        MR. SCHECK:  Oh, you play it back?  Can you

4   play it?  You know what, does that take a lot of

5   time?  I can ask it again.

6        CLERK:  Judge.

7        JUDGE BUTLER:  Can you replay the last question

8   he asked?

9        CLERK:  Well, I can, Judge, but I'm going to

10  have to get one of my other clerks in here to set

11  that up for us.

12       JUDGE BUTLER:  It's going to take a while.

13       MR. RYAN:  Why can't you just ask the question

14  again?

15       MR. SCHECK:  If it'll take a while, forget it.

16       JUDGE BUTLER:  Okay.

17       MR. SCHECK:  I'll just do it.

18       JUDGE BUTLER:  All right.

19       CLERK:  We can do it.

20       JUDGE BUTLER:  No.  That's okay.

21       CLERK:  It'll just take a while.

22       JUDGE BUTLER:  That's all right.  We'll move

23  on.

24       MR. SCHECK:  That's not necessary.  Thank you

25  very much.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 31 of 82 PageID #:
28805
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
249

```
 1   BY MR. SCHECK:
 2        Q    Now, when you took him down to the precinct
 3   that day, right?  Did you take him into a room, turn on
 4   a tape recorder, and just ask him because he had been so
 5   agreeable to repeat the answers that he'd given you on
 6   the car ride over that he had engaged in animal
 7   sacrifices and was getting tired of it and began to want
 8   to do human sacrifices?  Did you do that?
 9        A    No.
10        Q    But you knew that was a really good admission,
11   right?
12        A    I've had better.  It was fine.
13        Q    But you knew at the time after you'd been told
14   this is a case potentially about Satanism and there was
15   a suspicion --
16        A    I think --
17        Q    -- that --
18        A    I think it made him seem creepy to me.
19        Q    Yeah.  Well --
20        A    But I don't know that it's -- I thought well,
21   here it is, here's the smoking gun right here.  That
22   never crossed my mind.
23        Q    Well, was it --
24        A    It was creepy.
25        Q    -- your ordinary practice when you took a
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 32 of 82 PageID #:
HEARING - MOTION FOR A NEW TRIAL - 2886 taken on July 13, 2015
250

1    potential suspect to the precinct and you wanted to

2    memorialize a statement that you thought would be very

3    beneficial to the investigation to turn on a tape

4    recorder and get them to repeat the statement?

5         A    I think back then, it probably wasn't as

6    common as it is today.  I think that we were more

7    interested in going out and doing the interviews than we

8    were setting up tapes and things like that.  I don't

9    think it was done as common back then.

10        Q    Well, didn't you do audiotapes of all kinds of

11   other witnesses in this case?

12        A    I don't remember.

13        Q    And as part of your practice even back then --

14        A    And I'm not saying these two guys weren't

15   audiotaped at some time.  I don't know whether they were

16   or not.

17        Q    Well, you audiotaped other witnesses, didn't

18   you in this case?

19        A    I don't know.

20        Q    All right.  Let's talk a bit about your

21   practices with respect to tapes.  Now, let's talk about

22   the West case.  Do you remember that one?

23        A    Yes, sir.

24        Q    All right.  And this involved the prosecution

25   of an individual named Keith West, correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 33 of 82 PageID #:
28807
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
251

1        A     Correct.

2        Q     And Mr. West had claimed as part of his

3    defense that he had been abducted by two individuals who

4    he believes were going to kidnap him and that they were

5    armed and that they were going to take him, correct?  Is

6    that right?

7        A     That's what he claimed.

8        Q     I know.  And you're nodding so you have to say

9    "yes" for the video.

10       A     I'm sorry, yes.

11       Q     Okay.  And that you knew this was his defense

12   in this matter, right?

13       A     Yes.

14       Q     And that at some point the car that the men

15   were driving crashed; is that correct?

16       A     Correct.

17       Q     And then there came an issue about a witness

18   named Ross and as to whether or not this witness named

19   Ross could identify somebody who was running out of a

20   car, right at a particular point in time?

21       A     Correct.

22       Q     And that -- yes?

23       A     Right.  Yes.

24       Q     Okay.  And when --

25             MR. RYAN:  Your Honor, what is the relevance of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 34 of 82 PageID #:
28808
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
252

1          this?

2                  MR. SCHECK:  You'll see in a second.  All

3          right.

4                  JUDGE BUTLER:  Okay.  We'll see.

5      BY MR. SCHECK:

6          Q     And Mr. Ross was an eyewitness, correct?

7          A     Correct.

8          Q     And what you did when you took the statement

9      from Mr. Ross is that you turned on the tape machine,

10     correct?

11         A     Correct.

12         Q     And when you began questioning Mr. Ross and

13     showing him a photograph of Mr. West, right?  He was

14     uncertain about his identification, correct?

15         A     Wrong.

16         Q     And then you subsequently showed mister -- let

17     me do it this way.  You object to the word "uncertain"?

18         A     May I explain?

19         Q     Well, let's -- is that the word you object to?

20     I'll review the transcript with you, okay.

21         A     Correct.

22         Q     All right what happened at this hearing is

23     that the defense lawyer, Mr. Lambert, confronted you

24     with a tape of the ultimate identification that Mr. Ross

25     made, correct?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 35 of 82 PageID #:
28809
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
253

 1      A    Correct.

 2      Q    And in that tape, in the ultimate

 3  identification, Mr. Ross said quite certainly that Mr.

 4  West wasn't it, correct?

 5      A    I don't recall.

 6      Q    Well, okay.  So why don't we start on page 42,

 7  okay, of this --

 8          MR. WILLIAMS:  I would ask that the witness be

 9      able to explain his answers --

10          JUDGE BUTLER:  I'll let you-all do that on

11      cross is how you do that.

12          MR. WILLIAMS:  Okay.  I don't know if I can

13      remember all that or not.

14          JUDGE BUTLER:  Well, write it down.  I'm sorry.

15          MR. SCHECK:  I actually think that I'll reach

16      some agreement with this witness and you'll get the

17      explanation at the same time but I could be wrong.

18          JUDGE BUTLER:  Okay.

19      A    Which of these do you want me to refer to?

20  BY MR. SCHECK:

21      Q    So why don't you turn to exhibit --

22          MR. WILLIAMS:  You're referring to the last

23      transcript?

24          MS. STAPLES:  Yes.

25          MR. SCHECK:  Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 36 of 82 PageID #: 28810
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
254

1   BY MR. SCHECK:

2       Q    Start at page 42.  All right.  Page 42, line

3   9. You were asked "And Ross was the only person that

4   ever said he saw somebody jump out of the car, wasn't

5   he?  Mr.

6            Bowie didn't say that.  Answer: That seems

7   correct." Bowie and Ross were two different witnesses,

8   correct? Page 42.

9       A    Oh, okay.  42.

10      Q    Yeah.  Line -- starting at line 9.

11      A    "And Ross was the only person that ever said

12  he saw somebody jump out of the car, wasn't he?  Ms.

13  Bowie didn't say that."

14      Q    "Answer: That seems correct?"

15      A    That seems correct.

16      Q    All right.  "Question: So at that point in

17  your investigation I take it Ross appears to be possibly

18  a pretty important witness, didn't he.  Answer: I think

19  early on he had some trouble, I think, with

20  identification.  But earlier on he certainly seemed to

21  be."  Right?

22      A    Correct.

23      Q    Okay.  And then line 21, "Question: You said

24  he had some trouble with identification.  Answer: I'm

25  trying to think.  I think it seems like he knew the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 37 of 82 PageID #: 28811
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
255

1   defendant as Kiki and not his actual name."  Do you see

2   that?

3       A    Correct.

4       Q    All right.  And then you were asked some

5   questions about when the tape starts and stops.  Do you

6   remember that?

7       A    Correct.

8       Q    All right.  And that -- so okay.  Now, there

9   was a first and second statement on this tape, right?

10      A    Correct.

11      Q    And that only part of the first statement was

12  still around, correct?

13      A    I don't know what part was.

14      Q    Well, there was a second statement that was

15  taped over part of the first statement, right?

16      A    Correct.

17      Q    And that's because you went back on the tape

18  the second time that Mr. Ross made an identification and

19  you started taping over what had been his first

20  statement to you, correct?

21      A    Correct.

22      Q    All right.  And in his second statement, he

23  was very certain, correct?

24      A    I don't remember.

25      Q    Well, take a look at page 45.  All right.  It

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    starts at line 13.  "Question: During the second

2    statement, that is the tape over, if you will, you asked

3    you and Ross had the following exchange, don't you?

4    Excuse me, Judge, bear with me during the second

5    statement.  The tape over statement.  The one we finally

6    got.  You have the following exchange with Ross, don't

7    you? 'Mr. Handy: Okay, I'm going to show you a picture,

8    it's LPD photograph 354881 of Keith West.  Is this the

9    individual you seen wearing the hat before?  Answer:

10   Yes, sir.  This photograph I'm showing you?  Yes, sir.

11   Right.' Pretty definite isn't he?  Answer: He is.

12   Question: Doesn't equivocate does he?  Answer: Right.

13   Question: Doesn't hesitate, does he?  Answer: Right."

14   All right. Then -- you see that?

15        A    What page?

16        Q    I just was reading you page 45 to 46.

17        A    Wrong one.

18        Q    I started at page 45 at line 13 and I went to

19   page 46 line 5.  See that?

20        A    Okay.  I'm at 45.

21        Q    Start -- I read you from page 45 line 13 to

22   page 46 line 5.

23        A    And read down how far?

24        Q    I read to line 5 on page 46.  Are you with me?

25        A    Yes, sir.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q    Okay.  So the second statement, no

2  equivocation, definite identification, right?

3    A    Correct.

4    Q    Now, Mr. Lambert reads for you an exchange

5  from the first statement.  I'm starting to read here on

6  page 46 line 6.  "Question: Well, let me show you your

7  exchange on the first statement from the one that was

8  apparently taped over.  Do you have the following

9  exchange?  'Mr. Ross, no Kiki, I don't know, I don't

10  really know everything about it because, see he is.  Mr.

11  Handy: How do you know that that's his hat?  Mr. Ross:

12  Because I seen him wearing it before.  But I seen him

13  wear it before, but I don't know if that's Kiki or not.

14  I seen him wear a Louisville hat before when he came

15  over but I ain't -- Mr. Handy: But you don't know if

16  this picture here is Kiki?  Mr. Ross: Kiki. Mr. Handy:

17  That your girlfriend knows.  Mr. Ross: Right.'" Right?

18  So and then Mr. Lambert asks you "So in the first

19  statement you show Ross a photo and he's not even sure

20  it's the same guy you're talking about, correct?"

21    A    Correct.

22    Q    "Answer: Correct."  Do you see that?  Am I

23  reading it correctly?

24    A    You're reading it correctly.

25    Q    And that's what happened, right?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 40 of 82 PageID #:
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
258814
258

1       A     Not exactly.

2       Q     **Well, did you testify to that here?**

3       A     Well, there was more to it.

4       Q     **Well, did you testify to that?**

5       A     Yeah.  I testified to whatever's in here.  I

6    don't really remember.

7       Q     Okay.  Then I continue reading on page 46 line

8    24.  "The second taped statement from when you taped

9    over this stuff you show him the photo again and he

10   doesn't express any hesitation at all, does he?  Answer:

11   As I recall he was scared.  Question: Did you -- did he

12   tell you he was scared.  Answer: He did.  Question:

13   Where is that on the tape?  Answer: I think that that

14   was something that we covered when he hesitated and I

15   thought there was a reason he was hesitating.  Question:

16   So when you went off tape, you talked to him about this

17   manner of his hesitation identifying Keith.  Answer:

18   Correct.  Question:  What did you tell him?  I told him

19   there was no reason to be scared.  Question: Did you

20   note that conversation in any way in any of the reports?

21   Answer: We're talking about -- Question: Answer the

22   question.  Answer: No.  I did not.  Question: Did you

23   note anywhere in this transcript that you were taping

24   over the first statement, a prior statement.  Answer: I

25   don't recall.  Question: Did you note anywhere in any

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    letters, notes, or anything that you taped over any

2    statement in this case?  Answer: I didn't even recall

3    having done that until you brought it up.  I didn't even

4    think about it.  Question: Well, when you testified

5    under oath earlier you had not taped over any tape, this

6    was -- it was current, was it, sir? Answer: Well, again,

7    assuming that I taped over it instead of continued,

8    stopped and then went along, that wouldn't be taping

9    over it, that would be a continuous tape. Question: But

10   the contents of the first statement are forever lost to

11   us, aren't they, sir?  Answer: The information Mr. Ross

12   gave is what he gave and it's totally consistent.

13   Question: Answer the question.  The recording the words

14   word for word on that first tape that Ross made are

15   forever lost to us, aren't they?  Answer: No, Mr. Ross.

16   Question: Do you know where to go back and get them?

17   From Mr. Ross, Mr. Ross is a witness.  I've never used a

18   witness statement other than to provide to counsel in my

19   career."  You see that, right?

20        A     Yes, sir.

21        Q     So your explanation is that the reason you

22   thought it was okay to re-tape, to do a second statement

23   is that you thought the witness was scared.  That's your

24   explanation?

25        A     That's correct.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1    Q    All right.  And you thought it was okay to

2  turn on the tape recorder when the witness is saying I'm

3  not sure that's the guy, stop the tape recorder, and

4  start a new statement after you reassure the witness off

5  tape it's okay if you're scared you can make an

6  identification and then not write anything anywhere in

7  any notes that you did that.  That was okay by you?

8    A    He was -- as I recall, he was scared.  He knew

9  who Mr. West was.  He knew the hat.  He knew him.  I got

10  that from him before I ever turned on the tape machine

11  and when I started -- when I turned it on, he suddenly

12  started backing up like he was scared.  And however far

13  we got into it, this isn't working.  I mean, he's

14  identified him, he knows him, and so I stopped, backed

15  up to start it again and tell him "Look, you don't need

16  to be afraid of this guy."  You know, I just wanted to

17  get the best -- you know, there -- get the best I could

18  get.  And I had to assure him -- these guys were

19  dangerous guys.  They just shot two guys in the head.  I

20  think he was scared.

21    Q    I understand that you thought it was perfectly

22  okay when a witness doesn't make identification to

23  reassure the witness that it's okay, don't be scared,

24  and then get identification from him.

25    A    The witness knew him.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q    Right.  So but you understand, don't you, Mr.

2    Handy that the issue in this hearing and the issue

3    that's important is that you thought it was okay to tape

4    over the first statement and never make a notation of

5    it?

6    A    It never crossed my mind.

7    Q    Never crossed your mind?

8    A    Never crossed my mind.

9    Q    And so would it be fair to say that during

10   this period of time when you were dealing with deciding

11   whether to tape witnesses or not to tape witnesses when

12   you were turning the machine on and turning the machine

13   off, what you did in this case, the West case, is the

14   kind of stuff that you were doing all the time?

15   A    You know, I handle most cases similar.

16   Q    Okay.  Now, in addition to this issue of Mr.

17   Ross' statement, there also arose an issue of what you

18   said to Mr. West before you took an audio statement of

19   Mr. West, right?  Do you remember that?

20   A    No.

21   Q    You don't?

22   A    No.

23   Q    Okay.  Now, turning to page 49.  Mr. Lambert

24   asks you "Prior to taking a statement from Mr. West, did

25   you tell him about the details of the case.  Answer: I

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 44 of 82 PageID #:
28818
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
262

1   told him what he was being charged with and if there was

2   information that he thought was important to us to know

3   and if, in fact, that these guys were trying to do that,

4   what he eventually alleged that they tried to do that,

5   that would obviously be important for us to know and

6   obviously his rights were the first thing that we went

7   over to him.  Question: So you didn't tell him anything

8   substantive details of the investigation, i.e., you

9   found a hat?  Oh, I probably did, sure.  You did tell

10  him something that -- answer that we had his hat?  Sure.

11  Question: Anything else besides that?  Answer: Probably

12  that we knew both men were homosexuals and they may --

13  that may have played into what happened."  You see that?

14       A    Correct.

15       Q    All right.  So then starting on page 50,

16  right?

17       A    Right.

18       Q    Mr. Lambert -- I'll try to make this short --

19  begins reciting the tape recording between you and Mr.

20  West.  Do you see that?

21       A    I see the tape recording between me and Mr.

22  West?

23       Q    Right.

24       A    Yes.

25       Q    And then it gets to a point where top of page

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 45 of 82 PageID #: 28819
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
263

```
 1    53 if you'd turn there.  Okay.  Are you with me?

 2         A    Yes, sir.

 3         Q    And then at the top of page 53 in the

 4    recording, you ask "All right, have we told you anything

 5    about this case.  Mr. West says, "Yes.  You told me a

 6    little bit. Question Mr. Handy: Okay.  What did I tell

 7    you?  Do you remember?  Mr. West: Just told me that you

 8    know, ah, then I said 'Well, let me.'  Then West says: A

 9    little bit.  And I said let me rephrase the question,

10    Keith.  Did I tell you any of the specifics of this

11    case?  Mr. West: Well, you just told me that and I said

12    well, I ah, and then I said you understand that I told

13    you that you were under arrest and why you were under

14    arrest; is that correct? Mr. West: Yes."  All right.

15    And then you go on to say, "All right.  Do me a favor,

16    Keith, and pronounce and spell your full name."  Do you

17    see that?

18         A    I do.

19         Q    And it was Mr. Lambert's position at this

20    hearing, was it not, that you cut Mr. West off when that

21    tape was on when he was about to describe how many

22    specific substantive details you told Mr. West before

23    you turned the machine on, right?

24         A    That's his position.

25         Q    Okay.  And we have the transcript, don't we?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 46 of 82 PageID #: 28820
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
264

1      A     Yes.

2      Q     Now, another issue that arose in the West case

3  had to do with what was vouchered as evidence by you,

4  correct?  Remember that?

5      A     I'm not sure what you're talking about.

6      Q     Well, the car was -- you and the evidence

7  technician unit searched the car that had crashed,

8  correct, for evidence?

9      A     Correct.

10     Q     All right.  And as we agreed before, it was

11  Mr. West's defense in this case that he was being

12  abducted by armed men who were going to rape him,

13  homosexual rape him, correct?

14     A     Correct.

15     Q     And there were certain things that you took

16  from the car and vouchered for evidence and there were

17  certain things that you didn't, correct?

18     A     Correct.

19     Q     And some of the things that you didn't voucher

20  for evidence were a knife that was found in the car,

21  correct?

22     A     Correct.

23     Q     A box of .38 caliber bullets that were found

24  in the car, correct?

25     A     Correct.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 47 of 82 PageID #: 28821
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
265

1      Q      An ad for a homosexual magazine that was found

2  in the car, correct?

3      A      Correct.

4      Q      And a rope that was found in the car, correct?

5      A      Right.

6      Q      And in the questioning at this hearing, you

7  were asked whether the rope, the bullets, the ad, any of

8  that proved guilt of Mr. West and you said, "No," right?

9      A      Correct.

10     Q      But you did agree that all of those items

11  would be helpful to Mr. West's defense that you knew

12  about that he was being abducted by armed men who were

13  interested in tying him up and raping him, correct?

14     A      I think everything was in the trunk so I don't

15  think there was any indication that anybody got into

16  anything other than this front and back seat.

17     Q      Well --

18     A      If I remember correctly, and I think all those

19  things were held onto and I think that Mr. Lambert

20  actually went out and found those items.

21     Q      Well, that was the whole point of this

22  hearing, right?  Mr. Lambert went out, looked at the

23  car, and found all those items, correct?

24     A      Correct.

25     Q      And then Mr. Lambert was -- had you on the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 48 of 82 PageID #:
28922
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
266

1    witness stand at this hearing because you hadn't

2    vouchered any of those things into evidence and if

3    nothing else had happened, for all we know, that car

4    could've disappeared or a less enterprising defense

5    lawyer wouldn't have found it, right?

6        A    No.  I think it had a hold on it.

7        Q    Now, I can look in this -- I'm conscious of

8    time, Your Honor.  We can look at this transcript but

9    you don't have any recollection of agreeing with Mr.

10   Lambert during the course of this hearing that the rope,

11   the ad, the bullets, the knife were all things that

12   didn't prove guilt but could help the defense.  You

13   don't remember agreeing with that?

14       A    I don't remember that, no.

15       Q    Okay.  We'll do that one another time.  Now,

16   in the case of Edwin Chandler, and I know you've

17   answered many questions about this one before you had

18   testimony so I'm not going to go into too much detail,

19   but it's true that as a homicide investigator you were

20   very careful not to provide nonpublic facts to Mr.

21   Chandler about details of the perpetrator of the crime

22   that only the police and the real perpetrator knew,

23   right?

24       A    Correct.

25       Q    And when you interrogated Mr. Chandler the



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1    whole point is that details, key nonpublic facts that

2    only the real perpetrator and the police knew were

3    supposed to come from him, they weren't supposed to be

4    fed to him, right?

5         A    Correct.

6         Q    You understood that completely, right?

7         A    Correct.

8         Q    And this was another situation where the tape

9    recorder was sometimes turned on and the tape recorder

10   was sometimes turned off, right?

11        A    I'm not familiar with that.

12        Q    Well, in the Chandler interrogation, you

13   didn't tape record the whole thing from beginning to

14   end, did you?

15        A    I didn't tape record it at all.

16        Q    Did anybody, to your knowledge, tape record

17   the interrogation at any point in time?

18        A    Jay Pierce.

19        Q    Right.  Well, when Jay Pierce turned on the

20   tape recorder, you were in the room?

21        A    Right.

22        Q    So when I say "you," I mean police in this

23   circumstances, right?

24        A    Correct.

25        Q    And Jay Pierce, he was a straight arrow,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 50 of 82 PageID #:
28824
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
268

1   right?

2        A    He was a sergeant.

3        Q    He was as guy that you couldn't protect -- you

4   couldn't count on protecting to you if you were going to

5   threaten a witness, fair enough?

6        A    If I was going to threaten a witness, I

7   couldn't think he would protect me; is that the

8   question?

9        Q    Yeah.  That's my question.

10       A    I don't know how to answer that.

11       Q    Well --

12       A    I don't know whether he would or not.  I've

13  never done that, so I don't know whether he would or

14  not.

15       Q    It's -- you have never in your life pressured

16  a witness, a suspect, right in an interrogation?

17       A    I think you would have to define pressure.

18       Q    All right.  Well, what about banging a radio

19  on a table and yelling at him?

20       A    No.  No.  No.

21       Q    You would never do anything like that?

22       A    Not me.

23       Q    Not you.

24       A    And what about threatening to -- you

25  understand what Mr. Chandler has said.  Mr. Chandler has

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 51 of 82 PageID #:
HEARING - MOTION FOR A NEW TRIAL - 28825 taken on July 13, 2015
269

1    said that when Detective Pierce left you said to him "If

2    you don't admit involvement in this case, we're going to

3    send a police officer to your home to arrest your sister

4    and to arrest your girlfriend for harboring a fugitive."

5    You know he said that, right?

6        A    I don't know that he said that.  I know that

7    never happened.

8        Q    Well, let me put it to you this way: You know

9    he testified to it at the trial.

10       A    I wasn't there.

11       Q    Well, you want me to read through the

12   deposition that Mr. Brustin did for you for hours where

13   he read to you Mr. Chandler's testimony and then you

14   said, "Oh, Mr. Chandler was lying.  That never

15   happened."

16       A    It never happened.

17       Q    Right.  I understand your position --

18       A    Okay.

19       Q    -- is that it never happened, right?

20       A    Correct.

21       Q    Okay.  I don't want to necessarily go through

22   the exercise but if you have any recollection of being

23   read Mr. Chandler's testimony at the civil deposition of

24   what he said at the criminal trial when he said that you

25   did, in fact, say to him after Pierce left "If you don't

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 52 of 82 PageID #: 28826
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
270

1    admit involvement in this case I'm going to send a

2    police officer to your home and arrest your sister and

3    your girlfriend for harboring a fugitive."  You know he

4    said that, don't you?

5         A    I've never heard him say that.

6         Q    Did you hear -- did you have a transcript read

7    back to you as to his testimony?

8         A    Not that I recall.

9              MR. SCHECK:  Oh.  I'm just conscious of time,

10        Your Honor.  And you're the fact finder.

11             JUDGE BUTLER:  I've got the rest of the week.

12             MR. SCHECK:  Okay.

13             JUDGE BUTLER:  I want to get this concluded,

14        though.

15             MR. SCHECK:  I understand.

16             JUDGE BUTLER:  I need a break right now.

17             MR. SCHECK:  Fine.

18             JUDGE BUTLER:  I think everybody needs a break.

19        Let's take ten minutes.

20             MR. SCHECK:  Thank you very much, Your Honor.

21             JUDGE BUTLER:  Do you think we'll be here five

22        or six more hours, tonight?  Do you think it's going

23        to take that long?

24             MR. SCHECK:  Well --

25             JUDGE BUTLER:  If it is, we'll come back

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1  tomorrow.
 2       MR. SCHECK:  Can we approach?
 3       JUDGE BUTLER:  Well, if we're going to be very
 4  much later, we can come back tomorrow.  We can't
 5  squeeze three days into one day.
 6       MR. SCHECK:  Right.  So what -- what is -- what
 7  do you mean by late?
 8       JUDGE BUTLER:  Well, probably a couple hours.
 9  We've got prisoners here we have to deal with.
10  We've got court personnel.  If we're going to be
11  more than two hours, we need to come back tomorrow.
12       MR. SCHECK:  Okay.  So let's take a break and
13  I'll think about it.
14       JUDGE BUTLER:  You-all talk about it.
15       MR. SCHECK:  How to shorten it all up.
16       JUDGE BUTLER:  Okay.
17              (OFF THE RECORD)
18       JUDGE BUTLER:  We'll call the Court back to
19  order.  I think everyone's back in.  Let me say
20  this.  I'm not going to press anyone on time, here.
21  This is -- all my cases are important and this is
22  another important case. All of them are important to
23  me.  And if it's necessary to come back tomorrow and
24  finish up, I'm available to do that.  I had a trial
25  that started tomorrow but it's been settled.  So
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    let's talk about time management.  It's 5:00 here.

2    I want to be mindful of my -- of the court personnel

3    and so forth and if we're going to be a lot longer,

4    I would like to come back tomorrow.  If we're not,

5    we can finish tonight.  I don't know what's ahead of

6    us. Only you-all know that.

7         MR. SCHECK:  I would think that I probably -- I

8    don't know what the redirect is going to be like.  I

9    probably could even relying on the transcript as an

10   exhibit into evidence, and not bothering to read,

11   because I think -- I consulted with my colleagues

12   and there are already exhibits in the motion.  So I

13   won't do too much with that.  But I would be another

14   half hour with him.

15        JUDGE BUTLER:  Okay.

16        MR. SCHECK:  And then they may -- I don't know

17   --

18        JUDGE BUTLER:  And how many witnesses after

19   this one?

20        MR. SIMON:  Would be one more witness and I'm

21   thinking 20 minutes to a half an hour.

22        JUDGE BUTLER:  Okay.

23        MR. SCHECK:  But, you know, on the --

24        JUDGE BUTLER:  Well, you-all are kind of --

25   you're from out of state so I don't know what your

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  travel arrangements are.  But I'll accommodate
2  anybody that I can to accommodate everybody.
3        MR. SIMON:  I appreciate that, Judge.  The next
4  witness from out of town and he needs to return.
5        JUDGE BUTLER:  He needs to do it today?
6        MR. SIMON:  Yeah.
7        JUDGE BUTLER:  You-all want to plow on?
8        MR. WILLIAMS:  I mean, I'm pretty tired.  I
9  don't know.  We've been at it since 8:30 this
10  morning.
11        JUDGE BUTLER:  Yeah.
12        MR. WILLIAMS:  I mean, when they say it's going
13  to take a half an hour.
14        JUDGE BUTLER:  I would like to do their out of
15  state witness that's waiting that they won't take
16  very long.  If we're not going to finish tonight,
17  I'd like to get him finished.  That's the only other
18  one, I think, that's a problem.  I think this
19  gentleman here -- you live in Louisville, don't you,
20  sir?
21        THE WITNESS:  Yes, sir.
22        JUDGE BUTLER:  Okay.
23        THE WITNESS:  But I do have a lot of work that
24  I need to do.
25        JUDGE BUTLER:  Okay.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 56 of 82 PageID #: 28830
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015

274

 1          THE WITNESS:  Thank you, Your Honor.

 2          MR. SCHECK:  It's up to the Court.  I mean, I

 3   don't quite trust myself.  I can try -- should I try

 4   to finish with him and then see what happens?

 5          JUDGE BUTLER:  Well, I'm concerned about the

 6   last witness, where's he from?

 7          MS. STAPLES:  He's from Chicago and his flight

 8   is at 8:00-something from Louisville.  So he --

 9          MR. SCHECK:  So can we take him out of order at

10   this point?  Does that make sense?

11          JUDGE BUTLER:  Well, you're not through with

12   the direct on this gentleman, right?

13          MR. SCHECK:  No.

14          JUDGE BUTLER:  And they've got cross.

15          MR. SCHECK:  Right.

16          JUDGE BUTLER:  Maybe we should take that one

17   out of order but he says he's got problems.  You got

18   problems coming back tomorrow?

19          THE WITNESS:  Yes.  I do, Your Honor.

20          JUDGE BUTLER:  Okay.  Let's just do it.

21          MR. SCHECK:  We're just thinking, we're not

22   sure anybody's going to be flying tonight, but

23   that's a different issue.  All right.  Well, maybe I

24   should just move on and see if I can finish him in a

25   half hour and then we'll go from there.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1              JUDGE BUTLER:  Okay.
2    BY MR. SCHECK:
3         Q    Okay.  Now, to save time, why don't you turn
4    to page 129 of the deposition and you wrote in reports,
5    you testified at pretrial hearings, and you said that
6    during your interrogation of Edwin Chandler, he
7    volunteered to you that "After entering the Chevron
8    Station as apparently supposedly the perpetrator of this
9    crime, he had to wait for an older black male wearing a
10   White Sox hat to leave before he put a Double Deuce
11   Colt-45 on the counter.  You remember that?
12        A    Correct.
13        Q    Right.  And your story is that Edwin Chandler
14   volunteered that to you, right?
15        A    Correct.
16        Q    You didn't feed any facts to him, correct?
17        A    I did not.
18        Q    And you would agree with us, would you not,
19   that certainly the White Sox hat was the most specific
20   fact and the most critical nonpublic fact that nobody
21   could possibly guess, right?
22        A    I think that was pretty strong.
23        Q    All right.  Well, turn to page 132 of your
24   deposition starting at line 15, were you asked these
25   questions, did you give these answers?  "Question: That
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   only the real perpetrator could know that there was a

 2   black man, older black man wearing a White Sox cap that

 3   he waited to leave, correct?  Answer: Correct.  And

 4   obviously the most specific fact, the most critical

 5   nonpublic fact that nobody could possibly guess is the

 6   White Sox cap, correct?  Answer: Correct.  You could not

 7   guess that. Question: It's statistically impossible,

 8   right?  Correct. I agree."  Do you see that?

 9        A    Yes, sir.

10        Q    All right.  So now you agree, do you not, that

11   Edwin Chandler, his fingerprint was not on the Colt-45

12   can, right?

13        A    Correct.

14        Q    That the fingerprint on the Colt-45 can was

15   Percy Phillips, correct?

16        A    I heard that later.

17        Q    Yeah, but we now know that Percy Phillips, it

18   was his fingerprint on the Colt-45 can.

19        A    That's what I've been told?

20        Q    What?

21        A    That's what I've been told.

22        Q    That's what you've been told, right?

23        A    Right.

24        Q    And you accept the fact that Mr. Chandler is

25   innocent; do you not?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 59 of 82 PageID #:
28833
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
277

```
 1        A    I do.
 2        Q    Okay.  So, first of all, he's an innocent man
 3   and you didn't tell him that you were going to send a
 4   police officer to arrest his sister and his girlfriend
 5   for harboring a fugitive, right?  You're telling us that
 6   he just spontaneously confessed these nonpublic facts
 7   and you didn't pressure him at all?  That's what you're
 8   saying?
 9        A    It's a very long explanation.  What I try and
10   do with somebody like him would be to minimize their
11   situation.  So it's not pressure as much as it is, this
12   isn't that big a deal, you know, we're going to be able
13   to deal with this.  You know, we've got your
14   fingerprints. It's more of that process than it is
15   banging and throwing and it's more, you know, we're
16   going to be able to work with this.
17        Q    Well, don't you remember that Mr. Chandler
18   said that you said to him "Look, maybe the gun went off
19   accidentally, you have to admit your involvement here" -
20   -
21        A    You know, give him an out.
22        Q    -- "otherwise, we're going to pick up your
23   sister and your girlfriend."
24        A    That's never -- I never said that.
25             MS. STAPLES:  I'm sorry.  Did you just say
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 60 of 82 PageID #:
28834
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
278

1      "give him an out," I heard?

2      A    That's what I would say, yeah.

3      Q    Okay.  Now, there were other nonpublic facts

4  aside from that just to orient ourselves, there was a

5  witness named Melvin Carr, correct?

6      A    Correct.

7      Q    And Melvin Carr was the person hat the White

8  Sox hat on, right?

9      A    Correct.

10     Q    And he was the elderly black man, correct?

11     A    Correct.

12     Q    And he was the one that said that the

13 perpetrator had like ladies sunglasses, correct?

14     A    I don't remember exactly what he said.

15     Q    Okay.  But Melvin Carr also said there are

16 other nonpublic facts included that there was a knit

17 hat, a blue toboggan hat that had a Georgetown insignia

18 on it, correct?

19     A    Correct.

20     Q    That was not public, right?

21     A    I don't know how much of that would have been.

22 I don't know how many people were at the scene.

23     Q    Well, you don't -- you don't remember

24 testifying at the deposition that you thought that the

25 blue toboggan hat with the Georgetown insignia was a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    nonpublic fact?

 2         A    Right.  I mean, I just don't -- I don't know

 3    how many people knew about it.

 4         Q    But you could've said in a deposition that was

 5    a nonpublic fact?

 6         A    I could have.

 7         Q    Yeah.  And you could have said in the

 8    deposition that the fact that the toboggan hat was found

 9    on the way out of the Chevron Station and the glasses

10    were found outside of the Chevron Station that those

11    were also nonpublic facts?  You could've said that in

12    this deposition, right?

13         A    Sure.

14         Q    All right.  And so would it be fair to say

15    that according to your story that Edwin Chandler after

16    you gave him this out that maybe the gun went off

17    accidentally, that he then volunteered that there was a

18    black man with a White Sox hat, an elderly black man

19    that he wore -- he, the perpetrator, wore a blue

20    toboggan hat with a Georgetown insignia on it, and

21    ladies type sunglasses and that after he committed the

22    crime where the gun went off accidentally he -- the

23    toboggan hat and the glasses were on the way out, that's

24    the way it went down?

25         A    Correct.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 62 of 82 PageID #:
28836
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
280

1    Q    And those were just unbelievably, amazingly

2  lucky guesses by this innocent man, Edwin Chandler, and

3  you didn't feed him any one of those nonpublic facts,

4  that's what you're telling us?

5    A    Correct.

6    Q    Now, you're a pretty subtle guy, aren't you,

7  when it comes to these kinds of facts?  Do you think so?

8    A    I don't really understand the question.

9    Q    Well, you know, when you go and you get

10  admissions from people, you're aware of very little

11  small distinctions, aren't you, that could make an

12  admission sound better than it might otherwise be,

13  right?  Do you know how to do that?

14    A    No.  I'm not sure exactly what you're asking.

15    Q    Okay.  Well, for example, at the trial of

16  Edwin Chandler, didn't you testify that you were not

17  sure that Melvin Carr had ever told you that he wore a

18  White Sox hat, it was just that when you interviewed Mr.

19  Carr, you saw him wearing it?

20    A    I don't recall.

21    Q    You don't remember that?  And you don't

22  remember -- well, would you agree that if you didn't

23  even know that Melvin Carr had worn the White Sox hat

24  and Edwin Chandler had volunteered the White Sox hat

25  that that would even be a stronger admission?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1         A     I agree.

 2         Q     Right.  And isn't that the way the testimony

 3   went down at the trial?

 4         A     I don't recall.

 5         Q     But that kind of subtlety is something that

 6   you're aware of, right?

 7         A     I'm not sure I understand the question.

 8         Q     Okay.  Now, isn't it also true that at some

 9   point that you indicated Detective Pierce turned on the

10   tape machine when Mr. Chandler was being interviewed,

11   correct?

12         A     Correct.

13         Q     And this admission when Mr. Chandler was then

14   talking on tape you were there as Pierce was asking him

15   questions, correct?

16         A     Right.

17         Q     Right?

18         A     Correct.

19         Q     And you understand that this is at a point in

20   time after Mr. Chandler has said that you fed him the

21   nonpublic facts, correct?

22         A     I'm still not -- you're saying this is at the

23   time when he's somewhere later on has said that.

24         Q     Let me start it this way, see if it helps you.

25   That you're aware that Mr. Chandler has contended at
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 64 of 82 PageID #:
28838
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
282

1    trial and in the civil case that you fed him the
2    nonpublic facts that we've discussed and that after you
3    fed him the nonpublic facts and after you made the
4    threat to arrest his sister and his girlfriend that it
5    was then that the tape machine was turned on and Pierce
6    took his statement, correct?
7        A    Correct.
8        Q    Okay.  And when the tape machine was turned on
9    and Pierce was taking the statement, right, Mr. Chandler
10   didn't mention the White Sox hat, right?
11       A    Correct.
12       Q    And you made a mistake because you should've
13   at that point jumped up and asked him about it, correct?
14       A    Right.
15       Q    You admit that, right?
16       A    Yeah.  Absolutely.
17       Q    Now, there also came a point in time, did
18   there not, when you received -- a Detective Clark came
19   to you and said that there was a man in prison sometime
20   around 1997 named John Gray who said that a person named
21   -- that an individual had confessed to him to the crime?
22       A    That never happened.
23       Q    All right.  So you're aware of an affidavit
24   that Mr. Palombi from the State Investigations
25   Commission got indicating that Detective Clark said that

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 65 of 82 PageID #:
28839
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
283

1    he went and interviewed a witness named John Gray who

2    said that this - - that Gray said that an individual

3    turned out to be Percy Phillips had confessed to him.

4    You're aware this happened?

5         A    I'm aware of that affidavit.

6         Q    Okay.  And that you're aware as well, that

7    Detective Clark is quoted by this investigator that when

8    this was brought to your attention you said you didn't

9    want to look into it because you already had a

10   confession and a conviction?

11        A    That never happened.

12        Q    That never happened.  Now, in this case, on

13   April 9th, and that is Exhibit --

14             MR. SIMON:  33.  Investigative letter 4-9?  33.

15        Q    On the 9th of April, again, there's an

16   investigative letter, correct?  I gave it to you as 33,

17   I believe, right?

18        A    Yes, sir.

19        Q    And, again, this is something that could've

20   been dictated sometime after April 9th and the original

21   note was destroyed just --

22        A    Most likely.

23        Q    Okay.  And in this one, turning to page 3,

24   right?  You describe that, again, you brought Keith

25   Hardin in and explained to him that he didn't have to

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   speak to you concerning any knowledge about this case.

2   And he said that he understood his rights and wished to

3   speak, correct?

4        A    Correct.

5        Q    And you didn't think at that time that it

6   would be a good idea to turn on a tape recorder because

7   you were about to arrest Mr. Hardin and you could ask

8   him questions and get him to make some of those damning

9   admissions that you already had from April 7th, right?

10       A    I can't tell you what I thought.

11       Q    Well --

12       A    I don't remember what I thought.

13       Q    Well, one thing we know is that you didn't

14  turn on a tape recorder, right?

15       A    Right.

16       Q    You didn't turn on a tape, right?

17       A    I'm going by this.

18       Q    And as best you can recollect and if you can't

19  recollect, tell us, Mr. Hardin was cooperative?

20       A    Correct.

21       Q    He was answering your questions, right?

22       A    Correct.

23       Q    He waived his Miranda warnings, right?

24       A    (NO VERBAL RESPONSE.)

25       Q    He said he understood his right side and

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  wished to speak to you, right?

2      A    Correct.

3      Q    And a witness like that, you could just turn

4  on a tape recorder ordinarily, right?

5      A    Well, I mean, when you read the statement, I

6  can't imagine somebody's going to come forward and deny

7  having said that.

8      Q    Well --

9      A    It looks a little self-serving to me.

10     Q    The statement that you wrote down is that you

11  asked Keith about information that you had received from

12  Crystal Barnes and Keith acknowledged that he had

13  previously told Rhonda that if she ever cheated on him

14  or left him, he would kill her, but he told that to all

15  his girlfriends and none of them were dead, right?

16     A    Right.

17     Q    Well, that's a pretty good admission, isn't

18  it? You think that's an admission, isn't it, of a kind?

19          MR. RYAN:  I'm not sure that the witness can

20      continue to characterize admissions as good and --

21     Q    Let me just put it to you this way.  The way

22  I'm asking the question to my brother is I'm asking what

23  you think.  I'm not asking for admission.

24     A    Yeah.  You know, I read it.  And then you go

25  on that he says he didn't have any guns, and I asked

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL  Document 317-75  Filed 01/26/23  Page 68 of 82 PageID #:
28842
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
286

1   about Rhonda's house on Thursday morning that he did not

2   see her that evening or morning and that he had done not

3   know what happened to Rhonda.

4       Q     Mr. Handy, I'm just -- let's take it a

5   paragraph at a time, all right?

6       A     Okay.

7       Q     This first one that I just asked you about

8   that he acknowledged that he had previously told Rhonda

9   if she ever cheated on him or left him that he would

10  kill her, but that he told that to all his girlfriends

11  and none of them were dead?

12      A     Yeah.

13      Q     Do you see that?  Now, in your opinion, is

14  that a damning admission?

15      A     I'd say given the fact that Rhonda's dead,

16  it's certainly a damning commission -- a damning

17  admission whereas if she'd have been alive, most people

18  wouldn't have paid much attention to it.

19      Q     Right.  So given that the witness, Mr. Hardin,

20  according to you was willing to make that admission, why

21  not turn on a tape recorder and get that audibly?

22      A     You know, we just didn't tape that much back

23  then.  And, generally, I would have somebody with me,

24  you know.

25      Q     Well, this is during the same -- this is,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1  frankly, you were taping in the West case?

2       A    I'm not saying we didn't tape.  I just don't

3  think we did it as often as they do it now.

4       Q    You were taping in the Chandler case, right?

5       A    Yeah.

6       Q    Let's put it this way, fair to say that that

7  first statement I just read to you was a damning

8  admission and it would've been useful to get that on

9  tape if it really happened?

10      A    Well, may I point -- to answer your question,

11  yes.  But I had another detective with me, and that was

12  part of it.

13      Q    Well, what about on the 9th you don't ask him

14  again, tape on or not, to discuss again the fact that he

15  did animal sacrifices and got tired of animal sacrifices

16  and wanted to do human sacrifices?  You didn't raise

17  that again, did you?

18      A    I don't recall.

19      Q    Now, let me just get to the heart of this.

20  Obviously, it's your position that these damning

21  admissions you attribute to Mr. Hardin about human

22  sacrifice, that he would kill his girlfriend Rhonda if

23  she ever cheated on him.  You say that those statements

24  were given to you no doubt about it?

25      A    No doubt about it.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 70 of 82 PageID #: 28844
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
288

1    Q    Okay.  And you testified and put that in

2    reports and you testified at the trial in March of 1997

3    in this case about those statements; did you not?

4    A    I don't recall.

5    Q    Well, you don't recall testifying but you

6    wouldn't be surprised if your testimony about those

7    admissions showed up in this trial, right?

8    A    I would not be surprised.

9    Q    Right.  And you wouldn't be surprised that the

10   prosecution was offering evidence of a broken chalice

11   with blood on it that they claim was part of animal

12   sacrifice, right?  You wouldn't be surprised by that?

13   A    Once again, I wouldn't.

14   Q    You don't remember.

15   A    Well, I wasn't there for that.

16   Q    Wouldn't you agree that it would be a serious

17   crime going to the honest integrity of a witness to lie

18   in a capital murder case about whether you fed key

19   nonpublic facts to get a persuasive confession; wouldn't

20   you agree?

21   A    Would I agree what?

22   Q    Wouldn't you agree that if an officer

23   testified, lied, in a capital murder case about whether

24   he fed key nonpublic facts to a witness to a suspect to

25   get a persuasive confession, if an officer did that,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1   that would be something that goes to the honesty and

 2   integrity of the officer; would you not agree?

 3        A    I agree.  I would agree.

 4        Q    Would you not agree that if an officer

 5   threatened a suspect by saying that he was going to go

 6   and have his sister and his girlfriend arrested by a

 7   police officer for harboring a fugitive, right?  If an

 8   officer lied about that kind of material fact, that

 9   would go to the honesty and integrity of the officer?

10        A    It would.

11        Q    And if you discovered a suspect or even a

12   fellow officer in the course of a case that lied about

13   significant material facts in the course of an

14   investigation, you found that out, wouldn't you have

15   trouble believing them in the next case?

16        A    I would.

17        Q    And the Chandler case happened, your testimony

18   in it, just weeks before this one, true?

19        A    I don't -- I know they were all together.  I

20   don't remember weeks, months, days.

21        Q    And you were --

22        A    I wouldn't challenge you on that.

23        Q    And your testimony in the West case was right

24   in the middle of this period of time --

25        A    It sounds right.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1        Q    -- February 14th, look at the deposition.

 2        A    Sure.

 3        Q    Fair enough?

 4        A    I believe it.

 5        Q    All right.  I don't have any further

 6   questions. Well, just one thing.  Were you aware that in

 7   the course of this investigation Sheriff Joe Greer and

 8   others did tape quite a number of witnesses in this

 9   matter?

10        A    I don't know what they did.

11        Q    You don't know what they did?  You can't

12   recall now but it would hardly surprise you?

13        A    I don't know what they did.

14        MR. SCHECK:  Okay.  And I believe there's no

15        objection, but let me just double check.  I'd like

16        to move for the sake of -- that the deposition in

17        the civil case, the deposition in the West case,

18        which we cited as part of the motion.

19        JUDGE BUTLER:  31 and 30 -- 30 and 31.

20        MR. SCHECK:  30 and 31, and also 32 and 33, the

21        letter -- investigative letters of April 7th and

22        April 9th be admitted.

23        JUDGE BUTLER:  Okay.

24        MR. RYAN:  And we have objected to the

25        relevance of all of this --
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 73 of 82 PageID #:
28847
HEARING - MOTION FOR A NEW TRIAL, taken on July 13, 2015
291

 1          JUDGE BUTLER:  Note your objection.

 2          MR. RYAN:  -- under KRE 404, also.

 3          JUDGE BUTLER:  Note your objection.  I will

 4    admit them into evidence.  Do you have

 5    those?(DEFENDANT'S EXHIBIT 30 MARKED FOR

 6    IDENTIFICATION)(DEFENDANT'S EXHIBIT 31 MARKED FOR

 7    IDENTIFICATION)(DEFENDANT'S EXHIBIT 32 MARKED FOR

 8    IDENTIFICATION)(DEFENDANT'S EXHIBIT 33 MARKED FOR

 9    IDENTIFICATION)

10          CLERK:  I do not have those exhibits.

11          MR. SIMON:  We'll provide those.

12          MR. SCHECK:  They're probably on the witness

13    stand.

14          JUDGE BUTLER:  Let's get them to her before we

15    lose them.

16          MR. SCHECK:  Okay.

17          MR. SIMON:  We can always -- we should have a

18    copy -- back to the witness as we need to.

19          JUDGE BUTLER:  Let's just get them marked.  The

20    30 is a deposition against Louisville Metro

21    Government. You've got that one?

22          CLERK:  Yes.

23          JUDGE BUTLER:  31 is the deposition --

24          CLERK:  Transcript of plaintiff hearing.

25          JUDGE BUTLER:  Report of video transcript of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 74 of 82 PageID #:
28848
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
292

 1    Plaintiff v. Keith West.  Look like this.

 2         CLERK:  Yes.

 3         JUDGE BUTLER:  Okay.  And then 32 is City of

 4    Louisville in the letterhead.

 5         CLERK:  Uh-huh.

 6         JUDGE BUTLER:  And then 33 is another one dated

 7    -- the first one is dated April 7th.  The second one

 8    is April 9th.

 9         CLERK:  Yes.

10         JUDGE BUTLER:  Okay.  They're in the record,

11    then.  You may cross-examine the witness.

12         MR. WILLIAMS:  Judge, we -- he's had this

13    witness for about two hours.

14         JUDGE BUTLER:  Okay.

15         MR. WILLIAMS:  And we'd like a little bit of

16    time to kind of try to digest what we need to --

17         JUDGE BUTLER:  How much time do you need,

18    David?

19         MR. WILLIAMS:  15 minutes.

20         JUDGE BUTLER:  Okay.  Could we take their next

21    witness so that person can catch their plane and

22    come back and finish this up, or do you want to take

23    them in proper order?

24         MR. SIMON:  No.  Our next witness is all right.

25    His flight is in a couple of hours.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              JUDGE BUTLER:  Okay.

 2              MR. SIMON:  If we get to him right away, we'll

 3      get to him right away, we'll be fine.

 4              JUDGE BUTLER:  All right.  Let's take ten

 5      minutes, then, let you-all prepare.

 6                      (OFF THE RECORD)

 7              JUDGE BUTLER:  Are we ready to go forward?

 8              MS. SMITH:  Yes, sir.

 9              JUDGE BUTLER:  All right.  We'll get back on

10      the record, then.  Everybody's back in the courtroom

11      and I believe the movants had finished examination

12      of Mr. Handy and you-all may question Mr. Handy.

13                      CROSS-EXAMINATION

14  BY MR. RYAN:

15      Q    Mr. Handy, you testified in this case in the

16  trial?

17      A    Yes, sir.

18      Q    Did you testify truthfully at that time to the

19  best of your knowledge and belief?

20      A    I did.

21      Q    Now, in your interviews with Mr. Clark and Mr.

22  Hardin, did either one of them ever fully confess to

23  killing Rhonda Warford?

24      A    No.

25      Q    And you never testified to that effect, did
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 76 of 82 PageID #:
28850
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
294

1    you?

2        A    No, sir.

3        Q    Where is -- I know the answer to this.  I just

4    need to put it on the record.  Where is Detective Hope

5    Greer now?

6        A    She passed away a couple of years ago.

7        Q    A couple of years ago.  And Sergeant Woosley,

8    where is he now?

9        A    I don't know.  He may be out of the country.

10   He does the Afghanistan the Warrior, whatever it is.

11       Q    All right.  But now, both Detective Woosley

12   and Detective Hope Greer were present at different times

13   during some of the interviews; is that correct?

14       A    Correct.

15       Q    And did you know beforehand Sheriff Joe Greer

16   of Meade County?

17       A    Had never met him.

18       Q    Did you know the defendant Jeff Clark

19   beforehand?

20       A    No.

21       Q    Did you know the defendant Garr Keith Hardin

22   beforehand?

23       A    No.

24       Q    Now, Counsel has asked you about some of the

25   testimony asking you to characterize it as very

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 77 of 82 PageID #:
28851
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
295

1    damaging. I think you just testified and I want to

2    clarify, neither of these defendants confessed the crime

3    to you, correct?

4         A    Correct.

5         Q    Could you explain a little further what, if

6    you remember, Sheriff Greer told you about before you

7    began the interview?  You said -- you alluded to the

8    devil worship but --

9         A    I don't honestly, the -- all I remember is --

10   is coming into the homicide office and Sheriff Greer who

11   I'd never met and then there was a coroner, Jim, Bill,

12   Jim Adams.

13        Q    Okay.

14        A    And those two were there in the homicide

15   office and asked for our assistance in this case.  And

16   as far as how it went from there, I -- I have no memory.

17        Q    So this was essentially a Meade County

18   investigation?

19        A    Correct.

20        Q    And you were doing nothing really more than

21   assisting with the investigation?

22        A    Correct.

23        Q    Have you ever investigated a case and found

24   evidence that was beneficial to the defendant and then

25   reported that to your supervisor or to the prosecutor?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 3:17-cv-00419-GNS-CHL Document 317-75 Filed 01/26/23 Page 78 of 82 PageID #: 28852
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
296

 1     A     I'm sure I have.

 2     Q     Has that happened frequently?  How many times

 3  -- hard to say?

 4     A     It's hard.  I know that I had in the one West

 5  case that the mother of the decedent had told me that he

 6  had a gun and I wrote that into a letter and I turned it

 7  in because they tried to make a big deal out of finding

 8  these bullets when an investigative letter that I had

 9  written months before said the man had a gun.  So, I

10  mean, clearly there was evidence of that.

11     Q     And that was beneficial to the defendant?

12     A     Correct.

13     Q     Okay.  Were any of these individuals ever

14  released from custody after you reported evidence that

15  was beneficial to the defendant?

16     A     I don't know.

17     Q     What is the impact of a suspect's or any

18  witnesses' demeanor when you interview the witness?  You

19  understand what I mean by demeanor?

20     A     Well, I believe so.  I -- you know, I would

21  characterize it as pretty nonconsequential.  I mean, you

22  know, they can act as innocent as can be, agree to take

23  polygraphs, I can't bend over backwards and do whatever

24  you guys want and can be guilty.  And you can have a guy

25  say, "I'll shove that polygraph up you know what," and

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 79 of 82 PageID #:
28853
HEARING - MOTION FOR A NEW TRIAL taken on July 13, 2015
297

1   be innocent.  So I'm not sure there is a standard you

2   apply. If -- I'm sorry, if that answers your question?

3        Q    Yeah.  That answers that question.

4        A    Okay.

5        Q    If you detect, and you're a police officer,

6   that the witness, suspect, the interviewee is under the

7   influence of drugs or alcohol, how does that affect the

8   way you --

9        A    Well --

10       Q    -- proceed in the questioning?

11       A    -- if -- if they're manifestly under the

12   influence, then we wouldn't.

13       Q    Okay.

14       A    We just wouldn't do it.

15       Q    Do you remember anything about Clark's

16   demeanor when you interviewed him?

17       A    No.  Not really.

18       Q    Do you remember anything about Hardin's

19   demeanor when you interviewed him?

20       A    No.

21       Q    Did you have any reason at all to fabricate

22   evidence in this case at all?

23       A    No.

24       Q    To your knowledge, was every statement that

25   you took from either Clark or Hardin released to the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 80 of 82 PageID #: 28854
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
298

1    defense attorneys?

2        A    To my knowledge.

3        Q    That's "yes"?

4        A    Yes.

5        Q    When you testified at trial, were you cross-

6    examined on the fact that there were no taped

7    statements?

8        A    I don't remember.

9        Q    Is everything in these investigative reports

10   true and correct to the best of your knowledge and

11   belief?

12       A    It is.

13       Q    Do you have any independent memory of Hardin

14   saying that he had a vision in which the victim had been

15   killed and that in the vision, she was dressed in red

16   and screaming in a field?

17           MR. SCHECK:  Objection.  Your Honor, that

18      wasn't his statement.

19       A    Right.  I have knowledge of it --

20           JUDGE BUTLER:  Hold on.  Hold on just a second.

21       A    -- somebody else.

22           JUDGE BUTLER:  Hold on, sir.

23           THE WITNESS:  Yes, sir.

24           JUDGE BUTLER:  Don't answer until I tell you

25      you can.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-75   Filed 01/26/23   Page 81 of 82 PageID #:
28855
HEARING - MOTION FOR A NEW TRIAL - taken on July 13, 2015
299

1       THE WITNESS:  Yes, sir.

2       MR. SCHECK:  My objection is that I think it

3   misstates the evidence.  I think it was a statement

4   allegedly made to Hope Greer.

5       JUDGE BUTLER:  What was the question, Mr. Ryan?

6       MR. SCHECK:  You're asking if he has a

7   recollection of a statement that there's no

8   investigative report he ever took.

9       MR. RYAN:  You know, you're correct.  I'll

10  withdraw the question.

11      JUDGE BUTLER:  Okay.

12      MR. RYAN:  That statement was made to another

13  detective.

14      JUDGE BUTLER:  Okay.

15  BY MR. RYAN:

16      Q    Do you have any independent knowledge or

17  memory of Hardin admitting that he killed small animals

18  in ritualistic sacrifices?  We got into that earlier, I

19  know, but --

20      A    Yeah.  But other than that letter, I don't

21  have any memory of it.

22      Q    Do you have any independent memory of Hardin

23  stating that -- you were examined about this earlier.  I

24  just wanted to ask you if you had an independent memory

25  of the statement that if he told Rhonda if she ever

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   cheated on him or left him, he would kill her?

2        A     Independent of that letter, I don't remember

3   that.

4             MR. RYAN:  I don't have any further questions.

5             JUDGE BUTLER:  Any redirect?

6             MR. SCHECK:  One question.

7             JUDGE BUTLER:  Okay.

8                       REDIRECT EXAMINATION

9   BY MR. SCHECK:

10       Q     You were asked on cross-examination if you had

11  any reason to make up any statements attributed to the

12  defendants in this case; you heard that?

13       A     Yes, sir.

14       Q     All right.  Do you have any reason to make up

15  any -- to tell Edwin Chandler nonpublic facts and then

16  lie about that?

17       A     I didn't do that.

18            JUDGE BUTLER:  Any recross?

19            MR. RYAN:  No.

20            JUDGE BUTLER:  May this witness be excused?

21            MR. SCHECK:  Yes.

22            JUDGE BUTLER:  Thank you.  Mr. Hardin, you're

23     excused.  Thank you very much for your testimony.

24            THE WITNESS:  Thank you, Judge.

25            JUDGE BUTLER:  You may call your next witness.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com