1        IN THE UNITED STATES DISTRICT COURT

2      FOR THE WESTERN DISTRICT OF KENTUCKY

3                  AT LOUISVILLE

4        FILE NO. 3:17-cv-00419-JRW-CHL

5

6

7

8          JEFFREY DEWAYNE CLARK &

9           GARR KEITH HARDIN,

10               PLAINTIFFS

11

12                    V.

13

14        LOUISVILLE JEFFERSON COUNTY

15        METRO GOVERNMENT, ET AL.,

16               DEFENDANTS

17

18

19

20

21

22

23   DEPONENT:  ERNIE EMBRY

24   DATE:      FEBRUARY 19, 2020

25   REPORTER:  LACEE TOWNSEND

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-87   Filed 01/26/23   Page 2 of 9 PageID #:
28934
The Deposition of ERNIE EMBRY, taken on February 19, 2020
23

```
 1        Q     No school?

 2        A     -- at that time.  You was on the job training.

 3        Q     So any training that you received on the job

 4   was from Joe Greer; is that correct?

 5        A     Uh-huh.

 6        Q     You never went to any type of academy?

 7        A     No.

 8        Q     When you say on-the-job training, what kind of

 9   on-the-job training were you getting from Sheriff Greer,

10   when you were employed with the Meade County Sheriff's

11   Office?

12        A     Well, I can't say what it -- I mean, I don't

13   know.  It was -- we'd ride with another deputy and

14   learn.

15        Q     So it was just learning at the --

16        A     I trained some of them later myself, so.

17        Q     Learning as you go?

18        A     Yeah.

19        Q     Were there -- well, we've been told that there

20   were no written policies in place in the late 1980s,

21   early 1990s at the Meade County Sheriff's office.  Is

22   that your recollection as well? No written manual that

23   you were given when you joined the Meade County

24   Sheriff's Office?

25        A     No, I wouldn't know nothing about the '90s but
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of ERNIE EMBRY, taken on February 19, 2020

24

1    when I hired in it wasn't.

2        Q    At any time were you given any written

3    policies?

4        A    No.

5        Q    All right.  So I just want to make sure that

6    I'm clear.  You were originally hired as a deputy in

7    1985; is that correct?

8        A    Yes, ma'am.

9        Q    Okay.

10           MR. BOND:  Say "yes" or "no".

11       A    Yes.

12       Q    Thank you.  And for about a year you were on

13   full-time getting paid --

14       A    Yes.

15       Q    -- $10,500?

16       A    Yes.

17       Q    Okay.  And then you left for a while and you

18   came back in 1986?

19       A    No, I worked 1985 and 1986 and left.

20       Q    Okay.  And I thought you had told me that you

21   came back in late 1986.

22       A    Well, two weeks after I got laid off.

23       Q    Okay.  So you were there from 1986 and you

24   left the Meade County Sheriff's Office officially

25   sometime after 1995.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of ERNIE EMBRY, taken on February 19, 2020

25

```
 1        A     Yes.

 2        Q     Okay.  And during that time, you received no

 3   formal training.

 4        A     No.

 5        Q     And during that time you were unaware of any

 6   formal written policies.

 7        A     Right.

 8        Q     All right.  At the time that you went to work

 9   for the Meade County Sheriff's Office you had known

10   Sheriff Greer for a while then --

11        A     Yes.

12        Q     -- is that correct?

13        A     Yes.

14        Q     And you considered him to be a friend?

15        A     Yes.

16        Q     Do you consider him to be a friend today?

17        A     Yes.

18        Q     When's the last time that you spoke with

19   Sheriff Greer?

20        A     That's sad to be a friend -- I don't know.

21   Been year -- two or three years or better.  Of course,

22   my health ain't been no good either, so.

23        Q     When you have seen Sheriff Greer over the

24   years since this complaint was filed, have the two of

25   you-all discussed this case?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q     You doing all right?

 2        A     Yeah.  Best I can do.

 3        Q     All right.  I'll try to keep this brief.  So

 4   when you joined the Meade County Sheriff's Office in

 5   1985, Sheriff Greer was the sheriff, correct?

 6        A     Yes.

 7        Q     And that was true through your entire tenure

 8   at the sheriff's office, right?

 9        A     What?  Yes.  Yes.

10        Q     So until you left in about '94 or '95?

11        A     Yes.

12        Q     And I think you said earlier he was the boss,

13   right?

14        A     Yes.

15        Q     No question that Sheriff Greer was the one in

16   charge.

17        A     Yes.

18        Q     He made all the decisions for the sheriff's

19   department, correct?

20        A     Yes.

21        Q     Any policies that your department would have,

22   that would come from Sheriff Greer correct?

23        A     Yes.

24        Q     Sheriff Greer was the one responsible for

25   training, right?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1          A     Yes.

 2          Q     He was the one who would make decisions on

 3    assignments, right?

 4          A     Yes.

 5          Q     And the practices of the department came from

 6    Sheriff Greer at the top, right?

 7          A     Yes.

 8          Q     Certainly that was true when you joined,

 9    right?

10          A     Yes.

11          Q     And it was true when you left?

12          A     Yeah.

13          Q     When you joined in 1985 Cliff Wise was the

14    deputy there, right?

15          A     Chief deputy.

16          Q     The chief deputy.  Okay.  And you mentioned

17    there was no requirement during your time at the Meade

18    County Sheriff's Office that you write reports in cases

19    that you were working, right?

20          A     No.

21          MR. BOND:  Object to the form.

22          Q     You could write a report, but you didn't have

23    to.

24          A     Well, I don't know how to answer that.  I

25    mean, I guess I could have wrote -- I guess I could,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   yeah.

 2       Q    But you were not required by Sheriff Greer to

 3   write a report?

 4       A    No.

 5       Q    Sheriff Greer didn't provide any guidance to

 6   you on documentation in your job, correct?

 7            MR. BOND:  Object to the form of the question.

 8       A    No.

 9       Q    He didn't tell you, for example, when you

10   responded to a domestic dispute that you would have to

11   document your interactions with the witness there.

12            MR. BOND:  Object to the form of the question.

13       A    Not that I remember.  No.

14       Q    And you mentioned that you would sometimes

15   fill out traffic reports, correct?

16       A    Yes.

17       Q    Would that be a standardized form that you

18   would fill out?

19       A    Yes.

20       Q    But there's -- you had no formal training from

21   Sheriff Greer on what you had to include in that report,

22   correct?

23       A    No, it was self-explanatory.

24       Q    Okay.  But in terms of some of your other job

25   obligations, when you would serve arrest warrants you
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 3:17-cv-00419-GNS-CHL   Document 317-87   Filed 01/26/23   Page 8 of 9 PageID #:
28940
The Deposition of ERNIE EMBRY, taken on February 19, 2020
87

```
 1   would often arrest people, correct?

 2       A    Right.

 3       Q    In doing that you would talk to the person

 4   that you arrested, right?

 5       A    Right.

 6       Q    Sometimes they would make statements to you,

 7   right?

 8       A    Yeah.

 9       Q    And you were never taught that you had to

10   document those statements.

11       A    No.

12            MR. BOND:  Object to the form of the question.

13       Q    And in fact you were not required to

14   document --

15       A    No.

16       Q    -- anything that a suspect had said to you

17   when you arrested them, correct?

18       A    Right.

19       Q    Do you understand what Brady obligations are?

20       A    What now?

21       Q    Familiar with the obligation of law

22   enforcement to turn over exculpatory evidence to the

23   prosecution in a case?

24       A    I still don't understand what you're -- it's

25   too --
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of ERNIE EMBRY, taken on February 19, 2020

1    Q    Okay.

2    A    -- too for over an old man's head.

3    Q    Fair enough.  When -- well, you've already

4    told us you had no formal training even on your

5    constitutional obligations as a deputy at the Meade

6    County Sheriff's Office, correct?

7    A    Right.

8    Q    No training on the constitutional cases that

9    controlled your obligations as a deputy, correct?

10   A    Just on-the-job training.

11   Q    Just on-the-job training and that would all

12   come from Sheriff Greer, right?

13   A    Well, yeah.  It was, yeah.

14   Q    And you -- so for example, if Cliff Wise told

15   us that he wouldn't have documented information from a

16   witness because he never received any training from

17   Meade County Sheriff's Department saying he had to

18   document it, that's consistent with what you just told

19   me as well, right?

20        MR. BOND:  Object to the form.

21   A    Repeat that again.

22   Q    Sure.  Cliff Wise told us that he would not

23   document statements from witnesses because he never

24   received any training from the Meade County Sheriff's

25   Department about having to document those statements.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com