UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-419-GNS-CHL

JEFFREY DEWAYNE CLARK, et al.,                                    Plaintiffs,

v.

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are two discovery motions: (1) a Combined Motion to Strike Plaintiffs' Untimely Disclosures (DN 239) filed by Defendants Louisville Jefferson County Metro Government, City of Louisville, Jim Woosley, Meade County, Joseph Greer, Cliff Wise, William Adams, Mark Handy, and Robert Thurman ("Thurman") (collectively "Defendants");[1] and (2) a Motion to Strike Ed Monarch as a Witness from Plaintiffs' 2d Supplemental Rule 26 Disclosures (DN 238) filed by Defendant Thurman. Plaintiffs Jeffrey Dewayne Clark ("Clark") and Garr Keith Hardin ("Hardin") filed responses (DNs 240, 245), and Defendants filed replies (DNs 246, 248). Therefore, these matters are ripe for review.

For the reasons set forth below, Defendants' Combined Motion to Strike (DN 239) is **GRANTED IN PART and DENIED IN PART** as moot, and Defendant Thurman's Motion to Strike Monarch (DN 238) is **GRANTED**.

---

[1] A number of individual Defendants have been dismissed since the motion was initially filed; therefore, the Court construes the motion as having been brought on behalf of the remaining Defendants.

## I.      BACKGROUND

As this Court has explained in many prior opinions, this case involves Plaintiffs' alleged wrongful convictions for the 1992 murder of Rhonda Sue Warford.  (DN 38, at ¶¶ 1-20, 40; DN 39, at ¶¶ 1-20, 40.)  In their Amended Complaints, Plaintiffs brought 42 U.S.C. § 1983 claims for due process violations; fabrication of false evidence in violation of the Fourth, Fifth, and Fourteenth Amendments; malicious prosecution; supervisory liability; failure to intervene; conspiracy to deprive them of constitutional rights; and *Monell* claims, as well as state law claims for negligent supervision, respondeat superior, malicious prosecution, intentional/reckless infliction of emotional distress, and negligent infliction of emotional distress.  (DN 38, at ¶¶ 176-267; DN 39, at ¶¶ 176-267.)

Fact discovery in this case commenced approximately on or about August 3, 2018, after the Parties' Rule 26(f) conference.  (DN 58.)  The Court initially set a discovery deadline of September 3, 2019.  (DN 69.)  The Court then extended the discovery deadline multiple times to account for complications arising from the number of Parties, the complexity of Plaintiffs' claims, the COVID-19 pandemic, and several issues regarding discovery from third parties that were outside the Parties' control.  (DNs 105, 125, 136, 146, 166, 200, 229.)  The final fact discovery deadline was set for February 3, 2022.  (DN 229.)

Plaintiffs Hardin and Clark first served their initial disclosures on August 17, 2018, and August 24, 2018, respectively.  (DNs 239-1, 239-2.)  Plaintiff Hardin served supplemental disclosures on April 23, 2020.  (DN 239-3.)  Then, as is most relevant to the instant motions, Plaintiffs Hardin and Clark served additional supplemental initial disclosures on February 2, 2022, and February 3, 2022, respectively.  (DNs 239-4, 239-6.)  Plaintiffs' supplemental disclosures included at least forty-four newly-identified individuals who had never been formally disclosed by

Plaintiffs before in this matter.  (*Compare* DNs 239-4 and 239-6, *with* DNs 239-1, 239-2, and 239-3.)  Among the newly-identified individuals for Plaintiff Clark was counsel for Defendant Thurman C. Edward Monarch ("Monarch") as a person likely to have discoverable information Plaintiff Clark might use to support his claims or defenses pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  (DN 239-6.)  As to the "subject[ ] of that information," Clark explained:

> Edward Monarch is an attorney and the son of deceased Meade County Judge Sam Monarch, who was the trial judge in Plaintiffs' underlying wrongful conviction. Judge Monarch had contact and communication with witnesses and attorneys during the underlying criminal prosecution that apparently continued through Plaintiff's grant of a new trial and impending exoneration. It is believed that Ed Monarch is privy to information gleaned from his father regarding the underlying investigation, prosecution, and wrongful conviction of Plaintiffs. It is further believed that Mr. Monarch has had conversations with other witnesses in this litigation, including Perry Ryan, who is represented by a colleague of Mr. Monarch.

(*Id.* at PageID #1837.)  Defendants objected to the late disclosure of these witnesses generally and Defendant Thurman objected to Monarch's disclosure specifically; the Parties attempted to meet and confer in an attempt to resolve the dispute.  (DN 239, at PageID # 1739-40.)  After their conversations, Defendants maintained an objection to only thirty-one of the newly-disclosed witnesses, including Monarch.  (*Id.* at 1741.)  Those thirty-one witnesses were:

| | |
|---|---|
| Jim Petit | Jay Lambert |
| Joseph Carroll | William Lee Broyles |
| Robert White | Charles Broaddus |
| Barry Wilkerson | Christopher Geter |
| Joe Richardson | Larry Smalls |
| Vince Robison | Brede Timberlake |
| Donald Burbrink, Sr. | Jonathan Whitesides |
| Dawn Katz | David Williams |
| Brett Johnson | Stuart McCoy |
| Keith Carpenter | Ashley Edwards |
| Keith Yarka | Jim Lesousky |
| Jeffrey Eden | Robert Ross |
| Jimmer Dudley | Ruth Bowie |
| Percy Phillips | Edward Monarch |
| John Gray | Linda Smith |
| Troy Brock | |

(DN 239, at PageID # 1742; DN 239-4; DN 239-6.)

Because the Parties were at an impasse, they scheduled a telephonic status conference with the Court to discuss their dispute.  (DN 236.)  During the conference, while both Parties made the basis for their respective legal positions clear, the Court focused on whether the Parties had exhausted their efforts to reach a compromise on this dispute.  (DN 243.)  Ultimately, as the Parties could not reach a compromise, the Court gave Defendants leave to file a motion regarding Plaintiffs' supplemental initial disclosures and a separate motion that specifically addressed Plaintiff Clark's disclosure of attorney Monarch.  (DN 237.)  Defendants then filed the instant motion to strike the newly-disclosed witnesses, and Defendant Thurman filed a separate motion to strike Monarch.  (DNs 238, 239.)  Those motions are now before the Court.

## II.      DISCUSSION

### A.      Legal Standard

Rule 26(a)(1) requires that parties provide as initial disclosures—without a discovery request—"the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(e) imposes on parties a continuing obligation to supplement or correct their disclosures.  Fed. R. Civ. P . 26(e).  These requirements are enforced through Rule 37.  Rule 37(c)(1) provides that

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."  *Dickenson v. Cardiac &*

*Thoracic Surgery of E. Tenn. P.C.*, 388 F.3d 976, 983 (6th Cir. 2004).  The Sixth Circuit has adopted a five-factor test for determining if a failure to disclose is justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).  The core goal of this evaluation is to "separate[e] 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable Inc.*, 940 F.3d 205, 221 (6th Cir. 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016) (internal citations omitted)).

In lieu of exclusion, a court may also award reasonable expenses, including attorney's fees caused by the failure to disclose; inform the jury of the failure; or impose other appropriate sanctions including, but not limited to, treating facts as established for purposes of the action, prohibiting a party from introducing matters into evidence, striking pleadings, staying further proceedings, dismissing the action, rendering a default judgment, or treating the failure to disclose as contempt of court.  Fed. R. Civ. P. 37(c)(1).

### B.    Defendants' Combined Motion to Strike (DN 239)

Defendants requested that the Court strike thirty-one of the individuals newly-disclosed by Plaintiffs. (DN 239.)  They generally argued that Plaintiffs' disclosures were untimely given their extremely close proximity to the close of discovery and that "Plaintiffs ha[d] known for years that the individuals listed in their supplemental disclosures were potential witnesses but failed to disclose the identities of such individuals until the last day of discovery."  (*Id.* at PageID # 1744.)  Emphasizing the breadth of discovery in this case, Defendants argued that the mere reference to

the newly-disclosed individuals in discovery was insufficient notice to Defendants that those individuals were potential witnesses.  (*Id.* at 1743-46.)  Defendants then conducted a fact-specific analysis as to each newly-disclosed witness and why the circumstances surrounding each supported that Defendants had no reason to suspect the individual would be identified and that Plaintiffs could—and should—have disclosed each much, much earlier.  (*Id.* at 1746-67.)

In their response and despite their prior refusal to change position both at the request of the undersigned in an attempt to reach a compromise and in their discussion with Defendants, Plaintiffs asserted that they were now seeking to retain only six of the newly-disclosed witnesses on their supplemental disclosures: (1) Robert Ross, (2) Ruth Bowie, (3) Jimmer Dudley, (4) Dawn Katz, (5) Edward Monarch, and (6) David Williams.  (DN 245, at PageID # 2184.)  Seemingly conceding the untimeliness of their disclosures, they argued that the applicable *Howe* factors weighed in favor of a finding that the late disclosure was substantially justified or harmless.  (*Id.* at 2184-86.)  They also argued that Defendants should have known that each of the six witnesses would have been identified to give testimony in this case.  (*Id.* at 2186-88.)  Given Plaintiffs' concession as to all witnesses except the six identified above, Defendants motion will be denied as moot as all individuals but those six.

In their reply, Defendants emphasized how serious a change in position Plaintiffs had made in their response.  (DN 248.)  Defendants then proceeded to supplement their witness-by-witness arguments as to the six remaining individuals though for attorney Monarch they cited the Court to the separately-filed motion regarding the propriety of his disclosure.  (*Id.* at PageID # 2227-35.)  In both their reply and their initial motion, Defendants requested that if the Court does not strike the witnesses, the Court "vacate deadlines, re-open discovery, and require the Plaintiffs to bear the

Defendants' costs on this avoidable briefing." (*Id.* at 2225.)  They had also requested the same relief in their initial motion.  (DN 239, at PageID # 1742.)

Two threshold issues require resolution before the Court can conduct the necessary fact-specific analysis as to the propriety of disclosure of the remaining disputed witnesses.  First, though Defendants' motion is captioned a "motion to strike," the Court questions whether this is the proper way to frame the remedy sought by Defendants.  The only motion to strike referenced in the Federal Rules of Civil Procedure is a motion to strike *pleadings*.  Fed. R. Civ. P. 12(f).  Initial disclosures are not pleadings as defined by the rules.  Fed. R. Civ. P. 7(a) (stating that only pleadings, answers, third-party complaints, answers to third-party complaints, and replies to answers are pleading are allowable pleadings).  Thus, the true issue raised by Defendants is whether a failure to disclose by Plaintiffs justifies exclusion of these witnesses pursuant to Fed. R. Civ. P. 37(c), not necessarily whether the name is "struck" from Plaintiffs' initial disclosures.

Second, the Court must determine whether Plaintiffs "failed" to identify a witness as required by either Fed. R. Civ. P. 26(a) or 26(e).  Fed. R. Civ. P. 26(a)(1)(C) requires that initial disclosures be made "at or within [fourteen] days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order."  Fed. R. Civ. P. 26(a)(1)(C).  Here, the Court did not modify this deadline because the Parties advised during the Rule 16 scheduling conference that they had already exchanged initial disclosures.  (DN 69.)  The Parties conducted their Rule 26(f) meeting telephonically on August 3, 2018; thus, their initial disclosures were due to be exchanged anytime between August 3, 2018, and August 17, 2018.  (DN 58.)  The newly identified individuals relevant to the instant motions were not disclosed until February 2-3, 2023; their disclosure certainly did not comport with Fed. R. Civ. P. 26(a).

> Rule 26(e) requires a party who has made Rule 26(a) disclosures to
>
> supplement or correct its disclosure . . . in a timely manner if the party learns that
> in some material respect the disclosure or response is incomplete or incorrect, and
> if the additional or corrective information has not otherwise been made known to
> the other parties during the discovery process or in writing[ ] or [ ] as ordered by
> the court.

Fed. R. Civ. P. 26(e)(1).[2]  "The duty to supplement under Rule 26(e) is designed to prevent a party from surprising his adversary in setting forth new facts not disclosed during discovery in sufficient time to adequately respond to them."  *Matilla v. S. Kentucky Rural Elec. Co-op. Corp.*, No. CIV.A. 6:04-380-DCR, 2006 WL 7128675, at *3 (E.D. Ky. Jan. 20, 2006).  Given this purpose, the Court cannot conclude that disclosures made the day before or the day of the discovery deadline are "timely" within the meaning of Rule 26(e).  After discovery closes, a party would have no mechanism to find out additional information regarding any disclosed witness without seeking leave from the court to take discovery outside the discovery period, leave which may or may not be granted depending on the specific facts and circumstances underlying the request.  Thus, the Court concludes that Plaintiffs' supplemental disclosures were not timely within the meaning of Fed. R. Civ. P. 26(e) unless as provided by the rule the information was "otherwise made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  The remaining questions for the Court as to the witnesses at issue are twofold: (1) was the witness and the subject of any discoverable information held by that witness "otherwise made known to the other parties during the discovery process or in writing"; and (2) if not, was the failure to timely provide that information substantially justified or harmless.  Except for attorney Monarch, the Court will consider these questions as to the remaining disputed witnesses individually or in

---

[2] Though the Court set an initial supplementation deadline for July 3, 2019, it did not subsequently extend that deadline to match other extensions to the schedule.  (DN 69.)  Accordingly, the timeliness of Plaintiffs' disclosures is governed by Rule 26(e)(1)(A).

relevant groups below.  The Court will address these questions as to attorney Monarch in its discussion of the separately-filed motion of Defendant Thurman.

### 1. David Williams

Plaintiff Clark identified David Williams in his supplemental disclosures as "an attorney for the Commonwealth who prosecuted Jeffrey Dewayne Clark and Garr Keith Hardin throughout Mr. Clark and Mr. Hardin's post-conviction proceedings and 2017 indictments." (DN 239-6, at PageID # 1831.)  Defendants emphasized in their motion that Williams did not become involved in Plaintiffs' criminal case until more than eighteen years after their initial convictions when he became the Commonwealth's Attorney for the 46th Judicial Circuit in 2013.  (DN 239, at PageID # 1752.)  Defendants represented that Williams was not involved with the officers who investigated the Warford homicide originally and was only involved in post-conviction proceedings regarding Clark and Hardin and the 2017 indictments against them for kidnapping and perjury.  (*Id.* at 1753.)  Defendants stated that they had no reason to believe Williams would be identified as a witness given his lack of involvement with the original homicide investigation.  (*Id.*)

In their response, Plaintiffs argued that items they disclosed including "the post-conviction proceedings, briefings, court filings, and other materials" disclosed Williams's name.  (DN 245, at PageID # 2188.)  They point out that their Amended Complaint specifically referenced the kidnapping and perjury charges brought by Williams.  (*Id.*)  Plaintiffs pointed out that Defendant Thurman testified that his counsel has known and met Williams.  (*Id.*)  Plaintiffs argued that Defendants' position boils down to a relevance objection that is not at issue at this stage of the proceedings.  (*Id.*)

In their reply, Defendants emphasized that the basis for Plaintiffs' claims against the various officers is their involvement in the original investigation, something about which Williams has no personal knowledge.  (DN 248, at PageID # 2228.)

The Court disagrees with Defendants' narrow construction of Plaintiffs' claims.  As it has summarized previously, Plaintiffs' amended complaints appear to address both claimed errors in the initial investigation and in the postconviction proceedings.  But this distinction does not carry the day on the instant issue.  The Parties' briefing fails to demonstrate to the Court that the witness and the subject of any discoverable information held by that witness was "otherwise made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  While Plaintiffs noted that Williams's name was evident in discovery, no party provided a sufficient summary of the discovery documents exchanged to demonstrate that the subject of any discoverable information held by Williams was made apparent during the discovery process or in writing.  Thus, the Court concludes that Plaintiff Clark's disclosure of Williams was untimely, and Williams must be excluded unless the applicable *Howe* factors weigh in favor of a finding that the failure to disclose was substantially justified or harmless.

### 2.    Dawn Katz

Plaintiffs both disclosed Dawn Katz as "an analyst at the Kentucky State Police Forensic Laboratory during the relevant time" in their supplemental disclosures.  (DN 239-4, at PageID # 1811-12; DN 236-6, at PageID # 1831.)  Defendants argued that though Katz's name came up in two depositions, there were no "facts, information, or evidence of any kind" introduced or revealed in discovery "to demonstrate that Dawn Katz possesses any relevant knowledge with respect to the investigation or conviction of Clark or Hardin."  (DN 239, at PageID # 1754.)  Defendants attached as exhibits the two depositions in which they claim Katz's name came up but the portions

of these transcripts presented to the Court shed no light on Katz's connection to this case or any discoverable information she may possess.  (DN 239-33; DN 239-34.)

In their response, Plaintiffs emphasized that Katz was a defendant in a separate case that Plaintiffs identify only as the "Gregory" litigation, which they claim was referenced in their amended complaint.  (DN 245, at PageID # 2187.)  Plaintiffs stated that Katz worked alongside Defendant Thurman and argued that her name has been mentioned at two depositions in this case.  (*Id.*)

In their reply, Defendants argued that there is no indication that Katz was involved in Clark or Hardin's case.  (DN 248, at PageID # 2229.)  They also reiterated that given the amount of discovery in this case, the mere mention of a name is not sufficient notice that a person might be a witness.  (*Id.*)

The Court finds the fact that Katz was a witness in a separate case nondeterminative of whether Defendants had sufficient notice that she possessed discoverable information regarding this matter.  The mere mention of a witness's name during a deposition is a far cry from the required disclosure of the subject of any discoverable information held by a witness and without that information, the Court cannot say that the deposition testimony cited by Defendants meets the notice requirements of Fed. R. Civ. P. 26(e)(1)(A).  Thus, the Court concludes that Plaintiffs' disclosure of Katz was untimely, and Katz must be excluded unless the applicable *Howe* factors weigh in favor of a finding that the failure to disclose was substantially justified or harmless.

### 3.    Jimmer Dudley

Plaintiffs both disclosed Jimmer Dudley in their supplemental disclosures as "an investigator for Plaintiff Jeffrey Clark who interacted with many of the fact witnesses in this case." (DN 239-4, at PageID # 1813-14; DN 239-6, at PageID # 1833-34.)  Defendants argued that while

they were aware that Dudley was an investigator for the Kentucky Innocence Project and that Clark had lived with Dudley after his release from prison, they had been advised by defense counsel that Dudley was a member of the defense team. (DN 239, at PageID # 1756.) They cited testimony from Plaintiff Clark's deposition where Clark was asked about communications between Clark and Dudley and Clark's counsel objected based on attorney-client privilege. (DN 239-15, at PageID # 1888.) Defendants emphasized that until Dudley was listed on these disclosures, they were unaware Plaintiffs intended to waive claims of attorney-client privilege and/or work product sufficient to allow them to depose Dudley. (DN 239, at PageID # 1756.)

Plaintiffs argued in their response that Dudley is now employed at Plaintiff Clark's counsel's firm and that given his investigation in this case, they may call Dudley to testify as a rebuttal and/or damages witness. (DN 245, at PageID # 2187.) They argued that given Defendants notice of Dudley, they cannot now claim unfair surprise. (*Id.*)

In their reply, Defendants argued that Plaintiffs are engaging in gamesmanship. (DN 248, at PageID # 2231.) They pointed out that during the telephonic conference with the Court that preceded the instant motion practice, Plaintiffs represented that they only intended to call Dudley as a rebuttal witness but in their response, Plaintiffs indicated a potential intent to call him as a fact witness regarding damages. (*Id.* at 2230-31.) They also emphasized that presumably due to Dudley's being a member of the Plaintiffs' legal team, "no witness statements or reports from Mr. Dudley have been produced in over 166,688 pages of discovery." (*Id.* at 2232.) They emphasized that given this understanding of Dudley's role, Plaintiffs' counsel's intent to call him as a fact witness regarding damages comes as a complete surprise and should likely result in a waiver of any work product objection requiring production of his investigative file if he is permitted to be a witness. (*Id.* at 2232-33.)

The Court agrees with Defendants that Plaintiffs' position appears to be disingenuous and that had Defendants attempted to depose Dudley prior to his disclosure, it likely would have resulted in objections from Plaintiffs' counsel on the basis of privilege or work product.  As with Katz above, though discovery may have revealed Dudley's name and role, no Party has convinced the Court that either prior discovery or Plaintiffs' counsel in writing has revealed the subject of any discoverable information held by Dudley as required.  His role as an "investigator" is a broad one and particularly given the previous assertion by Plaintiffs' counsel of privilege, the Court concludes that Plaintiffs' disclosure of Dudley as a witness was untimely, and Dudley must be excluded unless the applicable *Howe* factors weigh in favor of a finding that the failure to disclose was substantially justified or harmless.

### 4.      Robert Ross and Ruth Bowie

Plaintiff Clark identified Robert Ross and Ruth Bowie as persons likely to have discoverable information pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  (DN 239-6, at PageID # 1832, 1835.)  In particular, Clark stated that Ross and Bowie would testify consistent with their prior testimony at evidentiary hearings, listing bates numbers where that testimony could be found.  (*Id.* at 1835.)  Defendants stated that both Ross and Bowie were witnesses at an evidentiary hearing in the *Keith West* case and that some witnesses in this matter, including Defendant Handy, were questioned about them.  (DN 239, at PageID # 1764-65.)  However, they emphasized that prior questioning did not make clear the relevance of Ross and Bowie's potential testimony in this matter.  (*Id.*)  They emphasized that because Plaintiffs included Keith West himself in prior disclosures but not other related witnesses, Defendants had no reason to assume Ross and Bowie would be called in this action.  (*Id.* at 1765.)

Plaintiffs argued that Defendants had been on notice that Plaintiffs considered Defendant Handy's misconduct in the *West* case to be part of Plaintiffs' *Monell* claim due to the Amended Complaint.  (DN 245, at PageID # 2186.)  They noted that some of Defendants' counsel in this action were present at the *West* hearing where Ross and Bowie testified and heard their testimony live.  (*Id.*)  Plaintiffs argued that their "Complaint, written discovery responses, and substantive questioning" at depositions put Defendants on notice that Ross and Bowie could be witnesses in this case.  (*Id.*)

In their reply, Defendants emphasized that Plaintiffs have known about Ross and Bowie for years but failed to include them in prior disclosures.  (DN 248, at PageID # 2234.)  Defendants admitted that some—though not all—of their counsel knew Ross and Bowie were witnesses in the *West* case, but argued that whether those individuals were witnesses in a separate proceeding is not dispositive of whether they were properly disclosed in this case.  (*Id.* at 2234.)

While admittedly Ross and Bowie are a closer call than some of the other witnesses disclosed above, the Court again finds that the briefing has not convinced the Court that discovery substituted for the proper disclosure of these witnesses as required by Fed. R. Civ. P. 26(e).  Plaintiffs cannot incorporate a whole case's worth of witnesses simply by mentioning a case in their Amended Complaint.  And even if those witnesses were mentioned in depositions, the subject matter of their testimony in a separate case does not automatically make clear the subjects of discoverable information they may have regarding this case as required by Fed. R. Civ. P. 26(a)(1)(A)(i).  Thus, again, the Court concludes that Plaintiff Clark's disclosure of Bowie and Ross was untimely, and they must be excluded unless the applicable *Howe* factors weigh in favor of a finding that the failure to disclose was substantially justified or harmless.

5.   *Howe* **Factors**

As set forth above, having found that Plaintiffs failed to timely disclose the witnesses at issue as required, the next question for the Court pursuant to Fed. R. Civ. P. 37(c) is whether the failure to timely disclose was substantially justified or harmless.  In making this determination, the Court considers the factors set forth by the Sixth Circuit in *Howe v. City of Akron*.  *Howe*, 801 F.3d at 748 (quoting *Russell*, 763 F.3d at 396-97).

The first *Howe* factor, "the surprise to the party against whom the evidence would be offered," in this case weighs against a finding that Plaintiffs' failure was substantially justified or harmless.  *Id.*  As noted above, discovery in this case has been a massive, multi-year undertaking. Without a more specific designation by Plaintiffs or more explicit testimony than has been presented to the Court, there is no reason to believe that Defendants had any particular insight that the individuals at issue would have relevant testimony to offer on issues related to Plaintiffs' claims in this case.  Thus, Defendants were surprised and had no reason to list them on their own disclosures or otherwise seek discovery from them in advance of Plaintiffs' disclosures.

The second *Howe* factor, "the ability . . . to cure the surprise," also weighs heavily against a finding that Plaintiffs' failure was substantially justified or harmless.  *Id.*  Because Plaintiffs' disclosures were not made until the day before and the day of the fact discovery deadline, Defendants had no recourse to cure any surprise.  The Court had warned the Parties multiple times of the need to move fact discovery to a close and that further extensions of the discovery period were unlikely.  While Defendants could have requested leave to depose the individuals at issue outside the discovery period, there was no guarantee that leave would be granted in view of the damage granting it would have worked to the schedule in this matter.  While in theory the Court still could grant Defendants leave to depose these individuals, dispositive and *Daubert* motions

15

have been fully briefed except for *Daubert* motions related to two experts.  (DN 307.)  Allowing additional discovery at this point could result in the need for those motions to be supplemented, which would further slow the progress of this almost six-year-old case.

The third *Howe* factor, "the extent to which allowing the evidence would disrupt the trial," weighs against a finding that Plaintiffs' failure was substantially justified or harmless for the same reason set forth above: the potential for disruption of the pending dispositive and *Daubert* motions. *Id.*  While no trial date in this matter has been set, one will not be set until the numerous dispositive and *Daubert* motions the Parties filed have been addressed.  Delaying the determination of those motions is tantamount to delaying and disrupting a trial in this matter.  Though Plaintiffs argued that a delay in their trial prejudices only them, both the Defendants and the Court have an interest in seeing this matter brought to a "just, speedy, and inexpensive" final conclusion.  Fed. R. Civ. P. 1.  Further delay of any kind imperils that interest.

The fourth *Howe* factor, "the importance of the evidence," also weighs against a finding that Plaintiffs' failure was substantially justified or harmless.  *Howe*, 801 F.3d at 748 (quoting *Russell*, 763 F.3d at 396-97).  Plaintiffs' response failed to convince the Court that the individuals at issue are key witnesses who provide important evidence that is not duplicative of other witness testimony.  Additionally, though Plaintiffs response frames these individuals as "serv[ing] important evidentiary purposes," during the pre-motion conference with the Court, some of the individuals were described as people Plaintiffs' counsel were "unlikely to call."  (*Compare* DN 245, at PageID # 2189, *with* DN 243, at PageID # 2153.)  In fact, in e-mails between the Parties prior to motion practice, Plaintiffs listed Dawn Katz, Jimmer Dudley, and David Williams as individuals they were "unlikely to call."  (DN 239-9, at PageID # 1851-52.)  Given this

representation to Defendants and Plaintiffs' representations to the Court, the Court finds the Plaintiffs' current position regarding the importance of the witnesses contradictory at best.

The final *Howe* factor, "the nondisclosing party's explanation for its failure to disclose the evidence," weighs in favor of a finding that Plaintiffs' failure was substantially justified or harmless. *Howe*, 801 F.3d at 748 (quoting *Russell*, 763 F.3d at 396-97). Plaintiffs represented that from their perspective they were merely attempting to clean up the record and "ensure that they had disclosed all potential witnesses in the case, including those witnesses that Defendants already knew had information about the litigation." (DN 245, at PageID # 2183.) While the Court disagrees as to Defendants' knowledge for the reasons set forth above, if the disclosures had been merely a reflection of the status quo, the late disclosure would have been harmless. The problem for Plaintiffs here is that in truth these witnesses and the subjects of their testimony were not as patently obvious as Plaintiffs seem to think.

As four out of five *Howe* factors militate in favor of one outcome, the Court concludes that Plaintiffs' untimely disclosures were not substantially justified or harmless. Thus, pursuant to Fed. R. Civ. P. 37(c), the Court finds that Plaintiffs cannot call David Williams, Dawn Katz, Jimmer Dudley, Robert Ross, or Ruth Bowie "to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1). The Court will address the propriety of other sanctions under Fed. R. Civ. P. 37(c)(1) after considering the propriety of Plaintiffs' disclosure of Monarch below.

## C.    Defendant Thurman's Motion to Strike Monarch (DN 238)

Defendant Thurman moved to strike his counsel, Monarch, from Plaintiff Clark's supplemental initial disclosures. (DN 238.) Thurman argued that the addition of Monarch to Plaintiffs' disclosures as a potential witness was "baseless" and "meritless" given that he "has no information or knowledge of facts [that] could support his being called as a witness at the trial of

this case." (*Id.* at PageID # 1706.)   Thurman noted that Monarch entered an appearance on his

behalf on April 12, 2021, and that there had been no prior "reference to him in any aspect of this

litigation" before that date.  (*Id.* at 1707.)  While Plaintiff Clark's counsel told Thurman's counsel

that it was unlikely they would call Monarch as a witness at trial, Defendant Thurman pointed out

that doing so would cause significant procedural disruption given the issues the Parties would be

required to litigate if that happened.  (*Id.* at 1708.)  Defendant Thurman submitted an affidavit

from Monarch establishing multiple representations central to the Court's resolution of this issue.

In the affidavit, Monarch stated that while "through [his] own acquaintance or through [his]

family" he had met some of the individuals listed as witnesses in this case, he had no testimony to

give regarding the "thoughts, feelings, beliefs, or comments of any witness listed in Plaintiffs'

Supplemental Rule 26 Disclosures regarding the conviction or jury verdict of" Plaintiffs.  (DN

238-2, at ⁋⁋ 8-11.)  Monarch also specifically swore that he had no recollection of discussing the

facts of Plaintiffs' case prior to their conviction with his father.  (*Id.* at ⁋ 12.)  Monarch stated that

he never talked to any of the witnesses prior to Plaintiffs' conviction and that he has "no

independent knowledge of the underlying police investigation, the court proceedings, or the post-

conviction proceedings forming the basis of Mr. Clark and Mr. Hardin's current civil action" aside

from that he has learned through his representation of Defendant Thurman.  (*Id.* at ⁋⁋ 16-18.)

Thurman ultimately cited to Fed. R. Evid. 602 and Fed. R. Civ. P. 11 as the basis for their request

that Monarch be stricken.  (DN 238, at PageID # 1709-10.)

In his response, Plaintiff Clark alleged that Judge Monarch had "years' worth" of

correspondence with prosecutors in Clark and Hardin's criminal case after their criminal trial.[3]

---

[3] Plaintiff Clark's response states at the outset that it is brought by both Plaintiff Clark and Plaintiff Hardin, but it is
signed by only counsel for Plaintiff Clark.  (DN 240.)  Because only Plaintiff Clark disclosed Monarch, the Court will
presume the reference to Plaintiff Hardin was a typographical error.

(DN 240, at PageID # 2126-27.)   Clark interpreted Monarch's affidavit to include "startling admissions and omissions." (*Id.* at 2128.)   In particular, he construed Monarch's qualifying language "prior to their conviction" to mean that Monarch had conversations with witnesses he knew, including his father, after Plaintiffs' convictions but before representing Defendant Thurman that Monarch is now declining to divulge.  (*Id.* at 2128-29.)   Clark contended that Monarch's affidavit itself met the low threshold standard for relevance under Fed. R. Civ. P. 26. (*Id.* at 2130-31.)   Clark asked the Court to hold this issue in abeyance until a later date after he had a chance to receive discovery from  Perry Ryan, which he believed might shed light on this issue. (*Id.* at 2131.)

In their reply, Defendant Thurman made clear that he interprets Monarch's affidavit as an unequivocal statement regarding his lack of firsthand knowledge in this case.  (DN 246, at PageID # 2219.)   Defendant Thurman took the position that Plaintiff Clark had not demonstrated a good faith basis for naming Monarch as a witness in this case.  (*Id.* at 2221.)   Defendant Thurman also objected to holding this issue in abeyance citing the serious prejudice to Thurman of "simply allowing Plaintiffs an open-ended opportunity to reignite this baseless strategy at a time and at a moment of their choosing." (*Id.*)

As set forth above regarding Defendants' motion to strike other witness, "striking" is not the proper remedy at this stage.  Instead, the issue is one of whether Plaintiff Clark's disclosures were timely under Fed. R. Civ. P. 26(e).  As to Monarch, the Parties' briefing wholly fails to convince the Court that any discovery previously taken in this case revealed that Monarch was in possession of or the subject of any discoverable information held by Monarch as required.  Fed. R. Civ. P. 26(e)(1)(A).  Instead, it appears to the Court from Plaintiff Clark's response as though he is largely attempting to attribute conduct by Monarch's late father to Monarch without any basis

for doing so.  The Court finds the combination of Monarch's affidavit and the representations in Defendant Thurman's motion (DN 238) sufficient to support a conclusion that he is in possession of no discoverable information that he obtained through means other than his representation of Defendant Thurman.  Thus, it seems that there is no good faith or nonspeculative basis for listing him as a potential witness in this action at all.

Despite its application in multiple prior opinions by the undersigned, the Parties also did not address the import of the *Shelton* test as to Plaintiff Clark's disclosure of Monarch as a potential witness.  As set forth in the Court's May 4, 2021, Memorandum Opinion and Order, where a party seeks to depose opposing counsel, the Sixth Circuit has adopted the heightened standard articulated by the Eighth Circuit in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).  *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002).  A party seeking to depose the opposing party's counsel must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Shelton*, 805 F.2d at 1327 (citations omitted); *Nationwide*, 278 F.3d at 628.  While Plaintiff Clark is not seeking to depose Monarch at this stage, the Court finds *Shelton* illustrative of the complete lack of basis for listing Monarch as a witness.  Based on the current briefing, even if Plaintiff Clark had timely disclosed Monarch and sought to take his deposition or otherwise take testimony from Monarch at trial, Clark would not have been able to meet the strictures of *Shelton*.

Thus, the Court concludes that Plaintiff Clark's disclosure of Monarch was untimely, and he must be excluded unless the applicable *Howe* factors weigh in favor of a finding that the failure to disclose was substantially justified or harmless.  The same analysis of the *Howe* factors set forth by the Court above would apply to Plaintiff Clark's untimely disclosure of Monarch and weigh in

20

favor of a finding that the untimely disclosure is not harmless or substantially justified. In particular, given the lack of basis for Monarch having any discoverable information and the potential and incurable harm his counsel being a witness would work to Defendant Thurman, the Court concludes the late disclosure of Monarch was not substantially justified or harmless.

Defendant Thurman's motion (DN 238) will be granted, and pursuant to Fed. R. Civ. P. 37(c)(1), Plaintiffs cannot call Monarch to supply evidence on a motion, at a hearing, or at trial.

### D.        Other Fed. R. Civ. P. 37(c) Sanctions

In their motion to strike, Defendants requested that the Court "require the Plaintiffs to bear the Defendants' costs on this avoidable briefing." (DN 239, at PageID # 1742.) As set forth above, while exclusion of the witness is a mandatory remedy when the Court finds that "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the Court may also "on motion and after giving an opportunity to be heard . . . order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). Under the present circumstances, the Court concludes that an award of fees is potentially appropriate. The record demonstrates that Plaintiffs unjustifiably disclosed witnesses at the close of discovery and caused Defendants to have to incur unnecessary expenses briefing the instant motion before the Court. In particular, the late disclosure of Dudley and of Monarch seem patently egregious to the Court and suggest gamesmanship by Plaintiffs rather than legitimate litigation strategy. While arguably Defendants' request for fees in their motion already gave Plaintiffs an opportunity to be heard in their response, the Court now puts the Plaintiffs on notice of its intent to consider awarding Defendants' their fees incurred in filing the instant motions (DNs 238, 239) and will set a deadline for Plaintiffs to file a brief regarding that issue as set forth below. The Court's intent would be to consider an award of fees for the briefing of the motions (DNs 238, 239) only, not for pre-motion

attempts to resolve the dispute or for the Parties' conference with the Court regarding the dispute. Given that some of the witnesses at issue were disclosed only by one of the two Plaintiffs, the Court would also intend to split any award proportionally between the Plaintiffs.

## III.   CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)   Defendants' Combined Motion to Strike Plaintiffs' Untimely Disclosures (DN 239) is **GRANTED IN PART and DENIED IN PART** as moot.   The motion is **DENIED** as moot as to the twenty-five witnesses objected to by Defendants that Plaintiffs did not seek to retain on their supplemental disclosures:

| | |
|---|---|
| Jim Petit | Troy Brock |
| Joseph Carroll | Jay Lambert |
| Robert White | William Lee Broyles |
| Barry Wilkerson | Charles Broaddus |
| Joe Richardson | Christopher Geter |
| Vince Robison | Larry Smalls |
| Donald Burbrink, Sr. | Brede Timberlake |
| Brett Johnson | Jonathan Whitesides |
| Keith Carpenter | Stuart McCoy |
| Keith Yarka | Ashley Edwards |
| Jeffrey Eden | Jim Lesousky |
| Percy Phillips | Linda Smith |
| John Gray | |

The motion is **GRANTED** as to the remaining six witnesses, and pursuant to Fed. R. Civ. P. 37(c)(1), the Court finds that Plaintiffs cannot call David Williams, Dawn Katz, Jimmer Dudley, Robert Ross, or Ruth Bowie to supply evidence on a motion, at a hearing, or at trial.

(2)   Defendant Thurman's Motion to Strike Ed Monarch as a Witness from Plaintiffs' 2d Supplemental Rule 26 Disclosures (DN 238) is **GRANTED**.   Pursuant to Fed.

R. Civ. P. 37(c)(1), the Court finds that Plaintiffs cannot call C. Edward Monarch to supply evidence on a motion, at a hearing, or at trial.

(3)    On or before **March 31, 2023**, Plaintiffs shall file a brief addressing the Court's intent to consider an award of fees pursuant to Fed. R. Civ. P. 37(c)(1)(A).  No response or reply will be permitted.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record

February 28, 2023