IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| JEFFREY DEWAYNE CLARK and GARR KEITH HARDIN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| MEADE COUNTY, et al., | ) ) ) |
| Defendants. | ) |

HON. GREG N. STIVERS

HON. COLIN H. LINDSAY

Case No. 17-CV-419-GNS-CHL

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PLAINTIFF HARDIN'S ALLEGED PRIOR BAD ACTS**

NOW COMES Plaintiff Keith Hardin, by and through his attorneys, and, for the reasons set forth within, hereby files this Motion to Exclude Evidence of Plaintiff Hardin's Alleged Prior Bad Acts. In support, Plaintiff states as follows:

In this § 1983 action, Plaintiff Keith Hardin alleges that Defendants' fabrications—including fabricating evidence about time of death, statements of the victims' family, and statements from a jailhouse informant—and withholding highly exculpatory evidence caused his wrongful conviction and imprisonment. At trial, rather than focusing on core issues, Defendants' defense is expected to center on attacking Plaintiff Hardin's character through diverting the jury's attention to irrelevant and unfairly prejudicial evidence of his alleged prior bad acts, such as to imply that Plaintiff is less deserving of constitutional protections and his suffering is worth less. If any such evidence is admitted at trial, it would waste the Court's and the jury's time, confuse the issues and invite the jury to draw impermissible character inferences against Plaintiff Hardin.

1

For these reasons, Plaintiff Hardin moves *in limine* for a ruling to preclude Defendants from introducing evidence of his prior acts that are irrelevant and unduly prejudicial, specifically evidence of: (1) his prior engagements with weapons that are unrelated to Rhonda Sue Warford's 1992 murder; (2) his Rose Poem, and other alleged threats and unsubstantiated disputes, including with respect to Ms. Warford; (3) his engagement with tattoos, including giving one to Ms. Warford; and (4) his department of corrections disciplinary records, which are minimal.

## **LEGAL STANDARD**

The Federal Rules of Evidence are clear that for evidence to be admissible, such evidence must be relevant, Fed. R. Evid. 402, insofar as it must have the tendency to make the existence of any fact of consequence to the determination of the action be "more probable or less probable than it would be without the evidence," Fed. R. Evid. 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury," or by considerations of "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997) (quoting Advisory Committee's Notes on Fed. R. Evid. 403).

Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Rule 404(b)(2), but then is subject to Rule 403's

balancing of its probative value against its unduly prejudicial value, *see United States v. Haywood*, 280 F.3d 715, 719–20 (6th Cir. 2002).

When applying Rule 403's balancing test, courts must use caution, because "[e]vidence of other bad acts undoubtedly has a powerful impact on a juror's mind." *United States v. Clay*, 667 F.3d 689, 696 (6th Cir. 2012). "[W]hen prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered: to suggest that the defendant is a bad person . . . and that if he did it before he probably did it again." *Id.* (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)) (internal quotation marks omitted). Moreover, the risk of unfair prejudice is particularly pronounced in § 1983 suits, such as this one, due to the "substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013) (citation omitted).

## ARGUMENT

**I.    Plaintiff Hardin's prior engagements with weapons are inadmissible.**

Defendants never connected Plaintiff Hardin to the weapon that was used in the 1992 murder of Ms. Warford. No murder weapon was found at the scene nor was a murder weapon found in a search of the Plaintiff's home or vehicle. *See e.g.,* D.E. 317 (Plaintiffs' Resp. to Meade County's MSJ) at 5. Nevertheless, Defendants are expected to seek to introduce evidence of Plaintiff Hardin's previous contact with weapons while growing up in Kentucky, which is irrelevant. Defendants have indeed questioned Plaintiff Hardin at his deposition about his access to any weapons, such as those used to hunt. Simply put, evidence of Plaintiff Hardin's prior

3

engagements with weapons, including hunting knives and daggers, is irrelevant, especially given such evidence differs from and is unrelated to the weapon used in Ms. Warford's murder.

Moreover, there is no question the prejudice of allowing Defendants to question Plaintiff Hardin about his prior use of weapons in transactions unrelated to these events—in order to paint him as a "bad person"—would vastly outweigh any marginal probative value. *See, e.g.*, *United States v. Thomas*, 49 F.3d 253, 258 (6th Cir. 1995) (finding under Rule 403 it was error to admit sawed-off shotgun not used in any of the transactions at issue in the case because its probative value, "if any, [wa]s quite low"). Defendants' only purpose for introducing such evidence would be to invite the jury to conclude Plaintiff Hardin has a propensity for violence, thus somehow making it seem more likely he committed the 1992 murder, which he did not. This is the exact type of unrelated evidence and unfair prejudice that Rule 403's balancing test is designed to prevent. *Id.* at 259 (explaining that an unrelated weapon "is not a 'neutral' item. It is exactly the type of item that… could inflame the jury and suggest a decision on an improper basis.").

**II.    Plaintiff Hardin's Rose Poem, and any alleged threats and unsubstantiated disputes, with particular respect to Ms. Warford, are inadmissible.**

At trial, Defendants are expected to attack Plaintiffs' character in front of the jury by raising irrelevant and highly prejudicial evidence seeking to bolster what is seemingly their main defense in this case: Plaintiff Hardin's alleged guilt. Plaintiff Hardin's conviction was vacated in 2017. While Defendants are within their rights to contest his innocence at trial, Defendants are not within their rights to do so with inadmissible argument and evidence that is unsupported by the record, including any such evidence that is irrelevant, inflammatory, and unfairly prejudicial.

In this case, Defendants have already questioned Plaintiff Hardin in depth about his written poetry, particularly one known as the "Rose Poem," in which Defendants claim Plaintiff

4

Hardin compared Ms. Warford to a rose to suggest his guilt. *See e.g.,* D.E. 339 (Thurman's MSJ Reply) at 26. The poem doesn't reference Ms. Warford by name, yet Defendants baselessly argue it refers to her, in part based on the line: "[o]nce my flower's thorns cut me deep they cut me bad. I wanted my flower dead, I almost laid her to waste." *Id.* Defendants' only purpose for introducing this poem would be to suggest Plaintiff Hardin is more likely to have the propensity to commit a crime and also play on emotional basis (rather than a factual one), which would be unduly prejudicial in this litigation. *See e.g., Old Chief v. United States,* 519 U.S. 172, 180 (1997) (internal quotation omitted) (defining evidence as unfairly prejudice where there is "an undue tendency to suggest decision on an improper basis, commonly…an emotional one"). Therefore, any evidence regarding Plaintiff's "Rose Poem" should be precluded under Rule 403.

During the course of this litigation, Defendants have also introduced evidence and argument of purported threats and unsubstantiated disputes regarding Plaintiffs, including an alleged dispute where Defendants argue that Plaintiff Hardin once allegedly threatened to kill Ms. Warford and her baby if she was pregnant. *See e.g.,* D.E. 339 (Thurman's MSJ Reply) at 26. Defendants' only evidence alleging this dispute is hearsay and must be excluded on this basis alone. Nor could it be probative of any alleged motive—there is no evidence that Ms. Warford was pregnant, and the only deposition testimony, from Mr. Hardin, is that he always used condoms and was never concerned about pregnancy. The obvious impact of these allegations, if admitted, would be to impermissibly suggest that Plaintiff Hardin has a propensity toward violence, or is a "bad person" who is undeserving of compensation, and therefore would be unfairly prejudicial. *See e.g., Watkins v. Cnty. of Genesee*, No. 13 Civ. 13678, 2016 WL 727855, at *4 (E.D. Mich. Feb. 24, 2016) ("[T]he court must ensure that . . . civil rights plaintiffs are not unfairly prejudiced by the use of their criminal pasts against them."). Any evidence of alleged

threats and unsubstantiated disputes in particular between Plaintiff Hardin and Ms. Warford should be inadmissible based on hearsay alone or if not precluded due to its unfair prejudice.

**III.     Plaintiff Hardin's engagements with tattoos are inadmissible.**

Defendants may seek to introduce evidence regarding Plaintiff Hardin's engagements with tattoos, which is also irrelevant and prejudicial. During Plaintiff Hardin's deposition in this case, Defendants questioned him about his own tattoo, which he explained is of a hooded figure that he received at about 19-years old. Any such evidence of this tattoo is irrelevant to this case. There is absolutely no logical connection between the Defendants' misconduct, on one hand, and Plaintiff Hardin's personal tattoo from years before Ms. Warford's murder.

There is also no question that allowing Defendants to introduce any evidence regarding how Plaintiff Hardin gave Ms. Warford a tattoo of an inverted cross, such as to link him to her murder, is irrelevant and unfairly prejudicial too. Defendants have falsely alleged that Plaintiff Hardin used ink and thread to sew an upside-down cross tattoo on Ms. Waford's breast, which they contend without basis is a symbol of Satanic worship. *See e.g.,* D.E. 339 (Thurman's MSJ Reply) at 26. Again, this evidence is irrelevant in this litigation. And, even if any such evidence of these tattoos was relevant and there was some low probative value, this evidence is inadmissible because it is unfairly prejudicial to Plaintiff Hardin. *See United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006) (finding the district court abused it's discretion by allowing evidence related to a defendant's tattoo by "conclude[ing] probative value of the tattoo evidence, if any, was substantially outweighed by the danger of unfair prejudice[.]"). Moreover, there is a particularized concern about prejudice where tattoos are even seemingly related to religious imagery, such as here, given that such tattoos can be "clearly inflammatory" to the jury. *See e.g., United States v. Irvin*, 87 F.3d 860, 866 (7th Cir. 1996) (reversing the district court's decision to

admit gang evidence that consisted of clothing and tattoos with demonic insignia finding the introduction of such evidence is "clearly inflammatory" and by concluding that the "considerable danger of unfair prejudice more than substantially outweighed the minimal probative value of the motorcycle gang evidence admitted."). In sum, any evidence of Plaintiff Hardin's personal tattoo that he received at 19-years old, and of his experience of giving Ms. Warford a tattoo, should be excluded as irrelevant and due to this evidence having an unfairly prejudicial value in this case.

### IV.    Plaintiff Hardin's KDOC disciplinary records are inadmissible.

Finally, Plaintiff Hardin's Kentucky Department of Corrections ("KDOC") records accounting for his over 22 years in detention on his life sentence contain some disciplinary reports. Even assuming there is a non-hearsay basis to admit such disciplinary reports, and there are very few of them, the impact of such evidence from Plaintiff's Hardin's KDOC file could be used to impermissibly suggest that Plaintiff Hardin has a propensity toward violence. Courts routinely conclude, however, that such records are inadmissible for this exact reason. *See Easley v. Haywood*, No. 08 Civ. 601, 2015 WL 1926399, at *4 (S.D. Ohio Apr. 28, 2015) ("The introduction of Plaintiff's disciplinary record would be unfairly prejudicial because of the high risk that the jury would conclude Plaintiff is generally a bad, violent individual and, as a result, disregard his testimony regarding the . . . incident."); *Lovett v. Cole*, No. 11 Civ. 277, 2014 WL 5802666, at *5 (S.D. Ohio Nov. 7, 2014) (prison disciplinary record not admissible to show "character for violence, that he had a tendency to react to authority in a particular way"); *Moore v. Parker*, No. 13 Civ. 00081 (TBR), 2016 WL 6871264, at *3 (W.D. Ky. Nov. 21, 2016) (finding that the plaintiff's prison disciplinary record had "little, if anything, to do with the issue at the core" of excessive force action").

## **CONCLUSION**

For the foregoing reasons, Plaintiff Hardin respectfully requests that the Court grant his motion *in limine* and enter an order excluding all evidence of or regarding the alleged bad acts described herein and any similar alleged bad acts at the trial of this matter.

Dated: May 1, 2024

                              Respectfully submitted,

/s/*Rhianna Rey*
Barry Scheck
Nick Brustin
Anna Benvenutti Hoffmann
Emma Freudenberger
Katie McCarthy
Sophia Villarreal
Rhianna Rey
NEUFELD SCHECK BRUSTIN HOFFMANN &
FREUDENBERGER, LLP
200 Varick Street, Suite 800
New York, New York 10014

Larry D. Simon (Ky. Bar No. 64355)
Attorney at Law
American Life Building, Suite 200
471 West Main Street
Louisville, KY 40202

***Attorneys for Plaintiff Garr Keith Hardin***

Arthur Loevy
Jon Loevy
Michael Kanovitz
Elliot Slosar
Amy Robinson Staples
Margaret Campbell
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607

***Attorneys for Plaintiff Jeffrey Clark***

## **CERTIFICATE OF SERVICE**

      I, Lucia Geng, hereby certify that on May 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

      ***/s/ Lucia Geng***