STATE OF COLORADO      )
                       ) SS.    **AFFIDAVIT**
COUNTY OF GUNNISON     )

MICHAEL H. ARGALL, being first duly sworn, upon his oath deposes and says:

1. That your Affiant is an attorney and counselor at law and has been licensed to practice as such in the State of Colorado since 1973.

2. That during August, 1993, your Affiant was co-counsel for the prosecution in a certain action entitled The People of the State of Colorado vs. Roy Allen Melanson, based upon an charge of Murder in the First Degree alleged to have been committed in 1974.

3. That during the law enforcement re-investigation of the crime two individuals, Kevin Justis and Clifford Capps, had informed the Gunnison County, Colorado, Sheriff's investigator, Kathleen Young, both orally and in brief written statements, that they had been incarcerated with our defendant, Melanson, in Kentucky, and that he had allegedly made incriminating statements about a murder he had committed in western Colorado during the mid-Seventies.

4. That said individuals were subpoenaed to the Melanson trial from Kentucky, appeared as required, and were scheduled to testify near the end of the prosecution case in chief.

DEPOSITION EXHIBIT PL-7 Palefsky 6-24-19

AFFIDAVIT: Michael H. Argall
Page Two

5. That one of them (to your Affiant's best recollection Clifford Capps) was called, sworn, testified to his name and address, and was about to be questioned concerning the his incarceration with Melanson and the alleged incriminating statements, when Deputy Public Defender Harvey Palefsky, Melanson's attorney, requested a bench conference prior to further testimony by the witness.

6. Said conference was conducted in chambers, whereupon Mr. Palefsky produced a photocopy of a letter (from either Capps to Justis or Justis to Capps, though your Affiant cannot now recall precisely which way the letter went), written after their interviews with the Gunnison County investigator but before the trial, wherein the writer made statements to the effect that he was soon to appear at some sort of sentence reconsideration hearing, that in order to improve his chance he had informed authorities that another--- inmate (not Melanson) had made incriminating statements about another murder in the presence of Capps and Justis while all were incarcerated together, and the writer wanted the receiver of the letter to support and confirm this event if questioned by authorities.

7. The clear implication of the letter, from its language, was that these alleged statements by the other inmate had not, in fact, occurred, but instead had been made

AFFIDAVIT: Michael H. Argall
Page Three

up the writer of letter.

8. During argument regarding the use of the letter (since a copy had not been provided to the prosecution during pre-trial discovery), it is your Affiant's recollection that Mr. Palefsky informed the court that he had discussed the letter with the Sheriff of the county in Kentucky where Capps and Justis had been incarcerated with the inmate in question, and that said Sheriff had acknowledged to Mr. Palefsky his awareness of the existence and content of said letter, but was unable or unwilling to provide a copy of the same, whereupon Mr. Palefsky obtained a copy from the mother of either Capps or Justis.

9. That our Affiant and his co-counsel thereupon questioned Capps and Justis (separately), concerning the letter and its contents, became convinced that it had, in fact, been authored by one of them and sent to the other.

10. That your Affiant and his co-counsel further concluded, based upon their interrogation of Capps and Justis, that a substantial question existed regarding the credibility of said persons and their anticipated testimony regarding Melanson, and that it would be both unethical and tactically unwise to present such testimony, whereupon no further questions were asked of the one already called, the

/001/

other was not called, and both were excused from further

AFFIDAVIT: Michael H. Argall
Page Four

attendance at the trial.

11. That since testimony was not elicited from either Capps or Justis regarding Melanson the letter copy was not offered or received in evidence, but was retained by Mr. Palefsky.

Further your Affiant sayeth naught,

_____
Michael H. Argall

SUBSCRIBED AND SWORN to before me this 4th day of May, 1995, by Michael H. Argall.

_____
Notary Public

My Commission expires: 6-5-96

/002

## AFFIDAVIT

Natalie Frei, being duly sworn upon oath, states as follows:

1. That I am an attorney at law in good standing, licensed to practice in the State of Colorado since 1990.

2. That I am currently employed as a Deputy State Public Defender by the State of Colorado, and was so employed in June of 1993.

3. At that time I was representing Roy Melanson in Gunnison County Case Number 93CR10. This was a first degree murder case. The murder allegedly occurred nineteen (19) years earlier.

4. Prior to being extradited to the State of Colorado to face trial on the aforementioned charge, Mr. Melanson was incarcerated at the Meade County Jail in Brandenburg, Kentucky. While in the Meade County Jail, Mr. Melanson was housed in the same cell block at various times with Clifford Capps and Kevin Justice.

5. Mr. Justice and Mr. Capps were endorsed by the prosecution as witnesses against Mr. Melanson. At one point in time, both had told Kathy Young, a Gunnison County Sheriff's Investigator, that Mr. Melanson had made incriminating statements to them about the 1974 murder.

6. As part of the investigation of the case, Mr. Palefsky traveled to Kentucky with our investigator, Garfield Salas. They met with Mr. Capps on June 27, 1993, in his apartment in Louisville, and with Mr. Justice at the LaRue County Jail on June 28, 1993.

7. During the taped conversation with Mr. Justice, Mr. Palefsky and Mr. Salas learned that several months before Mr. Capps had written him a letter soliciting false testimony against two individuals by the name of Jeff and Keith who had been incarcerated with them at the Meade County Jail. According to Mr. Justice, this letter was proceeded by a phone call from Mr. Capps.

8. Mr. Justice advised Mr. Palefsky and Mr. Salas that he had given the letter to Sheriff Joseph Greer, who had made copies of the letter.

9. Mr. Palefsky later told me that while he was still in Kentucky, he contacted Sheriff Greer by telephone to see if he could get a copy of this letter.

10. Mr. Palefsky indicated to me that Sheriff Greer had acknowledged having a copy of the letter.

FURTHER AFFIANT SAYETH NOT.

1042



*(signature)*

NATALIE FREI,  #19767
DEPUTY STATE PUBLIC DEFENDER
Attorney for Defendant
132 West "B" Street - Suite 200
Pueblo, Colorado 81003
546-0004


STATE OF COLORADO   )
                    ) SS.
COUNTY OF PUEBLO    )

Subscribed and sworn to before me this 11th day of May, 1998.

*(signature)* Cynthia L. Lopez
NOTARY PUBLIC

1043