UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
CIVIL ACTION NO. 3:17-CV-00419-GNS

JEFFREY DEWAYNE CLARK and GARR KEITH HARDIN     PLAINTIFFS

VS.     **DEFENDANTS' TRIAL BRIEF**

MEADE COUNTY, et al     DEFENDANTS

*****************************

Come the Defendants, MEADE COUNTY, BILL ADAMS and CLIFF WISE, by counsel and for their Trial Brief pursuant to the Court's Trial Order (DN 454) provide as follows:

**I.   SUCCINCT STATEMENT OF THE FACTS OF THE CASE**

This is a wrongful arrest and prosecution case in which Keith Hardin and Jeffery Dewayne Clark have filed suit against Meade County, former Meade County Sheriff Joseph Greer (now deceased),[1] Deputy Sheriff Clifford Wise, and Coroner William Adams. The underlying case involved the murder of Rhonda Sue Warford in April of 1992. Warford's body was found on April 5, 1992, in a rural and secluded portion of Meade County, Kentucky. At the time of discovery, there were no identifying documents on the body, and she was labeled as a Jane Doe. Meade County Sheriff Joe Greer and Coroner Bill Adams traveled to the scene of the murder and preserved the evidence at the scene. The body was transported to the medical examiner where an autopsy was performed by Dr. George Nichols. He

---

[1] Pursuant to the Court's Order, the Meade County Defendants are tendering this trial brief that include claims asserted against former Defendant, Joseph Greer, who passed away on May 9, 2025. The Meade County Defendants specifically reserve all arguments asserted in their Response and Objection to Plaintiff's Motion for Substitution where he seeks to substitute "Kenneth Ray Greer, as legal successor of Joseph Greer" (DN 457) The tendering of this trial brief for Greer is in no way meant to be a waiver of the arguments the Meade County Defendants asserted in their previous brief and they are being specifically reserved herein.

1

concluded that the victim's death was the result of multiple stab wounds following a close-range violent struggle, as evidenced by defensive wounds on the victim's hands.

Greer and Adams subsequently learned the victim was Rhonda Sue Warford who was a nineteen-year-old resident of Louisville, Kentucky. This led to a joint investigation between the Meade County Sheriff's Office and the Louisville Police Department. Rhonda lived with her parents, and her mother last saw her around 12:30 a.m. on April 2, 1992, when she left the house telling her mother she was "going down there."

At the time of the murder, Rhonda was dating Keith Hardin. His close friend was Jeffrey Dewayne Clark, who had socialized with Rhonda and her sister, Michelle, at one time. Information gathered during the investigation suggested that both Clark and Hardin were involved in satanism.

Clark and Hardin were interviewed multiple times and denied any involvement in the murder. They claimed to have been together in Louisville at the time that Rhonda went missing on April 2, 1992, at 12:30 a.m. Clark denied owning a knife or being involved in satanism. Hardin initially denied owning a knife but subsequently admitted to such and also to being involved in satanism. Knives were confiscated pursuant to search warrants but none of the knives found were determined to be linked to the murder.

A few weeks after the murder, a forensics report was issued analyzing the hairs recovered at the autopsy. The hairs were analyzed using the available technology at the time, i.e., microscopic comparison to hair strands taken from the victim, Hardin, and Clark. Several hairs were recovered from the victim's red sweatpants as well, one of which was analyzed to have characteristics similar to Hardin's head hair.

2

The Commonwealth's theory at trial was that Clark and Hardin's involvement in satanism was their motive for the murder. Clark and Hardin were tried jointly in a seven-day trial in February and March 1995. There were no known witnesses who could place Clark or Hardin with the victim that night. The Commonwealth's expert on satanism testified the murder did not appear to be a satanic ritual sacrifice.

The physical evidence the Commonwealth asserted linked Clark and Hardin to the murder consisted of (1) a single fingerprint matching the victim's which was lifted from the interior backseat passenger window of Clark's car; and (2) the one hair described as similar to Hardin's found on the victim's red sweatpants.

As to the fingerprint, it was undisputed that the victim, who was dating Hardin and was acquainted with Clark, had been in Clark's car on a number of occasions.

Clifford Capps shared a cell with Clark at the Meade County jail and testified at trial that Clark confessed twice to the murder, once jokingly and once seriously. Clark denied this. Clark and Hardin presented an alibi defense that they were in Louisville during the time frame at issue, not in Meade County where the victim was killed. Defense counsel argued that the true perpetrator would not be known until a match was found for the two unidentified gray hairs found in the victim's hand. Clark and Hardin were convicted of the murder and sentenced to prison for 22 years.

After the 1995 trial, a letter surfaced indicating that Clifford Capps may have committed perjury at the trial when he claimed Clark confessed to the murder. It is contended that Capps' motive in incriminating Clark was to gain favor with the Commonwealth in order to receive shock probation. Capps has consistently testified that Clark confessed to the murder. There has also been testimony that has surfaced that Sheriff

3

Greer and Deputy Wise were aware of the letter before the 1995 trial and that they also knew Capps was not a reliable witness. Despite this alleged knowledge, neither man shared this information with the Commonwealth attorney, Kenton Smith, before the trial in 1995.

Clark and Hardin also claim that Greer and Wise made up evidence by fabricating a Capps' recorded statement. They also claim that Sheriff Greer and Coroner Williams fabricated the date of death (including changing the date of death on Ms. Warford's death certificate) by changing it from April 5th, which was when Clark and Hardin had an alibi, to April 2nd when they did not.

In 2009, Motions were filed on behalf of Clark and Hardin requesting the Court permit DNA testing on the hairs found on Rhonda's body that were not identified. Given the status of forensic testing in the early 1990s, it was not possible to perform mitochondrial testing of these hairs at that time. The results of this mitochondrial testing did not reveal the source of the unidentified hairs; however, the testing revealed the hair found on Rhonda's sweatpants did not belong to Hardin. Based upon this DNA testing, Clark and Hardin's convictions were vacated in 2018 after spending 22 years in prison. The Office of the Attorney General as Special Prosecutor elected not to retry Clark and Hardin and their indictment was dismissed without prejudice.

The defendants Meade County, Wise, and Adams deny all of Clark's claims.

## II.     QUESTIONS OF FACT

Most if not all of the facts are known, it is just a matter of which facts a jury gets to consider and which facts they do not enjoy hearing. With the passage of time, the passing of several significant fact witnesses, and lack of memory will contribute to admissibility or

4

inadmissibility of certain facts. Credibility will be the ultimate "fact" to be determined by a jury on most if not all claims:

**BRADY CLAIMS**: Capps' letter/Capps' reputation (Greer, Wise)

    -Evidence favorable to the accused was not disclosed
    -Suppressed by the State and prejudice must have ensued
    -Disclosure of impeachment evidence

        -Did defense counsel know or should have known of the letter
        -Not material to the outcome of the trial
        -Not in the possession of State prior to trial

**FABRICATION CLAIMS:**

    -Date of Death (Greer, Adams)

        -allegation that defendant knowingly fabricated evidence against Clark
            -fabricated the date of death v. Dr. Nichols stating Warford could have died on April 2, 1992
            -used as the basis for a criminal charge . . . because, absent the evidence there would have been no jury
            -a reasonable likelihood that the false evidence could have affected the judgment of the jury

    -Capps Statement (Greer, Wise)-the Court concludes in its summary judgment opinion that "credibility" is a jury determination and the question of fact here to be addressed is whether or not they believe collectively that Greer/Wise fabricated Capps' statement/testimony.

**MALICIOUS PROSECUTION (Greer):**

    -§1983
        -Did Greer participate in the decision to prosecute Clark/Hardin
        -Was there a lack of probable cause to arrest Clark/Hardin

**FAILURE TO INTERVENE:**

    **-Wise, Greer-**wise failed to intervene with Greer's fabrication of Capps' statement

    **Greer, Adams-**Greer and Adams failed to intervene with the other's fabrication of Warford's date of death

        -must show there was an underlying constitutional violation, fabricating the date of death, without a good faith factual basis

**CONSPIRACY (Greer, Wise, Adams):**

    -An agreement between two or more to injure another person by unlawful action
        -single plan existed
        -defendants shared in the general conspiratorial objective to deprive Clark of his constitutional rights
        -an overt act was committed in furtherance of the conspiracy that caused Clark injury

**MONELL CLAIM (Meade County): Failure to Train:**

    -through deliberate conduct the municipality was the moving force behind the injury alleged
        -the existence of inadequate training

**QUESTIONS OF LAW**

Parole Board Hearing Statements of Clark/Hardin-is Clark subject to questioning regarding statements before the Parole Board (See Response to Clark's Motion to Preclude Reference to Parole Board Statements).

What is the status of the claim against Sheriff Joseph Greer, now deceased (See Motion to Substitute Successor Party and Defendants' Response)

The various Motions in Limine and opposing party's Response listed hereinbelow identify various legal issues to be addressed by the Court.

### III.   EXPECTED EVIDENTIARY OBJECTIONS

The parties have filed numerous Motions in Limine that reflect expected evidentiary objections to exhibits and/or testimony. In conjunction with the Motions in Limine, considerable time has been expended responding to various objections to exhibits even though many of the same exhibits have been listed by each party. Lastly, the parties have also filed Objections/Responses to Deposition Designations and Counter Designations that further exemplify the evidentiary issues associated with this case.

It is difficult to identify for the Court "expected evidentiary objections" since counsel would expect the opposing party to present their case consistent with the Rules of Evidence;

6

although all parties face the challenge of lay witnesses offering hearsay testimony even when not prompted by the question asked. The passage of time (30+ years) contributes to evidentiary issues the Court may not be accustomed to encountering, like Ancient Document exception to the hearsay rule (FRE 803(16)), Hearsay within Hearsay (FRE 805) and Residual Hearsay (FRE 807).

**IV.    ALL PENDING MOTIONS**

The following Motions are currently pending before the Court:

**CLARK:**

- Motion to Substitute for Joseph Greer (deceased)

- Various Motions in Limine:

    -To Bar Police Officers From Wearing Police Attire, Badges, or Medals During Trial
    -To Exclude Non-Party Witnesses from the Courtroom
    -To Bar Defendants "Good Character" Evidence
    -To Bar Evidence of Defendants' Inability to Pay Compensatory Damages
    -To Bar Reference to Jurors As Taxpayers
    -To Bar Reference to an Award for Clark as Unjust Enrichment or Hitting the Lottery
    -To Exclude Evidence About Clark's Employment Background
    -To Bar the Police Reports as Substantive Evidence
    -To Bar All References to Any of Clark's Bad Acts
    -To Bar Evidence of Satanism and Argument Pertaining to Clark
    -To Bar Evidence and Argument of Satanism
    -To Exclude Evidence and Argument Regarding Third Party Causation
    -To Exclude Reference to Parole Board Statements

**MEADE COUNTY/BILL ADAMS/CLIFF WISE:**

   -Motion to Dismiss Joe Greer as a party defendant (Response to Motion to Substitute)
   -Motion to Substitute Dr. Frame Due to Death of Dr. George Nichols
   -Various Motions in Limine
       -Regarding John "Jack" Ryan
       -Regarding Exclusion of any Reference to Other Suspect
       -Regarding Bench Notes
       -Regarding DNA
       -Regarding Testimony of Russell Fisher

7

- Regarding Mark Handy
- Regarding Statement of Kevin Justis to Harvey Palefsky
- Regarding Testimony of Judy Melinek
- Regarding Newspaper Articles
- Regarding Pre-Interview
- Regarding Questions Predicated Upon "Possible"
- Regarding Amy Remsburg
- Regarding Settlement with Garr Keith Hardin
- Separation of Witnesses

- Omnibus Motions in Limine
    - Plaintiff be precluded from Offering Any Evidence that Sheriff Greer Threatened Clark with a Gun During Interviews
    - Preclude Clark from Claiming he has Been Exonerated, Was Wrongfully Convicted or Any Reference to the Innocence Project
    - Clark be precluded from Offering Any Evidence Regarding Perry Ryan, Indictments in 2016/17 and their Dismissal for Vindictive Prosecution
    - Clark be precluded from Introducing Notes from Robert Thurman Documenting Conversations He Had with Sheriff Greer
    - Clark be Precluded from Advancing Any Type of "Golden Rule" Arguments
    - Clark be precluded from Offering Evidence that Meade County's Actions Violated Standard Police Practices
    - Clark be Precluded from Introducing any Evidence That Bart Adams Believed the "Capps Letter" Would Have Changed the Jury's Decision to Convict Clark
    - Clark be precluded from Introducing any Evidence Regarding the Affidavits of Michael Argall and Natalie Friel
    - Clark be precluded from Making Any Arguments That Sheriff Greer Misreported and/or Fabricated Any Evidence Regarding Blood on Hardin's Handkerchief was from Animal Sacrifice, the Hair Found on Warford's Sweatpants "Matched" Hardin and that Clark's Nove had a "Fresh" Fingerprint from Warford
    - Clark be precluded from Introducing any Evidence that Sheriff Greer or any Meade County Defendant Fabricated Evidence in Violation of the Fourth Amendment
    - Clark be precluded from Introducing Sheriff Greer's Grand Jury Testimony Resulting in the Indictment of Clark
    - Clark be precluded from Introducing Any Evidence that the Meade County Defendants Conspired with Detective Mark Handy or any Louisville Police Officer During the Warford Investigation
    - Clark be precluded from Offering any Evidence that Sheriff Greer Failed to Train Ernie Embry in Support of Their Municipal Liability Claim Against Meade County

8

## V.     STATUS OF SETTLEMENT NEGOTIATIONS

The Parties have gone to extraordinary efforts to resolve this case but have not met with any success until recently. Judge Magistrate Colin Lindsey conducted a Settlement Conference on two (2) separate occasions, once on February 26, 2021, and a second effort on April 22, 2024.

In February 2021, all Defendants were still parties (Louisville, Meade County and Thurman) so counsel is not fully aware of the exact demands and counters, but notes reflect the effort broke down when Clark/Hardin were at 36.9M and the Defendants collectively were at 2.8M. Judge Lindsey attempted to resolve the matter again in April 2024 since the dynamics were now altered with the Louisville Defendants having settled and Meade County/Thurman remaining.

The Settlement Conference lasted approximately ten (10) hours but did not achieve resolution. The Meade County Defendants offered their available policy limits of $3M and Meade County offered $500K in addition. The last official demand from Clark/Hardin was $11M each ($22M total). The Settlement Conference was adjourned with Judge Lindsey still willing to attempt resolution through ex parte settlement discussions with the respective parties.

The Meade County Defendants continued in their effort to find a way to resolve the case and eventually elected to attempt settlement with Hardin only and did so in October 2025. Meade County settled with Hardin for a total of $3.5M; thereby eliminating any available funds to settle with Clark. The Court was advised of the settlement.

Subsequent to the settlement with Hardin, Meade County had ex parte settlement discussion with the Court and counsel for Clark. With permission from Meade County, their

9

counsel, and each individual Defendant, undersigned counsel briefly discussed the possibility of an assignment between Meade County and Clark of any potential "coverage claim" for a complete release of all Meade County Defendants, but Clark also insisted on a cash contribution to the settlement. The discussion was communicated to the appropriate decision makers, but any further discussions were declined.

To date, no further discussions have taken place between the parties or via ex parte discussions with the Court.

                                            */s/ Robert K. Bond*
ROBERT K. BOND
ANDREW T. GARVERICH
DANIEL J. DIGIALLONARDO
LOCHMILLER BOND
514 N. MULBERRY STREET
P.O. BOX 826
ELIZABETHTOWN, KY 42702-0826
(270) 900-1248
rkbond@lbatty.com
agarverich@lbatty.com
daniel@lbatty.com
COUNSEL FOR MEADE COUNTY DEFENDANTS

**CERTIFICATE OF SERVICE**

       I hereby certify that on December 3, 2025, I electronically filed the foregoing with the Clerk of the Court and service was made on counsel of record by using the ECF document filing system of the Western District of Kentucky.

Anna Benvenutti Hoffmann
Barry C. Scheck
Emma K. Freudenberger
Mary K. McCarthy
Nick Brustin
Sophia Villarreal
Rhianna Beda Rey
Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP
99 Hudson Street, 8th Floor
New York, NY  10013
anna@nsbhf.com
barry@nsbcivilrights.com
emma@nsbcivilrights.com
katie@nsbhf.com
nick@bsbhf.com
sophia@nsbhf.com
rhianna@nsbhf.com
Counsel for Plaintiff Hardin

Larry D. Simon
American Life Building, Suite 200
471 West Main Street
Louisville, KY  40202
larrysimonlawoffice@gmail.com
larrylawyerguy@aol.com
Counsel for Plaintiff Hardin

Elliot Slosar
Arthur Loevy
Michael Kanovitz
Amy Robinson-Staples
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL  60607
elliot@loevy.com
arthur@loevy.com
mike@loevy.com
amy@loevy.com
campbell@loevy.com
Counsel for Plaintiff Clark

11

Ed Monarch
Pete Rosene
McBrayer, PLLC
500 West Jefferson Street, Suite 2400
Louisville, KY  40202
[emonarch@mcbrayerfirm.com](mailto:emonarch@mcbrayerfirm.com)
[prosene@mcbrayerfirm.com](mailto:prosene@mcbrayerfirm.com)
Counsel for Defendant Thurman

                                             */s/ Robert K. Bond*
                                             ROBERT K. BOND