UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00419-GNS-CHL

JEFFREY DEWAYNE CLARK; and
GARR KEITH HARDIN                                                                                            PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, KENTUCKY et al.                                                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Substitute Party Joseph Greer (DN 452), Defendant's Motion for Substitution of Expert Witness (DN 458), Defendant's Motion to Supplement (DN 462), and Defendants' Motion for Joinder (DN 478). The motions are ripe for adjudication.

### I.    DISCUSSION

#### A.    Plaintiffs' Motion to Substitute

Plaintiffs Jeffrey Dewayne Clark ("Clark") and Garr Keith Hardin ("Hardin") move to substitute Kenneth Ray Greer ("Kenneth"), as legal successor of Joseph Greer ("Joseph) as a party to this action following Joseph's death.[1] Defendants Meade County, Cliff Webb, and William Adams (collectively, the "Meade County Defendants") oppose the motion.

Under Fed. R. Civ. P. 25, "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by

---

[1] Hardin has since settled his claims against the remaining Defendants in this action.

1

the decedent's successor or representative." Fed. R. Civ. P. 25(a)(1). A Rule 25 motion must be made within 90 days after service of a statement noting the party's death. Fed. R. Civ. P. 25(a).

Clark argues that, as the sole beneficiary of his father's estate, Kenneth is a "successor" under Rule 25 and therefore a proper party. (Pls.' Mot. Substitute 4-5, DN 452). The Meade County Defendants argue that Clark needs to substitute the personal representative of Joseph's estate. (Defs.' Resp. Pls.' Mot. Substitute 11-14, DN 457). No such representative exists, as no estate was opened for Joseph, nor, evidently, is one going to be opened. (Pls.' Mot. Substitute Ex. 1, DN 452-2).

The controlling issue, therefore, is whether Kenneth is a "successor" of his father for Rule 25 purposes. The Sixth Circuit has not addressed this issue directly, but several of our sister courts have adopted, or at least recognized favorably, the approach used by the D.C. Circuit in *Rende v. Kay*, 415 F.2d 983 (D.C. Cir. 1969). *See Watts v. Novartis Pharms. Corp.*, No. 5:08-CV-2354, 2015 WL 1456647, at *5 (N.D. Ohio Mar. 30, 2015); *Howard v. Lilly, Tr. of Land End Invs. Tr.*, No. 3:17-CV-322, 2019 WL 342139, at *3 (E.D. Tenn. Jan. 28, 2019); *Reilly v. Donnellon*, No. 19-11249, 2021 WL 2187151, at *2-3 (E.D. Mich. May 28, 2021). The basic facts in *Rende* are similar to the facts prompting Clark's motion to substitute. The *Rende* defendant was alive at the time the suit against him was commenced but died before trial. *Rende*, 415 F.2d at 984. The defendant's will was not probated, nor was a personal representative appointed. *Id.* The *Rende* court found that the inclusion of the word "successor" in the language of Rule 25 following a 1963 amendment broadened the class of people who could be representatives of a decedent-defendant in ongoing litigation to include, for example, "the distributee of an estate that had been distributed . . . ." *Id.* at 985. To find otherwise "would place on plaintiff the burden, where no conventional representative was appointed for the estate in probate court, of instituting machinery

in order to produce some representative of the estate ad litem, pending appointment of the representative contemplated by law of the domicile of the deceased." *Id.* at 986.

Following the principles of *Rende*, courts have found a number of persons who may be considered successors under Rule 25. *Watts*, 2015 WL 1456647, at *5 (citing *In re Baycol Prods. Litig.*, 616 F.3d 778, 784-85 (8th Cir. 2010)). These include: (1) the primary beneficiary of a fully-distributed estate; (2) the person named as executor of the estate in the decedent's will, even if the estate is not probated; and (3) the primary beneficiary of an estate for which probate was not required. *Id.* (citing *Baycol*, 616 F.3d at 784-85).

Thus, Clark is permitted to substitute Kenneth, even though he has not been formally appointed as personal representative of his father's estate. Under Kentucky probate law, the estate of a decedent who died intestate and has one surviving child and no surviving spouse is distributed to the surviving child. *See* KRS 391.010 (descent of real estate); KRS 391.030 (descent of personal property). It is unclear if a distribution of Joseph's assets had taken place at the time Clark's motion was filed, so Kenneth may fall into either the first class of *Baycol* successors as the primary beneficiary of an already distributed estate or the third class as the primary beneficiary of an estate that need not be probated. Regardless of classification, Kenneth is a suitable successor for his father in this suit.[2] This Court sees no reason to force Clark to go through the process of opening

---

[2] Disputing this point, the Meade County Defendants cite *Mr. Roof of Louisville, LLC v. Estate of Henry*, 681 S.W.3d 115 (Ky. 2023). (Defs.' Resp. Pls.' Mot. Substitute 17). In *Mr. Roof*, the Kentucky Supreme Court stated that the administrator of an estate "is the only party with power to initiate or defend actions." *Mr. Roof*, 681 S.W.3d at 125 (citations omitted). Kentucky state law, however, does not control in this instance. It is true that when a court sits in *diversity*, it applies federal procedural law and state substantive law. *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010)). When a court has federal question jurisdiction over a claim, though, it applies federal procedural and substantive law. *Cruz v. Don Pancho Mkt., LLC*, 171 F. Supp. 3d 657, 666 (W.D. Mich. 2016) ("In federal question cases, federal courts obviously apply federal substantive law and federal procedural law."). In this instance, Clark has voluntarily dismissed

an estate for Joseph, having a Kentucky state court appoint a personal representative, and then substituting that personal representative. This would amount to nothing more than a costly and time-consuming process aimed at achieving "mere technical compliance" with the requirements of Rule 25. *Mason v. Asset Acceptance, LLC*, No. 1:06-CV-735, 2007 WL 2112347, at *2 (S.D. Ohio July 9, 2007). Accordingly, Clark's motion to substitute will be granted.

The Meade County Defendants, in their response, also argue that Clark's "claims" for punitive damages should be dismissed. (Defs.' Resp. Pls.' Mot. Substitute 10-11). "However, a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Pike v. Hardin Cnty. Water Dist. No. 2*, No. 3:23-CV-42-DJH-RSE, 2024 WL 1199439, at *5 (W.D. Ky. Mar. 20, 2024) (quoting *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012)). Accordingly, Clark's claim for punitive damages could be properly dismissed to the extent Clark asserts a separate cause of action for punitive damages. This would not, however, preclude Clark from recovering punitive damages from Kenneth as his father's successor if the evidence ultimately warrants them. *See id.* (dismissing punitive damages "claim," but stating that the "dismissal does not preclude [the plaintiff] from recovering punitive damages if the evidence ultimately warrants such a remedy").

Additionally, Clark indicates in the motion that he is voluntarily dismissing his state law malicious prosecution claim against Joseph. (Pls.' Mot. Substitute 3 n.1). Accordingly, that claim will also be dismissed.

---

his state law claims against Joseph, leaving only his five federal law claims brought under Section 1983. (Pls.' Mot. Substitute 3 n.1). While there is some interaction between state law and Section 1983 claims—i.e., they are subject to state statutes of limitation—these are clearly federal claims governed by federal substantive law. *Heard v. Strange*, 127 F.4th 630, 634-35 (6th Cir. 2025). Federal courts, as outlined above, have permitted substitutions like the one Clark requests here; Kentucky state law does not control. *See McSurely v. McClellan*, 753 F.2d 88, 98 (D.C. Cir. 1985).

## B.     **Defendants' Motions**

Defendant Robert Thurman ("Thurman") moved to substitute his so-called "expert witness" Dr. George Nichols ("Dr. Nichols") with Dr. Meredith Frame ("Dr. Frame") because Dr. Nichols died on November 20, 2024. (Def.'s Mot. Substitute, DN 458). Thurman also moved to supplement his motion to substitute. (Def.'s Mot. Suppl., DN 462). Clark opposes this substitution. (Pl.'s Resp. Def.'s Mot. Substitute, DN 463).

While Thurman's motion was pending, all claims against him were settled. Defendants Meade County, Cliff Wise, and William Adams (collectively "Meade County Defendants") then moved to join Thurman's motion. (Defs.' Mot. Joinder 1, DN 478). Clark has not responded to the Meade County Defendants' motion, and his time to do so has passed. LR 7.1(c). Accordingly the Meade County Defendants' motion for joinder will be granted.

A motion to substitute an expert witness is actually a motion to modify the Rule 16 scheduling order. *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) ("A party must disclose his or her expert witnesses by the scheduling-order deadline. Fed. R. Civ. P. 26(a)(2)(D). If the party cannot meet that deadline, he or she can move to amend the scheduling order." (citing Fed. R. Civ. P. 16(b)(4))). A scheduling order may be modified "for good cause." *Moore v. Indus. Maint. Serv. of Tenn., Inc.*, 570 F. App'x 569, 577 (6th Cir. 2014) (quoting Fed. R. Civ. P. 16(b)(4)). The main consideration in determining whether the good cause standard has been met is the "moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). When deciding whether the moving party acted with diligence, the court may consider "whether the change in circumstances leading to the requested substitution was 'unforeseen,' meaning it could not have been previously anticipated

and remedied by counsel . . . ." *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2014 WL 10294798, at *4 (E.D. Mich. June 16, 2014). "Another relevant consideration" when determining good cause "is possible prejudice to the party opposing the modification." *Inge*, 281 F.3d at 625 (citing Bradford, 249 F.3d at 809).

In this instance however, Thurman is not substituting one expert witness for another. While Dr. Nichols was a pathologist and medical doctor—a background befitting an expert testifying about a decedent's time of death—he was also the pathologist involved in the original murder investigation giving rise to the present litigation. (Def.'s Expert Disclosure Nichols Ex. A, at 1, DN 458-1). At the very least, Dr. Nichols would have been both a fact witness and a non-retained expert. As Clark correctly points out, there is no indication that Dr. Nichols was going to testify to the conclusions attributed to him in Thurman's disclosure of Dr. Nichols' opinions. (Pls.' Resp. Def.'s Mot. Substitute 2-3). In fact, there is evidence that Dr. Nichols may have disagreed with the conclusions attributed to him by Thurman. (Nichols Dep. 22:6-26:21, Dec. 15, 2022, DN 328-4).

By substituting Dr. Frame for Dr. Nichols, Thurman seeks to create certainty about the opinions the expert will offer where there was none. While Dr. Nichols' depositions gave the parties some idea of what he would testify to at trial, this is markedly different than the assurance given by a retained expert. The deadline for adding additional experts has passed and, under these circumstances, should not be modified.

Even assuming that this is an expert-for-expert substitution, the motion would still be denied. District courts have generally allowed substitution of expert witnesses when "unforeseen events" render a party's expert unavailable. *Phx. Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-00024-CHB, 2022 WL 15722630, at *3 (W.D. Ky. May 24, 2022) (collecting

6

cases). "Post-deadline expert substitutions," however, "are fact-specific issues and must be assessed on a case-by-case basis." *Id.* (citing *Bond v. Pike Cnty.*, No. 7:20-CV-020-REW-MAS, 2021 WL 4127772, at *2 (E.D. Ky. Sept. 8, 2021)). Death is perhaps the ultimate marker of unavailability, and, at first glance, this clearly weighs in favor of substitution. To say that Dr. Nichols' death is an "unforseen event[]," however, strains credulity. From the outset of this litigation, all parties have been aware that the central underlying events occurred more than thirty years ago in 1992. It was and remains foreseeable that any witness, expert or otherwise, that had a role in those initial events may no longer be able to testify at trial. This is especially true for Dr. Nichols who was 77 years old when he died. *See George Riley Nichols II Obituary*, Courier Journal, Nov. 22, 2024, https://www.courier-journal.com/obituaries/psbn1008642.

Further, Thurman has not shown that he was diligent in seeking to name a new expert. While Dr. Nichols died in November 2024, Thurman did not move to substitute an expert until on August 18, 2025—more than nine months later. (Def.'s Mot. Substitute 1). While proceedings were stayed for part of this time, this Court received the Sixth Circuit's mandate ending the stay on June 12, 2025, and still Thurman waited until August 18—more than two months later—to move for substitution. (Def.'s Mot. Substitute 1). If Dr. Nichols had died closer to the date this Court received the mandate, then such a delay might be understandable. Dr. Nichols had been dead for more than six months when the stay was lifted, giving Thurman ample time to prepare his motion for substitution.

Additionally, allowing such a substitution would unfairly prejudice Clark. If substitution were allowed now, discovery would have to be reopened—Clark would need time to depose Dr. Frame and conduct other discovery related to her testimony and opinions. This would be unduly costly to Clark and could not reasonably be accomplished in the time remaining before trial. *See*

*In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 350 (6th Cir. 2024) ("[G]ranting the motion [to substitute] would likely impose significant costs on defendants in the form of substantial legal expenses and years of delay." (citation omitted)); *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377-78 (6th Cir. 2009) (affirming district court's denial of a motion to extend discovery because "any further delay in discovery would have resulted in additional time and expense incurred by both the parties and the court . . . ."). This case has also been pending for more than eight years, and the Court is disinclined to further delay Clark's day in court. Accordingly, the motion to substitute is denied, and the motion to supplement is denied as moot.

## II. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion to Substitute Party Joseph Greer (DN 452) is **GRANTED**.

2. Defendants' Motion for Substitution of Expert Witness (DN 458) is **DENIED**.

3. Defendant's Motion to Supplement (DN 462) is **DENIED AS MOOT**.

4. Defendants' Motion for Joinder (DN 478) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court
December 9, 2025

cc: counsel of record