UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00419-GNS-CHL

JEFFREY DEWAYNE CLARK; and
GARR KEITH HARDIN                                                                                    PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, KENTUCKY et al.                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motions in Limine (DN 424, 511), and Defendants' Motions in Limine (DN 486, 487, 489, 491, 494, 495, 498, 500, 503). The motions are ripe for adjudication.

### I.     STANDARD OF REVIEW

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). "It is often difficult to resolve evidentiary objections outside the context of trial, and Courts will exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible." *Lotz v. Steak N Shake, Inc.*, No. 5:19-277-DCR, 2021 WL 2270353, at *1 (E.D. Ky. June 3, 2021) (citations omitted). "Unless the evidence meets this high standard, 'rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice

1

may be resolved in proper context.'" *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). Rulings on motions in limine are preliminary and based on the discretion of the district court, which can later change its rulings. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## II.  DISCUSSION

Many of the motions in limine invoke Fed. R. Evid. 401, 402, and 403. For context, a general discussion of those rules follows.

To be admissible, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant when it "has any tendency to make a fact of consequence in determining the action more or less probable," with the phrase "any tendency" indicating an "extremely liberal" standard. *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 598-99 (6th Cir. 2019); Fed. R. Evid. 401; *see Cambio Health Sols., LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007) ("The Federal Rules of Evidence set a low bar for relevance." (citation omitted)). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009).

Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Showing that evidence is unfairly prejudicial is difficult—the evidence "must be more than damaging or simply adverse" to the party seeking its exclusion. *Humana, Inc. v. Shook*, 798 F.2d 469, 1986 WL 17218, at *2 (6th Cir. 1986) (citing *Kolada v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983)). The Sixth Circuit has clarified that "'[u]nfair prejudice' means the *undue*

2

tendency to suggest a decision based on improper considerations; it 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.'" *Doe v. Claibourne Cnty. By & Through Claibourne Cnty. Bd. of Educ.*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).  A court enjoys broad discretion when it decides questions of relevance and possible prejudice.  *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

    A.    **Plaintiff's Omnibus Motion in Limine (DN 424)**

        1.    *Police Attire, Badges*

Clark moves to prevent Defendants from wearing "law enforcement uniforms, badges, or medals" during trial.  (Pl.'s Mot. Lim. 2, DN 424).  Defendants do not oppose the motion, so it is granted on this basis.

        2.    *Good Character Evidence*

Clark moves to bar Defendants from introducing evidence of their "good character" by referencing "commendations, awards, complimentary history, promotions, or performance reviews."  (Pl.'s Mot. Lim. 4-5, DN 424).  Defendants oppose Clark's motion.  (Defs.' Resp. Pl.'s Mot. Lim., DN 519).  Clark argues that the character evidence is not relevant and would only be used to bolster the Defendants' images.  (Pl.'s Mot. Lim. 4, DN 424).  Defendants argue that this evidence may be needed to either rebut an attack on their truthfulness or to prove their character as an essential element of a defense.  (Defs.' Resp. Pl.'s Mot. Lim. 1-2, DN 519).  Specifically, Defendants aver that to succeed on his fabrication of evidence claim, Clark must show that Defendants knowingly withheld evidence, so they should be able to introduce evidence of their good character as a defense.  (Defs.' Resp. Pl.'s Mot. Lim. 2, DN 519).

Fed. R. Evid. 404 bars the introduction of evidence of a person's character to prove that the person acted in accordance with that character. Fed. R. Evid. 404(a)(1). Fed. R. Evid. 608, however, allows character evidence to come in on cross-examination if it is used to rehabilitate the witness's character for truthfulness after it has been attacked. Fed. R. Evid. 608(b). Additionally, when a person's character is an essential element of a defense, character may be proved by the introduction of extrinsic evidence of the person's relevant good acts. Fed. R. Evid. 405(b). At this stage, it cannot be determined whether evidence of Defendants' good acts will be permissible under the exceptions contained in Fed. R. Evid. 608, Fed. R. Evid. 404, and Fed. R. Evid. 405. Accordingly, Clark's motion is denied.

### 3.   *Defendants' Inability to Pay*

Clark moves to bar all evidence of Defendants' inability to pay compensatory damages. (Pl.'s Mot. Lim. 6-7, DN 424). Defendants do not oppose the motion, so it is granted on this basis.

### 4.   *Reference to Jurors as Taxpayers*

Clark moves to bar any reference to the jurors as taxpayers. (Pl.'s Mot. Lim. 8, DN 424). Defendants do not oppose the motion, so it is granted on this basis.

### 5.   *Unjust Enrichment/Hitting the Lottery*

Clark moves to bar any reference to an award for him as "unjust enrichment" or "hitting the lottery." (Pl.'s Mot. Lim. 9, DN 424). Defendants do not oppose the motion, so it is granted on this basis.

### 6.   *Clark's Employment Background*

Clark moves to exclude any evidence about Clark or Hardin's employment background. (Pl.'s Mot. Lim. 10, DN 424). Clark argues that his employment background is irrelevant because he is not seeking lost wages and is unduly prejudicial because to explain Clark and Hardin's

employment backgrounds, they will have to discuss their criminal histories. (Pl.'s Mot. Lim. 10, DN 424). First, Defendants respond that they do not anticipate introducing evidence of Hardin's employment history (Defs.' Resp. Pl.'s Mot. Lim. 1, DN 520). Accordingly, Clark's motion is granted as to Hardin's employment history.

Second, Defendants respond that evidence of Clark's employment background is admissible because it is probative to the determination of probable cause and therefore relevant to his malicious prosecution claim. (Defs.' Resp. Pl.'s Mot. Lim. 3-5, DN 520). There are several situations which could make reference to Clark's employment background relevant and necessary. Defendants' point to Clark's interactions with Bill Mahan, his one-time supervisor, indicating that he was involved in Satanism. (Defs.' Resp. Pl.'s Mot. Lim. 4, DN 520). While Clark's employment history does not seem to have direct relevance, it is impractical to bar all reference to it. Accordingly, Clark's motion is denied.

### 7. *Police Reports*

Clark moves to bar reference to police reports as substantive evidence at trial. (Pl.'s Mot. Lim. 11, DN 424). Clark, however, acknowledges that "there may be non-hearsay purposes for police reports or certain hearsay exceptions may apply to portions of a report." (Pl.'s Mot. Lim. 12, DN 424). Clark suggests that the Court rule on these exceptions on a "case-by-case" basis. (Pl.'s Mot. Lim. 12, DN 424). Clark's request to categorically bar all police reports is overbroad. "A motion in limine may be denied for being vague and overbroad." *McCoy v. Kazi*, No. 08-CV-07244-SJO-CWX, 2010 WL 11465179, at *12 (C.D. Cal. Aug. 27, 2010) (citing *Lopez v. Chula Vista Police Dep't*, No. 07-CV-1272-WQH-BLM, 2010 WL 685014, at *7 (S.D. Cal. Feb. 18, 2010)); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94-CV-5220-AJP, 1998 WL 665138,

at *3 (S.D.N.Y. Sept. 25, 1998)). Accordingly, Clark's motion is denied, and the Court will rule on the admission of police reports on an individual basis.

      **B.    Defendants' Motions in Limine – Alternative Suspects (DN 486), Mitochondrial DNA (DN 487), and Thurman's Bench Notes (DN 495)**

Defendants make three related motions in limine: (1) to exclude alternative suspects; (2) to exclude reference to mitochondrial DNA results; and (3) to exclude evidence related to Thurman's bench notes. (Defs.' Mot. Lim. 1, DN 486; Defs.' Mot. Lim. 1, DN 487; Defs.' Mot. Lim. 1, DN 495). Clark opposes each motion. (Pl.'s Resp. Defs.' Mots. Lim. 1, DN 544).

In these motions, Defendants attempt to exclude evidence of Clark's innocence in Warford's murder. Initially, evidence of Clark's actual innocence appears irrelevant. None of Clark's claims require him to prove his innocence. *See O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)) (elements of *Brady* claim); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)) (elements of fabrication of evidence); *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (citing *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)) (elements of Section 1983 claim for malicious prosecution); *Jacobs v. Alam*, 915 F.3d 1028, 1043 (6th Cir. 2019) (citing *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015)) (elements of conspiracy to deprive constitutional rights); *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)) (elements of failure to intervene); *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted) (elements of *Monell* claim). Even Clark's malicious prosecution claim only requires a showing that his criminal prosecution was resolved in his favor, meaning that it ended "without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022). An "affirmative indication of innocence" is not required for Clark to prevail. *Id.* at 49.

Nevertheless, the Sixth Circuit has indicated that evidence showing a plaintiff's actual innocence can be relevant to a malicious prosecution claim in two ways: (1) it can rebut testimony that suggests the plaintiff's guilt; and (2) it can be used to demonstrate the extent of the plaintiff's damages. *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (citing *Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012)). Thus, where actual innocence is in dispute, "evidence of innocence is relevant to both liability and damages in any wrongful prosecution case . . . ." *Sanford v. Russell*, 531 F. Supp. 3d 1221, 1224 (E.D. Mich. 2021) (citing *Ayers*, 773 F.3d at 169). The Seventh Circuit explained the rationale behind the admission of innocence evidence: "[a] jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to the person's own actions as well as the civil defendants' misbehavior and even a fair prosecution and trial may well have resulted in the person's imprisonment." *Parish*, 702 F.3d at 999.

In this instance, the parties indicate that Clark's actual innocence remains in question. (Pl.'s Resp. Defs.' Mots. Lim. 1, 3-4, DN 544). Additionally, Defendants seek to introduce Clark and Hardin's statements to the Kentucky Parole Board that suggest their guilt. (Defs.' Resp. Pl.'s Mot. Lim. 1, DN 524). Accordingly, evidence of innocence is generally relevant, and the Court will examine the three specific items Defendants seek to exclude.

### 1. *Alternative Suspects*

Defendants seek to exclude evidence of "any alternative suspect who was involved" in Warford's murder, including James Whitley ("Whitley") and William Mahan ("Mahan"). (Defs.' Mot. Lim. 1, DN 486). Specifically, Defendants want to prevent Whitley and Mahan from testifying about their interactions with law enforcement and other witnesses. (Defs.' Mem. Supp. Mot. Lim. 1, DN 486-1). This evidence would likely constitute hearsay and therefore be

7

inadmissible. Parties are generally barred from offering hearsay as evidence. Fed. R. Evid. 802. Hearsay, in part, is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). To the extent Whitley and Mahan are asked about the statements of law enforcement officers and other witnesses who are not party to the case, their testimony would likely be inadmissible hearsay. Fed. R. Evid. 801(c)(2). It is unclear what the relevance of this evidence may have, but at this juncture, Defendants' motion is denied.

### 2. *Mitochondrial DNA*

Defendants also seek to exclude the testimonies of Dr. Julia Henig, Gloria Dimick, and "any other witness who references the mitochondrial DNA testing" that ruled out Hardin as the source of the hair on Warford's sweatpants. (Defs.' Mem. Supp. Mot. Lim. 1, DN 487-1). Defendants argue that because the testing was not performed until 2014—more than two decades after Warford's murder—its limited relevance is outweighed by the risk of unfair prejudice. (Defs.' Mem. Supp. Mot. Lim. 2, DN 487-1).

The 2014 DNA testing is clearly relevant to Clark's innocence. Defendants' theory of the case is that Clark and Hardin were accomplices in Warford's murder. DNA evidence excluding Hardin as the source of the hair found on the victim would weigh in favor of Clark's innocence. Accordingly, the DNA testing is relevant to Clark's innocence and Defendants' motion to exclude it is denied.[1]

---

[1] Defendants are correct, however, that the DNA testing should not come in to show a lack of probable cause under Clark's malicious prosecution claim. When examining probable cause in the context of a malicious prosecution claim, a court must ask "whether probable cause *existed* to initiate the criminal proceeding . . . ." *Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir. 2010) (emphasis added). Thus, evidence generated after the initiation of the proceeding is not relevant to the determination of whether there was probable cause at the time of initiation. Accordingly, the DNA testing evidence is not relevant to the probable cause element of Clark's malicious prosecution claim and may not be used as proof to negate this element. If the DNA testing evidence is admitted for a permitted purpose, Defendants may request a limiting instruction.

### 3. *Bench Notes*

Finally, Defendants seek to preclude Clark from introducing evidence relating to Thurman's bench notes. (Defs.' Mem. Supp. Mot. Lim. 1, DN 495-1). Defendants argue that because Thurman's official report stated that Hardin's, but not Clark's, hair was microscopically similar to the hair found on Warford's sweatpants, the bench notes Thurman made in generating the report are irrelevant to Clark's claims. (Defs.' Mem. Supp. Mot. Lim. 1, DN 495-1). Thurman's bench notes, however, arguably indicated that Hardin's hair was *not* similar to the hair from the victim. Defendants' argument ignores the underlying theory of Clark and Hardin's initial prosecution—that they committed the crime as accomplices and were physically together at the time of Warford's disappearance. Evidence tying Hardin to Warford's body implicitly tied Clark to the same. Therefore, evidence that suggests Hardin's innocence also suggests Clark's actual innocence. Accordingly, Defendants' motion is denied.

### C. **Plaintiff's Motion in Limine – Parole Board Statements (DN 511)**

Clark moves to exclude any reference to his or Hardin's statements to the Kentucky Parole Board ("KPB"). (Pl.'s Mot. Lim. 1, DN 511). Defendants oppose the motion. (Defs.' Resp. Pl.'s Mot. Lim. 1, DN 524). The KPB statements contain confessions of varying degrees: Hardin offered a complete confession to the crime, while Clark indicated that he merely helped Hardin move Warford's body after Hardin had killed her. (Defs.' Resp. Pl.'s Mot. Lim. Ex. 4, at 1-2, DN 524-4; Defs.' Resp. Pl.'s Mot. Lim. Ex. 1, at 3, DN 524-1). In a later parole hearing, Clark denied all involvement. (Defs.' Resp. Pl.'s Mot. Lim. Ex. 2, at 5, DN 524-2).

While out-of-court statements are generally inadmissible hearsay, statements made by an opposing party and offered against him are admissible, subject to other rules regarding admissibility. Fed. R. Evid. 801(c), (d)(2). In this instance, Clark does not contend that either his

9

or Hardin's statements to the parole board should be excluded under the rule against hearsay. (Pl.'s Mot. Lim. 3, 5, DN 511). Instead, he argues that the statements are irrelevant and prejudicial. (Pl.'s Mot. Lim. 3, 5, DN 511). This argument is in direct conflict with Clark's argument supporting the admission of evidence of his innocence. If Clark seeks admission of evidence of his innocence, then he opens the door to Defendants offering evidence of his guilt. *Cf. Ayers*, 773 F.3d at 169 (holding that evidence of innocence can be admitted to rebut evidence of guilt in a malicious prosecution claim).

Both Clark and Hardin's KPB statements are relevant to the issue of Clark's actual innocence or guilt. A person's admission of his involvement in a crime makes it more likely that he was indeed guilty of that crime. Clark argues that the statements should be excluded because of their prejudicial nature. (Pl.'s Mot. Lim. 3, 7, DN 511). While the KPB statements are prejudicial, the prejudice is not unfair. If the jury is to weigh Clark's innocence or guilt, then consideration of a confession is proper. Clark may make his arguments about the unreliable nature of confessions in the parole context at trial.

Clark is correct, however, that the KPB statements are not relevant to any of his claims beyond the damages issue. As discussed, Clark's malicious prosecution claim requires him to show that Defendants lacked probable cause *at the time of the prosecution*. *See Sykes*, 625 F.3d at 311 (citation omitted). Statements made more than a decade after the commencement of the prosecution are irrelevant to the existence of probable cause at the time of prosecution. These statements were never considered by Defendants or the jury in Clark's criminal case. Accordingly, Clark's motion is denied and the KPB statements are admissible as evidence of Clark's actual innocence or guilt, but not as evidence of probable cause.

10

### D.  **Defendants' Motion in Limine – Handy's Involvement in Separate Investigations (DN 489)**

Defendants move to preclude Clark from making any reference to Mark Handy's involvement in other police investigations and the details of his guilty plea for perjury and evidence tampering. (Defs.' Mot. Lim. 1, DN 489). Defendants argue that this evidence is inadmissible character evidence under Fed. R. Evid. 404 and inadmissible impeachment evidence under Fed. R. Evid. 608 and Fed. R. Evid. 609. (Defs.' Mem. Supp. Mot. Lim. 3-4, DN 489-1). Clark responds that Handy's plea agreement and involvement in other investigations are admissible both as evidence of Handy's credibility and as evidence of a common scheme. (Pl.'s Resp. Defs.' Mot. Lim. 5-8, DN 546).

In this instance, if Handy testifies, both Handy's involvement in past investigations and his guilty plea are admissible as evidence of his credibility. Evidence of a witness's credibility is generally relevant. *Moore v. Parker*, No. 5:13-CV-00081-TBR, 2016 WL 6871264, at *2 (W.D. Ky. Nov. 21, 2016) (citing *United States v. Vandetti*, 623 F.2d 1144, 1150 (6th Cir. 1980); Fed. R. Evid. 609(a)(1)(A)). Fed. R. Evid. 608 permits cross-examination about specific acts probative of a witness's credibility. Fed. R. Evid. 608(b). Fed. R. Evid. 609 requires the admission of evidence of a witness's criminal conviction if the crime "required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

First, Handy's criminal conviction is admissible because he was convicted of crimes involving dishonesty or false statements. Handy pleaded guilty to perjury and tampering with physical evidence. (Pl.'s Resp. Defs.' Mot. Lim. Ex. 7, at 1, DN 546-7). Perjury most certainly would be a crime involving dishonesty or false statement under Fed. R. Evid. 609. *See* Fed. R. Evid. 609 advisory committee's note to 1990 amendment. Further, tampering with physical evidence clearly involves a dishonest act as it involves fabricating evidence or destroying evidence

11

"with intent to impair its verity or availability . . . ." KRS 524.100. A court has "no discretion" to exclude evidence of a crime of dishonesty. *United States v. Parker*, 17 F. Supp. 3d 676, 678 (W.D. Ky. 2014) (citing *United States v. Rodriguez*, 409 F. App'x 866, 869 n.2 (6th Cir. 2011)). Accordingly, Clark will be permitted to introduce evidence of Handy's convictions to attack Handy's credibility.

Evidence of Handy's involvement in past investigations may also be admissible under Rule 404 as evidence of a common plan or scheme. Fed. R. Evid. 404(b) evidence is not automatically admissible; rather:

> Before [a] court may admit 404(b) evidence, it must: (1) determine whether this is sufficient evidence that the prior acts occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in the rule; and (3) apply Rule 403 balancing to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011) (citation omitted).

If Clark presents sufficient evidence that Handy's prior bad acts occurred, the evidence will likely be admissible. Bad acts evidence is admissible under Fed. R. Evid. 404 to show a common plan or scheme. *United States v. Choate*, 208 F.3d 215, 2000 WL 263358, at *5 (6th Cir. 2000). It is impossible, however, to perform a Rule 403 balancing test without first seeing how this evidence may be used at trial, though Handy's purported common scheme could be relevant to multiple issues, including the lack of probable cause and the existence of a conspiracy to deprive Clark of his constitutional rights. Accordingly, Defendants' motion is denied.

### E.       Defendants' Motion in Limine – Statements of Justis to Palefsky (DN 491)

Defendants move to preclude any testimony about a statement made by Kevin Justis ("Justis") to Colorado attorney Harvey Palefsky ("Palefsky") in 1993. (Defs.' Mot. Lim. 1, DN 491). The statement involves Justis's provision of incriminating testimony against a criminal

12

defendant in Colorado. (Defs.' Mem. Supp. Mot. Lim. 1-2, DN 491-1). At some point, the recording of the conversation was transcribed, but the source of the transcription is unclear. (Defs.' Mem. Supp. Mot. Lim. 2, DN 491-1). Defendants argue that the statement is inadmissible under Fed. R. Evid. 901 because it cannot be properly authenticated. (Defs.' Mem. Supp. Mot. Lim. 2, DN 491-1).

Under Fed. R. Evid. 901, the proponent of an item of evidence must provide evidence to support a finding that the item "is what the proponent claims it is." Fed. R. Evid. 901(a). The rule provides several examples of methods of authentication but acknowledges that it is not a complete list of permissible authentication methods. Fed. R. Evid. 901(b). In his deposition, Palefsky stated he was uncertain whether the transcription is "a hundred percent accurate." (Palefsky Dep. 88:18-89:5, June 24, 2018, DN 491-2). Clark has indicated, however, that he plans to use Palefsky to lay the foundation for the transcript's authenticity at trial. (Pl.'s Resp. Defs.' Mot. Lim. 2, DN 548). Accordingly, the Court reserves ruling on Defendant's motion until trial, when it can be determined if Clark has successfully authenticated the transcript.

### F. Defendants' Motion in Limine – Remsburg Abuse Allegations (DN 494)

Defendants move to exclude any reference to the criminal history and child abuse allegations of Amy Remsburg ("Remsburg"). (Defs.' Mot. Lim. 1, DN 494). Clark accused Remsburg, his ex-girlfriend, of sexually abusing her son in 1991. (Clark Dep. 51:3-52:4, Mar. 26, 2019, DN 317-43). In 1998, Remsburg pled guilty to abusing her son seven times between 1996 and 1997, after Clark's conviction. (Defs.' Mot. Lim. Ex. A, at 5-6, DN 494-2). Defendants argue that Remsburg's criminal history and abuse allegations are irrelevant and that Remsburg's conviction is now stale under Fed. R. Evid. 609's ten-year provision. (Defs.' Mem. Supp. Mot. Lim. 1-3, DN 494-1). Clark responds that the abuse allegations are relevant to prove Remsburg's

motive in providing statements about Clark implicating him in Warford's murder and probative of Remsburg's character for truthfulness. (Pl.'s Resp. Defs.' Mot. Lim. 1-4, DN 550).

### 1. *Abuse Allegations*

Clark points to separate routes of admissibility for his allegations of Remsburg's child abuse. First, he argues that the abuse allegations provide a motive for Remsburg's statements to Greer during the murder investigation. (Pl.'s Resp. Defs.' Mot. Lim. 1,2 DN 550). While Clark's claim against Greer for the fabrication of Remsburg's statements is no longer before the Court, Remsburg's motivations for making her statements are still relevant to Clark's other claims. Clark testified that he reported Remsburg's abuse to both "the Sheriff's Department" and a social worker in 1991. (Clark Dep. 51:16-52:4). Thus, Greer, as Sheriff, potentially had reason to know that Remsburg may have held animosity toward Clark when she gave her statement in the murder investigation. While a person's statement to law enforcement is generally sufficient to establish probable cause, a statement might "fall short" if the officer had reason to believe the person was lying. *Lester v. Roberts*, 986 F.3d 599, 609-10 (6th Cir. 2021) (citing *United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006); *Peet v. City of Detroit*, 502 F.3d 557, 564 (6th Cir. 2007)). Clark's 1991 report of abuse may be relevant to the issue of probable cause in his malicious prosecution claim.

Clark also argues that his report of Remsburg's 1991 abuse may be admissible as evidence of Remsburg's potential bias. (Pl.'s Resp. Defs.' Mot. Lim. 3-4, DN 550). Bias is "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). A witness's bias is "always relevant as discrediting the witness and affecting the weight of his testimony." *In re Davol,*

*Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 510 F. Supp. 3d 538, 556 (S.D. Ohio 2020) (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)). "Though the Federal Rules of Evidence do not specifically so state, prior misconduct of a witness which is probative of the bias of that witness may be proved by extrinsic evidence." *United States v. Phillips*, 888 F.2d 38, 41 (6th Cir. 1989) (citations omitted). Any report of Remsburg's child abuse by Clark prior to his 1995 conviction could be relevant as evidence of her potential bias. Remsburg could have slanted her testimony against Clark because he made the reports, and Clark should therefore be permitted to inquire into her knowledge of and reaction to the reports. Evidence of these reports will necessarily require mention of the 1991 allegations of abuse. Accordingly, Defendants' motion is denied as to Clark's 1991 report of Remsburg's child abuse.

### 2. *Criminal Conviction*

Fed. R. Evid. 609 generally mandates the admission of evidence of a criminal conviction to attack a witness's character for truthfulness. Fed. R. Evid. 609(a). This mandate is limited, however, when more than ten years have elapsed since the witness's conviction or release from confinement. Fed. R. Evid. 609(b). If ten years have elapsed, then evidence of the conviction is only admissible if its probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 609(b)(1). "Rule 609(b) creates, in effect, a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded." *United States v. Peatross*, 377 F. App'x 477, 489 (6th Cir. 2010) (quoting *United States v. Sims*, 588 F.2d 1145, 1150 (6th Cir. 1978)). "[E]vidence of convictions more than ten years old should be admitted 'very rarely and only in exceptional circumstances.'" *Id.* (quoting *United States v. Sloman*, 909 F.2d 176, 181 (6th Cir. 1990)).

In this instance, Remsburg's conviction is inadmissible. First, the impeachment value is slight. While Clark's report of Remsburg's child abuse in 1991 could have motivated her statements tying him to the murder, Remsburg's 1998 conviction was for conduct occurring after Clark's conviction. Accordingly, Remsburg's conviction is not directly relevant to her truthfulness in this matter. Further, while Remsburg's crimes are loathsome, they are not crimes involving dishonesty that weigh directly on her general character for truthfulness. *See Glenn v. Sowders*, 811 F.2d 605, 1986 WL 18475, at *3 (6th Cir. 1986) ("The crime of rape does not involve dishonesty and is not relevant to the issue of credibility." (citation omitted)). Second, the evidence is extremely prejudicial because of the serious nature of Remsburg's offenses against a child. The limited probative value of the conviction is substantially outweighed by its prejudicial nature. There are no exceptional circumstances warranting the admission of this stale conviction. Accordingly, Defendants' motion is granted as to Remsburg's conviction.

### G.  Defendants' Motion in Limine – Exclusion of Witnesses (DN 498); Plaintiff's Motion in Limine – Exclusion of Witnesses (DN 424)

Defendants move to exclude all witnesses from the courtroom, prevent the witnesses from discussing the trial or their testimony with each other, and specifically exclude Hardin from the courtroom and prohibit Hardin's "counsel, agents, or associates" from sharing any testimony or evidence with him. (Defs.' Mem. Supp. Mot. Lim. 4, DN 498-1). Plaintiff has also moved for the exclusion of witnesses from the courtroom. (Pl.'s Mot. Lim. 3, DN 424).

Federal Rule of Evidence 615(a) requires a court to exclude witnesses from the courtroom if a party requests exclusion. Fed. R. Evid. 615(a). A court can also order that trial testimony not be disclosed to excluded witnesses and that excluded witnesses not access trial testimony. Fed. R. Evid. 615(b). Accordingly, the parties' motions to exclude witnesses are granted. All witnesses

will be excluded from the courtroom, and trial testimony shall not be disclosed to excluded witnesses, nor shall excluded witnesses access trial testimony.

### H.     Defendants' Motion in Limine – Juror Questionnaire (DN 500)

Defendants ask the Court to use a jury questionnaire during voir dire.  (Defs.' Mot. Lim. 1, DN 500).  Clark supports the use of a juror questionnaire but disagrees with the contents of Defendants' proposed questionnaire.  (Pl.'s Resp. Defs.' Mot. Lim. 1, DN 555).  The parties have each submitted a proposed questionnaire.  (Defs.' Mot. Lim. Ex. 1, DN 500-2; Pl.'s Resp. Defs.' Mot. Lim. Ex., DN 555-1).  It this Court's practice to consider the proposed questionnaires submitted by the parties and generate its own questionnaire.  Accordingly, Defendants' motion for the use of a juror questionnaire is granted and the Court's questionnaire will be distributed to the parties before trial.

### I.     Defendants' Motion in Limine – Asking a Question as "Possible" (DN 503)

Defendants move to preclude Clark from asking any witness if something is "possible." (Defs.' Mot. Lim. 1, DN 503).  Defendants argue that asking a witness if something is "possible" invites improper speculation.  (Defs.' Mem. Supp. Mot. Lim. 1-2, DN 503-1).  While Defendants may raise objections to certain lines of questioning at trial, the Court will not foreclose hypothetical questions altogether.  Defendants' motion is denied.

### III.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion in Limine (DN 424) is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendants' Motions in Limine (DN 486, 487, 489, 495, 503) are **DENIED**.

3. The Court **RESERVES RULING** on Defendants' Motion in Limine (DN 491).

      4.    Defendants' Motion in Limine (DN 494) is **GRANTED IN PART** and **DENIED IN PART**.

      5.    Defendants' Motions in Limine (DN 498, 500) are **GRANTED**.

      6.    Plaintiff's Motion in Limine (DN 511) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
December 16, 2025

cc:    counsel of record