UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00419-GNS-CHL

JEFFREY DEWAYNE CLARK; and
GARR KEITH HARDIN                                                                                           PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, KENTUCKY et al.                                                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions in Limine (DN 490, 493). The motions are ripe for adjudication.

### I.  STANDARD OF REVIEW

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). "It is often difficult to resolve evidentiary objections outside the context of trial, and Courts will exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible." *Lotz v. Steak N Shake, Inc.*, No. 5:19-277-DCR, 2021 WL 2270353, at *1 (E.D. Ky. June 3, 2021) (citations omitted). "Unless the evidence meets this high standard, 'rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio

1

2004)). Rulings on motions in limine are preliminary and based on the discretion of the district court, which can later change its rulings. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## II.   DISCUSSION

Many of the motions in limine invoke Fed. R. Evid. 401, 402, and 403. For context, a general discussion of those rules follows.

To be admissible, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant when it "has any tendency to make a fact of consequence in determining the action more or less probable," with the phrase "any tendency" indicating an "extremely liberal" standard. *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 598-99 (6th Cir. 2019); Fed. R. Evid. 401; *see Cambio Health Sols., LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007) ("The Federal Rules of Evidence set a low bar for relevance." (citation omitted)). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009).

Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Showing that evidence is unfairly prejudicial is difficult—the evidence "must be more than damaging or simply adverse" to the party seeking its exclusion. *Humana, Inc. v. Shook*, 798 F.2d 469, 1986 WL 17218, at *2 (6th Cir. 1986) (citing *Kolada v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983)). The Sixth Circuit has clarified that "'[u]nfair prejudice' means the *undue* tendency to suggest a decision based on improper considerations; it 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.'" *Doe v.

*Claibourne Cnty. By & Through Claibourne Cnty. Bd. of Educ.*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). A court enjoys broad discretion when it decides questions of relevance and possible prejudice. *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

    A.    **<u>Defendants' Motion in Limine – Jack Ryan (DN 490)</u>**

Defendants move to preclude any testimony about the Department of Justice's ("DOJ") investigation into the Providence Police Department ("PPD") and the City of Providence when John "Jack" Ryan ("Ryan") was employed by the PPD. (Defs.' Mot. Lim. 1, DN 490). Ryan is Defendants' police practices expert who was a captain in the PPD before his retirement in 2002. (Defs.' Mem. Supp. Mot. Lim. 1-2, DN 490-1; Pl.'s Resp. Defs.' Mot. Lim. Ex. 1, at 1, 8-9, DN 547-1). In the early 2000s, the DOJ investigated the PPD and the City of Providence, focusing on hiring and promotion practices. (Pl.'s Resp. Defs.' Mot. Lim. Ex. 1, at 1, DN 547-1). While the parties dispute the extent to which Ryan was a "target" of the investigation, he was questioned by the Federal Bureau of Investigation ("FBI"), called to testify in front of a grand jury, and offered immunity in exchange for providing information to the DOJ. (Pl.'s Resp. Defs.' Mot. Lim. Ex. 3, at 1, 16, DN 547-3; Pl.'s Resp. Defs.' Mot. Lim. Ex. 5, at 1, DN 547-5; Pl.'s Resp. Defs.' Mot. Lim. Ex. 4, at 1-2, DN 547-4).

Defendants argue that this investigation is not relevant to any of Clark's claims and that evidence of the investigation should not be admitted under Fed. R. Evid. 608 because its limited probative value of Ryan's character for truthfulness is outweighed by the risk of unfair prejudice. (Defs.' Mem. Supp. Mot. Lim. 2-4, DN 490-1). Clark responds that the investigation is relevant to Ryan's qualifications and bias and therefore he should have an opportunity to question Ryan about it on cross-examination. (Pl.'s Resp. Defs.' Mot. Lim. 4-8, DN 547).

3

Fed. R. Evid. 608(b)(1) allows a witness's credibility to be attacked on cross-examination with specific instances of misconduct relevant to credibility. *Steeg v. Vilsack*, No. 5:13-CV-00086-TBR, 2016 WL 6471098, at *3 (W.D. Ky. Oct. 28, 2016) (citing *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009)). "Specifically, Rule 608(b) allows [] the use of specific instances on cross-examination 'if they are probative of the character for truthfulness or untruthfulness of . . . the witness . . . .'" *Id.* (quoting Fed. R. Evid. 608(b)(1)) (first alteration added). The admission of Fed. R. Evid. 608(b) evidence is governed by Fed. R. Evid. 403's balancing test. Fed. R. Evid. 608 advisory committee's note to 1972 amendment.

In this instance, the prejudicial nature of the DOJ investigation likely outweighs its probative value. The FBI report alleges that Ryan participated in wrongdoing including providing favored subordinates with the source material for PPD promotion exams, accepting the answers to the PPD captain's exam, and receiving gifts, free repairs, and a discounted vehicle from a Providence garage owner in exchange for a person's place in the PPD academy. (Pl.'s Resp. Defs.' Mot. Lim. Ex. 1, at 1, 9-11, 15-16, DN 547-1; Pl.'s Resp. Defs.' Mot. Lim. Ex. 2, at 3-4, DN 547-2, Pl.'s Resp. Defs.' Mot. Lim. Ex. 3, at 10-12, 17-18, DN 547-3). Clark contends this information, if true, speaks to Ryan's character for truthfulness because he allegedly cheated, helped others to cheat, and accepted bribes. Ryan, however, was never charged or convicted in connection with the DOJ investigation or the allegations in the FBI report. The lack of a formal finding of wrongdoing lessens the probative value of the allegations. *See United States v. Ayoub*, 701 F. App'x 427, 434 (6th Cir. 2017) (finding that district court did not err in excluding allegations of domestic violence contained in a police report in part because the report "contain[ed] mere allegations and provide[d] no conclusive proof that [the witness] actually broke the law").

4

In *Ayoub*, the Sixth Circuit explained the danger of allowing questioning on uncorroborated allegations of wrongdoing, finding that if a district court had allowed questioning about uncorroborated accusations, jurors may have placed undue weight on the charges, risking damage to the witness's entire testimony. *Ayoub*, 701 F. App'x at 434. Because the district court would have had to conduct a "mini-trial" to establish the truth of the accusations, it was within the court's discretion to prevent that line of questioning. *Id.* (citing *United States v. Richardson*, 793 F.3d 612, 629 (6th Cir. 2015)).

Further, testimony about the investigation into the PPD has the potential to unfairly prejudice Defendants. Ryan is offered as a witness because of his expertise on police practices. Testimony about his own alleged misconduct may cause the jury to discredit Ryan not because they believe he is untruthful, but because they believe he was a corrupt police officer. Additionally, Ryan's alleged wrongdoing occurred more than twenty years ago and there is no indication that he has committed any recent acts undermining his character for truthfulness. The remoteness in time of these allegations further lessens their probative effect. *United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997) (citing *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985)).

Ryan is a sought-after police practices expert and courts have dealt with the question of whether to allow cross-examination about the PPD investigation before. While Ryan testified in his 2022 deposition that a court has never allowed testimony about the PPD investigation, that is no longer true. (Ryan Dep. 268:15-20, Aug. 23, 2022, DN 490-2). *Contra Scott v. City of Tulsa*, 797 F. Supp. 3d 1243, 1258-59 (N.D. Okla. 2025) (allowing testimony about PPD investigation under Fed. R. Evid. 608(b)). Most courts, however, have not allowed testimony about the PPD investigation. *E.g., Johnson v. City of Phila.*, No. 16-716, 2018 WL 11053491, at *3 (E.D. Pa.

July 20, 2018) (excluding evidence related to PPD investigation); *M.H. v. Cnty. of Alameda*, No. 11-CV-02868-JST, 2015 WL 894758, at *4 (N.D. Cal. Jan. 2, 2015) (same). While the allegations against Ryan are serious, they are also unsubstantiated and remote in time. Allowing Clark to cross-examine Ryan about the investigation would likely confuse the jury, waste time, and lead to undue prejudice. Accordingly, Defendants' motion is granted.

### B. Defendants' Omnibus Motion in Limine (DN 493)

#### 1. *Threats During Interrogation*

Defendants move to prevent Clark from offering any evidence that Greer threatened either him or Hardin by placing a gun on the table during their interviews. (Defs.' Mem. Supp. Mot. Lim. 1, DN 493-1). Defendants argue that, because Clark failed to address the issue of illegal interrogation tactics in his briefing, he has abandoned his claim. (Defs.' Mem. Supp. Mot. Lim. 1, DN 493-1). It is true that Clark does not have a stand-alone claim for illegal interrogation tactics. The alleged illegal tactics, however, are relevant to many of Clark's claims. For example, improper interrogation conduct could be evidence of a lack of probable cause under Clark's malicious prosecution claim. *See, e.g.*, *Smith v. Burge*, 222 F. Supp. 3d 669, 677, 690-91 (N.D. Ill. 2016) (finding that misconduct in interrogation, including threats to kill the suspect, supported the lack of probable cause element of a plaintiff's common law malicious prosecution claim brought under Illinois law). It could also, as Clark argues, be evidence of a failure to train or supervise under his *Monell* claim. (Pl.'s Resp. Defs.' Mot. Lim. 2, DN 557). Accordingly, Defendants' motion is denied.

#### 2. *Exoneration*

Defendants move to preclude Clark from claiming he has been exonerated, claiming he was wrongfully convicted, and mentioning the Innocence Project. (Defs.' Mem. Supp. Mot. Lim.

2, DN 493-1). Defendants argue that, because the special prosecutor who ultimately dismissed Clark's indictment never indicated that he believed Clark was innocent and therefore dismissed the indictment without prejudice, Clark was not exonerated or wrongfully convicted. (Defs.' Mem. Supp. Mot. Lim. 2-3, DN 493-1). Clark argues that evidence of his innocence is admissible under Sixth Circuit precedent. (Pl.'s Resp. Defs.' Mot. Lim. 3, DN 557). This argument, however, is not responsive, as Defendants seek to prevent Clark from claiming he was exonerated or wrongfully convicted, not from presenting evidence of his innocence.

A person is exonerated in the criminal context when they are "clear[ed] of all blame" or "officially declare[d] . . . to be free of guilt." *Exonerate*, *Black's Law Dictionary* (12th ed. 2024). Clark clearly has not been exonerated. While all charges against Clark have been dismissed, no court has found him not guilty or otherwise cleared him of blame. (*See* Pls.' Resp. Defs.' Mot. Summ. J. 21, DN 317; Pls.' Resp. Defs.' Mot. Summ. J. Ex. 74, at 1, DN 317-74). To claim otherwise would be untrue, and Clark is precluded from claiming that he was exonerated.[1] *Cf. Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2022 WL 4922659, at *11 (S.D. Ohio Oct. 4, 2022) (citing Fed. R. Evid, 402, 403) (barring testimony that previous legal proceeding established plaintiff's innocence when it merely declared him to be wrongfully imprisoned).

Further, Clark argues that evidence of the Innocence Project's involvement is necessary to show his damages stemming from his "years[-]long attempts to retain counsel . . . ." (Pl.'s Resp. Defs.' Mot. Lim. 3 n.1, DN 557). Clark can show evidence of his lack of counsel without mentioning the Innocence Project by name. Mention of the Innocence Project's involvement would not make any fact at issue more or less likely and would unfairly prejudice Defendants due

---

[1] Clark, however, is not barred from introducing evidence of his innocence. (*See* Mem. Op. & Order 6-9, DN 563).

to the organization's national reputation. Accordingly, Clark is precluded from mentioning the Innocence Project.

Clark, however, will not be precluded from claiming that he was wrongfully convicted, as that argument is the base of each of his claims. To prevent Clark from arguing that he was wrongfully convicted is essentially to prevent him from making any argument at all. Accordingly, Defendants' motion is granted in part and denied in part.

### 3. *Perry Ryan*

Defendants move to preclude Clark from offering any evidence regarding Perry Ryan ("Attorney Ryan"), the indictments issued in 2016 and 2017 for kidnapping and perjury, and the dismissal of those indictments. (Defs.' Mem. Supp. Mot. Lim. 3, DN 493-1). Attorney Ryan is an attorney from the Kentucky Office of the Attorney General who was involved with Clark and Hardin's posttrial litigation. (Defs.' Mem. Supp. Mot. Lim. 3, DN 493-1). Defendants argue that Attorney Ryan's involvement with the case is irrelevant because he did not participate in the investigation o Warford's murder or Clark's trial. (Defs.' Mem. Supp. Mot. Lim. 3, DN 493-1). Clark responds that Attorney Ryan's involvement is relevant to both Defendants' liability and damages. (Pl.'s Resp. Defs.' Mot. Lim. 4-5, DN 557).

Evidence of Attorney Ryan's involvement in Clark's criminal prosecution is irrelevant to Defendants' liability. Clark argues that because Attorney Ryan's misconduct led to his eventual acquittal, it is necessary to prove the favorable resolution element of his malicious prosecution claim. (Pl.'s Resp. Defs.' Mot. Lim. 4, DN 557); *see also Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)) (holding that to succeed on a malicious prosecution claim, a plaintiff must prove that the criminal proceedings were resolved in his favor). While Clark must show that the criminal prosecution was resolved in his favor, there

8

is no requirement that he show the process leading to the favorable outcome. Clark can prove this element without introducing evidence relating to misconduct by Attorney Ryan.

Evidence of Attorney Ryan's involvement is also irrelevant to the issue of damages. Clark argues that Attorney Ryan's handling of his post-conviction proceedings "caused [him] serious injuries and trauma." (Pl.'s Resp. Defs.' Mot. Lim. 4, DN 557). Clark does not explain, however, Defendants' role in these alleged damages. (Pl.'s Resp. Defs.' Mot. Lim. 4-5, DN 557). It is difficult to see how Defendants bear responsibility for Attorney Ryan's misconduct which occurred long after Clark's criminal trial was concluded and Defendants' involvement presumably ended. Attorney Ryan is not a party to this case, so the damages he allegedly caused are irrelevant to Clark's claims against Defendants. Accordingly, Defendants' motion is granted.

### 4. *Thurman Conversation Notes*

Defendants move to preclude Clark from introducing Thurman's notes documenting a phone conversation with Greer. (Defs.' Mem Supp. Mot. Lim. 4, DN 493-1). In these notes, Thurman states that Greer told him that Clark and Hardin were "avid devil worshippers," that they "planned Warford's murder," that they "failed" their polygraphs, and that Hardin was "weird" and "appear[ed] to look right through you . . . ." (Pls.' Resp. Def.'s Mot. Summ. J. Ex. 79, at 49, DN 316-77). Defendants argue that because Clark has no active claims against Thurman, the notes are irrelevant. (Defs.' Mem. Supp. Mot. Lim. 4, DN 493-1). Clark responds that the notes are relevant as evidence supporting his fabrication claim. (Pl.'s Resp. Defs.' Mot. Lim. 6, DN 557). Clark further argues that it is relevant to his other claims, including malicious prosecution. (Pl.'s Resp. Defs.' Mot. Lim. 6, DN 557).

In this instance, the notes are not relevant to any of Clark's remaining fabrication claims. As this Court has recognized, Clark did not address Defendants' motion for summary judgment

9

on Clark's fabrication claim related to Greer's testimony that the hair on Warford's sweatpants "matched" Hardin's hair and Clark therefore abandoned that claim. (Mem. Op. & Order 20 n.9, DN 388). Without an outstanding claim about the fabrication of the hair test results against Thurman or Defendants, Greer's conversation with Thurman has no relevance.

The conversation notes, however, may be relevant to Clark's malicious prosecution claim. These notes arguably reflect that Greer rushed to conclusions in formulating his theory of Warford's murder. Evidence that Greer made unsupported conclusions about the key facts of the criminal investigation, Clark and Hardin's involvement with Satanism, and Hardin's character could show that Greer lacked probable cause and intended to prosecute Clark regardless of what Thurman's testing and Greer's investigation uncovered. Accordingly, Defendants' motion is denied.

### 5. *Golden Rule Arguments*

Defendants move to bar Clark from making any type of "golden rule" argument at trial. (Defs.' Mem. Supp. Mot. Lim. 5, DN 493-1). According to Defendants, a golden rule argument "urges the jurors collectively or singularly to place themselves or members of their families or friends in the place of the person who has been offended and to render a verdict as if they or either of them or a member of their families or friends was similarly situated." (Defs.' Mem. Supp. Mot. Lim. 5, DN 493-1). Clark does not oppose this motion, "so long as [the] prohibition applies equally to all parties." (Pl.'s Resp. Defs.' Mot. Lim. 7, DN 557). Accordingly, Defendants' motion is granted.

### 6. *Violation of Standard Practices*

Defendants move to bar Clark from offering evidence that Meade County's actions violated standard police practices. (Defs.' Mem. Supp. Mot. Lim. 6, DN 493-1). Defendants argue that

10

any violation of standard practices is irrelevant because the failure to follow accepted police practices is not a constitutional violation. (Defs.' Mem. Supp. Mot. Lim. 6, DN 493-1 (citing *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001); *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986); *Davis v. Scherer*, 468 U.S. 183, 194 (1984))). Clark responds that Defendants' failure to follow accepted practices is relevant to his *Monell* claim. (Pl.'s Resp. Defs.' Mot. Lim. 7-8, DN 557). Departures from standard practices are relevant to *Monell* claims. *See, e.g.*, *Martin v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 WL 3648103, at *9-10 (N.D. Ohio Aug. 18, 2011), *amended*, No. 1:08 CV 2165, 2011 WL 5361062 (N.D. Ohio Oct. 31, 2011), *and aff'd*, 712 F.3d 951 (6th Cir. 2013). Accordingly, Defendants' motion is denied.

### 7.   *Bart Adams's Commentary on Capps Letter*

Defendants move to prevent Clark from offering evidence that Bart Adams ("Adams"), Clark's criminal defense attorney, believed that Capps's letter would have changed the jury's decision in Clark's criminal trial. (Defs.' Mem. Supp. Mot. Lim. 6, DN 493-1). Capps's letter was addressed to a fellow inmate and sought statements to corroborate Capps's testimony about Hardin's supposed jailhouse confession. (Mem. Op & Order 9, DN 388). Defendants' alleged withholding of this letter is the basis for one of Clark's *Brady* claims. (Mem. Op. & Order 9, DN 388; Am. Compl. ¶¶ 11, 81-86, 178-183, DN 39). Defendants argue that Adams's opinion improperly embraces the legal conclusion that the letter would have changed the verdict of the jury. (Defs.' Mem. Supp. Mot. Lim. 7, DN 493-1). Clark responds that Adams's expert testimony would be useful to the jury in determining the materiality of the letter because of his experience as a criminal defense attorney. (Pl.'s Resp. Defs.' Mot. Lim. 9-10, DN 557).

In this instance, Adams's opinion that the Capps letter would have been material could be helpful to the jury in determining whether Clark has made out a successful *Brady* claim for the

11

withholding of Capps's letter. Fed. R. Evid. 704 does not bar expert testimony on an ultimate issue in a civil case. Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). His opinion that the letter *would have* changed the verdict is speculative, however, and will not be allowed. While Adams is a non-retained expert, his background as a criminal defense attorney gives him knowledge above and beyond that of the average juror as to the materiality of a piece of evidence in a criminal trial. *See Kluppelberg v. Burge*, No. 13 C 3963, 2016 WL 6821138, at *3 (N.D. Ill. Sept. 16, 2016) ("While jurors may be capable of interpreting documents without the assistance of an expert, Adams's expertise as a[] [prosecutor] and defense attorney could well be useful to the jury in explaining how an attorney exercises judgment, how a prosecutor evaluates evidence, and how a defender uses exculpatory evidence at trial."). Of course, Adams may not testify that Defendants committed a *Brady* violation or speculate that the letter would have changed the jury's verdict, but he may opine as to materiality of the Capps letter. Accordingly, Defendants' motion is partially denied. Defendants will, however, be given leeway to explore Adams's potential bias and motivation for offering his testimony.

### 8. *Argall and Frei Affidavits*

Defendants seek to bar Clark from introducing the affidavits of Michael Argall and Natalie Frei. (Defs.' Mem. Supp. Mot. Lim. 8, DN 493-1). Clark does not oppose this motion, so it is granted on that basis. (Pl.'s Resp. Defs.' Mot. Lim. 10, DN 557).

### 9. *Arguments about Greer's Misreporting or Fabricating Evidence*

Defendants seek to prevent Clark from making "[a]ny [a]rguments" that Greer misreported or fabricated any evidence regarding the blood on Hardin's handkerchief, the hair on Warford's sweatpants, and the fingerprint on Clark's car. (Defs.' Mem. Supp. Mot. Lim. 9, DN 493-1).

12

Defendants' only argument supporting their motion is that Clark does not have a fabrication of evidence claim before the court and it would therefore be "improper" for Clark to offer "any evidence alleging the fabrication of those pieces of evidence." (Defs.' Mem. Supp. Mot. Lim. 9, DN 493-1). While Clark does not have a stand-alone fabrication claim based on these pieces of evidence, Greer's alleged fabrication of evidence is relevant to many of his other claims, including the probable cause element of his malicious prosecution claim. The alleged misrepresentations and fabrications could show that Defendants lacked probable cause to prosecute Clark. Accordingly, Defendants' motion is denied.

### 10.     *Defendants' Fabrication of Evidence*

Defendants seek to preclude Clark from introducing any evidence that Defendants fabricated evidence "in violation of the Fourth Amendment." (Defs.' Mem. Supp. Mot. Lim. 9, DN 493-1). Defendants argue that Clark abandoned his Fourth Amendment fabrication claim and Defendants were accordingly awarded summary judgment on that claim. (Defs.' Mem. Supp. Mot. Lim. 9, DN 493-1). Defendants are correct that Clark has no outstanding Fourth Amendment fabrication claim. (Mem. Op. & Order 20 n.9, DN 388). Clark, however, does have outstanding fabrication claims under the Fourteenth Amendment. (Mem. Op. & Order 40 n.19, DN 388). Accordingly, Defendants' motion is granted in that Clark may not offer evidence of fabrication "in violation of the Fourth Amendment[,]" but he may offer evidence of fabrication to support his other claims. (Defs.' Mem. Supp. Mot. Lim. 9, DN 493-1).

### 11.     *Greer's Grand Jury Testimony*

Defendants seek to preclude Clark from introducing Greer's grand jury testimony. (Defs.' Mem. Supp. Mot. Lim. 10, DN 493-1). Defendants argue that because Greer is entitled to absolute immunity, Clark may not use the testimony to "establish liability on the part of Sheriff Greer or

13

any other Meade County Defendant." (Defs.' Mem. Supp. Mot. Lim. 10, DN 493-1). Clark responds that while Greer cannot be held directly liable for his grand jury testimony, his "binge of lies" corroborates "his bad faith, improper intent, lack of credibility, and knowledge that his supposed[] evidence was deficient." (Pl.'s Resp. Defs.' Mot. Lim. 12-13, DN 557).

As this Court has stated, Clark may not use Greer's grand jury testimony to prove elements of his claims. (Mem. Op. & Order 33 n.15, DN 388). The Supreme Court has held that "a grand jury witness has absolute immunity from any [Section] 1983 claim based on the witness' testimony." *Rehburg v. Paulk*, 566 U.S. 356, 369 (2012). Following *Rehburg*, The Sixth Circuit held that a plaintiff's Section 1983 action may not be "based on" a defendant's grand jury testimony or his preparation for that testimony. *King v. Harwood*, 852 F.3d 568, 586, 591 (6th Cir. 2017). Accordingly, Greer's grand jury testimony will not be admitted to support any element of Clark's claims.

If Greer's grand jury testimony cannot be admitted as substantive evidence, Clark requests that it be admitted as impeachment evidence, stripped of its grand jury context, with a limiting instruction. (Pl.'s Resp. Defs.' Mot. Lim. 13, DN 557). Items that are inadmissible as substantive evidence can be admissible for impeachment purposes. *See Shadd v. White*, No. 1:06-CV-2478, 2007 WL 9771098, at *1 (N.D. Ohio Nov. 30, 2007) (holding that evidence inadmissible to establish a constitutional violation is admissible for impeachment purposes). The Second Circuit has held that the admission of grand jury testimony with an instruction that it is to be considered only for impeachment purposes does not violate *Rehburg*. *Marshall v. Randall*, 719 F.3d 113, 116 (2d Cir. 2013) (citing *United States v. Griffith*, 385 F.3d 124, 126-27 (2d Cir. 2004)). Greer is deceased, and his testimony will be offered via deposition. Therefore, to the extent Clark was able to challenge Greer with his grand jury testimony and gave him an opportunity to respond to his

statements to the grand jury, the testimony will be allowed. Accordingly, Clark's motion is granted in part and denied in part. Clark may only offer Greer's grand jury testimony, stripped of its context, to the extent that he challenged Greer with it in his depositions.

### 12. *Conspiracy with Mark Handy and Louisville Police Officers*

Defendants seek to preclude Clark from offering any evidence that Defendants conspired with Mark Handy or any other Louisville police officer while investigating Warford's murder. (Defs.' Mem. Supp. Mot. Lim. 11, DN 493-1). While Defendants cite no Fed. R. Evid. to support their argument, they appear to assert that evidence of a conspiracy between Defendants and any Louisville police officers is irrelevant because Clark has no pending claims against Handy or any Louisville police officer. (Defs.' Mem. Supp. Mot. Lim. 12, DN 493-1). Clark responds that evidence of a conspiracy is relevant to his existing conspiracy claim. (Pl.'s Resp. Defs.' Mot. Lim. 13-14, DN 557).

Defendants argue that Handy or any other Louisville police officer's conduct cannot form the basis of Clark's conspiracy claim. (Defs.' Mem. Supp. Mot. Lim. 12, DN 493-1). This is not so. Defendants recognize that a conspiracy claim under Section 1983 requires an agreement between two or more people to injure another and that a Section 1983 conspiracy claim cannot survive where there is no underlying constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)); *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 496 (6th Cir. 2007) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985); *Pillette v. Detroit Police Dep't*, 661 F. Supp. 1145, 1148 (E.D. Mich. 1987)). There is no requirement, however, that all coconspirators in a civil conspiracy be party to the action. *Atlas Indus. Contractors, LLC v. In2gro Techs., LLC*, No. 2:19-CV-2705, 2020 WL 8675815, at *1 (S.D. Ohio Mar. 10, 2020) (citing *Stillwagon v. Innsbrook Golf & Marina, LLC*,

15

No. 2:11-cv-1338, 2013 WL 1180312, at *13 (W.D. Pa. Mar. 20, 2013)). Defendants can still be held liable if they conspired with Handy or other Louisville police officers, and "a settlement with a named co-conspirator is not a bar to introducing evidence of the settling defendant's conspiratorial acts." *Hamilton v. City of Romulus*, 409 F. App'x 826, 836 (6th Cir. 2010) (citing *Canter v. Hardy*, 188 F. Supp. 2d 773, 792 (E.D. Mich. 2002)). Accordingly, Defendants' motion is denied.

### 13.    *Greer's Failure to Train/Supervise Embry*

Defendants seek to preclude Clark from offering evidence that Greer failed to train or supervise Ernie Embry ("Embry"). (Defs.' Mem. Supp. Mot. Lim. 13, DN 493-1). Defendants argue that this evidence is irrelevant to Clark's *Monell* claim because Embry was not actively working as a sheriff's deputy during the investigation and prosecution of Warford's murder. (Defs.' Mem. Supp. Mot. Lim. 13, DN 493-1). Indeed, Embry testified in his deposition that he was not actively working as a deputy from 1989 to 1994. (Embry Dep. 22:3-14, Feb. 19, 2020, DN 493-5). Later in his deposition, however, Embry stated that he was at the scene of Warford's murder. (Embry Dep. 29:20-30:19, 49:16-50:7, 50:20-51:20, 52:2-14, Feb. 19, 2020, DN 477-9). Therefore, Greer's training and supervision of Embry could be relevant to Clark's *Monell* claim if Clark can establish that Embry was working as a sheriff's deputy during the investigation. Accordingly, evidence of Greer's training and supervision of Embry could be relevant if Clark lays a proper foundation, and Defendants' motion is denied.

### III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendants' Motion in Limine (DN 490) is **GRANTED**.

16

      2.     Defendants' Motion in Limine (DN 493) is **GRANTED IN PART** and **DENIED IN PART**.

*signature*

**Greg N. Stivers, Judge**
**United States District Court**
January 5, 2026

cc:    counsel of record