UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00419-GNS-CHL

JEFFREY DEWAYNE CLARK; and
GARR KEITH HARDIN PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, KENTUCKY et al. DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motions in Limine (DN 488, 492, 496, 497, 499) and Plaintiff's Motions in Limine (DN 432, 436, 437, 438). The motions are ripe for adjudication.

## I. STANDARD OF REVIEW

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). "It is often difficult to resolve evidentiary objections outside the context of trial, and Courts will exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible." *Lotz v. Steak N Shake, Inc.*, No. 5:19-277-DCR, 2021 WL 2270353, at *1 (E.D. Ky. June 3, 2021) (citations omitted). "Unless the evidence meets this high standard, 'rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio

2004)). Rulings on motions in limine are preliminary and based on the discretion of the district court, which can later change its rulings. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## II. <u>DISCUSSION</u>

Many of the motions in limine invoke Fed. R. Evid. 401, 402, and 403. For context, a general discussion of those rules follows.

To be admissible, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant when it "has any tendency to make a fact of consequence in determining the action more or less probable," with the phrase "any tendency" indicating an "extremely liberal" standard. *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 598-99 (6th Cir. 2019); Fed. R. Evid. 401; *see Cambio Health Sols., LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007) ("The Federal Rules of Evidence set a low bar for relevance." (citation omitted)). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009).

Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Showing that evidence is unfairly prejudicial is difficult—the evidence "must be more than damaging or simply adverse" to the party seeking its exclusion. *Humana, Inc. v. Shook*, 798 F.2d 469, 1986 WL 17218, at *2 (6th Cir. 1986) (citing *Kolada v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983)). The Sixth Circuit has clarified that "'[u]nfair prejudice' means the *undue* tendency to suggest a decision based on improper considerations; it 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.'" *Doe v.*

*Claibourne Cnty. By & Through Claibourne Cnty. Bd. of Educ.*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). A court enjoys broad discretion when it decides questions of relevance and possible prejudice. *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

**A. Defendants' Motion in Limine – Russell Fischer (DN 488)**

Defendants move to prevent Clark's police practices expert, Rusell Fischer ("Fischer"), from offering certain testimony. (Defs.' Mot. Lim. 1, DN 488; Defs.' Mem. Supp. Mot. Lim. 3-7, DN 488-1). Defendants seek to preclude Fischer's testimony regarding: (1) fabrication of Hardin's statement of his desire to perform human sacrifices; (2) "any police officer's failure to obtain a recorded or written statement" from anyone interviewed during the murder investigation; (3) any Defendant's failure to ask any follow-up question during any interview; (4) the fabrication of the witness statements of Mary Warford, Michelle Rogers, Crystal Barnes, or Amy Remsburg; and (5) "[o]ther [r]ed [f]lags of [i]nvestigative [m]isconduct[,]" including the failure to record or memorialize any interview done during the murder investigation, the use of coercive interrogation practices, the failure to investigate other potential suspects, and the mischaracterization of physical evidence. (Defs.' Mem. Supp. Mot. Lim. 3-7, DN 488-1). Defendants argue that this evidence is either irrelevant or its probative value is substantially outweighed by the danger of unfair prejudice. (Defs.' Mem. Supp. Mot. Lim. 3-7, DN 488-1). Clark responds that Defendants' motion is an untimely *Daubert* motion disguised as a motion in limine, and Fischer's proposed testimony is relevant to Clark's claims. (Pl.'s Resp. Defs.' Mot. Lim. 1-3, DN 545).

Generally, parties may seek to exclude expert testimony using *Daubert* motions. The primary inquiries at the *Daubert* stage are the qualifications of the expert, the soundness of the expert's opinions, and the helpfulness of the testimony to the jury. Fed. R. Evid. 702; *Daubert v.*

*Merrell Dow Pharms.*, 509 U.S. 579, 589-91 (1993). While the relevance of the expert's testimony is examined under the helpfulness inquiry, this is a general examination that asks whether the expert's methodology has a "valid scientific connection to the pertinent inquiry . . . ." *Daubert*, 509 U.S. at 591-92.

In this instance, *Daubert* motions were due before the Court granted Defendants partial summary judgment. (Order 2-3, DN 267; Mem. Op. & Order 51, DN 388). Defendants' motion in limine does not appear to be aimed at disqualifying Fischer entirely, but instead at excluding discrete opinions Defendants believe are now irrelevant following the termination of many of Clark's claims at the summary judgment stage. Thus, the Court will consider the merits of Defendants' motion.

**1. *Hardin's Human Sacrifices Statement***

Defendants seek to preclude Fischer's testimony about "the statement attributed to Keith Hardin regarding his 'want to do human sacrifices[]'. . . ." (Defs.' Mem. Supp. Mot. Lim. 3, DN 488-1). Defendants argue that Fischer should not testify as to whether Hardin made the statement as that is a question of Hardin's credibility and should be left to the jury. (Defs.' Mem. Supp. Mot. Lim. 3, DN 488-1). Clark responds that Fischer's proposed testimony is admissible because Fischer does not conclude, but assumes, that Hardin made the statement and details Defendants' failures in documenting the statement. (Pl.'s Resp. Defs.' Mot. Lim. 4-5, DN 545). In this instance Fischer's report specifically states that he is not making a credibility determination. (Fischer Report 7, DN 509-10). Instead, Fischer opines that Defendants departed from accepted police practices in failing to obtain a recorded or written statement or ask follow-up questions. (Fischer Report 6-7). Expert testimony about a defendant's failure to follow accepted police practices is relevant to a plaintiff's *Monell* claims stemming from investigatory misconduct. *See, e.g.*, *Martin*

*v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 WL 3648103, at *9-10 (N.D. Ohio Aug. 18, 2011), *amended*, No. 1:08 CV 2165, 2011 WL 5361062 (N.D. Ohio Oct. 31, 2011), *and aff'd*, 712 F.3d 951 (6th Cir. 2013). Testimony about a defendant's departure from accepted practices is also generally relevant to a plaintiff's constitutional claims because it "can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Restivo v. Hesseman*, 846 F.3d 547, 579-80 (2d Cir. 2017) (quoting *Jiminez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2017)). Further, Fischer's testimony is not unduly prejudicial to Defendants; it is proper for the jury to consider these departures from standard practices in evaluating Clark's claims. *Id.* Accordingly, Defendants' motion is denied.

**2. *Fabrication of Warford, Rogers, and Barnes's Witness Statements***

Defendants' argument for the exclusion of Fischer's testimony is based on Defendants' assertion that they were granted summary judgment on Clark's Fourth Amendment fabrication claims. (Defs.' Mem. Supp. Mot. Lim. 4, DN 488-1). Clark, however, has remaining Fourteenth Amendment claims for the fabrication of the Mary Warford, Michelle Rogers, and Crystal Barnes witness statements. (Mem. Op. & Order 40 n.19, DN 388). Fischer's testimony that the potential fabrication of these statements was against police practices is relevant to these fabrication claims and Clark's malicious prosecution, conspiracy, and *Monell* claims. Accordingly, Defendants' motion is denied.

**3. *Fabrication of Remsburg's Witness Statement***

Defendants also argue that Fischer's testimony about the fabrication of Remsburg's statement is irrelevant because they have been granted summary judgment on Clark's claim for

the supposed fabrication of Remsburg's statement. (Defs.' Mem. Supp. Mot. Lim. 5). While Clark has no outstanding fabrication claim based on Remsburg's statement, Fischer's opinions about Defendants' failures to question the reliability of Remsburg's statement and verify her assertions through independent means could be relevant to Clark's other claims. (Mem. Op. & Order 29, DN 388). According to his report, Fischer plans to testify that "[a] reasonable, minimally trained investigator would also question the reliability of information coming a witness such as Remsburg, unless verified through independent means." (Fischer Report 9-10). This testimony is relevant to the probable cause element of Clark's malicious prosecution claim because it suggests that Defendants had reason to know Remsburg may have been lying, even if they did not fabricate her statement. *See Lester v. Roberts*, 986 F.3d 599, 609-10 (6th Cir. 2021). Fischer, however, may not offer testimony regarding the potential fabrication of Remsburg's statement by Defendants because Clark has no outstanding fabrication claim based on Remsburg's statement and that testimony is not relevant to any of Clark's remaining claims. Accordingly, Defendants' motion is granted in part and denied in part.

#### 4. *Other Red Flags of Investigative Misconduct*

##### a. Failure to Record/Memorialize

Defendants argue that Fischer should be precluded from offering testimony regarding Defendants' failure to "record and/or memorialize any interview of anyone during the investigation of the death of Rhonda Sue Warford unless it would equate to a *Brady* violation." (Defs.' Mem. Supp. Mot. Lim. 5, DN 488-1). Evidence of Defendants' general failures to record or memorialize statements is relevant for the same reason that Defendants' failure to memorialize Hardin's supposed human sacrifice statement is relevant: expert testimony about a defendant's failure to follow accepted police practices is generally relevant to Section 1983 malicious

prosecution claims. *Restivo*, 846 F.3d at 579-80 (quoting *Jiminez*, 732 F.3d at 721-22). Accordingly, Defendants' motion is denied, but they may object to specific items of evidence at trial.

**b. Use of Coercive Interrogation Practices**

Defendants argue that Fischer's testimony regarding Defendants' use of coercive interrogation practices is irrelevant. (Defs.' Mem. Supp. Mot. Lim. 6, DN 488-1). According to his report, Fischer plans to testify that Greer and another Meade County employee's alleged use of a gun to threaten Clark, Hardin, and William Mahan was "wholly inconsistent with the acceptable police practices in place at the time and serious misconduct." (Fischer Report 13). This testimony is relevant to Clark's claims because coercive and substandard interrogation practices call into doubt the existence of probable cause partially based on those interrogations. Accordingly, Defendants' motion is denied.

**c. Failure to Investigate Other Potential Suspects**

Defendants argue that Fischer's testimony regarding Defendants' failure to investigate other potential suspects is irrelevant because "this complaint is not associated factually with any remaining cause of action . . . ." (Defs.' Mem. Supp. Mot. Lim. 6, DN 488-1). Clark responds that "[a]ny evidence tending to demonstrate that someone other than [Clark] committed the murder of Ms. Warford . . . is relevant to [Clark]'s malicious prosecution, fabrication, conspiracy and *Monell* claims." (Pl.'s Resp. Defs.' Mot. Lim. 9, DN 545).

Fischer's opinion that Defendants "may have had tunnel vision focusing on Hardin and Clark[,]" however, does not demonstrate that someone other than Clark or Hardin committed the Warford murder. (Fischer Report 13). Instead, Fischer's report details his opinion that Defendants failed to adequately investigate other leads. This is not relevant to any of Clark's outstanding

claims because it does not make it more or less likely that probable cause existed to prosecute Clark. *See Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." (citations omitted)); *Alexander v. Harrison*, No. 21-1828, 2022 WL 13983651, at *6 (6th Cir. Oct. 24, 2022) (citing *Ahlers*, 188 F.3d at 371). Accordingly, Defendants' motion is granted.

**d. Mischaracterization of Physical Evidence**

Finally, Defendants argue that Fischer's opinions about Greer's alleged mischaracterization of Warford's latent fingerprint on Clark's vehicle, the blood on Hardin's handkerchief, and the hair on Warford's sweatpants should be excluded because they are irrelevant to Clark's remaining claims. (Defs.' Mem. Supp. Mot. Lim. 6-7, DN 488-1). In his analysis of the fingerprint evidence, Fischer states that Greer's testimony that the fingerprint found in Clark's car was "fresh" erroneously suggested that Warford had recently been in Clark's car. (Fischer Report 13). In Fischer's analysis of the blood and hair evidence, he states that Greer should have been aware of the "limitations and parameters" of blood and hair evidence. (Fischer Report 14). This tends to show that a competent investigator would not have relied upon these pieces of evidence in determining probable cause existed, making Fischer's proposed testimony relevant to Clark's malicious prosecution claim. Accordingly, Defendants' motion is denied.

**B. <u>Defendants' Motion in Limine – Dr. Judy Melinek (DN 492)</u>**

Defendants move to exclude the testimony of Dr. Judy Melinek ("Dr. Melinek") "regarding her opinions about Rhonda Warford's time of death and criticisms she has of Dr. George Nichols . . . ." (Defs.' Mot. Lim. 1, DN 492). Defendants argue that because Dr. Melinek was not involved in the Warford homicide investigation or even licensed to practice medicine during the

investigation, her opinions are irrelevant and unhelpful to the jury. (Defs.' Mem. Supp. Mot. Lim. 1-3, DN 492-1). Clark responds that Defendants' motion should be denied because it is a *Daubert* motion disguised as a motion in limine and because Dr. Melinek's testimony is relevant to Clark's claims.

In this instance, Defendants' motion seeks the exclusion of virtually all of Dr. Melinek's proposed testimony. The substance of her report criticizes Dr. Nichols's investigation and opines on Warford's time of death. (Melinek Report 3-5, DN 509-9). This is more akin to a *Daubert* motion than a motion in limine. Rather than trying to exclude certain areas of testimony for their relevance, Defendants essentially seek to prevent Dr. Melinek from testifying. Defendants had their chance to do so at the *Daubert* motion stage. Accordingly, Defendants' motion is denied.

**C. <u>Defendants' Motion in Limine – Newspaper Articles (DN 496)</u>**

Defendants seek to preclude Clark from introducing newspaper articles related to the discovery of Warford's body. (Defs.' Mot. Lim. 1, DN 496). The articles at issue report that Warford died on April 4 or 5, 1992. (Defs.' Mot. Lim. Ex. 1, DN 496-2; Defs.' Mot. Lim. Ex. 2, DN 496-3). Defendants argue that the newspaper articles are inadmissible hearsay, unduly prejudicial, and needlessly cumulative. (Defs.' Mem. Supp. Mot. Lim. 2, 4). Clark responds that he does not seek to introduce the newspaper articles for the truth of their assertions. (Pl.'s Resp. Defs.' Mot. Lim. 3-4, DN 551). Instead, Clark plans to use the articles to question Defendants about whether they were the source for the information in the articles and establish that the Defendants disclosed Warford's date of death as April 4 or 5 before later asserting that Warford died on April 2. (Pl.'s Resp. Defs.' Mot. Lim. 3-4, DN 551).

Parties are generally barred from offering hearsay as evidence. Fed. R. Evid. 802. Hearsay, in part, is a statement that "a party offers in evidence to prove the truth of the matter

asserted in the statement." Fed. R. Evid. 801(c)(2). "[T]he hearsay rule bans in-court repetition of extra-judicial utterances only when they are offered to prove the truth or falsity of their contents." *United States v. Gibson*, 675 F.2d 825, 834 (6th Cir. 1982) (citing *United States v. Miriani*, 422 F.2d 150, 153 (6th Cir. 1970)). The rule does not apply to statements offered merely to show that they were made or had some effect on the hearer. *Miriani*, 422 F.2d at 153; *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990). Clark's purpose for offering the newspaper articles appears to fall into the first category—he seeks not to prove that April 4 or 5 was the actual date of death, but instead to show that Defendants first reported Warford's date of death as April 4 or 5. The purported statements of Defendants to the newspaper are therefore offered for a non-hearsay purpose.

There is, however, a second layer of hearsay associated with the newspaper articles. The authors' repetition of the date of death as April 4 or 5 is also hearsay. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2021 WL 4341317, at *6 (N.D. Ohio Sept. 23, 2021). For "hearsay within hearsay" to be admissible, both levels of hearsay must fall within an exception to the hearsay rule. *Reynolds v. Green*, 184 F.3d 589, 596 (6th Cir. 1999) (quoting *Miller v. Field*, 35 F.3d 1088, 1092 (6th Cir. 1994)); Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Clark argues that this second layer falls under Fed. R. Evid. 803's ancient documents exception. (Pl.'s Resp. Defs.' Mot. Lim. 5, DN 551). Under this exception, statements in "[a]ncient [d]ocuments" are not hearsay if the document was prepared before January 1, 1998, and the document's "authenticity is established." Fed. R. Evid. 803(16). The articles were written just after Warford's death in 1992, more than five years before 1998. (Defs.' Mot. Lim. Ex. 1, DN 496-2; Defs.' Mot. Lim. Ex. 2, DN 496-3). Further, "[p]rinted material purporting to be a

newspaper or periodical" is self-authenticating. Fed. R. Evid. 902(6). Accordingly, the articles fall under the ancient documents exception and therefore may be admissible despite their hearsay status. *See Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 579-80 (6th Cir. 2013).

Defendants also argue that the newspaper articles' minimal probative value is substantially outweighed by their prejudicial effect. (Defs.' Mem. Supp. Mot. Lim. 4-5, DN 496-1). Specifically, Defendants are concerned that jurors could "improperly conclude that someone associated with Meade County must have told news reporters information about the case when there is no proof in the record supporting that assumption." (Defs.' Mem. Supp. Mot. Lim. 4-5, DN 496-1). Clark aims to develop that proof, however, by introducing the newspaper articles at trial and questioning Defendants. (Pl.'s Resp. Defs.' Mot. Lim. 5, DN 551). Evidence of a change in the date of death could support Clark's conspiracy, malicious prosecution, and fabrication claims. Accordingly, Defendants' motion is denied.

**D. <u>Defendants' Motion in Limine – Interviews (DN 497)</u>**

Defendants seek to preclude Clark from "speculating about [the] content of pre-interviews between Sheriff Greer and Clifford Capps and Sheriff Greer and Amy Remsburg." (Defs.' Mot. Lim. 1, DN 497).

***1. Clifford Capps***

Defendants argue that Capps, throughout his testimony, depositions, and interviews, has "never once . . . recanted his testimony or suggested that his testimony was fabricated[,]" and therefore any alleged fabrication during pre-interviews with Sheriff Greer would be "speculation or conjecture." (Defs.' Mem. Supp. Mot. Lim. 2-4, 10, DN 497-1). Clark responds that Defendants were denied summary judgment on Clark's fabrication claim for Capps's statements

and the contents of Capps's pre-interview are therefore relevant. (Pl.'s Resp. Defs.' Mot. Lim. 2-3).

Defendants were denied summary judgment on Clark's fabrication claim based on Capps's statements because there were two significant pieces of evidence from which a jury could determine that Capps's testimony, while consistent, was false: (1) Clark denies ever speaking to Capps; and (2) Capps's letter wherein he purportedly asked Justis to coordinate their testimonies and provides a list of details to implicate Clark and Hardin. (Mem. Op. & Order 25, DN 388). Further, Greer and Wise acknowledge that some sort of pre-interview took place before they questioned Capps. (Mem. Op. & Order 25, DN 388; Greer Dep. 91:23-92:20, Aug. 7, 2019, DN 317-19; Wise Dep. 41:24-42:11, July 11, 2019, DN 317-60). "These facts, at minimum, present a triable question for the jury." (Mem. Op. & Order 26, DN 388). Because Clark is entitled to a trial on his fabrication claim, he should be allowed to develop evidence about what was discussed in Capps's pre-interview. Accordingly, Clark may elicit testimony and develop evidence to support his fabrication claim, including evidence of the existence and contents of Capps's pre-interview.

**2. *Amy Remsburg***

Defendants similarly argue that Remsburg's statements have been consistent throughout Clark's criminal proceedings and that she has "never recanted" her testimony and "denies that Greer fed her any nonpublic information about the crime" and therefore any alleged fabrication during Remsburg's pre-interview would be "speculation or conjecture." (Defs.' Mem. Supp. Mot. Lim. 5-6, DN 497-1). Differentiating Defendants' arguments about Remsburg's pre-interview from Capp's pre-interview is this Court's grant of summary judgment on Clark's fabrication claim based on Remsburg's testimony. (Mem. Op. & Order 29, DN 388). Clark responds that even

though Remsburg's pre-interview is not directly relevant to a fabrication claim, it is relevant to Remsburg's credibility, Defendants' liability for malicious prosecution and Clark's other claims, and damages. (Pl.'s Resp. Defs.' Mot. Lim. 3-4, DN 552). While Clark no longer has a standalone fabrication claim based on Remsburg's testimony, circumstances indicating its unreliability are relevant to the probable cause element of his malicious prosecution claim and to his damages as evidence indicating his actual innocence. *See Lester*, 986 F.3d at 609-10 (holding that a witness's statement may fall short of establishing probable cause when there is reason to believe that the witness was lying, not accurately recounting events, or mistaken about events). Accordingly, Defendants' motion is granted in that Clark may elicit testimony and develop evidence about the pre-interview.

**E. <u>Defendants' Motion in Limine – Settlement Discussions (DN 499)</u>**

Defendants seek to preclude Clark from introducing evidence of or referring to Defendants' settlement with Hardin, mentioning that Hardin was party to this action, and settlement negotiations between Defendants and Clark. (Defs.' Mot. Lim. 1, DN 499). Defendants argue that: (1) Fed. R. Evid. 408 makes settlements and settlement discussions inadmissible to prove or disprove the validity or amount of a claim or to impeach via prior inconsistent statement; and (2) even if the settlement discussions are offered for some other purpose, they are irrelevant and would unfairly prejudice Defendants. (Defs.' Mem. Supp. Mot. Lim. 1-3, DN 499-1). Plaintiffs respond that Defendants' motion is "overbroad" because Fed. R. Evid. is not a total bar on the admission of settlement discussions and a party is allowed to introduce evidence of settlement discussions "to show prejudice, bias, or to question credibility." (Pl.'s Resp. Defs.' Mot. Lim. 2, DN 554-1).

Under Fed. R. Evid. 408, evidence of settlements and settlement negotiations is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach

by a prior inconsistent statement or a contradiction . . . ." Fed. R. Evid. 408(a). Settlement evidence is admissible, however, "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." While Clark does not identify a specific purpose for which he seeks to admit settlement evidence at trial, the evidence is not clearly inadmissible for all purposes. (Pl.'s Resp. Defs.' Mot. Lim. 2). Accordingly, Defendants' motion is denied, and Clark may be allowed to introduce evidence of settlement discussions for permitted purposes.

**F. Plaintiff's Motion in Limine – Third Party Causation (DN 432)**

Clark moves to preclude "any evidence or argument seeking to point the finger at third parties—including Plaintiffs' criminal defense attorneys, the prosecutor, judge or jury—to suggest that they bear responsibility for Plaintiffs' wrongful convictions." (Pl.'s Mot. Lim. 1, DN 432). Clark argues that the actions of third parties are not relevant to any of his claims, nor do the actions of third parties constitute a defense to any of his claims. (Pl.'s Mot. Lim. 2-5, DN 432). Defendants reply that evidence of third-party causation is relevant to the elements of Clark's *Brady*, fabrication, and malicious prosecution claims. (Defs.' Resp. Pl.'s Mot. Lim. 1-2, 7, 9, DN 521).

**1. Brady *Claims***

To succeed on a *Brady* claim, a plaintiff must establish three components: "(1) [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). A *Brady* violation arises when "the government possesses information which the defendant does not, and the government's

failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). "No *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' . . . or where the evidence is available to defendant from another source . . . ." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)) (citing *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986)).

Defendants argue that Clark's defense attorney Bart Adams was aware of Capps's letter as a defense to Clark's *Brady* claims, so they must be allowed to present evidence indicating that he knew of the letter. (Defs.' Resp. Pl.'s Mot. Lim. 3-4, DN 521). Clark claims that Adams's awareness is irrelevant because "ineffective assistance of counsel is not a defense to a *Brady* claim." (Pl.'s Mot. Lim. 4-5, DN 432). This may be true, but it appears that Defendants seek to assert, in part, that Adams actually possessed or was aware of the letter before Clark's criminal trial. (Defs.' Resp. Pl.'s Mot. Lim. 4, DN 521). If Defendants do present testimony indicating that Adams possessed the letter before Clark's criminal trial, then Adams's subsequent actions become relevant.

Clark is correct, however, that Adams's supposed failure to find the letter himself is irrelevant. *United States v. Tavera*, 719 F.3d 705, 711-12 (6th Cir. 2013) (citing *Banks v. Dretke*, 540 U.S. 668, 696 (2004)). The Sixth Circuit, following Supreme Court precedent, explicitly rejected the notion that a plaintiff is required to undertake "due diligence" to succeed on a *Brady* claim. *Id.* at 712. Accordingly, third party causation is irrelevant to the extent that Defendants plan to offer evidence of Adams's supposed failure to perform due diligence to discover the letter.

Further, Defendants argue that because Kenton Smith ("Smith"), the Commonwealth's Attorney during Clark's prosecution, had independent reason to know of Capps's

untrustworthiness, he should have independently discovered and disclosed the letter. (Defs.' Resp. Pl.'s Mot. Lim. 6-7, DN 521). This is not so. While prosecutors do have the ultimate duty to learn of and turn over exculpatory evidence to a criminal defendant, *Brady* includes an obligation for police to turn over exculpatory evidence to the prosecutor. *Moldowan v. City of Warren*¸ 578 F.3d 351, 381 (6th Cir. 2009). Accordingly, third party causation is also irrelevant to the extent Defendants plan to offer evidence of Smith's supposed failure to discover the letter.

Clark's motion is therefore granted in part and denied in part with respect to Clark's *Brady* claim. Defendants may offer evidence of third-party causation only to support their defense that Adams had actual possession of the letter before Clark's criminal trial.

**2. *Fabrication***

To succeed on a Section 1983 fabrication of evidence claim, a plaintiff must show that: (1) the defendant knowingly fabricated evidence; and (2) there is a reasonable likelihood that the false evidence could have affected the judgment of the jury. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)). Defendants argue that the second element of a fabrication claim necessitates evidence of the decision of the jury in Clark's criminal trial. (Defs.' Resp. Pl.'s Mot. Lim. 7-8, DN 521). While the Court does not read Clark's motion in limine to seek the exclusion of this evidence, it is denied to the extent that it does.

Defendants also argue that they should be able to introduce evidence indicating that they relied on the expertise of Dr. Nichols in determining that Warford's death could have occurred on April 2. (Defs.' Resp. Pl.'s Mot. Lim. 8, DN 521). If Defendants merely relied on Dr. Nichols's opinion, then they did not fabricate Warford's date of death. Accordingly, Defendants are entitled to present evidence of their reliance. Defendants also argue that they should be able to introduce

evidence that the funeral home handling Warford's remains, not Defendants, completed the allegedly fabricated portion of Warford's death certificate. (Defs.' Resp. Pl.'s Mot. Lim. 8, DN 521). Again, Defendants should have the opportunity to present evidence refuting that they knowingly fabricated evidence. Accordingly, Clark's motion is denied with respect to his fabrication claims.

**3. *Malicious Prosecution***

Clark and Defendants appear to be seeking the exclusion and inclusion of two different types of third-party causation evidence. Clark moves to bar evidence of subsequent actions by third parties—i.e., the Commonwealth Attorney's decision to prosecute, the jury's decision to convict, Adams's handling of Clark's defense—in an effort to shift blame. (Pl.'s Mot. Lim. 5-6). Defendants in response, however, seek to prevent the exclusion of third-party actions that establish probable cause, including the grand jury's indictment which raises a rebuttable presumption of probable cause. (Defs.' Resp. Pl.'s Mot. Lim. 9-10). Because Defendants' argument is not responsive to Clark's argument, Clark's motion is granted with respect to his malicious prosecution claim. Defendants, however, will have the opportunity to admit the evidence addressed in their response, and Clark may raise individual objections at trial.

**G. Plaintiff's Motions in Limine – Satanism (DN 436, 437)**

In two motions in limine, Clark seeks to exclude evidence and arguments about his and Hardin's involvement with Satanism. (Pl.'s Mot. Lim. 1, DN 436; Pl.'s Mot. Lim. 1, DN 437). Generally, Clark and Hardin's alleged Satanism is part of the res gestae of this case.

> "The phrase '*res gestae*' is generally defined as 'the events at issue or others contemporaneous with them.' In the law of evidence, *res gestae* may be either a rule of relevance that makes testimony about the events forming part of the *res gestae* admissible, or an exception to the hearsay rule allowing for the admissibility of *res gestae*." *United States v. Wilson*, 653 F. App'x 433, 447 n.5 (6th Cir. 2016) (quoting Bryan Garner, *Garner's Dictionary of Legal Usage*, 777-

> 78 (3d ed. 2011)). "This court 'ha[s] recognized the admissibility of *res gestae*, or background evidence, in limited circumstances when the evidence includes conduct that is 'inextricably intertwined' with the [primary issue under scrutiny] . . . . 'Proper background evidence has a causal, temporal or spatial connection with the [primary issue under scrutiny].'" [*United States*] *v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). At a minimum, *res gestae* would expand the universe of admissible evidence to include facts that are inextricably intertwined with facts that are unquestionably relevant to the issues to be resolved by the fact finder.

*Stackpole Int'l Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC*, No. 17-13748, 2020 WL 13470544, at *2 (E.D. Mich. Feb. 27, 2020).

In this case, the jury will be asked to determine, among other issues, whether Clark was maliciously prosecuted for Warford's murder. As Clark acknowledges, the issue of Satanism permeated the investigation and trial. (Pl.'s Mot. Lim. 5-8, DN 436). It would be difficult, if not impossible, for the jury to understand the events giving rise to this case without the introduction of some evidence of Clark and Hardin's alleged involvement with Satanism. The facts that led Defendants to believe that Clark and Hardin had some involvement with the religion are inextricably linked to each of Clark's claims. Accordingly, evidence and arguments about Satanism cannot be entirely excluded.

**1. *Plaintiff's Motion in Limine to Exclude Certain Evidence and Arguments of Satanism (DN 436)***

In Clark's first motion, he moves to exclude "[c]ertain [e]vidence and [a]rguments of Satanism." (Pl.'s Mot. Lim. 1, DN 436). Clark, however, acknowledges that "some evidence of Satanism will come in at trial because it is relevant to [Clark's] core conspiracy and misconduct claims." (Pl.'s Mot. Lim. 3, DN 436). It is unclear exactly which evidence and arguments Clark wishes to exclude and which he concedes will have to be admitted, but his argument in this first motion centers on preventing Defendants from using evidence of Satanism to attack Clark's

credibility and prove that Clark actually committed the Warford murder. (Pl.'s Mot. Lim. 5-12, DN 436).

Clark argues that Fed. R. Evid. 610 prohibits Defendants from offering evidence of Hardin or Clark's involvement in Satanism to attack their credibility. (Pl.'s Mot. Lim. 11-12). Fed. R. Evid. 610 bars the admission of "[e]vidence of a witness's religious beliefs or opinions" to attack the witness's credibility. Fed. R. Evid. 610. Accordingly, Defendants are barred from presenting evidence of Satanism to attack any witness's credibility. *See United States v. Acosta*, 924 F.3d 288, 304-05 (6th Cir. 2019).

Clark also argues that because there is no evidence that the Warford murder was a Satanic ritual sacrifice and there is no evidence he ever practiced Satanism, that evidence and arguments of Satanism are irrelevant, or their limited relevance is outweighed by their prejudicial effect. (Pl.'s Mot. Lim. 5-12, DN 436). First, evidence of Satanism has some relevance because it speaks to whether Defendants had probable cause to prosecute Clark. While the criminology expert consulted by Greer during his investigation concluded that Warford's murder was not a Satanic ritual killing, the expert did not conclude that there was no connection between Satanism and the murder. (Pl.'s Mot. Lim. 6, DN 436; Pl.'s Mot. Lim. Ex. 3, at 1-2, DN 436-3). In a letter to Greer, the criminology expert stated that "the person(s) you are looking for is . . . someone who was a dabbler in the occult." (Pl.'s Mot. Lim. Ex. 3, at 1-2, DN 436-3). Any involvement that Clark and Hardin had in Satanism is therefore relevant to the issue of probable cause, as an expert Greer consulted in his initial investigation identified the potential perpetrator as someone with ties to the occult.

Weighing opposite this probative value, however, is the highly prejudicial nature of evidence of Satanism. Evidence of Clark or Hardin's involvement with Satanism could cause the

jury to base their decision not on the merits of the parties' arguments and evidence, but on their dislike of Clark and Hardin's involvement with the religion. To remedy this, Clark proposes that Defendants alert the Court before introducing any evidence of Satanism at trial so that the Court can determine the admissibility of specific pieces of evidence under Fed. R. Evid. 401, 402, and 403. Accordingly, Clark's motion is denied, but all parties must notify the Court before introducing evidence of Satanism so that the Court may consider the admissibility of the evidence and issue a proper limiting instruction.

**2. *Plaintiff's Motion in Limine to Bar Satanism Evidence and Argument Pertaining to Plaintiff Clark***

In Clark's second motion, he moves to "bar any evidence or references to Satanism as it pertains to . . . Clark." (Pl.'s Mot. Lim. 1, DN 437). Clark argues that because there is "no evidence whatsoever" linking him to Satanism, Satanism evidence is "irrelevant and highly prejudicial . . . ." (Pl.'s Mot. Lim. 1, DN 437). Defendants' response, however, indicates that there is some evidence suggesting that Clark did practice or "dabble" in Satanism. (Defs.' Resp. Pl.'s Mots. Lim. 15-16, DN 523; Defs.' Resp. Pl.'s Mots. Lim. Ex. 7, at 7, DN 523-7). Accordingly, Satanism evidence may be relevant to Clark's claims and Clark's motion is denied. As stated above, all parties must notify the Court before introducing evidence of Satanism so that the Court may consider the admissibility of the evidence and issue a proper limiting instruction.

**H. <u>Plaintiff's Motion in Limine – Clark's Bad Acts (DN 438)</u>**

Clark moves to bar evidence of "any of Plaintiff's bad acts, including arrests[] and convictions." (Pl.'s Mot. Lim. 1, DN 438). Specifically, Clark seeks to prevent discussion or evidence of: (1) Clark's charges, arrests, and convictions; (2) various allegations by Remsburg; and (3) Clark's ownership of a snake. (Pl.'s Mot. Lim. 2-4, DN 438). Clark argues that these bad acts are either impermissible character evidence, irrelevant, or their limited relevance is

significantly outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. (Pl.'s Mot. Lim. 1, DN 438).

First, Clark's stale convictions are inadmissible to impeach his character for truthfulness. Fed. R. Evid. 609 bars the use of convictions to impeach "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 608(b). A stale conviction can only be used if its probative value substantially outweighs its prejudicial effect. Fed. R. Evid. 608(b)(1). In this instance, Clark's thirty-year-old convictions for terroristic threatening and harassment have little to do with his character for truthfulness, but they present danger of prejudice as a jury could seek to punish Clark for his past crimes. Accordingly, Defendants may not use Clark's convictions to challenge his credibility.

Next, Clark asserts that none of the bad acts referenced in his motion in limine are admissible as evidence of his character under Fed. R. Evid. 404. (Pl.'s Mot. Lim. 5-8, DN 438). Fed. R. Evid. 404 bars the use of evidence of a person's character trait "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Specifically, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Accordingly, Defendants may not present evidence of Clark's previous bad acts to show his character or that he acted in accordance with his character in a specific instance.

Clark's bad acts, however, may be admissible for non-character purposes. Bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.

404(b)(2). Fed. R. Evid. 404 is a rule of inclusion, not exclusion. *United States v. LaVictor*, 848 F.3d 428, 446 (6th Cir. 2017) (citing *United States v. Carney*, 387 F.3d 436, 450 n.11 (6th Cir. 2004)). When determining whether to admit Fed. R. Evid. 404 evidence, a district court must follow a three-step process:

> First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*United States v. Bell*, 516 F.3d 432, 440-41 (quoting *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004)). If a district court admits Fed. R. Evid. 404 evidence, it must give a limiting instruction to the jury that identifies the purpose for which they may consider the evidence, explains why that purpose is material to the issues at trial, and "warn[s] the jurors against using the evidence to draw the inferences expressly forbidden [by] Rule 404(b)." *Id.* (quoting *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994)).

As discussed in this Court's rulings on the parties' motions in limine, one of the most consequential questions of fact in this matter is whether probable cause to prosecute Clark existed at the time the criminal proceeding was initiated by Defendants. *See Sykes v. Anderson*, 625 F.3d 294, 310-11 (6th Cir. 2010) ("In order to distinguish appropriately this claim from one of false arrest, we must consider not only whether the Defendants had probable cause to arrest the Plaintiffs but also whether probable cause existed to initiate the criminal proceeding against the Plaintiffs." (citation omitted)). The jury will necessarily need to consider the parts of Clark's background that were considered by Defendants when determining whether to initiate Clark's prosecution. Outside the context of trial, it is difficult to determine the specific items of evidence which may be relevant to the jury's determination. Accordingly, Clark's motion is granted in part and denied in part.

Clark may raise objections to specific pieces of evidence offered at trial. The Court will consider the evidence and issue a proper limiting instruction pursuant to Fed. R. Evid. 404 if it is admitted.

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion in Limine (DN 488) is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendants' Motions in Limine (DN 492, 496, 499) are **DENIED**.

3. Defendants' Motion in Limine (DN 497) is **GRANTED**.

4. Plaintiff's Motions in Limine (DN 432, 438) are **GRANTED IN PART** and **DENIED IN PART**.

5. Plaintiff's Motions in Limine (DN 436, 437) are **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
January 5, 2026

cc: counsel of record