UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00419-GNS-CHL

JEFFREY DEWAYNE CLARK et al.                                    PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, KENTUCKY et al.                              DEFENDANTS

**ORDER**

Following the continuance of the trial in this matter, Plaintiff filed amended witness and exhibit lists. (Pl.'s Am. Witness List, DN 598; Pl.'s Am. Ex. List, DN 599). In response, Defendants object to several of Plaintiff's newly identified witnesses and exhibits. (Defs.' Obj., DN 604). While many of these objections are best dealt with at trial, the Court will take the opportunity to rule on Defendants' objections to Plaintiff's witnesses so that it is clear who may be called to testify.

Defendants first object to the designation of Nicole Pang ("Pang"). (Defs.' Obj. 3, 5-11). According to Plaintiff's amended witness list, Pang may be called to "testify as to the foundation for the 1993 typed transcript" of the Kevin Justis interview. (Pl.'s Am. Witness List 6; Pl.'s Resp. Defs.' Obj. 2-5, DN 606). While Defendants' arguments about the timeliness of the identification of Pang are well taken, their objection will be overruled at this time.[1] Both Plaintiff and Defendants reserved the right to supplement their witness lists with authentication witnesses. (*See*

---

[1] As with motions in limine, rulings on these pretrial objections are preliminary. *See Bruce v. Levy Premium Foodservice Ltd. P'ship*, No. 3:16 C 2734, 2019 WL 11704226, at *1 (M.D. Tenn. Apr. 2, 2019) ("Because rulings on motions in limine and other pretrial matters are 'subject to change as the case unfolds,' these rulings constitute a preliminary determination in preparation for trial." (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984))).

1

Pl.'s Witness List 1 n.1, DN 480 ("any witness needed to authenticate a document"); Defs.' Witness List 5-6, DN 477 ("[a]ny witness whose testimony is necessary to authenticate or lay a foundation for any document or exhibit")).  While there is a difference between identifying a category of witness and identifying a single witness, the late identification of a witness to be called for authentication purposes only is unlikely to prejudice Defendants.  *Cf. Garren v. CVS Health Corp.*, No. 3:17-CV-149-CLC-DCP, 2020 WL 5604038, at *2 (E.D. Tenn. Sep. 17, 2020) ("While the Court does not approve of Defendants' delay in identifying, by name, a custodian of records in this matter, given that the witness in question will only be used to authenticate documents, the Court finds Defendants' delay . . . to have been harmless.").  Accordingly, Defendants' objection to the identification of Pang is overruled.  Pang, however, should only testify to the transcript's authenticity.

Even with the benefit of Pang's testimony, the path to the admissibility of either the transcription or the audio recording remains unclear.  As a sister court has explained:

> An audio recording may only be admitted if the recording is authentic, accurate, trustworthy, and "sufficiently comprehensible for the jury to consider the contents." *United States v. Wesley*, 417 F.3d 612, 620 (6th Cir. 2005) (internal quotation marks omitted).  Additionally, a proper foundation must be laid through either the chain of custody or other testimony that "could be used to establish the accuracy and trustworthiness of the evidence." *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004).

*United States v. Cloud*, No. 5:22-CR-041-DCR, 2022 WL 3006840, at *1 (E.D. Ky. July 28, 2022).  While Pang can testify to the authenticity of her "transcript" of the tape, it does not appear that Plaintiff plans to present any evidence that the Pang transcript, the recently created court reporter transcript, or the tape itself are complete and accurate reflections of the conversation between Kevin Justis ("Justis"), Harvey Palefsky ("Palefsky"), and Garfield Salas ("Salas").  All three men are dead.  (*See* Pl.'s Resp. Defs.' Obj. 6 ("No one could have predicted during discovery that Mr.

Palefsky and Mr. Justis would both die before trial."); Palefsky Dep. 77:6-8, June 24, 2019, DN 610-1 ("Q: When did Mr. Salas pass away? A: I would say within the last five to seven years.")). There is no indication that anyone other than Justis, Palefsky, and Salas was present during the conversation. (*See* Palefsky Dep. 32:23-33:9, 34:17-35:5, 109:25-110:10). Palefsky was unable to testify in his deposition that the Pang transcript was an accurate reflection of the conversation. (*See* Palefsky Dep. 87:22-89:5 ("Q: So you can't even sit here and testify today to [sic] the content of this transcript is accurate, can you? A: I can't . . . The answer is I can't say a hundred percent accurate."). There is no indication that he was presented with the court reporter transcript or the original recording in his deposition—presumably because the former did not yet exist, and the latter had not yet been discovered. (*See* Pl.'s Resp. Defs.' Obj. 6 n.2; Defs.' Obj. 4; Defs.' Reply Obj. Ex. 3, at 42, DN 610-3). Accordingly, it is unclear how Plaintiff intends to authenticate the transcript or the recording.

Nevertheless, Plaintiff ensures the Court that he has "several paths" to lay a foundation for and authenticate the recording and/or the transcript. (Pl.'s Resp. Defs.' Obj. 4-5). These paths remain somewhat unclear given Palefsky's lack of certainty regarding the accuracy of the Pang transcript. In both the Pang transcript and the court reporter transcript, Justis indicates that he gave Capps's letter to Sheriff Greer. (Defs.' Reply Obj. Ex. 2, at 4-5, 16-17, DN 610-2; Defs.' Reply Obj. Ex. 3, at 7:24-10:7, 32:22-33:5). Additionally, Palefsky testified in his deposition that Justis told him he had given a copy of the letter to Sheriff Greer. (Palefsky Dep. 39:25-40:20, 41:10-42:2, 49:5-50:24). Given that there is a genuine issue as to "whether Greer and Wise possessed Capps' letter" before Plaintiff's trial and this remains a major part of Plaintiff's *Brady* claims,

Plaintiff may attempt to lay a foundation for the admissibility of the recording and/or transcript.[2]

(Mem. Op. & Order 15, DN 388; *see also* Defs.' Trial Br. 5, DN 540; Pl.'s Trial Br. 2, DN 560).

Defendants also object to Plaintiff's designation of Patricia Abell ("Abell"). (Defs.' Obj. 3 n.14). Abell is counsel for Kentucky's Office of Vital Statistics and will be called to "provide a foundation for the admission of the original death certificate of Rhonda Sue Warford." (Pl.'s Am. Witness List 3). For the same reasoning as with the objection to Pang, Defendants' objection to the identification of Abell will be overruled at this time. Abell, however, should only testify as to the death certificate's authenticity. Moreover, Defendants indicate that they are willing to stipulate to the authenticity of the death certificate, thereby eliminating the need for Abell's testimony. (Defs.' Obj. 3 n.14). The parties are encouraged to confer in good faith before trial about possible stipulation on this issue.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Objections (DN 604) are **OVERRULED IN PART**, and the Court **RESERVES RULING IN PART**.

**Greg N. Stivers, Judge**
**United States District Court**
March 26, 2026

cc:     counsel of record

---

[2] This ruling aligns with the Court's preliminary ruling on Defendants' motion in limine regarding the issue. (*See* Mem. Op. & Order 12-13, DN 563 ("Accordingly, the Court reserves ruling on Defendant's motion until trial, when it can be determined if Clark has successfully authenticated the transcript.")). It is difficult to understand at this juncture, however, how the transcript or recording will overcome the hurdle of hearsay. While Defendants' motion in limine on the issue focused on authentication concerns, the admissibility of the interview seems questionable even if authenticated.